**Exhibit 39** to *Declaration of Joel Fleming in Support of Motion to Dismiss Filed by Defendants Larry Goldstone and Clarence G. Simmons* (Dkt: #37).

# EXHIBIT 39

Exhibit 39 to the Declaration of Joel Fleming in Support of Defendants
Larry Goldstone's and Clarence Simmons' Motion to Dismiss

10-Q 1 d10q.htm FORM 10-Q

Table of Contents

# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION
Washington, D.C. 20549

# FORM 10-Q

**(mark one)**

☒ **QUARTERLY REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**

**For the quarterly period ended: March 31, 2008**

**OR**

☐ **TRANSITION REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**

**For the transition period from _____ to _____**

**Commission File Number: 001-11914**

# THORNBURG MORTGAGE, INC.
**(Exact name of Registrant as specified in its Charter)**

| | |
|---|---|
| **Maryland** | **85-0404134** |
| (State or other jurisdiction of incorporation or organization) | (IRS Employer Identification Number) |
| **150 Washington Avenue** <br> **Santa Fe, New Mexico** | **87501** |
| (Address of principal executive offices) | (Zip Code) |

**Registrant's telephone number, including area code: (505) 989-1900**

(Former name, former address and former fiscal year, if changed since last report)
**Not applicable**

Indicate by check mark whether the Registrant (1) has filed all reports required to be filed by Section 13 or 15(d) of the Securities Exchange Act of 1934 during the preceding 12 months (or for such shorter period that the Registrant was required to file such reports), and (2) has been subject to such filing requirements for the past 90 days.   Yes ☒   No ☐

Indicate by check mark whether the Registrant is a large accelerated filer, an accelerated filer, or a non-accelerated filer. See definition of "accelerated filer and large accelerated filer" in Rule 12b-2 of the Securities Exchange Act of 1934.

Large accelerated filer ☒   Accelerated filer ☐   Non-accelerated filer ☐   Smaller reporting company ☐

Indicate by check mark whether the Registrant is a shell company (as defined in Rule 12b-2 of the Securities Exchange Act of 1934).   Yes ☐   No ☒

The above table also presents four alternative capital utilization measurements to our Adjusted Equity-to-Assets ratio. The first alternative capital utilization measurement is the GAAP equity-to-assets ratio, a calculation that simply divides total GAAP equity by total assets. While the simplest of all equity-to-assets calculations, it is not used by management to manage our balance sheet because it excludes Senior Notes, Senior Subordinated Notes, Subordinated Notes and the PPA and Additional Warrant Liability from our equity calculation. We are able to carry additional assets by financing a portion of our ARM Assets with Collateralized Mortgage Debt financings, which have an initial fixed capital requirement of approximately 2% to 7% of the assets financed in this way. The GAAP measurement ignores changes in the level of equity required to support various forms of financing as the mix of our financing of ARM Assets changes between financing subject to margin requirements and Collateralized Mortgage Debt financings which are not subject to margin requirements. This is another reason why we do not use the GAAP measurement to make leverage or capital utilization decisions.

The second alternative capital utilization measurement is the ratio of historical equity to historical assets. This is a non-GAAP measurement that eliminates the market value adjustment of our assets and Hedging Instruments included in OCI. This measurement is calculated by dividing the sum of the assets, net unrealized gain (loss) on Purchased ARM Assets and net unrealized gain (loss) on Hedging Instruments in the table above by the sum of shareholders' equity and OCI. Our historical equity-to-assets ratio of 0.73% is below the regulatory "well-capitalized" threshold of 5% required of banks and savings and loan institutions for the Tier I Core Capital Ratio due to the liquidity problems we experienced this quarter and the losses reflected in our the Consolidated Income Statements.

The third alternative capital utilization measurement is the ratio of long-term equity to historical assets. This is a non-GAAP measurement that eliminates the market value adjustment of our assets and Hedging Instruments included in OCI. This calculation also includes Senior Notes, Senior Subordinated Notes, Subordinated Notes and the PPA and Additional Warrant Liability as a component of our long-term capital base. This measurement is calculated by dividing the sum of the assets, net unrealized gain (loss) on Purchased ARM Assets and net unrealized gain (loss) on Hedging Instruments in the table above by long-term capital. We monitor these ratios in order to have a complete picture of the relationship between our total assets and long-term equity position.

The fourth alternative capital utilization measurement is a calculation of our total risk-based capital ratio, a regulatory calculation required to be made by banks and savings and loan institutions that comply with Federal Reserve Board capital requirements. The ratio results from dividing the sum of our historical and supplementary capital by total risk weighted assets as presented in the Thrift Financial Report instructions. Risk-based capital measures capital requirements for assets based on their credit exposure as defined by the regulation, with lower credit risk assets requiring less capital and higher credit risk assets requiring more capital. Although we are not subject to these regulatory requirements, we focus our efforts on only high quality assets. Our risk-based capital ratio of 7.71% is below the regulatory minimum of 10% required for banks and savings and loan institutions to qualify as "well-capitalized" due to the liquidity problems we experienced this quarter and the losses reflected in our the Consolidated Income Statements.

**Equity Transactions**

In January 2008, we received net proceeds of 229.8 million from the concurrent public offerings of 8,050,000 shares of Common Stock and 9,137,000 shares of Series F Preferred Stock.

During the three-month period ended March 31, 2008, we issued 23,670,224 shares of Common Stock under the DRSPP and received net proceeds of $258.3 million.

On January 4, 2008, we declared a quarterly dividend of $0.63723 per share of Series F Preferred Stock, which was paid on February 15, 2008 to shareholders of record on January 31, 2008. On March 24, 2008, our Board of Directors determined that we did not have sufficient liquidity to make our next scheduled payments of dividends on Preferred Stock and indefinitely suspended the payment of dividends on all series of Preferred Stock. Therefore, dividends were neither declared nor paid on the Series C, D and E Preferred Stock on April 15, 2008 and we did not declare or pay dividends on the Series F Preferred Stock on May 15, 2008. Dividends on Preferred Stock accumulate whether or not we have earnings, whether or not there are funds legally available for their payment and whether or not such dividends have been declared. We have not accrued the cumulative unpaid dividends because they have not been declared as of March 31, 2008. Cumulative unpaid dividends on Preferred Stock dividends totaled $15.3 million at March 31, 2008. However, at our annual meeting of shareholders held on June 12, 2008, shareholders approved amendments to our charter to increase the number of authorized shares of capital stock from 500 million to 4 billion shares and to modify the terms of each existing series of Preferred Stock to, among other things, remove restrictive covenants that currently prohibit us from purchasing Preferred Stock when all cumulative dividends on the related series of Preferred Stock have not been paid in full, make the dividend payments on the Preferred Stock non-cumulative and eliminate all accrued but unpaid dividends, and eliminate substantially all voting rights of the preferred stockholders. We must still obtain the requisite consents from the holders of each series of Preferred Stock to the

80

Table of Contents

## SIGNATURES

Pursuant to the requirements of the Securities Exchange Act of 1934, the Registrant has duly caused this report to be signed on its behalf by the undersigned, thereunto duly authorized.

THORNBURG MORTGAGE, INC.
(Registrant)

Dated: June 18, 2008    /s/ Larry A. Goldstone
Larry A. Goldstone
President and Chief Executive Officer
(Principal Executive Officer)

Dated: June 18, 2008    /s/ Clarence G. Simmons, III
Clarence G. Simmons, III
Senior Executive Vice President and Chief Financial Officer
(Principal Financial and Accounting Officer)

101