**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

SECURITIES AND EXCHANGE COMMISSION,

       Plaintiff,

                         CIVIL NO. 12-257 (JB-JFG )

vs.

LARRY A. GOLDSTONE,
CLARENCE G. SIMMONS, III, and
JANE E. STARRETT,
               Defendants.

**JOINT STATUS REPORT AND PROVISIONAL DISCOVERY PLAN**

     Pursuant to FED. R. CIV. P. 26(f), a telephonic meeting was held on April 19, 2012 and was attended by:

     Stephen C. McKenna and Gregory Kasper for Plaintiff Securities and Exchange Commission ("SEC");

     Randall R. Lee, John A. Valentine, Jessica F. Kurzban, and P. Patty Li, of Wilmer Cutler Pickering Hale and Dorr LLP, for defendants Larry Goldstone and Clarence Simmons; and

     Jerry L. Marks and Robert J. Liubicic, of Milbank, Tweed, Hadley & McCloy LLP, for defendant Jane Starrett (together with Larry Goldstone and Clay Simmons, "Defendants").

**NATURE OF THE CASE**

     This is an SEC enforcement action against three individuals arising from statements made in and immediately following the filing of the Form 10-K for Thornburg Mortgage, Inc. ("Thornburg") on February 28, 2008.  Plaintiff's complaint, filed on March 13, 2012, alleges that Larry A. Goldstone, Thornburg's chief executive officer, Clarence G. Simmons, III, its chief

financial officer, and Jane E. Starrett, its chief accounting officer, knowingly or recklessly made materially misleading statements or omissions concerning Thornburg's financial condition, margin call activity, and available liquidity in the Form 10-K, in subsequent public statements, and in statements to Thornburg's auditors, and/or engaged in a scheme to defraud. The Complaint asserts claims for violation of Section 17(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. §77q(a)] and Sections 10(b), 13(a), 13(b)(2), 13(b)(5), and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. §§ 78j(b), 78m(a), 78m(b)(2), 78m(b)(5), and 78t] and Rules 10b-5, 12b-20, 13a-l, 13a-14, 13b2-l, and 13b2-2 thereunder [17 C.F.R. §§ 240.10b-5, 240.12b-20, 240.13a-l, 240.13a-14, 240.13b2-l, and 240.13b2-2].

## AMENDMENTS TO PLEADINGS AND JOINDER OF PARTIES

Defendants filed motions to dismiss on **May 21, 2012** (Docket Nos. 35-40).

The parties should be allowed until **November 1, 2012** (120 days before the earliest date for the close of fact discovery) to move to amend the pleadings and/or join additional parties in compliance with Fed. R. Civ. P. 15(a).

## STIPULATIONS

The parties hereby stipulate to the following:

1. The United States District Court for the District of New Mexico has jurisdiction over the parties and the subject matter.

2. Venue is properly laid in this District.

3. Thornburg Mortgage, Inc. was a publicly traded, single-family (one-to-four unit) residential mortgage lender that originated, acquired and retained investments in adjustable rate mortgage ("ARM") assets.

4.      Defendant Larry A. Goldstone is a resident of Santa Fe, New Mexico.  At the time Thornburg filed its 2007 Form 10-K on February 28, 2008, Mr. Goldstone was Thornburg's President and Chief Executive Officer ("CEO"), and was a member of the Board of Directors.

5.      Defendant Clarence G. Simmons, III is a resident of Santa Fe, New Mexico.  At the time Thornburg filed its 2007 Form 10-K on February 28, 2008, Mr. Simmons was a Senior Executive Vice-President and the Chief Financial Officer ("CFO") of Thornburg.

6.      Defendant Jane E. Starrett is a resident of Santa Fe, New Mexico.  At the time Thornburg filed its 2007 Form 10-K on February 28, 2008, Ms. Starrett was Thornburg's Executive Vice President and Chief Accounting Officer ("CAO").

7.      The federal statutes and regulations governing the claims in this case are:  Section 17(a) of the Securities Act [15 U.S.C. §77q(a)] and Sections 10(b), 13(a), 13(b)(2), 13(b)(5), and 20(a) of the Exchange Act [15 U.S.C. §§ 78j(b), 78m(a), 78m(b)(2), 78m(b)(5), and 78t] and Rules 10b-5, 12b-20, 13a-l, 13a-14, 13b2-l, and 13b2-2 thereunder [17 C.F.R. §§ 240.10b-5, 240.12b-20, 240.13a-l, 240.13a-14, 240.13b2-l, and 240.13b2-2].

