IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

SECURITIES AND EXCHANGE COMMISSION,

Plaintiff,

vs.                                                 Case Number: 1:12-cv-00257-JB-LFG

LARRY GOLDSTONE,
CLARENCE G. SIMMONS, III
and JANE E. STARRETT,

Defendants.

**<u>PLAINTIFF'S SURREPLY TO DEFENDANT JANE STARRETT'S
REPLY IN SUPPORT OF MOTION TO DISMISS</u>**

**Table of Contents**

Preliminary Statement..........................................................................1

Argument ...........................................................................................1

   I.  The Complaint Has Always Alleged That Defendants Participated
      in a Scheme in Violation of the Securities Laws ...........................1

   II. The Complaint States a Claim Pursuant to Subsection (a) or (c)
      of Rule 10b-5 ...........................................................................6

Conclusion ........................................................................................13

## Table of Authoritites

**FEDERAL CASES**

*In re Alstom SA Sec. Litig.*, 406 F. Supp. 2d 433 (S.D.N.Y. 2005) ...........................................9, 11

*City of St. Clair Shores General Emp.'s Ret. Sys. v. Lender Processing Services, Inc.*, No. 3:10-cv-1073, 2012 WL 1080953 (M.D. Fla. Mar. 30, 2012) ....................................................5

*In re Global Crossing, Ltd. Sec. Litig.*, 322 F. Supp. 2d 319 (S.D.N.Y. 2004) ...........................7, 8

*Janus Capital Group, Inc. v. First Derivative Traders*, 131 S. Ct. 2296 (2011) .................................................................1, 2, 5, 6, 8, 9, 10

*Lopes v. Viera*, No. 1:06-CV-01243, 2012 WL 691665 (E.D. Cal. Mar. 2, 2012) ...............................................................................9, 10

*Mata v. Anderson*, 760 F. Supp. 2d 1068 (D.N.M. 2009)..........................................................5

*In re Nature's Sunshine Products Sec. Litig.*, No. 2:06-CV-267, 2008 WL 4442150 (D. Utah Sept. 23, 2008) .............................................................................................12

*In re Parmalat Sec. Litig.*, 376 F. Supp. 2d 472 (S.D.N.Y. 2005).........................................8

*In Royal Dutch/Shell Transp. Sec. Litig.*, No. 04-374, 2006 WL 2355402 (D.N.J. Aug. 14, 2006) ...................................................................................................7, 11

*In re Salomon Analyst AT&T Litig.*, 350 F. Supp. 2d 455 (S.D.N.Y. 2004) ....................................3

*SEC v. Das*, No. 8:10CV102, 2011 WL 4375787 (D. Neb. Sept. 20, 2011) ....................................5

*SEC v. Durgarian*, 477 F. Supp. 2d 342 (D. Mass. 2007) .................................................11

*SEC v. Kearns*, 691 F. Supp. 2d 601 (D.N.J. 2010)...............................................................7, 12

*SEC v. Kelly*, 817 F. Supp. 2d 340 (S.D.N.Y. 2011) ...........................................................9

*SEC v. Landberg*, 836 F. Supp. 2d 148 (S.D.N.Y. 2011) ......................................................9, 10

*SEC v. Lee*, 720 F. Supp. 2d 305 (S.D.N.Y. 2010)..................................................................12

*SEC v. Lucent Tech., Inc.*, 610 F. Supp. 2d 342 (D.N.J. 2009) ...........................................7, 8, 10

*SEC v. Pentagon Capital Mgmt. PLC*, ---, F. Supp. 2d -- 2012 WL 479576 (S.D.N.Y. Feb. 14, 2012) ...................................................................................................................9

*SEC v. Stoker,* --- F. Supp. 2d --, 2012 WL 2017736 (S.D.N.Y. June 6, 2012) .......................9, 10

*SEC v. Simpson Capital Mgmt.*, 586 F. Supp. 2d 196 (S.D.N.Y. 2008).........................................7

*Van Steed v. Warrior Capital, LLC*, No. CIV-06-348, 2007 WL 1110757 (W. D. Okla. Apr. 11, 2007) ..........................................................................................................10

## FEDERAL STATUTES

17 C.F.R. § 240.10b-5................................................................................................................6

Plaintiff Securities and Exchange Commission (the "Commission") submits this memorandum in further opposition to Defendant Jane E. Starrett's motion to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). This memorandum responds to arguments raised for the first time in Defendant Jane Starrett's Reply in Support of Motion to Dismiss ("Starrett Reply"). For the reasons set forth herein, and in Plaintiff's Response to Defendant Jane Starrett's Motion to Dismiss ("Starrett Response"), Ms. Starrett's motion should be denied.

