IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

SECURITIES AND EXCHANGE COMMISSION,

    Plaintiff,

vs.                                                              Case Number: 1:12-cv-00257-JB-LFG

LARRY GOLDSTONE, CLARENCE G. SIMMONS,
III, and JANE E. STARRETT,

    Defendants.

**SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION TO DISMISS ON BEHALF OF DEFENDANTS LARRY GOLDSTONE AND CLARENCE G. SIMMONS**

## TABLE OF CONTENTS

**Page**

I. INTRODUCTION .................................................................................................................1

II. ARGUMENT.........................................................................................................................2
    A. Plaintiff Fails to Allege Subjective Falsity With Respect to Defendants' OTTI Judgment.......................................................................................................................2
    B. The Pleading Standard for Scienter Requires Plausible, Factually Supported Allegations That Would Not Impose Liability for a Broad Swath of Innocent Conduct ........................................................................................................................6
    C. The Facts Alleged Concerning The OTTI Judgment Are No More Than "Merely Consistent" With Scienter............................................................................................7

III. CONCLUSION....................................................................................................................12

## TABLE OF AUTHORITIES

**Page**

Federal Cases

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................................ 1, 6, 7, 11

*Ashland, Inc. v. Oppenheimer & Co.*,
  648 F.3d 461 (6th Cir. 2011) ................................................................................................ 12

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ................................................................................................ *passim*

*Chapman v. Office of Children and Family Servs.*,
  423 Fed. App'x. 104 (2d. Cir. 2011) ................................................................................................ 6

*City of Omaha v. CBS Corp.*,
  679 F.3d 64 (2d Cir. 2012) ................................................................................................ 4

*City of Philadelphia. v. Fleming Cos.*,
  264 F.3d 1245 (10th Cir. 2001) ................................................................................................ 7, 8, 10

*Dronsejko v. Grant Thornton*,
  632 F.3d 658 (10th Cir. 2011) ................................................................................................ 7, 9, 10

*Fait v. Regions Fin. Corp.*,
  655 F.3d 105 (2d Cir. 2011) ................................................................................................ 3, 4

*Gebhart v. SEC*,
  255 Fed. App'x 254 (9th Cir. 2007) ................................................................................................ 8

*Genesee Cty. Employees' Ret. Sys. v. Thornburg Mortg. Sec. Trust 2006-3*
  825 F. Supp. 2d 1082 (D.N.M. 2011) ................................................................................................ 3

*Human Genome Scis., Inc. v. Genentech, Inc.*,
  No. 2:11–cv–6519, 2011 WL 7461786 (C.D. Cal. Dec. 9, 2011) ................................................................................................ 12

*In re Deutsche Bank AG Sec. Litig.*,
  No. 09–Civ.–1714 (DAB), 2012 WL 3297730 (S.D.N.Y. Aug. 10, 2012) ................................................................................................ 4, 5

*In re Level 3 Communications, Inc. Sec. Litig.*,
  667 F.3d 1331 (10th Cir. 2012) ................................................................................................ 12

*In re Merck & Co., Inc. Sec., Deriv., & ERISA Litig.*,
  MDL 1658 SRC, 2011 WL 3444199 (D.N.J. Aug. 8, 2011) ................................................................................................ 3

## TABLE OF AUTHORITIES (cont.)

*Kansas Penn Gaming, LLC v. Collins*,
   656 F.3d 1210 (10th Cir. 2011) ........................................................................................ 2

*Lane v. Page*,
   581 F. Supp. 2d 1094 (D.N.M. 2008) ............................................................................ 1, 3

*Meyer v. Callahan*,
   No. 09-cv-106-PB, 2010 WL 4852600 (D.N.H. Nov. 23, 2010) ........................................ 12

*Nolte v. Capital One Fin. Corp.*,
   390 F.3d 311 (4th Cir. 2004) ............................................................................................ 3

*Phelps v. Stomber*,
   No. Civ. A. 11-1142-ABJ, 2012 WL 3276969 (D.D.C. Aug. 13, 2012) .............................. 5, 6

*Robbins v. Okla. ex rel. Dep't of Human Servs.*,
   519 F.3d 1242 (10th Cir. 2008) ................................................................................ passim

*Rubke v. Capitol Bancorp Ltd.*,
   551 F.3d 1156 (9th Cir. 2009) .......................................................................................... 3

*Santa Fe Indus. v. Green*,
   430 U.S. 462 (1977) ........................................................................................................ 11

