IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

SECURITIES AND EXCHANGE COMMISSION,

    Plaintiff,                                                                                      No. 1:12-cv-00257-JB-LFG

vs.

LARRY A. GOLDSTONE, CLARENCE G. SIMMONS,
III, and JANE E. STARRETT,

    Defendants.

**DEFENDANT JANE STARRETT'S SUPPLEMENTAL BRIEF IN SUPPORT OF
MOTION TO DISMISS**

Case 1:12-cv-00257-JB-LFG   Document 70   Filed 08/31/12   Page 2 of 18

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ...........................................................................................1

ARGUMENT.......................................................................................................................2

I.     THE SEC'S AIDING AND ABETTING CLAIMS FAIL BECAUSE THE COMPLAINT DOES NOT PLAUSIBLY ALLEGE THAT MS. STARRETT HAD ACTUAL KNOWLEDGE OF TMI'S ALLEGED PRIMARY VIOLATIONS ........................................................................................2

     A.     Clear Tenth Circuit Authority Requires That The SEC Plead "Actual Knowledge" Of The Alleged Primary Violation .........................................2

     B.     The SEC's Authorities Do Not Support Its Position That "Recklessness" Is Sufficient To Plead An Aiding And Abetting Claim...................................................................................................................4

II.     THE SEC FAILS TO PLAUSIBLY ALLEGE THAT MS. STARRETT DISBELIEVED THE STATEMENT OF OPINION THAT TMI'S PURCHASED ARM ASSETS WERE NOT OTHER THAN TEMPORARILY IMPAIRED...............................................................................6

     A.     TMI's "Intent And Ability" And OTTI Statements Are Subjective Opinions, Not Objectively Determinable Facts ............................................8

     B.     The SEC Failed To Plausibly Allege That Defendants Did Not Believe TMI's "Intent And Ability" And OTTI Statements ......................10

     C.     The SEC Cannot Rely On TMI's Restatement To Allege That Defendants Did Not Believe Their OTTI Opinion When It Was Expressed .................................................................................................11

     D.     TMI's "Intent And Ability" And OTTI Statements Were Projections Qualified By Cautionary Disclosures And Not Stated As Guarantees ......12

CONCLUSION..................................................................................................................12

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

Abrams v. Baker Hughes, Inc.,
  292 F.3d 424 (5th Cir. 2002) ....................................................................................................11

Anixter v. Home-Stake Production Co.,
  77 F.3d 1215, 1225 (10th Cir. 1996) ..............................................................................2, 3, 4, 5

Bowen v. Georgetown Univ. Hosp.,
  488 U.S. 204 (1988)....................................................................................................................6

Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.,
  511 U.S. 164 (1994)....................................................................................................................3

City of Omaha v. CBS Corp.,
  679 F.3d 64 (2d Cir. 2012)................................................................................................ passim

Fait v. Regions Fin. Corp.,
  655 F.3d 105 (2d Cir. 2011)............................................................................................. passim

Geman v. SEC,
  334 F.3d 1183 (10th Cir. 2003) ..................................................................................................4

Graham v. SEC,
  222 F.3d 994 (D.C. Cir. 2000) ....................................................................................................5

In re Deutsche Bank AG Sec. Litig.,
  2012 U.S. Dist. LEXIS 115088 (S.D.N.Y. Aug. 9, 2012) ...............................................8, 9, 10

In re Fannie Mae 2008 Sec. Litig.,
  742 F. Supp. 2d 382 (S.D.N.Y. 2010).......................................................................................11

In re MRU Holdings Sec. Litig.,
  769 F. Supp. 2d 500 (S.D.N.Y. 2011).......................................................................................12

Podany v. Robertson Stephens, Inc.,
  318 F. Supp. 2d 146 (S.D.N.Y. 2004)..................................................................................8, 10

SEC v. Apuzzo,
  2012 U.S. App. LEXIS 16510 (2d Cir. Aug. 8, 2012)............................................................4, 5

SEC v. Autocorp Equities, Inc.,
  292 F. Supp. 2d 1310 (D. Utah 2003) ........................................................................................5

SEC v. Espuelas,
    579 F. Supp. 2d 461 (S.D.N.Y. 2008) ................................................................................... 11