## <u>PLAINTIFF'S CONTENTIONS:</u>

This SEC enforcement action involves fraudulent misrepresentations and omissions about Thornburg's financial condition, margin call activity, and liquidity by Thornburg's CEO, Larry A. Goldstone, CFO, Clarence G. Simmons, III, and CAO, Jane E. Starrett.  Thornburg was a publicly-traded single-family mortgage lender and the nation's second-largest independent mortgage company after Countrywide Financial Corporation.

In the weeks leading to the filing of Thornburg's 2007 Form 10-K, Thornburg was in serious financial difficulty.  During that time, Thornburg received more than $300 million in margin calls that severely drained its liquidity.  In fact, Thornburg was unable to meet margin calls from at least three lenders in a timely manner and had received a reservation of rights letter from one of these lenders confirming that Thornburg was in violation of its lending agreement and could be declared in default at any time.  Such a default, in turn, would have triggered cross-defaults with Thornburg's other lenders and led to the seizure of Thornburg's adjustable rate mortgage ("ARM") securities serving as collateral for its loans.

Rather than disclosing Thornburg's dire financial condition to the investing public, Defendants schemed to mislead Thornburg's outside auditors, purposely not disclosing the company's failure to meet margin calls and reliance on the forbearance of its lenders to continue to hold its ARM securities.  Goldstone and Simmons also failed to tell Thornburg's auditors about the reservation of rights letter, and the fact that a large European hedge fund holding ARM securities similar to those held by Thornburg was about to collapse, which made additional margin calls by Thornburg's lenders likely.  Defendants further misled Thornburg's auditors by telling them that the sale of interest-only tranches of mortgaged backed securitizations originated and held by Thornburg was not done to meet margin calls, when contemporaneous e-mails amongst defendants show that it was.  Through this deception, Thornburg represented to its auditors that it had the intent and ability to hold its ARM securities until they recovered their value or matured, and, based upon that misrepresentation, obtained the auditor's acquiescence in not writing down the value of those assets by over $420 million.  Such a write down would have

turned Thornburg's reported fourth quarter profit of approximately $65 million into a loss of over $350 million.

Rather than reporting the true extent of Thornburg's liquidity crisis, and the fact that it was likely to escalate the next day after the European hedge fund collapsed, Thornburg reported in its 10-K, filed at approximately 4:00 a.m. on February 28, 2008, that it had successfully met all margin calls, was not required to sell any assets to do so, and had turned the corner to profitability at the end of the year.

Within approximately two hours of filing its 2007 Form 10-K on February 28th, Thornburg received additional margin calls, margin calls that exceeded its available liquidity by 8 a.m. and resulted in a notice of default that afternoon.  As a result, Thornburg filed a Form 8-K on March 3, 2008 announcing its default and, on March 11th, restated its financial statements to reflect a previously unrecognized loss of approximately $428 million on Thornburg's income statement and a qualification that Thornburg might not be able to continue as a going concern.

At the time of the filing of Thornburg's 10-K, Defendants knew or were reckless in not knowing that they were not telling Thornburg's investors or auditor the whole story.  In a February 28, 2009 e-mail to Goldstone discussing the drop in Thornburg's stock price following the filing of the 10-K, Simmons wrote:  "I guess the recent development section did not go over well.  *If they only knew.*"  (emphasis added).

As a result of the foregoing, the Defendants deceived Thornburg's auditors and investors, materially misrepresenting Thornburg's financial condition in the financial statements contained in its Form 10-K.  Defendants' conduct violated the antifraud, misleading auditors, public reporting, and books and record-keeping provisions of the U.S. securities laws.

## DEFENDANTS' CONTENTIONS

This lawsuit is an example of overreaching by the government.  Plaintiff's claims are predicated entirely on its own hindsight judgments, made four years after an historic market collapse, as to whether Defendants should have done more at the time to predict the future.