## Preliminary Statement

Ms. Starrett argues that the Commission intended to allege a misstatement case against her and, when confronted with the Supreme Court's decision in *Janus Capital Group, Inc. v. First Derivative Traders*, 131 S.Ct. 2296 (2011), of which Plaintiff was apparently unaware, "disingenuously re-label[ed]" its claim a scheme. Soundly defeating the misstatement claim Plaintiff did *not* make, Ms. Starrett proclaims that "[t]he cornerstone of [the Commission's] fraud case [is] gone." Starrett Reply at 1. A review of the Complaint and the applicable law, however, make clear that the Commission successfully alleged a scheme claim against Ms. Starrett, and that it had always intended to do so.

## Argument

**I.     The Complaint Has Always Alleged That Defendants Participated in a Scheme in Violation of the Securities Laws.**

The Complaint alleges – and has always alleged – that the Defendants here engaged in a fraudulent scheme that violates the securities laws.[1] This is neither a change from Plaintiff's

---

[1]     The Complaint also alleges that Messrs. Goldstone and Simmons have made misrepresentations and omissions that violate the securities laws.

1

initial position nor a concession.  Indeed, in light of the Supreme Court's decision in *Janus Capital Group, Inc. v. First Derivative Traders*, Plaintiff could not have alleged a misstatement case against Ms. Starrett under these facts, and would not have attempted to do so.  Despite the plain allegations of the Complaint and law making a misstatement claim against Ms. Starrett unavailable, Ms. Starrett now incredibly claims that Plaintiff's scheme allegations "comes as a great surprise" to her.  *See* Starrett Reply at 3.

First, the Complaint explicitly alleges a claim under subsections (a) and (c) of Rule 10b-5.  The Complaint does not rely on a general allegation that Ms. Starrett violated Section 10(b) of the Exchange Act, but explicitly makes reference to each subsection of Rule 10b-5, including the subsections alleging scheme liability

. Compl. ¶ 107, at 31.  The Complaint alleges that  Ms. Starrett, along with the other Defendants:

> (a) employed devices, schemes or artifices to defraud; (b) made untrue statements of material fact or omitted to state facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or (c) engaged in acts, practices, or courses of business which operated or would operate as a fraud or deceit upon another person.

*Id.*[2]  Ms. Starrett fails to explain how, in light of this recitation of the scheme provisions of Rule 10b-5, she concluded that "the only reasonable way to read the Complaint's fraud allegations is an attempt by the SEC to plead a misrepresentations and omissions case."  *See* Starrett Reply at 2.  It is self-serving to simply read this language out of the Complaint.[3]

---

[2]     Similarly, the Complaint makes reference to each subsection of Section 17(a) of the Securities Act, including those that have been interpreted to encompass scheme liability.  Compl. ¶ 118, at 33.

[3]     Ms. Starrett objects that the Complaint uses the word "scheme" an insufficient number of times.  Starrett Reply at 3.  However, of course, the Complaint need not use the word scheme –

Second, the Complaint specifically states that the Defendants "misrepresented to Thornburg's auditor and the investment public . . . and/or *engaged in a scheme* to deceive Thornburg's auditor and the investing public. . . ." Compl. ¶ 5, at 3 (emphasis added).[4] As detailed below, the Complaint alleges that Ms. Starrett and the other Defendants, faced with a deteriorating financial situation at Thornburg and large margin calls they were struggling to meet, schemed to raise additional liquidity to satisfy those demands in order to preserve their lucrative positions at Thornburg. This scheme involved withholding information from Thornburg's auditors to allow it to file a materially false Form 10-K, which was necessary to raise the additional liquidity, and filing that Form 10-K in a narrow window in which Thornburg did not have outstanding margin calls. The misstatement to investors – the fraudulent Form 10-K – was just one part of the scheme.

The Complaint does not simply recite the false statements in the Form 10-K, but recites the ongoing scheme, including:

- That Ms. Starrett drafted an email stating that they were "purposely" withholding information from the auditors (Compl. ¶ 53, at 16);

- That Mr. Goldstone drafted an email (which Ms. Starrett received) endorsing a plan which would allow Thornburg "to keep [its] current situation quiet while we deal with it" (Compl. ¶ 31, at 10);

---

or any other word – to have adequately alleged a scheme. *See, e.g., In re Salomon Analyst AT&T Litig.*, 350 F. Supp. 2d 455, 464 (S.D.N.Y. 2004) ("complaint need not use particular words").
[4]      Ms. Starrett argues that this passage somehow "equates" the scheme claim and the misrepresentation and omission claim. Starrett Reply at 6. Not true. Rather, this passage carefully states what is being alleged:  a misrepresentation and omission claim *and* a scheme claim against Messrs. Goldstone and Simmons and a scheme claim against Ms. Starrett.