*SEC v. Daifotis*,
   No. C 11-00137 WHA, 2011 WL 2183314 (N.D. Cal. June 6, 2011) ................................. 11

*SEC v. Kelly*,
   817 F. Supp. 2d 340 (S.D.N.Y. 2011) .............................................................................. 11

*SEC v. Shanahan*,
   646 F.3d 536 (8th Cir. 2011) ............................................................................................ 8

*Swanson v. Citibank, N.A.*,
   614 F.3d 400 (7th Cir. 2010) ............................................................................................ 7

*U.S. ex rel. Phillips v. L-3 Commc'ns Integrated, Sys. L.P.*,
   Civ. A. No. 3:10–CV–1784–L, 2012 WL 3649699 (N.D. Tex. Aug. 24, 2012) ..................... 6

*United States ex rel. Hill v. Univ. of Medicine & Dentistry of New Jersey*,
   448 Fed. App'x. 314 (3d Cir. 2011) ................................................................................ 12

*Virginia Bankshares, Inc. v. Sandberg*,
   501 U.S. 1083 (1991) ....................................................................................................... 3

**TABLE OF AUTHORITIES (cont.)**

Federal Rules

Fed. R. Civ. P. 9(b) .................................................................................................... 1, 6, 11

I.      INTRODUCTION

At the hearing on July 31st, the Court expressed a tentative view that Plaintiff had met its pleading burden with respect to Defendants' allegedly fraudulent judgment that Thornburg would not need to sell mortgage-backed securities ("MBS") assets at a loss to meet potential future margin calls, and that Thornburg therefore did not need to recognize an "other than temporary impairment" ("OTTI") on those assets.  Defendants Goldstone and Simmons respectfully submit this brief to explain further why the SEC's securities fraud claim based on Defendants' OTTI judgment should be dismissed in light of abundant case law defining the pleading standards for such claims.[1]

First, it is entirely unnecessary for the Court to reach the issue of scienter.  As this Court has recognized, to allege that a statement of belief such as Defendants' OTTI judgment was false and misleading, a plaintiff must plead facts demonstrating "subjective falsity," *i.e.*, that the defendants did not believe their opinions at the time of disclosure.  *Lane v. Page*, 581 F. Supp. 2d 1094, 1127 (D.N.M. 2008) (Browning, J.).  The Complaint does not even attempt to plead such facts, alleging only that Defendants' OTTI judgment was knowingly or recklessly incorrect based on their purported failure "to properly consider [alleged countervailing facts] in connection with their OTTI analysis."  Compl. ¶¶ 51-52.

Second, although Rule 9(b) does not impose heightened pleading requirements for scienter, the plausibility standard of *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)—which demands "factual allegations" sufficient to "raise a right to relief above the speculative level" and discounts conclusory allegations—applies in full force.  *Id.* at 555.  As a result, complex claims like Plaintiff's require more supporting detail than simple claims.  *See Robbins v. Okla. ex rel. Dep't of Human Servs.*, 519 F.3d 1242,

---

[1] Mr. Goldstone and Mr. Simmons join in the arguments set forth in Ms. Starrett's Supplemental Brief.

1248 (10th Cir. 2008). Furthermore, allegations that are "'merely consistent with liability,'" in that they "encompass a wide swath of conduct, much of it innocent," do not suffice. *Id.* at 1247 (quoting *Twombly*, 550 U.S. at 570).

Examined under that standard, the Complaint fails to allege facts plausibly showing that Defendants, who had good reason to believe Thornburg would ride out the margin call storm without selling assets, acted recklessly in reaching their OTTI judgment. To hold otherwise would expose a wide range of innocent judgment calls by corporate executives—judgments routinely made in good faith, but as to which reasonable people might disagree—to speculative accusations of accounting fraud. And although the Court raised questions at the hearing about certain emails reflecting on Defendants' interactions with KPMG, those emails have no bearing on the OTTI judgment, particularly given that all margin calls were in fact disclosed to KPMG before the 10-K was filed.

These principles are reflected in a wide range of decisions by federal courts, discussed in greater detail below, that dismiss fraud claims based upon the types of tenuous inferences and isolated email snippets that provide the foundation for the Complaint here. Thus, "to avoid ginning up the costly machinery associated with our civil discovery regime on the basis of a largely groundless claim," *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011) (citation and internal quotations omitted), the Complaint should be dismissed.[2]

## II.  ARGUMENT

### A.  Plaintiff Fails to Allege Subjective Falsity With Respect to Defendants' OTTI Judgment.

At the hearing, although the Court indicated its tentative view that Thornburg's Form 10-

---

[2] All exhibits referred to herein are attached to either the Declaration Of Joel Fleming In Support Of Motion To Dismiss (Dkt. # 37, May 21, 2012), or the Declaration Of Alanna Buchanan In Further Support Of Motion To Dismiss (Dkt. # 60, July 20, 2012).