SEC v. Intelliquis Int'l, Inc.,
    2003 U.S. Dist. LEXIS 27131 (D. Utah Dec. 10, 2003) ............................................................ 5

SEC v. KPMG LLP,
    412 F. Supp. 2d 349 (S.D.N.Y. 2006) ....................................................................................... 3

SEC v. Lucent Techs., Inc.,
    610 F. Supp. 2d 342 (D.N.J. 2009) ................................................................................... 3, 4, 6

SEC v. Nacchio,
    614 F. Supp. 2d 1164 (D. Colo. 2009) ...................................................................................... 5

SEC v. Rivelli,
    2010 U.S. Dist. LEXIS 70948 (D. Colo. July 14, 2010) ................................................... 2, 3, 4

United States v. Montgomery Cnty.,
    761 F.2d 998 (4th Cir. 1985) ..................................................................................................... 6

United States v. Sepulveda,
    115 F.3d 882 (11th Cir. 1997) ................................................................................................... 5

Virginia Bankshares, Inc. v. Sandberg,
    501 U.S. 1083 (1991) ............................................................................................................ 6, 7

**STATUTES**

15 U.S.C. § 77q(a) [Section 17(a) of the Securities Act of 1933 (the "Securities
    Act")] ..................................................................................................................................... 1, 7

15 U.S.C. § 78j(b) [Section 10(b) of the Securities Exchange Act of 1934 (the
    "Exchange Act")] ............................................................................................................. passim

15 U.S.C. § 78t(e) [Section 20(e) of the Exchange Act] ..................................................... passim

Private Securities Litigation Reform Act of 1995, Pub. L. 104-67, 109 Stat. 737,
    104th Cong. (1995) .................................................................................................................... 3

**OTHER AUTHORITIES**

17 C.F.R. § 240.10b-5 [Rule 10b-5] ................................................................................. 1, 7, 12

**PRELIMINARY STATEMENT**

Ms. Starrett submits this Supplemental Brief in support of her Motion to Dismiss the SEC's Complaint [Doc. 36] to further clarify two issues raised at the hearing held on July 31, 2012. Specifically, this Supplemental Brief addresses (1) the Tenth Circuit's "actual knowledge" pleading requirement for aiding and abetting claims, and (2) the heightened pleading requirement applicable to an alleged misstatement of *opinion* (as distinct from a misstated fact), which must be both objectively false *and* disbelieved by the defendant when made. As to the first issue, the Tenth Circuit has held that a plaintiff must plead "actual knowledge" of the primary securities violation, and district courts (including courts within the Tenth Circuit) have explicitly rejected the SEC's argument that "recklessness" suffices to state a claim for aiding and abetting. Because the SEC has not plausibly alleged that Ms. Starrett had actual knowledge of TMI's alleged primary violations, its aiding and abetting claims against her must be dismissed.

As to the second issue, the lack of even conclusory allegations that Ms. Starrett did not honestly believe the expressed OTTI opinion is fatal to the SEC's claims predicated on this alleged misstatement. A recent line of cases from the Second Circuit, including a decision issued by the Southern District of New York on August 10, 2012, supports Ms. Starrett's argument that TMI's OTTI judgment is a statement of opinion, which is not actionable as securities fraud without plausible allegations that she disbelieved it—allegations not contained in the Complaint. Consequently, the SEC has failed to plausibly allege that TMI's OTTI opinion was a false statement of fact within the meaning of Section 10(b), Rule 10b-5, and Section 17(a).[1]

---

[1] Ms. Starrett joins the arguments made in the Supplemental Brief in Support of Motion to Dismiss on Behalf of Defendants Larry Goldstone and Clarence G. Simmons.

1

## ARGUMENT

I.  **THE SEC'S AIDING AND ABETTING CLAIMS FAIL BECAUSE THE COMPLAINT DOES NOT PLAUSIBLY ALLEGE THAT MS. STARRETT HAD ACTUAL KNOWLEDGE OF TMI'S ALLEGED PRIMARY VIOLATIONS**

As demonstrated in Ms. Starrett's Response to the SEC's Surreply [Doc. 66], the SEC has failed to allege that Ms. Starrett is primarily liable either as a "maker" of a false statement or as part of a fraudulent "scheme." The SEC's remaining securities fraud claims against Ms. Starrett are for aiding and abetting TMI's alleged primary violations. Because such claims require actual knowledge, which the SEC has not plausibly alleged, they too must be dismissed.