In short, Plaintiff seeks to hold Defendants liable for securities fraud, misleading auditors, inaccurate public reporting, and books and record-keeping violations based primarily on (a) their decision not to recognize an impairment charge for $427.8 million in unrealized losses associated with Thornburg's Purchased ARM Assets in the company's Form 10-K filed on February 28, 2008, and (b) their inability to predict that Thornburg would face in excess of $1.2 billion in margin calls from lenders after the Form 10-K filing.  But Defendants' impairment analysis involved complex, subjective accounting judgments made in good faith about Thornburg's future ability to retain the Purchased ARM Assets at issue and, as such, cannot form the basis for securities fraud.  Moreover, given the unprecedented turbulence in the market for mortgage-backed securities ("MBS") at that time, Defendants could not have predicted the extent of margin calls they would receive on repo loans collateralized by those types of securities. Indeed, in an email to Thornburg's Board of Directors on February 21, 2008, Thornburg CEO Larry Goldstone made the unpredictability of the margin loan situation clear, noting that while he expected future margin calls, he "*currently [didn't] have an estimate on*" them.  Nothing in the federal securities laws required him or the other Defendants to predict something so inherently unpredictable.

Defendants complied with their disclosure obligations by ensuring that Thornburg's Form 10-K provided extensive and forthright disclosures about the Company's financial position and

future risks it faced, including, among other things, that Thornburg had received more than $300 million in margin calls since February 14, 2008, that its Purchased ARM Assets had declined in value by $427.8 million, and that it might receive future margin calls that it would be unable to satisfy.  Far from concealing the company's weakened financial condition, these stark, candid disclosures prompted a massive sell-off of Thornburg stock and caused the company's lenders to issue a new wave of margin calls.

In light of those disclosures and the well known turmoil in the MBS market in February 2008, Defendants' alleged failure to disclose immaterial facts and rumors, such as the receipt of a boilerplate reservation of rights letter from one of Thornburg's lenders, the specific actions Thornburg took to raise capital to satisfy margin calls, or the rumor on February 27, 2008 that a European hedge fund was near collapse, cannot sustain a securities fraud charge.  What's more, Defendants provided Thornburg's outside auditors with the exact information that Plaintiff alleges Defendants either failed to disclose or misrepresented.  KPMG reviewed, among other things, Thornburg's schedule of margin calls which disclosed each of the margin calls the company received from February 14 through February 27, 2008, and how each was satisfied. This document specifically showed that the Citi margin call was satisfied over several days and partially through the financing of interest-only strips.  KPMG used this schedule to tick-and-tie the accuracy of the disclosures in Thornburg's 2007 Form 10-K, including the disclosure of $427.8 million in unrealized losses on assets Thornburg did not intend to sell to meet margin calls, and in excess of $300 million in margin calls that were met without resorting to the sale of such assets.

As a result, Defendants respectfully submit that the Complaint should be dismissed in its entirety with prejudice for failure to state a claim on which relief can be granted under Federal Rules of Civil Procedure 8(a)(1), 9(b) and 12(b)(6).

## PROVISIONAL DISCOVERY PLAN

The parties jointly propose to the Court the following discovery plan:

Plaintiff's initial disclosures are attached as Exhibit 1A-C.

Defendants Larry Goldstone and Clarence Simmons' initial disclosures are attached as Exhibits 2(A)-(C) and Defendant Jane Starrett's initial disclosures are attached as Exhibits 3(A)-(C).

**Discovery will be needed on the following subjects:**

Plaintiff's Position Regarding Subjects for Discovery:

1.   Thornburg's business and financial condition from 2007 through its declaration of bankruptcy on May 1, 2009;

2.   Thornburg's methods of financing;

3.   Thornburg's agreements with its lenders;

4.   Margin calls experienced by Thornburg during the relevant period and its efforts to meet those margin calls;

5.   Thornburg's sales of securities and interest only strips;

6.   The preparation of Thornburg's filings with the Securities and Exchange Commission during the relevant period;

7.   The audit of Thornburg's financial statements during the relevant period;

8. The other than temporary impairment analysis conducted by Thornburg and/or KPMG during the relevant period;

9. Developments in mortgage backed securities markets during the relevant period;

10. Defendants' communications with each other, with others at Thornburg, with their lenders, with KPMG, and with the public during the relevant period;

11. Each defendant's individual knowledge of the subjects listed above; and

12. Other subjects that arise during discovery.

Plaintiff notes Defendants' statement below that they do not believe Plaintiff requires significant additional discovery. The law is clear that information gathered in an investigation is not a substitute for discovery in litigation. Plaintiff also notes that some of the subjects of discovery identified by Defendants are irrelevant, privileged, or both.

Defendants' Position Regarding Subjects For Discovery:

Plaintiff's investigation into the events at issue began in 2008. As a result, Defendants do not believe Plaintiff requires significant additional discovery on the subjects set forth under Plaintiff's position above.