- That Thornburg "scrambled" to satisfy margin calls before filing the Form 10-K to avoid having to make "full disclosure with respect to these margin calls" (Compl. ¶ 30, at 9-10);

- That Thornburg entered into the I/O Strip Transactions to allow it misleadingly to claim that it had not sold any assets and deceptively told its auditors that the transactions were entered into "to take advantage of opportune pricing rather than to meet margin calls" (Compl. ¶¶ 65, 66, at 19);

- That Thornburg filed its Form 10-K twelve hours after satisfying the last margin call, at 4 a.m. in New Mexico, and began receiving additional margin calls two hours later (Compl. ¶ 41, at 12-13); and

- That Thornburg planned to quickly raise cash after the Form 10-K was filed to meet future margin calls (Compl. ¶ 32, at 10).

These allegations plainly state more than simply a misstatement; they allege an ongoing scheme.

Ignoring these allegations, Ms. Starrett argues that a scheme was not alleged because the Complaint notes that the case "involves fraudulent misrepresentations." Starrett Reply at 2 (citing Compl. ¶ 1, at 1). This statement, however, accurately reflects Plaintiff's claims: the scheme does involve a fraudulent misrepresentation. Likewise, the allegation that "the Defendants materially misrepresented, or aided and abetted the material misrepresentation of, Thornburg's financial condition" (Starrett Reply at 2 (citing Compl. ¶ 13, at 5)) correctly reflects

that the Complaint also alleges aiding and abetting violations against the Defendants. Based on all of the Complaint's allegations, there can be little dispute that a scheme was alleged.[5]

Third, the Complaint clearly alleges a misstatement case against Messrs. Goldstone and Simmons, *but not Ms. Starrett*. As we noted in our response (and to which Ms. Starrett offered no reply), the Complaint repeatedly alleges that Mr. Goldstone and Mr. Simmons "signed and certified" the Form 10-K, which makes them "makers" of that statement for purposes of *Janus*.[6] *See* Compl. ¶¶ 7, 17-18, 59, 65, 86, 124, at 3, 6, 17, 19, 25, 35. The Complaint pointedly makes no such allegation against Ms. Starrett. In light of the recent and widely-noted *Janus* decision, there is no way to read those repeated allegations and not understand that the Complaint alleged a misstatement as to the other Defendants but not Ms. Starrett.

Ms. Starrett further argues that the Joint Status Report and Provisional Discovery Plan ("JSR") supports her reading of the Complaint. *See* Starrett Reply at 2. While the JSR is irrelevant to a motion to dismiss, as Ms. Starrett has raised it, we would point out that it in fact demonstrates that Plaintiff always intended to allege a scheme against Ms. Starrett. The "Nature of the Case" section of the JSR, from which Ms. Starrett quotes (Starrett Reply at 2), specifically states that the Complaint alleges that the Defendants "knowingly or recklessly made materially

---

[5]  *See Mata v. Anderson*, 760 F. Supp. 2d 1068, 1103 (D.N.M. 2009) (Browning, J.) ("Such an interpretation of the First Amended Complaint, however, does not comport with the liberal construction of pleadings that rule 12(b)(6) requires. The First Amended Complaint, read as a whole, makes a broader set of allegations . . . .").

[6]  Corporate officers who sign and/or certify public filings can be primarily liable for "making" the statements contained in those documents. *See, e.g., City of St. Clair Shores General Emp.'s Ret. Sys. v. Lender Processing Services, Inc.*, No. 3:10-cv-1073, 2012 WL 1080953, at *3 (M.D. Fla. Mar. 30, 2012) (defendant corporate officers were makers under *Janus* of statements in SEC filings that they certified); *SEC v. Das*, No. 8:10CV102, 2011 WL 4375787, at *6 (D. Neb. Sept. 20, 2011) (CFOs were "makers" under *Janus* of statements in Forms 10-K that they signed).

misleading statements or omissions . . . , *and/or engaged in a scheme to defraud*." JSR [Doc 43] at 2 (emphasis added). Plaintiff added the above italicized language to the "Nature of the Case" section that was otherwise drafted by Defendants, Plaintiff's only change to that section. *See* Declaration of Gregory A. Kasper, dated July 28, 2012, Ex. A. This change was communicated to the Defendants by means of a "redline," it was not objected to by Defendants, and the language was filed with the Court unchanged. *See id.* In light of Plaintiff specifically highlighting its scheme allegations in this manner, it is not credible to argue that "Defendants never understood the SEC to have attempted to allege a scheme case until now." Starrett Reply at 3.[7] A plain reading of the Complaint, consistent with the JSR, makes clear that the Commission always intended to, and did, allege that Ms. Starrett violated the scheme provisions of Rule 10b-5.