K on February 27, 2008 was false and misleading based on Defendants' allegedly bad faith OTTI judgment, the Court did not specifically address the applicable legal standard for statements of opinion or belief, which Defendants' OTTI judgment unquestionably was. *See* Goldstone & Simmons Mem. of Law in Support of Mot. to Dismiss ("Opening Br.") at 37-39, 43, 46. As this Court has recognized, such statements are properly alleged as false and misleading through facts showing "that the belief was both objectively and subjectively false at the time the statement was made." *Lane*, 581 F. Supp. 2d at 1126 (dismissing proxy fraud claim based on alleged falsity of statement that directors believed merger was fair and in shareholders' best interests because the "Amended Complaint makes no allegation that the Defendants did not believe in the fairness of the merger"); *see also Genesee Cty. Employees' Ret. Sys. v. Thornburg Mortg. Sec. Trust 2006-3*, 825 F. Supp. 2d 1082, 1178 (D.N.M. 2011) (Browning, J.) (misrepresentation claim based on a statement of opinion required plaintiff to "properly alleg[e] that the holder of the opinion did not actually believe it at the time it was made").[3] With respect to Defendants' OTTI judgment, Plaintiff has not even attempted to plead the second prong of that requirement, subjective falsity.

Subjective falsity requires facts indicating that statements of opinion were "not honestly believed when they were made." *Fait v. Regions Fin. Corp.*, 655 F.3d 105, 113 (2d Cir. 2011) (citing *Virginia Bankshares*, 501 U.S. at 1095); *see also Nolte v. Capital One Fin. Corp.*, 390 F.3d 311 (4th Cir. 2004) (affirming dismissal where alleged falsity of opinion that company was adequately capitalized was not supported by facts showing that defendants disbelieved opinion). The Second Circuit recently addressed the application of this rule in the context of subjective

---

[3] *See also Virginia Bankshares*, *Inc. v. Sandberg*, 501 U.S. 1083, 1092 (1991) (directors' statements of belief "are factual in two senses: as statements that the directors do act for the reasons given or hold the belief stated and as statements about the subject matter of the reason or belief expressed."); *Rubke v. Capitol Bancorp Ltd.,* 551 F.3d 1156, 1162 (9th Cir. 2009) ("[O]pinions … can give rise to a claim … only if the complaint alleges … that the statements were both objectively and subjectively false."); *In re Merck & Co., Inc. Sec., Deriv., & ERISA Litig.,* MDL 1658 SRC, 2011 WL 3444199, at *14 (D.N.J. Aug. 8, 2011) ("[A] viable securities fraud claim based on opinion statements must allege both that the defendant disbelieved the opinion and that the stated subject matter itself constituted a material misrepresentation.").

3

accounting judgments such as the OTTI opinion at issue here.  In *Fait,* which involved non-fraud claims under Sections 11 and 12(a)(2) of the Securities Act, the Court found that statements based on accounting opinions are actionable only "if they misstate the opinions or belief held…, *and* are false or misleading with respect to the underlying subject matter they address." *Fait,* 655 F.3d at 111 (emphasis in original).  Because the *Fait* plaintiffs "rel[ied] mainly on allegations about adverse market conditions to support the contention that defendants should have reached different conclusions [regarding impairment of the company's estimated goodwill] … [t]he complaint [did] not … plausibly allege that defendants did not believe the statements regarding goodwill at the time they made them." *Id.* at 112.  The court reached the same conclusion with respect to the defendants' alleged false estimates of future loan losses. *Id.* at 113.

*City of Omaha v. CBS Corp.*, 679 F.3d 64, 68 (2d Cir. 2012), applied this reasoning in the context of a Section 10(b) claim.  The court held that even if the complaint "did plausibly plead that defendants were aware of facts that should have led them" to begin interim goodwill impairment testing, "such pleading alone would not suffice to state a securities fraud claim" because the complaint is "devoid even of conclusory allegations that defendants did not believe in their statements of opinion" on goodwill when made.