  **A.  Clear Tenth Circuit Authority Requires That The SEC Plead "Actual Knowledge" Of The Alleged Primary Violation**

Ms. Starrett's Opening Brief (at 35) and Reply (at 13-14) demonstrate that the SEC must allege Ms. Starrett had actual knowledge of TMI's alleged primary violations. At the time of TMI's alleged violations in 2008, Section 20(e) of the Exchange Act authorized the SEC to bring aiding and abetting claims against "any person that *knowingly* provide[d] substantial assistance" to a primary violator. 15 U.S.C. § 78t(e) (2006) (emphasis added). In Anixter v. Home-Stake Production Co., 77 F.3d 1215, 1225 (10th Cir. 1996), the Tenth Circuit confirmed that Section 20(e) required a plaintiff to prove "*knowledge* of the primary violation by alleged aider and abettor." Id. (emphasis added). The court explained that "for aiding and abetting liability, as opposed to primary liability, the scienter requirement increases from recklessness, so that [plaintiffs] need to show that [defendants] acted with actual intent." Id. at 1232.

Numerous district courts, including within this Circuit, have similarly required plaintiffs to allege "actual knowledge" in order to state an aiding and abetting claim. SEC v. Rivelli (cited by the SEC in its opposition), 2010 U.S. Dist. LEXIS 70948 (D. Colo. July 14, 2010), for

2

example, cited Anixter and held that an aiding and abetting claim required a showing of "the defendant's knowledge of the primary violation." Id. at *9. Rivelli explicitly rejected the SEC's argument here that "liability as an aider and abettor requires only recklessness." Id. at *10-11. As the court explained, in 1994 the Supreme Court held that Section 10(b) did not create liability for aiding and abetting violations of the securities laws. Id. at *10 (citing Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A., 511 U.S. 164, 191 (1994)). In response, Congress passed the Private Securities Litigation Reform Act of 1995 ("PSLRA"), Pub. L. 104-67, 109 Stat. 737, 104th Cong. § 104 (1995), which, by adding Section 20(e), restored aiding and abetting liability for SEC enforcement actions but only where a defendant acts "knowingly." See id. at *10-11. Congress expressly defined "knowingly" to require actual knowledge. PSLRA § 201. Since then, "[a] majority of district courts have held that . . . actual knowledge . . . is required for aiding and abetting liability." Rivelli, 2010 U.S. Dist. LEXIS 70948 at *11.[2]

Similarly, in SEC v. Lucent Technologies, Inc., 610 F. Supp. 2d 342, 362 (D.N.J. 2009) (cited by Rivelli), the court closely examined this issue and concluded that "[t]he plain language of Section 20(e), its legislative history, and the cogent analysis in KPMG provide ample support for the conclusion that Congress intended to require actual knowledge as the scienter standard for aiding and abetting liability." Lucent, 610 F. Supp. 2d at 362 (citing SEC v. KPMG LLP, 412 F. Supp. 2d 349, 383 (S.D.N.Y. 2006), which rejected the claim that Section 20(e) encompasses recklessness in addition to actual knowledge). Like Rivelli, Lucent also expressly rejected the

---

[2] For this reason, the Rivelli court rejected the SEC's *pre*-PSLRA cases (which *had* held that mere recklessness was enough for aiding and abetting claims). The court also rejected the SEC's *post*-PSLRA cases because those cases did not address the effect of Section 20(e) 's requirement that culpable conduct be "knowing." Rivelli, 2010 U.S. Dist. LEXIS 70948 at *11-12.