Defendants will need substantial discovery on each subject identified by Plaintiff as well as the following additional subjects:

1. Plaintiff's communications with Thornburg's auditors, KPMG and their counsel;

2. The history of margin call activity by Thornburg's lenders, and the circumstances surrounding the margin calls at issue;

3. The interpretation and application of the accounting rules at issue by Plaintiff, other market participants, and other regulatory bodies;

4.      Awareness in the marketplace of the risks that Thornburg allegedly failed to disclose;

5.      Market reaction to Thornburg's disclosures during the relevant period;

6.      Internal and external communications by the SEC and other government agencies regarding the events and accounting rules at issue;

7.      The circumstances surrounding the collapse of the European hedge fund alleged in the Complaint, including but not limited to rescue efforts organized or considered for the fund; and

8.      The scope of Plaintiff's pre-complaint investigation and the contents of its investigative file.

**Interrogatories**

Maximum of 25 interrogatories by each party to any other party.  (Responses due 30 days after service).

**Requests for Admission**

Plaintiff's Position:

Maximum of 25 requests for admission by each party to any other party (Response due 30 days after service).

Defendants' Position:

Requests for admission will be governed by Federal Rule of Civil Procedure 36. (Response due 30 days after service).

**Depositions**

Plaintiff's Position:

Plaintiff may notice and take up to 15 depositions, excluding experts.  Defendants may notice and take up to 15 depositions, excluding experts.

<u>Defendants' Position</u>:

Plaintiff may notice and take up to 25 depositions, excluding experts.  Defendants may notice and take up to 25 depositions, excluding experts.

Each deposition limited to maximum of 7 hours unless extended by agreement of parties.

**Reports from retained experts under Rule 26(a)(2) due:**

For expert reports in support of issues where the party propounding bears the burden of proof ("Opening Expert Report"):

**<u>April 1, 2013</u>** or 90 days after the Court files a memorandum opinion deciding the last of the Defendants' motions to dismiss, whichever is later.

For expert reports in support of issues where the party propounding the expert does not bear the burden of proof ("Rebuttal Expert Reports"):

**<u>May 1, 2013</u>** or 120 days after the Court files a memorandum opinion deciding the last of the Defendants' motions to dismiss, whichever is later.

For Reply Expert Reports, which shall address only a new issue, if any, that was raised in a Rebuttal Expert Report:

**<u>May 22, 2013</u>** or 141 days after the Court files a memorandum opinion deciding the last of the Defendants' motions to dismiss, whichever is later.  If a party fails to provide an Opening Expert Report on any issue, that party may not file a Reply Expert Report on that issue.

**Expert Discovery Cut-off:**  45 days after last date for expert reports.

Supplementation of disclosures and discovery responses is due in a timely manner in accordance with Rule 26(e).

**Fact Discovery Cut-off:**  All fact discovery will be commenced in time to be complete by **March 1, 2013** or 60 days after the Court files a memorandum opinion deciding the last of the Defendants' motions to dismiss, whichever is later.

## PRETRIAL MOTIONS

Plaintiff intends to file:  motions relating to discovery and the use of evidence at trial, as necessary, and may file a motion for summary judgment.

Defendants have filed or intend to file:  (1) Motions to dismiss; (2) motions for summary judgment; and (3) motions relating to discovery and the use of evidence at trial, as necessary.

The parties suggest that the deadline for dispositive motions should be 30 days after the close of expert discovery.

## ESTIMATED TRIAL TIME

The parties estimate trial will require 20 days.

**___** This is a non-jury case.

 _X_  This is a jury case.

The parties request a pretrial conference within 30 days after the Court rules on the last of the parties' Motions for Summary Judgment.

## SETTLEMENT

The possibility of settlement in this case is considered unlikely at this time.

## EXCEPTIONS

Counsel do not agree on the number of depositions to be taken or the number of requests for admission to be propounded.  Plaintiff proposes 15 depositions per side and Defendants propose 25 per side.  Plaintiff proposes 25 requests for admission by each party to any other

party and Defendants propose unlimited requests for admission as contemplated by Federal Rule

of Civil Procedure 36.

APPROVED WITH EXCEPTIONS NOTED ABOVE

s/ Stephen C. McKenna
For Plaintiff

s/ Randall R. Lee
For Defendants Larry A. Goldstone and Clarence G. Simmons III

s/ Jerry L. Marks
For Defendant Jane A. Starrett

Date:  June 1, 2012