## II.   The Complaint States a Claim Pursuant to Subsections (a) or (c) of Rule 10b-5.

Subsections (a) and (c) of Rule 10b-5 make it unlawful to, in connection with the purchase or sale of securities, "employ any device, scheme, or artifice to defraud" or "engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person." 17 C.F.R. § 240.10b-5. As explained above, the Complaint specifically makes reference to these provisions (and their analogs in Section 17(a)). Compl. ¶¶ 107, 118, at 31, 33-34. As noted in the Starrett Response, these subsections have been interpreted to create "scheme liability" and numerous courts have found causes of actions to be alleged under those subsections. *See* Starrett Response at 26-27 (citing cases).

---

[7]      Ms. Starrett notes that "the SEC offers no response to the argument that *Janus* similarly precludes liability under Section 17(a)(2)." Starrett Reply at 3. This is not surprising as Plaintiff's Section 17(a) claim is based upon subsections (1) and (3), as we previously explained. *See* Starrett Response at 28 n.22.

To state a claim that Ms. Starrett violated Rules 10b-5(a) or (c), the Plaintiff "must allege (1) that the defendant committed a deceptive or manipulative act, (2) in furtherance of the alleged scheme to defraud, (3) with scienter. . ." *SEC v. Lucent Tech., Inc.*, 610 F. Supp. 2d 342, 360 (D.N.J. 2009);[8] *see also, e.g., In re Global Crossing, Ltd. Sec. Litig.*, 322 F. Supp. 2d 319, 336 (S.D.N.Y. 2004); *In re Royal Dutch/Shell Transp. Sec. Litig.*, No. 04-374, 2006 WL 2355402, at *7 (D.N.J. Aug. 14, 2006); *SEC v. Simpson Capital Mgmt.*, 586 F. Supp. 2d 196, 201 (S.D.N.Y. 2008). Ms. Starrett appears to object that Plaintiff has failed to allege that she committed a deceptive or manipulative act in furtherance of the scheme.

Courts have found that schemes such as that alleged here properly state a cause of action under subsections (a) and (c) of Rule 10b-5. In *SEC v. Kearns*, 691 F. Supp. 2d 601, 618 (D.N.J. 2010), the court specifically found that misrepresentations to auditors, such as alleged here, can constitute a scheme under Rule 10b-5:

> The SEC alleges that Defendant Kearns engaged in inherently deceptive conduct, separate and apart from his direct statements to the public, designed to secretly and artificially inflate MedQuist's revenues. Specifically, the SEC alleges that Kearns knew of the fraudulent billing scheme and repeatedly discussed the scheme with its chief architects at the FOPA, permitted the scheme to continue by implementing inadequate investigations when claims of fraud were made, *and, most importantly, affirmatively misled MedQuist auditors* by assuring them that there were no allegations of fraud, that there were no billing irregularities, and that the auditors had received all relevant information. *These allegations are sufficient to show that Defendant Kearns intentionally engaged in a fraudulent scheme to increase revenues and defraud investors.* The SEC has sufficiently alleged that Kearns violated Section 10(b) of the Exchange Act and Section 17(a) of the Securities Act through a fraudulent device.

---

[8]     Reliance is also enumerated as an element, however, "the SEC need not prove reliance." *Id.*

7

*Id.* (emphasis added).  Likewise, here allegations that Ms. Starrett purposely misled Thornburg's auditors – as well as the other acts alleged in furtherance of the scheme – adequately allege a scheme.

"[W]hile a defendant who has not made the fraudulent statements cannot be held liable for the *statements*, the same defendant may be held liable for the fraudulent *scheme* behind the misstatements." *SEC v. Lucent Tech., Inc.*, 610 F. Supp. 342, 360 (D.N.J. 2009) (emphasis in original); *see also In re Global Crossing, Ltd. Sec. Litig.*, 322 F. Supp.2d 319, 335 (S.D.N.Y. 2004).  That is the case here.  While Ms. Starrett did not "make" the fraudulent statements in the Form 10-K for purposes of *Janus*, she did participate in a scheme related to those misstatements.