Just this month, the court in *In re Deutsche Bank AG Sec. Litig.*, No. 09-Civ-1714 (DAB), 2012 WL 3297730, at *2 (S.D.N.Y. Aug. 10, 2012), applied *Fait* and *City of Omaha* in the context of a case involving the valuation of MBS similar to the securities at the heart of Defendants' OTTI judgment here.  The court held that Deutsche Bank's internal valuation opinions were not actionable because the allegations that the defendants "should have known" (a) to use the ABX index to value the MBS, and (b) that defendants' Value-at-Risk metrics were "'false'" and "'failed to reflect the actual risk' associated with the Company's equities trading,"

4

did not establish that the defendants "did not honestly believe those valuations when made." *Id.* This was true notwithstanding allegations "suggest[ing] that Defendants were wrong, and perhaps egregiously so, in their internal valuation metrics." *Id.*

Also this month, the court in *Phelps v. Stomber*, No. Civ. A. 11-1142-ABJ, 2012 WL 3276969 (D.D.C. Aug. 13, 2012), dismissed opinion-based fraud claims against Carlyle Capital, whose business was investing in residential MBS on margin. One of the plaintiff's claims was that Carlyle's dividend projections were misleading because at the time of its securities offering in 2007 the company had already experienced "calamitous declines" in its fair value reserves and "massive impairment of its liquidity." *Id.* at *25. Because the complaint failed to allege facts showing that the defendants had an unreasonable basis for the dividend projections or prepared them "in 'less than good faith,'" and because the offering memorandum explained that the projections were not firm promises and warned that Carlyle "might pay no dividends *at all,*" the court held that "the complaint does not state a plausible claim that defendants issued the dividend projections in bad faith." *Id.* at *25-26 (emphasis in original; citation omitted).

Plaintiff's claims based on the alleged falsity of Defendants' OTTI opinion fail for precisely the same reason. In its Opposition, Plaintiff concedes that the Complaint alleges merely that Defendants "should have" known certain facts were "material to a proper OTTI analysis," and "failed to properly consider this information," Plf. Response to Mot. to Dismiss of Goldstone & Simmons ("Opp.") at 38 (citing Compl. ¶¶ 51-52). On its face, this alleges no more than negligent "fraud by hindsight." Neither allegation plausibly suggests that Defendants disbelieved their OTTI judgment at the time of the 10-K filing on February 28, 2008. Moreover, the 10-K specifically highlighted Defendants' OTTI judgment as a "critical accounting policy," described the factors management considered in making that judgment, and provided a table

5

quantifying and itemizing the unrealized losses for investors to examine themselves.  *See* Ex. 2, Form 10-K, at 36-37, F-12, F-22, F-23, F-33.  As in *Phelps*, such disclosure strongly undercuts Plaintiff's contention that the 10-K was misleading with respect to OTTI.  *See* Opening Br. at 16-18.  Because the Complaint fails to allege subjective falsity with respect to Defendants' OTTI judgment, the claims based on that judgment are foreclosed as a matter of law, and thus the Court need not even reach the issue of scienter.

> **B.  The Pleading Standard for Scienter Requires Plausible, Factually Supported Allegations That Would Not Impose Liability for a Broad Swath of Innocent Conduct.**

In cases that do not involve the PSLRA, courts analyze the sufficiency of scienter allegations under the intent-pleading standard set forth in *Iqbal* and *Twombly*.  *See, e.g.*, *Chapman v. Office of Children and Family Servs.*, 423 Fed. App'x. 104, at *1 (2d. Cir. 2011); *see also U.S. ex rel. Phillips v. L-3 Commc'ns Integrated, Sys. L.P.*, Civ. A. No. 3:10–CV–1784–L, 2012 WL 3649699, at *5 (N.D. Tex. Aug. 24, 2012).

*Iqbal* made clear that Rule 9(b)'s statement that intent may be alleged generally "does not give [plaintiff] license to evade the less rigid—though still operative—strictures of Rule 8." 556 U.S. at 686-87.  Under Rule 8, "a complaint must contain enough allegations of fact 'to state a claim to relief that is plausible on its face.'" *Robbins*, 519 F.3d at 1247 (quoting *Twombly*, 550 U.S. at 570).  If the allegations give rise to an "obvious alternative explanation" or are "merely consistent with a defendant's liability," *Iqbal*, 556 U.S. at 678, 682; *Twombly*, 550 U.S. at 557, 567, they "stop[ ] short of the line between possibility and plausibility of 'entitlement to relief.'" *Twombly*, 550 U.S. at 557.