3

SEC's claim that "recklessness" was sufficient for aiding and abetting liability. Id. at 361-62.[3]

At the July 31, 2012 hearing, the SEC did not even *claim* Ms. Starrett actually *knew* of TMI's alleged primary violations, much less point to particular *factual* allegations in the Complaint to support such knowledge; the SEC instead argued that the proper standard is mere recklessness. Nor does the Complaint's boilerplate recitation that Defendants "knowingly or recklessly provided substantial assistance to Thornburg in committing these . . . violations" plead facts supporting such actual knowledge. Compl. ¶ 115. In sum, Anixter, Rivelli, and Lucent clearly establish that the SEC must plead "actual knowledge." But the Complaint fails to do so.

B. **The SEC's Authorities Do Not Support Its Position That "Recklessness" Is Sufficient To Plead An Aiding And Abetting Claim**

Relying on Geman v. SEC, 334 F.3d 1183 (10th Cir. 2003), the SEC argues that "the Complaint need not allege that Ms. Starrett had actual knowledge for those [aiding and abetting] claims; recklessness will suffice." SEC JS Opp. at 36. But Geman did not overrule or *even address* Anixter, a Tenth Circuit case that pre-dated Geman. Nor did Geman acknowledge, much less discuss, the effect of Section 20(e)'s explicit requirement that the conduct be "knowingly" undertaken. Instead, the Geman court merely stated, without elaboration, that there was "sufficient factual basis for the conclusion that Geman aided and abetted the violations with a state of mind of recklessness, if not willful disregard." Geman, 334 F.3d at 1196. Geman therefore does not support applying recklessness to the SEC's aiding and abetting claims here.

The SEC also relies on three district court opinions that *predated* both Rivelli and Lucent,

---

[3] As the Court observed during the July 31, 2012 hearing, the Criminal Pattern Jury Instructions for the Tenth Circuit, 2.06 (2011 ed.), for "Aid and Abet" also adopt a knowledge standard. See also SEC v. Apuzzo, 2012 U.S. App. LEXIS 16510, at *18 (2d Cir. Aug. 8, 2012) (drawing "guidance" from the well-developed law of aiding and abetting liability in criminal cases to interpret the law in the SEC enforcement context).

and do not support a recklessness standard. In two of those cases, SEC v. Nacchio, 614 F. Supp. 2d 1164, 1172 (D. Colo. 2009), and SEC v. Autocorp Equities, Inc., 292 F. Supp. 2d 1310, 1332 (D. Utah 2003), the courts did not even acknowledge Anixter and did not mention (much less analyze the effect of) the explicit language of Section 20(e) ("knowingly"). Instead, both courts cited without discussion Graham v. SEC, 222 F.3d 994 (D.C. Cir. 2000), in support of the "recklessness" standard. But Graham too did not address the effect of Section 20(e)'s "knowingly" requirement. Moreover, because the complaints in both Nacchio and Autocorp adequately alleged defendant's *knowledge* of the primary violations, the courts did not need to decide whether recklessness sufficed. Nacchio, 614 F. Supp. 2d at 1172; Autocorp Equities, 292 F. Supp. 2d 1332. The SEC's third case, SEC v. Intelliquis Int'l, Inc., 2003 U.S. Dist. LEXIS 27131 (D. Utah Dec. 10, 2003), decided by the same judge who decided Autocorp, did discuss the scienter standard, but (i) it too ignored Anixter; (ii) did not explain how a recklessness standard could coexist with the language of Section 20(e); (iii) cited to Graham for support; and (iv) appeared to find that the defendant in fact had actual knowledge. Id. at *37-43.

The SEC also points to the 2010 *amendment* to Section 20(e) that added the words "or recklessly" to the statute's "knowingly" requirement, and argues that somehow this means "recklessness satisfied the scienter section [sic] even prior to the [amendment]." SEC JS Opp. at 37 n.25. Not so. Indeed, three weeks ago the Second Circuit stated that—in a case where (as here) the alleged conduct occurred before 2010—the amendment adding "or recklessly" to Section 20(e) *did not apply*, and "knowledge" was required. Apuzzo, 2012 U.S. App. LEXIS 16510, at *2, *17 & n.6. Neither of the SEC's "clarifying amendment" cases, (SEC JS Opp. at 37 n.25), even addresses the 2010 Dodd-Frank amendment. United States v. Sepulveda, 115