Without citation, Ms. Starrett asserts that to allege a scheme the "conduct must be egregious."  Starrett Reply at 4.[9]  However, the court in *In re Parmalat Sec. Litig.*, 376 F. Supp.2d 472 (S.D.N.Y. 2005) – relied upon by Ms. Starrett (Starrett Reply at 4) – explained:

> In determining whether subsections (a) and (c) of Rule 10b-5 reach those allegations, the Court bears in mind that the language of Section 10(b) and subsections (a) and (c) is quite broad and that the Supreme Court has emphasized repeatedly that Section 10(b) "should be 'construed not technically and restrictively, but flexibly to effectuate its remedial purposes.'"

*Id.* at 501 (citations omitted).

Ms. Starrett's principal objection appears to be that the acts constituting Defendants' scheme were too intertwined with the fraudulent statements made to the investing public in the Form 10-K.  Ms. Starrett argues that the scheme allegations must be "distinct from any alleged

---

[9]    To the extent that Ms. Starrett is attempting to argue that scheme liability only encompasses acts that are "manipulative" in the technical sense or only involving illegal trading activity, that position has been rejected.  *See, e.g., In re Parmalat Sec. Litig.*, 376 F. Supp. 2d 472, 492 (S.D.N.Y. 2005); *In re Global Crossing, Ltd. Sec. Litig.*, 322 F. Supp. 2d 319, 336-337 (S.D.N.Y. 2004).

misrepresentations" (Starrett Reply at 4) and complains that the acts constituting the scheme were "designed to enable [Thornburg] to make the alleged misstatements" in the Form 10-K (Starrett Reply at 5-6).[10]  However, at most, the cases require that in order to allege scheme liability a plaintiff must prove some conduct beyond the misrepresentation to investors.  *See Lopes v. Viera*, No. 1:06-CV-01243, 2012 WL 691665, at *6 (E.D. Cal. Mar. 2, 2012) ("defendant may 'be liable as part of a fraudulent scheme based upon misrepresentations and omissions under Rule 10b-5(a) or (c) when the scheme also *encompasses conduct beyond those misrepresentations* '") (quoting *WPP Luxembourg Gamma Three SARL v. Spot Runner, Inc.*, 655 F.3d 1039, 1057 (9th Cir. 2011)) (emphasis added); *In re Alstom SA Sec. Litig.*, 406 F. Supp. 2d 433, 475 (S.D.N.Y. 2005) (stating that liability can be found under Rule 10b-5 (a) or (c) where "the defendants undertook a deceptive scheme or course of conduct that went beyond the misrepresentations"); *SEC v. Stoker*, --- F. Supp. 2d ---, No. 11 Civ. 7388, 2012 WL 2017736, at *10 (S.D.N.Y. June 6, 2012) (quoting *In re Alstom* language).  Here, as detailed above, the Complaint alleges substantial conduct beyond the misrepresentation or omission to investors: that Ms. Starrett participated in a scheme that involved "purposely" withholding information from auditors, satisfying margin calls to allow Thornburg to file a fraudulent Form 10-K, entering into specific transactions to allow the filing of the fraudulent Form 10-K and making misrepresentations to auditors, and planning to raise capital based on the fraudulent Form 10-K.

The cases relied upon by Ms. Starrett stand for nothing more.  In *SEC v. Kelly*, 817 F. Supp. 2d 340, 344 (S.D.N.Y. 2011), the conduct was deceptive "only because of AOL's

---

[10]     Courts have rejected this argument.  *See, e.g., SEC v. Pentagon Capital Mgmt. PLC*, --- F. Supp. 2d ---, No. 08 Civ. 3324, 2012 WL 479576, at *41 (S.D.N.Y. Feb. 14, 2012) (rejecting *Janus* argument in light of allegations satisfying Rule 10b-5(a) and (c)); *SEC v. Landberg*, 836 F. Supp. 2d 148, 154 (S.D.N.Y. 2011) (same).

9

subsequent public misrepresentations." In that case, there was no deceptive conduct absent the false financial statements issued to the investing public. *Id.* By contrast, here, the Defendant's scheme, and Ms. Starrett's actions taken in furtherance of that scheme, are deceptive independent of Thornburg's Form 10-K. *SEC v. Lucent Tech., Inc.*, 610 F. Supp. 2d 342, 359-360 (D.N.J. 2009), which Ms. Starrett also cites (Starrett Reply at 4-5), is explicitly to the contrary, *rejecting* defendants' argument that mere "participation in a scheme whose purpose was to make a misstatement" is insufficient to allege liability under Rule 10b-5 (a) or (c).[11] Thus, at most, scheme liability requires allegations that defendant's actions were deceptive independent of any fraudulent statement made to the investing public.