"'[P]lausibility' refers to 'the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Robbins*, 519 F.3d

6

at 1247 (quoting *Twombly*, 550 U.S. at 570). "[T]he degree of specificity necessary to establish plausibility and fair notice, and therefore the need to include sufficient factual allegations, depends on context." *Id.* at 1248. For "complex claims against multiple defendants …. [t]he *Twombly* standard may have greater bite." *Id.* at 1249.[4]

As discussed below, since *Twombly* and *Iqbal*, courts have not hesitated to dismiss fraud-based claims that do not plausibly distinguish the defendants' conduct from innocent conduct.

### C.     The Facts Alleged Concerning The OTTI Judgment Are No More Than "Merely Consistent" With Scienter.

Even assuming that the Form 10-K's statements concerning Defendants' OTTI judgment were materially false and misleading (which is not the case), Plaintiff fails to allege that Defendants made those statements with scienter. Although the Complaint contains factual allegations relating to Defendants' OTTI judgment, it provides no plausible explanation as to why those alleged facts meet the definition of recklessness, the minimum standard for scienter.

Under Section 10(b), recklessness is a "particularly high standard," which cannot be met through negligence or even gross negligence, but rather is a mental state "akin to conscious disregard." *Dronsejko v. Grant Thornton*, 632 F.3d 658, 668 (10th Cir. 2011). In other words, recklessness is "conduct that is an extreme departure from the standards of ordinary care, and which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it." *City of Philadelphia. v. Fleming Cos.*, 264 F.3d 1245, 1260 (10th Cir. 2001) (citation omitted).

Despite that high bar, the Complaint alleges no facts regarding Defendants' state of mind beyond the contention that they "should have" known certain facts were "material to a proper

---

[4] *See also Swanson v. Citibank, N.A.*, 614 F.3d 400, 405 (7th Cir. 2010) ("A more complex case involving financial derivatives, or tax fraud that the parties tried hard to conceal, or antitrust violations, will require more detail, both to give the opposing party notice of what the case is all about and to show how, in the plaintiff's mind at least, the dots should be connected.").

OTTI analysis," and that they "failed to properly consider" that information. *See* Compl. ¶¶ 51-52, 71. This is precisely the type of negligence theory that appellate courts have repeatedly rejected in SEC enforcement actions because it fails to meet the high standard for recklessness. *See SEC v. Shanahan*, 646 F.3d 536, 544-45 (8th Cir. 2011) ("It is insufficient to show that a defendant <u>should</u> <u>have</u> <u>known</u> that a material statement or omission was false or misleading. That is a viable claim of negligence, but not of fraud." (internal quotations omitted; emphasis added)); *Gebhart v. SEC*, 255 Fed. App'x 254, 256 (9th Cir. 2007) (reversing SEC order where "[t]he SEC failed to find that the [respondents] must have known that their actions presented a danger of misleading their clients" and instead improperly phrased its finding "in terms of what a reasonable securities salesperson <u>should</u> <u>have</u> recognized" (emphasis added)).

The fundamental failure of Plaintiff's recklessness theory is that the Complaint fails to demonstrate that Defendants violated the "standards of ordinary care" applicable to OTTI decisions in a manner that was either "known" to them or "so obvious" they "must have been aware of it." *Fleming Cos.*, 264 F.3d at 1260. Plaintiff alleges no facts demonstrating that Defendants' application of SFAS 115 (the only GAAP literature cited in the Complaint) deviated substantially from the standard approach taken by public company accountants in applying the rule.[5] And SFAS 115 itself offers nothing to fill this gap. It specifically characterizes the accounting as a matter of judgment and merely states as an example that "if it is probable that the investor will be unable to collect all amounts due according to the contractual terms of a debt security not impaired at acquisition, an other-than-temporary impairment shall be considered to

---

[5] Plaintiff's only effort to allege facts showing that Defendants misapplied SFAS 115 is Ms. Starrett's February 25th email. Compl. ¶ 54. This fails because the email did not describe the applicable GAAP standard. Ms. Starrett merely observed that Thornburg's intent and ability to hold its "assets with negative marks" would be "call[ed] into question" if the company had to sell some of those assets. *See* Ex. 22; Opening Br. at 44; Reply Brief in Support of Mot. to Dismiss of Goldstone & Simmons, at 19-20. That observation was not only plainly true, it reflected Defendants' intention to raise the OTTI issue with KPMG if they felt sales of assets with negative marks were necessary.

have occurred." FAS 115 ¶ 16, *available at* http://www.fasb.org/pdf/fas115.pdf. Given the Complaint's failure to establish a baseline standard of care for making OTTI judgments, Defendants cannot be held to have recklessly (or even negligently) violated that standard.