5

F.3d 882, 885 n.5 (11th Cir. 1997), merely holds that "an amendment to a statute *does not necessarily* indicate that the unamended statute meant the opposite," (emphasis added), and United States v. Montgomery County, 761 F.2d 998, 1003 (4th Cir. 1985), similarly states that "changes in statutory language *need not ipso facto* constitute a change in meaning or effect." (emphasis added).  Here, by contrast, as explained by decisions discussed in Section I.A above (most notably in Lucent's analysis of Section 20(e)'s legislative history), the 2010 addition of "or recklessly" obviously *did* constitute a fundamental change in Section 20(e)'s meaning.  Prior to 2010, knowledge—and knowledge alone—was the standard, and that standard applies here.[4]

## II. THE SEC FAILS TO PLAUSIBLY ALLEGE THAT MS. STARRETT DISBELIEVED THE STATEMENT OF OPINION THAT TMI'S PURCHASED ARM ASSETS WERE NOT OTHER THAN TEMPORARILY IMPAIRED

As explained in Ms. Starrett's Opening Brief, "the highly judgmental and predictive nature of the 'intent and ability to hold' inquiry cuts against the conclusion that such a statement was false."  Opening Br. at 10.  The SEC claims "this assertion is without support" and "would make any claim based upon a GAAP provision involving judgment . . . immune from suit."  SEC JS Opp. at 15.  In doing so, the SEC ignores longstanding Supreme Court precedent distinguishing between alleged *factual* misstatements and alleged misstatements of *opinion or belief* for purposes of liability under securities laws.

In Virginia Bankshares, Inc. v. Sandberg, 501 U.S. 1083, 1091, 1095 (1991), the Supreme Court held that "statements of reasons, opinions, or beliefs" may be actionable under securities laws only if, *in addition to being objectively false*, they misstate the subjective

---

[4] Furthermore, it is well settled that retroactive application of statutes is generally disfavored. Bowen v. Georgetown Univ. Hosp., 488 U.S. 204, 208 (1988) ("Retroactivity is not favored in the law.  Thus, congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result.").

6

opinions or beliefs held, requiring plaintiffs to plausibly allege a speaker's disbelief in the opinion expressed.  In Fait v. Regions Financial Corp., 655 F.3d 105 (2d Cir. 2011), the Second Circuit applied Virginia Bankshares to accounting estimates of goodwill impairment and loan loss reserves under GAAP, which the court noted are "inherently subjective" and "will vary depending on a variety of predictable and unpredictable circumstances." Id. at 113.  Thus, while "matters of belief and opinion are not beyond the purview of [securities laws]" which proscribe untrue statements of material *fact*, liability can attach to statements of belief and opinion "*only* to the extent that the statement was both objectively false *and* disbelieved by the defendant at the time it was expressed." Fait, 655 F.3d at 110 (emphasis added); 15 U.S.C. § 77q(a); 17 C.F.R. § 240.10b-5.  Fait affirmed the dismissal of claims related to the defendants' judgments as to goodwill impairment and the adequacy of loan loss reserves, "because the complaint [did] not plausibly allege subjective falsity"—*i.e.*, did not allege these opinions were "not honestly believed when they were made"—an omission "fatal" to plaintiff's claims. Id. at 112-13.

The Second Circuit has emphasized that the "subjective falsity" prong of the rule announced in Fait is *not* a scienter requirement, but is necessary to establish that a statement of opinion was "untrue" within the meaning of the Securities Act and the Exchange Act. Fait, 655 F.3d at 112 n.5; City of Omaha v. CBS Corp., 679 F.3d 64, 67-69 (2d Cir. 2012).  In City of Omaha, the Second Circuit applied the reasoning in Fait (involving claims under Sections 11 and 12 of the Securities Act) to claims under Section 10(b) of the Exchange Act and Rule 10b-5, because "these claims all share a material misstatement or omission element."  679 F.3d at 67-69. City of Omaha held that plaintiffs failed to plead a material misstatement with regard to the need for goodwill impairment testing where the "complaint [was] devoid even of conclusory

7

allegations that defendants did not believe in their statements of opinion regarding CBS's goodwill at the time they made them." Id. at 68. The courts have thus imposed a "heightened pleading standard for a misrepresentation of opinion claim under § 10(b)," mandating that plaintiffs plausibly plead that defendants subjectively disbelieved their expressed opinion. Podany v. Robertson Stephens, Inc., 318 F. Supp. 2d 146, 158 (S.D.N.Y. 2004).