Courts have specifically held that deceptive conduct can include misstatements apart from the misstatement that constitutes the Rule 10b-5(b) claim. *See Lopes v. Viera*, No. 1:06-CV-01243, 2012 WL 691665, at *6 (E.D. Cal. Mar. 2, 2012) ("Plaintiffs allege that in addition to the alleged misrepresentation in the offering, Defendant committed other acts that comprised a 'scheme' to defraud them. For example, Plaintiffs allege that Defendants misrepresented the causes of Central Valley Dairymen's financial problems. . . . Thus, *Janus* would not preclude imposition of liability."); *SEC v. Landberg*, 836 F. Supp. 2d. 148, 155 (S.D.N.Y. 2011) (finding that scheme included issuing "account statements that reported false investment returns and compil[ing] and distribut[ing] inaccurate financial results"). Indeed, the misstatement or omission alleged to violate Rule 10b-5 itself can constitute a part of the fraudulent scheme. *See SEC v. Stoker*, --- F. Supp. 2d ---, No. 11 Civ. 7388, 2012 WL 2017736, at *10 (S.D.N.Y. June 6,

---

[11] *Van Steed v. Warrior Capital, LLC*, No. CIV-06-348, 2007 WL 1110757 (W. D. Okla. Apr. 11, 2007) (Starrett Reply at 5), and all of the cases cited by Ms. Starrett in footnote 6 to her Reply are inapposite. Ms. Starrett cites those cases for the proposition that merely alleging a misstatement claim is not sufficient to also allege a scheme claim.

2012) ("Here, the Complaint plausibly alleges a course of conduct beyond the misrepresentations that are covered by Section 17(a)(2) [the analog to Rule 10b-5(b)]. The misrepresentations and omissions were part of that conduct, but they were not the entirety of it.")[12] Accordingly, Plaintiff's allegations – including the allegation that Ms. Starrett misrepresented Thornburg's financial position to its auditors – allege "distinct" acts sufficient to support scheme liability against her.

Ms. Starrett further argues that the acts constituting Defendants' scheme are "not inherently deceptive." Starrett Reply at 7. This argument fails. First, Ms. Starrett does not even purport to challenge the deceptive nature of many of the acts constituting the scheme: that Ms. Starrett made misrepresentations to Thornburg's auditors; that Ms. Starrett and the other Defendants improperly conducted the OTTI analysis; and that Ms. Starrett and the other Defendants planned to raise cash based on the fraudulent Form 10-K. *See* Starrett Reply at 5. Moreover, the I/O Strip Transactions, while not illegal, were entered into specifically to allow Thornburg misleadingly to claim that it had not sold any assets (Compl. ¶ 37, at 11), and Defendants deceptively told Thornburg's auditors that the transactions were entered into "to take advantage of opportune pricing rather than to meet margin calls," when amongst themselves they said the opposite (Compl. ¶¶ 65 - 66, at 19). *See SEC v. Durgarian*, 477 F. Supp. 2d 342, 352 (D. Mass. 2007) (rejecting defendants' argument that a scheme to defraud must be based on

---

[12]   "[I]t is possible for liability under both subsection (b) and subsections (a) and (c) of Rule 10b-5 to arise out of the same set of facts." *In re Royal Dutch/Shell Transp. Sec. Litig.*, No. 04-374, 2006 WL 2355402, at *8 (D.N.J. Aug. 14, 2006); *see also In re Alstom SA Sec. Litig.*, 406 F. Supp. 2d 433, 475 (S.D.N.Y. 2005) ("Nonetheless, it is possible for liability to arise under both subsections (b) and subsections (a) and (c) of Rule 10b-5 out of the same set of facts, where the plaintiffs allege both that the defendants made misrepresentations in violations of Rule 10b-5(b) as well as that the defendants undertook a deceptive scheme or course of conduct that went beyond the misrepresentations.").

"clearly illegal" conduct). Ms. Starrett is correct that satisfying margin call obligations is not inherently deceptive (*see* Starrett Reply at 7), but doing so in order to immediately file a fraudulent Form 10-K (Compl. ¶ 30, at 9-10) is a deceptive act. Finally, while there is "nothing inherently deceptive about raising cash to meet future calls" (*see* Starrett Reply at 7), raising cash based upon a fraudulent public filing is deceptive and constitutes one of the actions alleged to be taken in furtherance of the scheme.