In this respect, Plaintiff's OTTI fraud claim is far weaker than the accounting fraud claim against accounting firm Grant Thornton rejected by the Tenth Circuit in *Dronsejko*. In that case, the Tenth Circuit held that Grant Thornton's alleged failure to consult and follow GAAP literature that the plaintiff asserted was the applicable accounting standard did not amount to recklessness. 632 F.3d at 667. The "ambiguity and generality" of that GAAP literature, as well as the existence of other GAAP sources that "provide[d] some support" for Grant Thornton's analysis, precluded a finding that "Grant Thornton's conduct was 'an extreme departure from the standards of ordinary care.'" *Id.* at 667-68.[6] *Dronsejko* thus illustrates the commonsense principle that accounting decisions based on ambiguous, general GAAP standards, and made with at least "some support," cannot satisfy the standard for recklessness even in the face of information suggesting the accounting decisions might arguably be wrong. *Id.* at 668.

That is exactly the scenario presented in this case. The only GAAP rule identified by Plaintiff, SFAS 115, is highly ambiguous and general, reflecting the inherently judgment-based nature of the OTTI analysis and expressly declining to provide guidance as to how specific OTTI assessments should be conducted. *See supra* at 8-9; FAS 115 App. A ¶ 114 (rejecting request that FASB "develop guidance that would resolve recent practice problems about the application of [OTTI]"). Moreover, Defendants' OTTI judgment plainly had at least "some support" (*id.*), including the company's cooperative relationship with its repo lenders (Ex. 8), its $40 million

---

[6] Although the PSLRA applied in *Dronsejko*, the "strong inference" standard does not appear to have been a significant factor in the decision. Rather than conclude that the inference of scienter was not sufficiently strong to satisfy the PSLRA, the court determined that the allegations established negligence, at most, and therefore did not satisfy the standard for recklessness. *Id.*

9

cash reserve as of February 28th (Ex. 11; Compl. ¶ 95), and its pipeline of transactions that were expected to raise another $450-$675 million within the following week (Ex. 10; Ex. 11).[7] Under *Dronsejko*, these facts definitively refute the notion that Defendants' OTTI judgment involved "an extreme departure from standards of ordinary care." *Fleming Cos.*, 264 F.3d at 1260.[8]

During the July 31st hearing, Plaintiff argued that Ms. Starrett's February 25th email (Ex. 22) reflected a fraudulent scheme to withhold information about the margin calls from KPMG until shortly before the 10-K filing. That theory is alleged nowhere in the Complaint. Moreover, Plaintiff's theory goes merely to the timing of the disclosure to KPMG and has no relevance to whether the 10-K was misleading. Nothing in Ms. Starrett's email suggests that Defendants disbelieved their OTTI judgment or lacked at least "some support" for it. *Dronsejko*, 632 F.3d at 668. On the contrary, Ms. Starrett stated that if Thornburg paid its margin calls, the "valuation issue" would be "put to rest" before KPMG issued its audit opinion. She indicated further that Defendants were "still relatively certain" the margin calls would be paid. The only reasonable inference from these statements is that Defendants believed their OTTI judgment.

To the extent Plaintiff contends Ms. Starrett's email reflected an unalleged "scheme" to defraud under Section 10(b), that theory fails in light of Plaintiff's concession at the hearing that the information Ms. Starrett discussed in that email—the margin calls—was in fact disclosed to KPMG and reflected in the 10-K.[9] Moreover, the Complaint fails entirely to allege, as it must

---

[7] These cash-raising objectives were not unrealistic, as evidenced by Thornburg's success in raising $1.35 billion in new capital as of March 31, 2008. *See* Ex. 37 (Thornburg Form 8-K, Apr. 2, 2008).

[8] That conclusion is strongly reinforced by Thornburg's prominent disclosure in the Form 10-K that it was accounting for the $427 million decline in value of its Purchased ARM Assets as "gross unrealized losses" because it believed the decline was temporary. *See* Ex. 2, Form 10-K at 37, F-22; Opening Br. at 19-20. As in *Dronsejko*, such transparency "seriously undercuts" an inference of reckless fraudulent intent. 632 F.3d at 669.