Just days after the July 31 hearing in this case, plaintiffs' complaint in In re Deutsche Bank AG Sec. Litig., 2012 U.S. Dist. LEXIS 115088, at *9-11 (S.D.N.Y. Aug. 9, 2012), was dismissed for failure to allege that defendants did not honestly believe the company's internal valuations of subprime and mortgage-backed assets, which the court ruled were a "matter of opinion rather than fact." The court, granting defendants' motion for reconsideration in light of Fait and City of Omaha, revised its prior ruling and held that while plaintiffs' "allegations suggest that Defendants were wrong . . . in their internal valuation metrics," the accounting estimates "amount to opinions which cannot form the basis of claims under the Securities Act unless Defendants subjectively disbelieved those opinions," and the "Complaint . . . contains no such allegations." Id. As the court further explained, "even statements that Defendants should have known that their valuation decisions were false and misleading will not state a plausible claim for relief . . . . After Fait, Plaintiffs must allege that Defendants *did not believe their valuation statements* at the time they made them." Id. at *8 (emphasis added). Here, the SEC has not alleged that Defendants here "did not believe" the opinion that TMI's Purchased ARM Assets were not "other than temporarily impaired" when the opinion was expressed.

> A. **TMI's "Intent And Ability" And OTTI Statements Are Subjective Opinions, Not Objectively Determinable Facts**

The SEC's claims regarding TMI's OTTI judgment suffer from the same deficiencies as

8

claims based on analogous accounting judgments found inadequate by the courts in Fait, City of Omaha, and Deutsche Bank.  The alleged misstatement that TMI's Purchased ARM Assets were not other than temporarily impaired was not an objectively determinable fact, but rather a statement of opinion.  In Fait, plaintiffs alleged that defendants failed to write down the value of the company's goodwill and falsely stated that it was not impaired.  Fait, 655 F.3d at 108.  TMI's OTTI analysis similarly involved a valuation of Purchased ARM Assets to determine whether an impairment charge (or write-down) equal to the amount of unrealized losses was necessary.  Kilberg Decl. ¶ 3, Ex. A (10-K) at 36-37; id. ¶ 4, Ex. B (FAS 115) ¶ 16.  These types of valuation decisions are opinions because they cannot be measured by any objective standard.  Fait, 655 F.3d at 110-11 ("[P]laintiff does not point to any objective standard" that could be applied in evaluating goodwill impairment.).

     Indeed, the 10-K's description of the OTTI statement as a "critical accounting estimate" that "require[d] complex management judgment" highlighted its subjective nature.  Kilberg Decl. ¶ 3, Ex. A (10-K) at 35, 37; see Fait, 655 F.3d at 113 (emphasizing disclosure in annual report that evaluation of adequacy of loan loss reserves was based on "management's judgment").  As with goodwill impairment valuations for which "[t]here is no universally infallible index of fair market value," Fait, 655 F.3d at 110, the SEC and FASB have stated that GAAP provides no "bright lines" or "safe harbors" for making OTTI determinations.  Kilberg Decl. ¶ 11, Ex. I (SEC/FASB Press Release).  Morever, as discussed at length in Ms. Starrett's Opening and Reply Briefs, it is particularly challenging for management to assess a company's ability to hold impaired assets until recovery when markets are dislocated and asset valuations are volatile, as they were during the financial crisis in 2008.  Opening Br. at 10-12, 30-32; Reply Br. at 14-15.

In sum, there is no question that TMI's OTTI judgment and the related "intent and ability to hold" statement were matters of subjective opinion.