Ms. Starrett finally argues that the misrepresentations to the auditors fail to support a claim of scheme liability because those statements were not directed at the investing public. Starrett Reply at 7. However, those misrepresentations were part and parcel of the scheme to raise additional cash and were necessary for the fraudulent Form 10-K. Making misrepresentations to auditors can be an integral part of a scheme to defraud, as it is here. Moreover, as noted above, the *Kearns* case specifically found that misleading auditors properly alleges a claim of scheme liability. 691 F. Supp. 2d at 618. Here, the investing public was misled by the Defendants' fraudulent scheme. *See, e.g., SEC v. Lee*, 720 F. Supp. 2d 305, 334 (S.D.N.Y. 2010) (scheme liability imposed "even if a material misstatement by another person creates the nexus between the scheme and the securities market"). [13]

---

[13]     Ms. Starrett's citation to *In re Nature's Sunshine Prods. Sec. Litig.*, No. 2:06-CV-267, 2008 WL 4442150, at *4 (D. Utah Sept. 23, 2008), is wholly misplaced. In that case, the court granted the motion to dismiss where the alleged misstatement was not disclosed to the public on the grounds that the Plaintiff could not show reliance, an element that the Commission need not allege or prove.

**<u>Conclusion</u>**

Based on the foregoing, and the Starrett Response, the Complaint adequately alleges

claims against Ms. Starrett.  Accordingly, the Commission respectfully requests that the Court

deny Ms. Starrett's motion in its entirety.

Dated:  July 28, 2012

/s/ Gregory A. Kasper
Stephen C. McKenna
Gregory A. Kasper
*Attorneys for Plaintiff*
Securities and Exchange Commission
1801 California Street, Suite 1500
Denver, CO  80202
Ph. (303) 844-1000
email: mckennas@se c.gov
        kasperg@sec.gov

13

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

SECURITIES AND EXCHANGE COMMISSION,

          Plaintiff,

                  vs.             CIVIL NO. 12-257 (JB-JFG)

LARRY A. GOLDSTONE,
CLARENCE G. SIMMONS, III, and
JANE E. STARRETT,

          Defendants.

**DECLARATION OF GREGORY A. KASPER IN OPPOSITION TO**
**DEFENDANTS' MOTIONS TO DISMISS**

     I, Gregory A. Kasper, make the following declaration under penalty of perjury pursuant to 28 U.S.C. § 1746:

     1.      I am an attorney for the Plaintiff United States Securities and Exchange Commission, am licensed to practice law in the State of New York, and on March 27, 2012 I was duly admitted and qualified to practice as an attorney in the United States District Court for the District of New Mexico.

     2.      I have personal knowledge of the facts set forth herein and, if called as a witness, I could and would testify competently thereto.

     3.      Attached hereto as Exhibit A is an email from Stephen C. McKenna to Jessica Kurzban and Gregory Kasper, copying others, dated May 3, 2012, with attachment.

I declare under penalty of perjury that the foregoing statements are true and correct.

Executed this 28th day of July, 2012

s/ Gregory A. Kasper

# EXHIBIT A

## Kasper, Gregory

| | |
|---|---|
| **From:** | McKenna, Stephen C. |
| **Sent:** | Thursday, May 03, 2012 5:45 PM |
| **To:** | Kurzban, Jessica; Kasper, Gregory |
| **Cc:** | Lee, Randall; Valentine, John; Marks, Jerry L.; Liubicic, Robert; Li, Patty; Schlesinger, Alisa |
| **Subject:** | RE: SEC v. Goldstone -- Joint Status Report and Provisional Discovery Plan |
| **Attachments:** | Joint Status Report and Provisional Discovery Plan (Defendants additions May 2).doc |

Thank you.  Our comments are in the attached.  Please provide your respective exhibits and we will file tomorrow.

**From:** Kurzban, Jessica [mailto:Jessica.Kurzban@wilmerhale.com]
**Sent:** Thursday, May 03, 2012 5:39 PM
**To:** McKenna, Stephen C.; Kasper, Gregory
**Cc:** Lee, Randall; Valentine, John; Marks, Jerry L.; Liubicic, Robert; Li, Patty; Schlesinger, Alisa
**Subject:** RE: SEC v. Goldstone -- Joint Status Report and Provisional Discovery Plan

Hi Steve and Greg, this is to confirm that Defendants agree to Plaintiff filing the JSR tomorrow instead of today.  Please do send us a copy of the final version to review before filing.  Thanks.