[9] Plaintiff also cited Mr. Goldstone's February 22nd email to the Board indicating that "[w]e don't want to disclose our current circumstance until it is resolved" and seeking "to avoid any issues with KPMG." Opp. at 45. But Mr. Goldstone makes clear in that email that he intends to make all necessary disclosures at the appropriate time, stating "what we say will depend on where we are next week." Ex. 8. Plaintiff alleges no factual basis that connects these statements to a fraudulent scheme, nor do they have

10

under Rule 9(b), how the purported delayed margin call disclosure to KPMG functioned as a scheme to defraud—*i.e.*, the "who, what, where, when, and how" of the deception and its connection to the purchase or sale of securities, as required under Section 10(b). *See SEC v. Kelly*, 817 F. Supp. 2d 340, 344-45 (S.D.N.Y. 2011); *SEC v. Daifotis,* No. C 11-00137 WHA, 2011 WL 2183314, at *9-10 (N.D. Cal. June 6, 2011).[10]

Assuming the truth of Plaintiff's factual allegations and the facts reflected in the various emails on which the Complaint relies (and disregarding Plaintiff's legal conclusions and self-serving characterizations), the story told in the Complaint is no more than "merely consistent … with liability" (*Iqbal*, 556 U.S. at 678 (internal quotations omitted)), in the sense that it may be theoretically "conceivable" that Defendants secretly disbelieved their OTTI judgment. *Twombly*, 550 U.S. at 570. But the "obvious alternative explanation" (*id*. at 567) is that Defendants decided not to recognize an OTTI impairment because they genuinely believed the information they allegedly "failed to properly consider" (Compl. ¶ 51) was insufficient to tip the scales the other way.[11] Allowing fraud claims to proceed on a recklessness theory merely because Defendants were aware of information that arguably called their accounting judgment into question would improperly create liability for good faith accounting decisions made by corporate executives on a routine basis. Because that theory is "so general" that it would "encompass a wide swath of conduct, much of it innocent," the Complaint fails to "nudg[e]" Plaintiff's securities fraud "claims across the line from conceivable to plausible." *Robbins*, 519 F.3d at

---

any relevance to the OTTI judgment.

[10] Waiting until shortly before a Form 10-K filing to disclose information to an auditor might be unwise—and theoretically might support a state law claim of corporate mismanagement—but the Supreme Court has long held that state corporate law claims may not be pursued under the antifraud provisions of the federal securities laws. *See Santa Fe Indus. v. Green*, 430 U.S. 462, 479 (1977) ("We thus adhere to the position that 'Congress by § 10(b) did not seek to regulate transactions which constitute no more than internal corporate mismanagement.'" (citation omitted)).

[11] Indeed, even after compelling Thornburg to restate its financials, KPMG concluded in its audit opinion for the restatement that Thornburg had "maintained, in all material respects, effective internal control over financial reporting as of December 31, 2007…." *See* Ex. 13, Form 10-K/A (Mar. 11, 2008) at F-3.

1247 (internal quotations and citation omitted).

Dismissing Plaintiff's OTTI fraud claim would also be consistent with a host of appellate and district court decisions that reject recklessness theories based on the defendants' alleged awareness of facts that arguably, though far from conclusively, called their statements into question. *See, e.g.*, *In re Level 3 Communications, Inc. Sec. Litig.*, 667 F.3d 1331, 1343-45 (10th Cir. 2012) (affirming dismissal of claim that defendants fraudulently overstated Level 3's progress in integrating an acquisition because, *inter alia*, allegations that a "great volume" of internal reports "may have been inconsistent" with the defendants' public statements only supported an inference "that defendants were negligent in failing to put together the pieces").[12]

## III.   CONCLUSION

As the Court in *Twombly* made clear, a complaint must plead sufficient plausible facts "to raise a reasonable expectation that discovery will reveal evidence" of a violation. 550 U.S. at 556. Here, despite a thorough four-year investigation, Plaintiff is unable to allege facts showing that Defendants disbelieved or lacked support for their OTTI judgment. The Court should accordingly dismiss these "fraud by hindsight" claims against Mr. Goldstone and Mr. Simmons with prejudice.