>    **B.    The SEC Failed To Plausibly Allege That Defendants Did Not Believe TMI's "Intent And Ability" And OTTI Statements**

Unable to plead "provable facts" of subjective falsity, the SEC alleges instead that TMI's "precarious financial condition, violation of lending agreements . . . and use of the I/O Strip Transactions to make late margin call payments . . . *should have led the Defendants to conclude* that the losses associated with Thornburg's ARM Securities were other than temporary[.]" Compl. ¶ 51 (emphasis added), see id. ¶¶ 71, 82, 84 (alleging Defendants "failed to properly consider critical information" allegedly contradicting TMI's reported OTTI accounting). But alleging that the Defendants could have or should have reached a different opinion or that the opinion reached by them was unreasonable does not satisfy the "subjective falsity" prong of the applicable pleading standard. Deutsche Bank, 2012 U.S. Dist. LEXIS 115088, at *9 (rejecting allegations that "Defendants should have known that the ABX Index should have been used in valuing RMBS and CDOs"); Fait, 655 F.3d at 110, 112 (allegations that the defendants "should have concluded that goodwill was impaired due to their knowledge of the deterioration of the banking sector by that time" did not plausibly plead that defendants did not believe their statements); Podany, 318 F.Supp. 2d at 154 ("A securities fraud action may not rest on allegations that amount to second-guesses of defendants' opinions[.]"). Thus, even if the SEC's Complaint plausibly alleges that Defendants were aware of facts that should have led them to take an impairment charge on Purchased ARM Assets (it does not), "such pleading alone [does] not suffice to state a securities fraud claim after Fait." City of Omaha, 679 F.3d at 68. In City of Omaha, the court rejected similar allegations pertaining to "CBS's general financial

deterioration" and "CBS' own anticipation of economic slowdown" which, plaintiffs argued, "mandated that Defendants perform an interim test of the value of goodwill." Id. at 68. The court concluded that "plaintiffs . . . have at most pleaded defendants' failure to comply with [GAAP], rather than their commission of securities fraud." Id. at 69.

### C. The SEC Cannot Rely On TMI's Restatement To Allege That Defendants Did Not Believe Their OTTI Opinion When It Was Expressed

The SEC argues incorrectly that "[t]he restatement defeats any assertion that the [intent and ability] statement was not false[.]" SEC JS Opp. at 12. Because the OTTI statement at issue was a matter of opinion, the allegation that TMI restated its financials on March 11, 2008 after a "wave of margin calls," (Compl. ¶¶ 11, 32), does not remedy the SEC's failure to plausibly allege that the Defendants did not honestly believe the stated OTTI opinion on February 28, 2008 when TMI filed its 10-K. At most, a restatement of financial results can support a claim that previously issued financials contained *objectively* false or inaccurate statements. SEC v. Espuelas, 579 F. Supp. 2d 461, 472 (S.D.N.Y. 2008); In re Fannie Mae 2008 Sec. Litig., 742 F. Supp. 2d 382, 408 (S.D.N.Y. 2010). An allegation of restatement or failure to comply with GAAP, however, "is not sufficient to state a securities fraud claim." Fannie Mae; 742 F. Supp. 2d at 408; City of Omaha, 679 F.3d at 69. Indeed, a restatement correcting earlier corporate filings reveals *nothing* about defendants' subjective beliefs regarding the statements of opinion made in the original financials because it could "easily arise from negligence, oversight or simple mismanagement, none of which rise to the standard necessary to support a securities fraud action." Abrams v. Baker Hughes, Inc., 292 F.3d 424, 433 (5th Cir. 2002). Where, as here, financials are restated to revise a prior *opinion* (*e.g.*, TMI's OTTI accounting judgment), the restatement does not relieve the SEC from plausibly pleading that Defendants' OTTI opinion

was subjectively false at the time TMI filed its 10-K. The SEC has not met this burden.