**From:** McKenna, Stephen C. [mailto:McKennaS@SEC.GOV]
**Sent:** Thursday, May 03, 2012 7:02 AM
**To:** Li, Patty; Kasper, Gregory
**Cc:** Lee, Randall; Valentine, John; Kurzban, Jessica; Marks, Jerry L.; Liubicic, Robert
**Subject:** RE: SEC v. Goldstone -- Joint Status Report and Provisional Discovery Plan

Thank you.  We will get back to you shortly.

**From:** Li, Patty [mailto:Patty.Li@wilmerhale.com]
**Sent:** Wednesday, May 02, 2012 5:56 PM
**To:** McKenna, Stephen C.; Kasper, Gregory
**Cc:** Lee, Randall; Valentine, John; Kurzban, Jessica; Marks, Jerry L.; Liubicic, Robert
**Subject:** SEC v. Goldstone -- Joint Status Report and Provisional Discovery Plan

Counsel,

Attached please find Defendants' additions to the Joint Status Report.  A blackline showing changes made to the original version is attached.  Please let us know if you have questions or comments, and please be sure to circulate a final version for approval before filing.  We will send you Exhibits 2 and 3 (our initial disclosures) tomorrow.

Thanks,

Patty

**Patty Li | WilmerHale**
350 South Grand Avenue, Suite 2100
Los Angeles, CA 90071 USA
+1 213 443 5328 (t)
+1 213 443 5400 (f)
patty.li@wilmerhale.com

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

SECURITIES AND EXCHANGE COMMISSION,

          Plaintiff,

                vs.                    CIVIL NO. 12-257 (JB-JFG )

LARRY A. GOLDSTONE,

CLARENCE G. SIMMONS, III, and

JANE E. STARRETT,

          Defendants.

## JOINT STATUS REPORT AND PROVISIONAL DISCOVERY PLAN

Pursuant to FED. R. CIV. P. 26(f), a telephonic meeting was held on April 19, 2012 and was attended by:

Stephen C. McKenna and Gregory Kasper for Plaintiff Securities and Exchange Commission ("SEC");

Randall R. Lee, John A. Valentine, Jessica F. Kurzban, and P. Patty Li, of Wilmer Cutler Pickering Hale and Dorr LLP, for defendants Larry Goldstone and Clarence Simmons; and

Jerry L. Marks and Robert J. Liubicic, of Milbank, Tweed, Hadley & McCloy LLP, for defendant Jane Starrett (together with Larry Goldstone and Clay Simmons, "Defendants").

## NATURE OF THE CASE

This is an SEC enforcement action against three individuals arising from statements made in and immediately following the filing of the Form 10-K for Thornburg Mortgage, Inc. ("Thornburg") on February 28, 2008. Plaintiff's complaint, filed on March 13, 2012, alleges that Larry A. Goldstone, Thornburg's chief executive officer, Clarence G. Simmons, III, its chief

1

Field Code Changed

financial officer, and Jane E. Starrett, its chief accounting officer, knowingly or recklessly made

materially misleading statements or omissions concerning Thornburg's financial condition,

margin call activity, and available liquidity in the Form 10-K, in subsequent public statements,

and in statements to Thornburg's auditors, and/or engaged in a scheme to defraud.  The

Complaint asserts claims for violation of Section 17(a) of the Securities Act of 1933 ("Securities

Act") [15 U.S.C. §77q(a)] and Sections 10(b), 13(a), 13(b)(2), 13(b)(5), and 20(a) of the

Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. §§ 78j(b), 78m(a), 78m(b)(2),

78m(b)(5), and 78t] and Rules 10b-5, 12b-20, 13a-1, 13a-14, 13b2-1, and 13b2-2 thereunder [17

C.F.R. §§ 240.10b-5, 240.12b-20, 240.13a-1, 240.13a-14, 240.13b2-1, and 240.13b2-2].

## AMENDMENTS TO PLEADINGS AND JOINDER OF PARTIES

Defendants intend to file motions to dismiss on or before **May 14, 2012**.

The parties should be allowed until **November 1, 2012** (120 days before the earliest date

for the close of fact discovery) to move to amend the pleadings and/or join additional parties in

compliance with Fed. R. Civ. P. 15(a).

## STIPULATIONS

The parties hereby stipulate to the following:

1. The United States District Court for the District of New Mexico has jurisdiction over the

   parties and the subject matter.

2. Venue is properly laid in this District.

2

Field Code Changed