---

[12] *See also Ashland, Inc. v. Oppenheimer & Co.*, 648 F.3d 461, 468-72 (6th Cir. 2011) (affirming dismissal of securities fraud and common law fraud claims predicated on alleged failure to warn investors of impending collapse of auction rate securities market, because recklessness not established by facts indicating executives were aware of ARS market's weakness before its collapse ); *United States ex rel. Hill v. Univ. of Medicine & Dentistry of New Jersey*, 448 Fed. App'x. 314, 317 (3d Cir. 2011) (affirming summary judgment for defendant in FCA action alleging fabrication of research data, because scienter not established where "plaintiff presented evidence only demonstrating a scientific disagreement over the reliability of the data, and not evidence as to defendants' knowledge of the falsity"); *Human Genome Scis., Inc. v. Genentech, Inc.*, No. 2:11–cv–6519, 2011 WL 7461786, at *3 (C.D. Cal. Dec. 9, 2011) (dismissing inequitable conduct patent challenge for failure to allege intent to deceive under *Iqbal*, despite allegations that patent applicant "contradicted himself in two different filings," among other things; "a contradiction is merely consistent with an intent to deceive"); *see also Meyer v. Callahan*, No. 09-cv-106-PB, 2010 WL 4852600, at *5-6 (D.N.H. Nov. 23, 2010) (finding scienter inadequately pled under *Iqbal* for fraud claim based on allegation "that when [plaintiff] requested information regarding the financial status of the other S3 entities, she was rebuffed and told such information was 'confidential[,]'" which is "consistent with the theory that the defendants were attempting to hide financial information from" plaintiff, but insufficient to establish fraudulent intent).

Dated: August 31, 2012	Respectfully submitted,

    /s/ Randall R. Lee
Randall R. Lee
Jessica F. Kurzban
P. Patty Li
WILMER CUTLER PICKERING HALE and DORR LLP
350 S. Grand Avenue, Suite 2100
Los Angeles, CA  90071
Telephone:  (213) 443-5300
Facsimile:  (213) 443-5400
randall.lee@wilmerhale.com
jessica.kurzban@wilmerhale.com
patty.li@wilmerhale.com

John A. Valentine
WILMER CUTLER PICKERING HALE and DORR LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006
Telephone:  (202) 663-6000
Facsimile:  (202) 663-6363
john.valentine@wilmerhale.com

Alanna Buchanan
Joel Fleming
WILMER CUTLER PICKERING HALE and DORR LLP
950 Page Mill Road
Palo Alto, CA 94304
Telephone: (650) 858-6000
Facsimile:  (650) 858-6100
alanna.buchanan@wilmerhale.com
joel.fleming@wilmerhale.com

    -and-

Bruce Hall
Andrew G. Schultz
RODEY, DICKASON, SLOAN, AKIN & ROBB, P.A.
P. O. Box 1888
Albuquerque, NM 87103
Telephone:  (505) 765-5900
Facsimile:  (505) 768-7395
bhall@rodey.com
aschultz@rodey.com

*Attorneys for Defendants Larry Goldstone and Clarence G. Simmons, III*

13

**CERTIFICATE OF SERVICE**

   The undersigned hereby certifies that on August 31, 2012, the foregoing *Supplemental Brief in Support of Motion to Dismiss on Behalf of Defendants Larry Goldstone and Clarence G. Simmons* was electronically filed with the Clerk of Court using the CM/ECF system that will send notification of such filing to all counsel of record:

| | |
|---|---|
| Michael H. Hoses<br>Assistant United States Attorney<br>P.O. Box 607<br>Albuquerque, NM  87103<br>Michael.hoses@usdoj.gov | MILBANK, TWEED, HADLEY &<br> MCCLOY LLP<br>Jerry L. Marks<br>Robert J. Liubicic<br>Alisa Schlesinger<br>Elena Kilberg |
| Stephen C. McKenna<br>Gregory Kasper<br>Securities & Exchange Commission<br>1801 California Street, Suite 1500<br>Denver, CO  80202<br>mckennas@sec.gov<br>kasperg@sec.gov | Paul M. Torres<br>601 S. Figueroa Street, 30th Floor<br>Los Angeles, CA  90017<br>Telephone: (213) 892-4000<br>Facsimile: (213) 629-5063<br>jmarks@milbank.com<br>rliubicic@milbank.com<br>aschlesinger@milbank.com<br>ekilberg@milbank.com |
| MILBANK, TWEED, HADLEY &<br> MCCOY LLP<br>Thomas A. Arena<br>1 Chase Manhattan Plaza<br>New York, NY  10005<br>Telephone: (212) 530-5000<br>Facsimile: (212) 530-5219<br>tarena@milbank.com | |

               WILMER CUTLER PICKERING HALE AND DORR LLP.

               By /s/ Alanna Buchanan
               Alanna Buchanan
               950 Page Mill Road
               Palo Alto, CA 94304
               E-mail: alanna.buchanan@wilmerhale.com

               Attorneys for Defendants Larry Goldstone and Clarence G. Simmons, III