### D. TMI's "Intent And Ability" And OTTI Statements Were Projections Qualified By Cautionary Disclosures And Not Stated As Guarantees

TMI's statement that it had the intent and ability to hold its ARM Assets until recovery and the related OTTI judgment were projections accompanied by detailed cautionary disclosures. Opening Br. at 10-11, 29-30; Reply Br. at 12-13. Projections of this nature are generally not actionable unless they are worded as guarantees. Fait, 655 F.3d at 111 n.3; In re MRU Holdings Sec. Litig., 769 F. Supp. 2d 500, 510-11 (S.D.N.Y. 2011). MRU is particularly instructive in this context. The MRU plaintiffs alleged Section 10(b) and Rule 10b-5 claims challenging the company's residual interest valuation under GAAP—an accounting judgment that required the company to make predictions about the future "during an economically difficult timeframe." 769 F. Supp. 2d at 503, 510. As here, the company provided extensive cautionary disclosures about the assumptions and inherent risks in residual interest valuation. Id. at 509-10. The court held that "[b]ecause the challenged statements . . . were predictions or opinions, and not guarantees, and because there is no evidence in the record indicating that the Individual Defendants did not genuinely believe in those predictions, Plaintiffs have failed to identify any misstatements or omissions of material fact which would support a Section 10(b) or Rule 10b-5 claim." Id. at 510-11. As in MRU, TMI's 10-K advised that its OTTI determination was based on "management judgment," and expressly disclaimed any guarantees that this judgment was infallible. Kilberg Decl. ¶ 3, Ex. A (10-K) at 36-37.

### CONCLUSION

Ms. Starrett respectfully requests that the Court grant her Motion to Dismiss.

Dated:  August 31, 2012

MILBANK, TWEED, HADLEY & MCCLOY LLP


By: /s/ *Jerry L. Marks*
Jerry L. Marks
Robert J. Liubicic
601 S. Figueroa Street, 30th Floor
Los Angeles, CA 90017
Telephone:  (213) 892-4000
Facsimile:   (213) 629-5063
E-mail:        jmarks@milbank.com
                    rliubicic@milbank.com

MILBANK, TWEED, HADLEY & MCCLOY LLP
Thomas A. Arena
1 Chase Manhattan Plaza
New York, NY  10005
Telephone:  (212) 530-5000
Facsimile:   (212) 530-5219
E-mail:        tarena@milbank.com

-and-

RODEY, DICKASON, SLOAN, AKIN & ROBB, P.A.
Bruce Hall
Andrew G. Schultz
P. O. Box 1888
Albuquerque, NM 87103
Telephone:  (505) 765-5900
Facsimile:   (505) 768-7395
E-mail:        bhall@rodey.com
                    aschultz@rodey.com

*Attorneys for Defendant Jane Starrett*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on August 31, 2012, Defendant Jane Starrett's Supplemental Brief in Support of Motion to Dismiss was electronically filed with the Clerk of Court using the CM/ECF system that will send notification of such filing to all counsel of record.

| | |
|---|---|
| Michael H. Hoses<br>Assistant United States Attorney<br>P.O. Box 607<br>Albuquerque, NM 87103<br>Michael.hoses@usdoj.gov | Stephen C. McKenna<br>Gregory Kasper<br>Securities & Exchange Commission<br>1801 California Street, Suit 1500<br>Denver, CO  80202<br>mckennas@sec.gov<br>kasperg@sec.gov |
| WILMER CUTLER PICKERING<br>   HALE & DORR LLP<br>      Randall R. Lee<br>      Jessica Freiheit Kurzban<br>      Peiyin Patty Li<br>350 South Grand Ave., Suite 2100<br>Los Angeles, CA  90071<br>Telephone:    (213) 443-5300<br>Facsimile:     (213) 443-5400<br>randall.lee@wilmerhale.com<br>jessica.kurzban@wilmerhale.com<br>patty.li@wilmerhale.com | WILMER CUTLER PICKERING<br>   HALE & DORR LLP<br>      Alanna G. Buchanan<br>      Joel Fleming<br>950 Page Mill Road<br>Palo Alto, California 94304<br>Telephone:    (650) 858-6000<br>Facsimile:     (650) 858-6100<br>alanna.buchanan@wilmerhale.com<br>joel.fleming@wilmerhale.com |
| WILMER CUTLER PICKERING<br>   HALE & DORR LLP<br>         John A. Valentine<br>1875 Pennsylvania Avenue, NW<br>Washington, DC  20006<br>Telephone:    (202) 663-6000<br>Facsimile:     (202) 663-6363<br>john.valentine@wilmerhale.com | |

MILBANK, TWEED, HADLEY & MCCLOY LLP
By      */s/ Jerry L. Marks*
         Jerry L. Marks

1