IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

SECURITIES AND EXCHANGE COMMISSION,

      Plaintiff,

vs.

LARRY GOLDSTONE, CLARENCE G. SIMMONS,
III, and JANE STARRETT,

      Defendants.

No. 1:12-cv-00257-JB-LFG

**DEFENDANTS' MOTION TO COMPEL PRODUCTION OF PCAOB DEPOSITION
TRANSCRIPTS AND PLAINTIFF'S NOTES AND MEMORANDA OF INTERVIEWS
WITH NON-PARTY WITNESSES**

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ................................................................................ 1

I.   FACTUAL AND PROCEDURAL BACKGROUND ............................................ 3

II.   THE SEC SHOULD BE COMPELLED TO PRODUCE ITS NOTES AND
      MEMORANDA OF INTERVIEWS WITH KPMG WITNESSES ...................... 8

      A.   The SEC Has Waived Any Privileges with Respect to the Interview
           Notes and Memoranda ................................................................... 8

      B.   The SEC's Interview Notes and Memoranda Are Not Exempt from
           Disclosure under Any Asserted Privilege Theory ................................... 12

III.  THE SEC SHOULD BE COMPELLED TO PRODUCE TESTIMONY
      TRANSCRIPTS AND SWORN STATEMENTS OF KPMG EMPLOYEES
      TAKEN BY THE PCAOB IN 2009 ................................................................. 19

      A.   The PCAOB Privilege Is Inapplicable to Materials "Presented in
           Connection with a Public Proceeding" and Has Also Been Waived
           by the SEC ................................................................................... 19

      B.   The SEC Has Produced PCAOB Transcripts in Other Enforcement
           Proceedings and Should not Be Permitted to Rely Upon Privileges It
           Has Inconsistently Asserted ............................................................... 24

      C.   The SEC Should Be Compelled to Produce PCAOB Transcripts in
           the Interest of Fundamental Fairness ................................................... 25

IV.   CONCLUSION ............................................................................................ 27

i

## TABLE OF AUTHORITIES

**Page(s)**

CASES

Astra Aktiebolag v. Andrx Pharms., Inc.,
   208 F.R.D. 92 (S.D.N.Y. 2002) ........................................................................18

Dep't of Interior v. Klamath Water Users Protective Ass'n,
   532 U.S. 1 (2001)............................................................................................18

Duck v. Warren,
   160 F.R.D. 80 (E.D. Va. 1995) ..................................................................12, 13

Everitt v. Brezzel,
   750 F. Supp. 1063 (D. Colo. 1990).................................................................15

Federal Deposit Insurance Corp. v. Wise,
   139 F.R.D. 168 (D. Colo. 1991) .................................................9, 10, 11, 27

Ford v. Philips Elecs. Instruments Co.,
   82 F.R.D. 359 (E.D. Pa. 1979)........................................................................17

Frankenhauser v. Rizzo,
   59 F.R.D. 339 (E.D. Pa. 1973)........................................................................15

In re Adler, Coleman, Clearing Corp.,
   No. 95–08203 JLG, 1999 WL 1747410 (S.D.N.Y. Dec. 8, 1999).........................17

In re Grand Jury Proceedings,
   616 F.3d 1172 (10th Cir. 2010) ........................................................................9

In re Grand Jury Proceedings John Doe Co. v. United States,
   350 F.3d 299 (2d Cir. 2003)..............................................................................9

In re Sealed Case,
   121 F.3d 729 (D.C. Cir. 1997).........................................................................19

In re Sealed Case,
   856 F.2d 268 (D.C. Cir. 1988).............................................................14, 15, 25

Martinez v. Halabi,
   No. 09-61624, 2011 U.S. Dist. LEXIS 156384 (S.D. Fla. Nov. 10, 2011) .............14

Miller v. U.S. Dep't of Agric.,
    13 F.3d 260 (8th Cir. 1993) ................................................................17

Morton v. Ruiz,
    415 U.S. 199 (1974)...........................................................................25

Patel v. Havana Bar,
    No. Civ-A 10-1383, No. Civ-A 10-1383, 2011 WL 6029983 (E.D. Pa. Dec. 5, 2011) ..........13

Pegoraro v. Marrero,
    281 F.R.D. 122 (S.D.N.Y. 2011) .........................................................14

Rivera v. DJO,
    LLC, 2012 U.S. Dist. LEXIS 126310 (D.N.M. Aug. 27, 2012)................................8

Sanchez v. Matta,
    229 F.R.D. 649 (D.N.M. 2004)...........................................................8

SEC v. Collins & Aikman Corp.,
    256 F.R.D. 403 (S.D.N.Y. 2009) .........................................................18

SEC v. Jensen et al.,
    No. 2:11-cv-05316-R-AGR (C.D. Cal. Oct. 9, 2012).....................................24, 25

SEC v. Shanahan,
    No. 4:07CV270JCH, 2009 WL 1955747 (E.D. Mo. July 6, 2009) ................. passim

Silverman v. Motorola, Inc.,
    No. 07 C 4507, 2010 WL 4659535 (N.D. Ill. June 29, 2010), at *4 (N.D. Ill. June 29,
    2010) ..............................................................................................26

Silverstein v. Fed. Bureau of Prisons,
    No. 07-cv-02471-PAB-KMT, 2009 WL 4949959 (D. Colo. Dec. 14, 2009).........................18

Torres v. Kuzniasz,
    936 F. Supp. 1201 (D.N.J. 1996) .........................................................15

Trentadue v. Integrity Comm.,
    501 F.3d 1215 (10th Cir. 2007) .........................................................18

United States v. Bernard,
    877 F.2d 1463 (10th Cir. 1989) .........................................................24

United States v. Nobles,
    422 U.S. 225 (1975)........................................................................9, 11

United States v. One 1985 Mercedes,
   917 F.2d 415 (9th Cir. 1990) ................................................................................24

Xerox Corp. v. IBM Corp.,
   64 F.R.D. 367 (S.D.N.Y. 1974) ............................................................................14

**STATUTES**

15 U.S.C. § 7214.....................................................................................................19, 20

15 U.S.C. § 7215............................................................................................... passim

Sarbanes-Oxley Act of 2002.................................................................................4, 19, 23

**OTHER AUTHORITIES**

Fed. R. Civ. P. 26.................................................................................................8, 12, 19

Fed. R. Civ. P. 37(a) ..................................................................................................1

Rule 5108................................................................................................................20, 21

S. Rep. No. 107-205 (2002)...........................................................................................20

Defendants move pursuant to Rule 37(a) of the Federal Rules of Civil Procedures and D.N.M.LR-Civ. 7 and 37.1 to compel production of (1) Plaintiff's notes and memoranda of interviews with non-party witnesses, and (2) transcripts of testimony by non-party witnesses taken by the Public Company Accounting Oversight Board ("PCAOB"). Pursuant to D.N.M.LR-Civ. 7.1(a), Defendants' counsel conferred in good faith with Plaintiff's counsel on November 21, 2012 and determined that Plaintiff opposes this motion.

## PRELIMINARY STATEMENT

The centerpiece of the SEC's securities fraud case against Defendants is a series of allegations that Defendants misled Thornburg's outside auditor KPMG in connection with the filing of Thornburg's 2007 Form 10-K—allegations the Defendants will vigorously dispute. The SEC further claims that if Defendants had disclosed to KPMG certain allegedly critical information about Thornburg's "margin call situation," the auditors "would have" disagreed with the Company's determination that its Purchased ARM Assets were not other-than-temporarily impaired. But support for the SEC's allegation about what KPMG "would have" done is not found in *any* testimony or other material the SEC has produced to Defendants in discovery. When pressed on the absence of supporting evidence, the SEC claimed that its "would have" allegations are, in fact, supported by off-the-record interviews taken from and proffers submitted by key KPMG witnesses in March, April, and May, 2011—*after* these same witnesses gave sworn testimony to the SEC in September 2009. Although the SEC has provided Defendants with the sworn testimony, it has refused to produce the proffers or any documentation of the interviews, contending that these are protected from discovery under the work product doctrine and other qualified privileges. The SEC has also refused to produce transcripts and sworn statements of the eleven KPMG witnesses taken by the PCAOB in 2009 on which the SEC has implicitly and expressly relied in shaping its investigation and preparing its Complaint, similarly claiming that these are subject to statutory immunities and the law enforcement privilege.

1

The SEC's objections are baseless.  First, the SEC put these statements squarely at issue—with respect to the interview notes and memoranda, by admittedly using them as the basis for specific allegations about what KPMG "would have" done had it been provided with "critical" information about the "margin call situation," and with respect to the PCAOB transcripts, by reviewing and relying upon them in this enforcement action.  In doing so, the SEC waived any potentially applicable common law or statutory privilege.  Second, the SEC's notes contain essentially verbatim statements by percipient witnesses, as opposed to mental impressions of counsel ordinarily protected under the work product and related doctrines.  These notes are discoverable where, as here, Defendants have a compelling need for the materials to defend against serious allegations of securities fraud, and where they cannot obtain the same or substantially equivalent facts from other sources.  Counsel for the SEC and KPMG argued to this Court that Defendants would obtain the requested information by deposing KPMG witnesses, but this assertion has proved completely untrue.  Recently deposed KPMG witnesses profess to remember almost nothing about the audit or restatement generally, let alone the specifics of the "margin call situation" central to this case.  Finally, with respect to the PCAOB transcripts, one of the SEC's lead investigators reviewed the PCAOB transcripts, explicitly formulated his questioning of two KPMG witnesses in reliance on their PCAOB testimony, and reviewed the Complaint before it was filed—rendering the SEC's present claim that it did not rely on the PCAOB transcripts in preparing the Complaint an utter fiction and patently incredible.  Furthermore, in another pending case in California, the SEC voluntarily disclosed PCAOB transcripts to the defendants, yet has provided no reason whatsoever for its refusal to do so here.

In withholding numerous KPMG witness statements, the SEC provided Defendants with a woefully incomplete factual record concerning its central allegations that Defendants intentionally or recklessly misled KPMG as to the true scope and import of the "margin call situation."  While the SEC's purpose in doing so is unclear, the unusual chronology of the SEC's

2

attempts to procure statements from key KPMG witnesses and the high degree of KPMG's cooperation with the SEC—complying with the SEC's serial requests for sworn testimony, interviews, and proffers—is telling. Instead of pursuing an impartial, fact-finding investigation, the SEC has focused exclusively on Thornburg's conduct, while relying on KPMG to build a case against Defendants. In September 2009, the SEC took two days of sworn testimony from KPMG senior manager Jennifer Hall, and one day of sworn testimony from KPMG lead engagement partner Cynthia Reinhart—both core members of KPMG's engagement team on the Thornburg audit. On March 3, 2011, the SEC conducted an interview of Ms. Hall; notably, the SEC did not insist on sworn testimony and did not ask a court reporter to transcribe Ms. Hall's statements. Shortly thereafter, on April 13, May 17 and May 19, 2011, the SEC conducted proffer sessions of Ms. Hall and Ms. Reinhart through their counsel and again, the SEC did not insist on sworn testimony or create a transcript. And in September 2012, the SEC conducted additional interviews of both Ms. Reinhart and Ms. Hall, again without creating a transcript.

The only logical inference to be drawn from these repeated unsworn statements is that the SEC was unsatisfied with the statements provided by these witnesses during their sworn testimony, but did not want to create a further discoverable record. Defendants should have the opportunity to prove up this inference and test the consistency of statements taken from KPMG witnesses during different stages of the investigation. For these reasons, and because the work product and related protections the SEC has asserted do not apply under these circumstances, and were waived by the SEC's use of the material it seeks to withhold, the Court should compel the SEC to produce the interview notes and memoranda, and the PCAOB transcripts.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Defendants Clarence Simmons, Larry Goldstone, and Jane Starrett are former Thornburg executives whom the SEC has accused of serious violations of the federal securities laws. The SEC alleges that the Defendants misled Thornburg's outside auditors, KPMG, by failing to

3

disclose various facts and circumstances about Thornburg's liquidity, including margin calls. See e.g., Compl. (Doc. 1), ¶¶ 4-5, 12, 51-52, 57-59, 83-84.   The events that give rise to this action took place primarily in February and March 2008 and arose in connection with Thornburg's 2007 year-end audit.   Almost immediately thereafter, the SEC began its investigation.   Less than a year later, the PCAOB, a non-governmental entity created by the Sarbanes-Oxley Act of 2002 to oversee the auditors of public companies, began investigating KPMG in connection with its 2007 year-end audit of Thornburg.  See Declaration of Andrew G. Schultz in Support of Defendants' Motion to Compel ("Schultz Decl.")  ¶ 3, Ex. A (PCAOB Witness Questionnaire).[1]   The PCAOB took sworn testimony of *eleven* KPMG employees who worked on the Thornburg engagement.  Id. ¶ 4, Ex. B (Withheld Documents List), at 2.   This included not only Ms. Reinhart (who testified from January 22 to 23, 2009, from June 30 to July 2, 2009, and from July 15 to 17, 2009), and Ms. Hall (who testified from May 18 to 21, 2009), (id. ¶¶ 5 ,6, Exs. C and D (Hall and Reinhart SEC Testimony), but also nine other KPMG employees.  Id. ¶ 4, Ex. B, at 2.

During the investigative phase that preceded the SEC filing its Complaint, the SEC also took sworn testimony of Ms. Reinhart and Ms. Hall—Ms. Hall on September 1 and 2, 2009 and Ms Reinhart on September 3, 2009.   Id. ¶ 10, Ex. H (SEC's Objections and Responses to Defendants' First Set of Interrogatories ("SEC Interrogatory Responses")), No. 32.   In those depositions, the SEC's lead investigator explicitly stated that he would not pursue certain lines of questioning that had already been covered by the PCAOB.  Id. ¶¶ 5, 6, Exs. C and D.   Thereafter, between December 14, 2009 and February 2, 2011, the SEC took six days of sworn testimony of Defendants Goldstone, Simmons, and Starrett.

---

[1] Notably, the SEC produced eight PCAOB witness questionnaires to the Defendants as part of its initial disclosures without asserting any privilege or otherwise objecting.

In addition to taking sworn testimony of Ms. Reinhart and Ms. Hall, the SEC conducted off-the record interviews of and procured proffers from these key KPMG employees.  In fact, after having taken sworn testimony from all three Defendants, the SEC circled back to KPMG and conducted an interview with Ms. Hall on March 3, 2011.  Id. ¶ 10, Ex. H , No. 32.  And after Defendants submitted their Wells statements to the SEC on May 11, 2011, in which they explained why there was no basis for an enforcement action against them, the SEC again returned to KPMG and obtained unsworn statements by Ms. Reinhart through attorney proffers on May 17 and 19, 2011 in an apparent effort to bolster its case.[2]  Id.  Finally, six weeks after the hearing on Defendants' motion to dismiss, the SEC once again approached KPMG and again conducted off-the-record interviews with Ms. Reinhart and Ms. Hall, on September 12, 2012 and September 13, 2012, respectively.  Id.

After the Complaint was filed, the SEC provided Defendants with Ms. Reinhart's and Ms. Hall's SEC sworn testimony transcripts, which expressly refer to Ms. Reinhart's and Ms. Hall's respective testimony before the PCAOB.  Id. ¶¶ 5, 6, Exs. C and D.  But not until November 7, 2012, when the SEC served its Responses to Defendants' First Set of Requests for the Production of Documents, did Defendants learn that the PCAOB had also taken testimony of nine other KPMG employees.  Id. ¶ 11, Ex. I  (SEC's Objections and Responses to Defendants' First Set of Requests for the Production of Documents ("RFP Responses") and ¶ 4, Ex. B, at 2.

Upon learning about the PCAOB testimony and sworn statements from key KPMG fact witnesses, Defendants contacted the SEC about its refusal to produce this evidence.  Id. ¶ 8, Ex. F (Letter from J. Kurzban to S. McKenna and G. Kasper (Nov. 8, 2012)).  Defendants' unsuccessful request that the SEC produce the PCAOB testimony led to a telephonic hearing

---

[2] E-mail correspondence produced by the SEC indicates that there was an additional proffer session with KPMG witnesses on April 13, 2011.  Id., ¶ 7, Ex. E.  The SEC has not disclosed in its Interrogatory Responses any such proffer on behalf of KPMG on April 13, 2011.

with the Court on November 9, 2012. At this hearing, Defendants argued that the privilege found in 15 U.S.C. § 7215(b)(5)(A) did not apply to PCAOB testimony transcripts because they had been "presented in connection with a public proceeding." The Court instructed the SEC to determine whether any of the staff involved in drafting the Complaint had relied upon the PCAOB testimony and if so, to produce it to Defendants' counsel. Furthermore, KPMG's counsel assured the Court that Defendants would be able to obtain all of the information they sought by deposing KPMG witnesses who had testified before the PCAOB.

On November 12, Defendants' counsel received the following email from the SEC, which summarily determined that the SEC staff involved in preparing the Complaint "did not use or rely" on KPMG's PCAOB testimony:

> We have spoken to staff that conducted the investigation and been told that they did not use or rely on Ms. Baucom's or any other KPMG employee's PCAOB testimony in preparing the complaint. The attorneys primarily responsible for drafting the complaint never even reviewed the transcripts. Thus, the PCAOB transcripts are protected from disclosure under 15 USC § 7215(b)(5)(A).

Id. ¶ 9, Ex. G (Email from S. McKenna to J. Valentine, et al. (Nov. 12, 2012)).

In response to this vaguely worded email and in an attempt to understand the basis for the SEC's determination, Defendants' counsel emailed the SEC on November 12, 2012 with several follow-up questions: (i) the names of the staff who conducted the investigation; (ii) the names of the persons who took part in drafting or reviewing the Complaint; (iii) whether there were any persons involved in either of these tasks with whom counsel had not spoken; (iv) what standard the SEC used to determine reliance on PCAOB testimony; (v) who were the attorneys primarily responsible for drafting the Complaint; (vi) what was the SEC's basis for voluntarily producing PCAOB transcripts in another pending case; and (vi) what distinguished that case from this one. Id. ¶ 9, Ex. G.

The following day, the SEC served its Interrogatory Responses, which disclosed for the first time that the SEC had also conducted the off-the record interviews of key KPMG employees

6

discussed above. Id. ¶ 10, Ex. H, No. 32.  Also on November 13, 2012, Defendants deposed the first of several key KPMG witnesses—manager Tara Baucom.  Ms. Baucom claimed, however, to have no memory of the events giving rise to the enforcement action or of her role in the Thornburg audit, responding with "I don't remember" or "I don't recall" to over 210 questions. Id. ¶ 12, Ex. J (Baucom Depo Tr.).  After Ms. Baucom's deposition, counsel for the SEC spoke to Defendants' counsel and represented that allegations in the SEC's Complaint that Defendants had identified as being unsupported by the sworn testimony of KPMG witnesses or any of the documents in the SEC's investigative file were supported not by the PCAOB testimony, but rather by the SEC's off-the-record interviews with KPMG employees.  Id. ¶ 9, Ex. G.  During that same conversation, counsel for the SEC said that he had spoken with the individuals who conducted the investigation (without naming them), and that each person informed him that he or she did not use or rely on the PCAOB transcripts in connection with his or her involvement with reviewing the Complaint.  Id.  He confirmed, however, that one of the attorneys who reviewed and edited the Complaint—Mr. Julian Robinson—did review the PCAOB transcripts.  Id.

Two days later, on November 15, 2012, Defendants deposed another core member on KPMG's Thornburg engagement team—associate Meg Jones.  Like Ms. Baucom, Ms. Jones also testified that she had no recollection of the relevant events, answering over 250 questions with "I don't remember" or "I don't recall."  Id. ¶ 13, Ex. K (Jones Depo Tr.).[3]  Yet, Ms. Baucom and Ms. Jones performed audit tasks over the course of many months in 2007 and 2008, and each recorded over six hundred hours on the audit.  Id. ¶ 14.

To date, the SEC has maintained the untenable position that the PCAOB testimony transcripts are exempt from disclosure, while providing no information as to the basis for its

---

[3] When lack of memory was not the issue, Ms. Jones (who has a master's degree in accounting) disclaimed any awareness of such basic facts as the financial crisis of 2007-2008.  See e.g., Id. ¶ 13, Ex. K at 6:6-19.

voluntary production of PCAOB transcripts in another pending enforcement action.  Id. ¶ 9, Ex. G.  Furthermore, notwithstanding the SEC's acknowledgement that it relied on off-the-record interviews with KPMG employees in preparing its Complaint, the SEC has declined to produce its memoranda and notes of its interviews and proffers invoking the work product doctrine, law enforcement privilege, and deliberative privilege.  Id. ¶ 11, Ex. I, No. 9.  Under its narrow view of its discovery obligations, the SEC has produced to the Defendants a mere three days worth of investigative testimony of Ms. Reinhart and Ms. Hall—and it has refused to produce an additional *fourteen days* worth of statements by Ms. Reinhart and Ms. Hall that it obtained through the PCAOB's testimony or its own interviews, not to mention an as yet undisclosed number of days of statements by nine other members of the KPMG audit team.

## II.   THE SEC SHOULD BE COMPELLED TO PRODUCE ITS NOTES AND MEMORANDA OF INTERVIEWS WITH KPMG WITNESSES

Federal courts have long held that "the scope of discovery [under Fed. R. Civ. P. 26] should be broadly and liberally construed to achieve full disclosure of all potentially relevant information."  Sanchez v. Matta, 229 F.R.D. 649, 654 (D.N.M. 2004).  "The federal discovery rules reflect judicial and legislative recognition that mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation."  Rivera v. DJO, LLC, 2012 U.S. Dist. LEXIS 126310, at *23 (D.N.M. Aug. 27, 2012) (internal quotations omitted).

### A.   The SEC Has Waived Any Privileges with Respect to the Interview Notes and Memoranda

The SEC contends that the interview notes and memoranda are protected from disclosure under the deliberative, law enforcement, and investigative privileges, as well as the work product doctrine.  However, the SEC's own conduct precludes it from asserting these doctrines here.  The SEC has affirmatively placed the contents of the interview notes and memoranda at issue by (1) filing the enforcement action, and (2) advancing claims in its Complaint and at oral argument based on witness statements documented in these notes.  The SEC has thereby implicitly waived

8

any privilege with respect to the materials.  See In re Grand Jury Proceedings John Doe Co. v. United States, 350 F.3d 299, 302 (2d Cir. 2003) (citing United States v. Nobles, 422 U.S. 225 (1975)) ("It is well established doctrine that in certain circumstances a party's assertion of factual claims can, out of considerations of fairness to the party's adversary, result in the involuntary forfeiture of privileges for matters pertinent to the claims asserted.").  As explained by the Second Circuit in John Doe, waiver of privilege is justified where, as here, "a party [is] advancing a claim to a court or jury . . . while relying on its privilege to withhold from a litigation adversary materials that the adversary might need to effectively contest or impeach the claim."  350 F.3d at 303; see also In re Grand Jury Proceedings, 616 F.3d 1172, 1185 (10th Cir. 2010) ("A litigant cannot use the work product doctrine as both a sword and shield by selectively using the privileged information or documents to prove a point but then invoking the privilege to prevent an opponent from challenging the assertion.") (internal citation omitted).  Principles of fundamental fairness dictate that Defendants should be able to review and challenge unsworn statements by Ms. Hall and Ms. Reinhart documented in the SEC's interview notes or proffers that purportedly form the basis of the SEC's fraud claims.

In Federal Deposit Insurance Corp. v. Wise, the District Court for the District of Colorado held based on nearly identical facts that plaintiff Federal Deposit Insurance Corporation ("FDIC") could not rely on any of a number of privileges asserted to withhold from defendants certain regulatory documents central to the FDIC's enforcement action against a savings and loan association.  139 F.R.D. 168, 172 (D. Colo. 1991).  As here, the FDIC had refused to produce certain documents generated or received by federal regulators on the grounds of attorney-client privilege, attorney work product doctrine, governmental deliberative process privilege, and governmental investigatory privilege—the same privileges the SEC asserts here. Plaintiff's Complaint contained "repeated allegations" based on withheld materials, including that the Office of Thrift Supervision disapproved of defendants' lending policies and

management, and that the regulators were misled concerning certain transactions.  Id. at 172.
The court concluded, as a threshold matter, that the FDIC impliedly waived all the asserted
privileges. Id. at 170, 172.

The court found that the FDIC waived the asserted privileges under a three-prong test: (i)
"assertion of the privilege is the result of some affirmative act, such as filing suit, by the
asserting party;" (ii) "through the affirmative action, the asserting party has placed the protected
information at issue by making it relevant to the case;" and (iii) "application of the privilege
would deny the opposing party access to information vital to its defense." Id. at 171.  The court
reasoned that not only had the FDIC affirmatively decided to file the action based in part on the
withheld regulatory documents, but it had "injected into this controversy the actions, knowledge,
and beliefs of the regulators, forcing these issues to the very forefront of the litigation." Id. at
172.  Under these circumstances, "allowing [the FDIC] to assert privileges to protect against
disclosure of [the withheld] documents would be manifestly unfair to defendants." Id.

The same result should obtain here.  The SEC filed an enforcement action against
Defendants and affirmatively used unsworn statements of KPMG witnesses both in the
Complaint and at oral argument to attempt to show that Defendants misled KPMG.  Specifically,
the SEC repeatedly alleged in the Complaint that information allegedly withheld from KPMG
"would have led [KPMG] to question Thornburg's [intent and ability] conclusion" and that
KPMG "would have disagreed with the company's OTTI conclusion." Compl. ¶¶ 52, 83; see id.
¶ 51.  At the hearing on Defendants' Motions to Dismiss, the SEC's counsel argued that "had
defendants been fulsome in their . . . disclosures to their auditors, [the auditors] would have
reached a different conclusion." Schultz Decl. ¶ 15, Ex. L (Motions Hr'g Tr. (July 31, 2012)) at
171:11-13; 75:20-23 ("[T]he many things that we have alleged that KPMG was not told in
connection with this audit . . . would have changed [KPMG's] audit opinion.")).  Like the FDIC
did in Wise, the SEC deliberately placed the actions, knowledge, and credibility of key witnesses

at the center of this controversy.  Defendants' ability to test these allegations by reviewing the withheld interview notes and memoranda is thus vital to Defendants' defense.  Wise, 139 F.R.D. at 172.

Although the SEC represented in its Interrogatory Responses that these contentions are supported by the sworn testimony of Ms. Hall and Ms. Reinhart (Schultz Decl. ¶ 10, Ex. H, Nos. 11 and 27), there are no statements to this effect in the transcripts of their sworn testimony. Thus, assuming that the SEC is not making unfounded allegations and has evidentiary support (as it must) for statements it made in its Complaint and at oral argument, this evidence must be contained in KPMG's off-the-record statements.[4]  The SEC has acknowledged as much.  Id. ¶ 9, Ex. G.  Because the SEC has injected into the litigation the KPMG auditors' alleged beliefs as to what they "would have" done had they been aware of allegedly undisclosed information, the SEC forfeited any privileges that might otherwise apply to the underlying evidence.  Nobles, 422 U.S. at 232, 239-40 (holding that the defendant had waived work product protection for interview notes taken by a defense investigator when he made "testimonial use" of those notes by calling the investigator to impeach the identification testimony of the prosecution's eyewitnesses).  It is fundamentally unfair and prejudicial for the SEC to deny Defendants access to its interview notes and memoranda which were the source of allegations in the Complaint.

---

[4] Similarly, the SEC stated in its Interrogatory Response No. 16 that "anticipated testimony by members of Thornburg's engagement team at KPMG" was the basis for the allegation that "when the three Defendants were asked by Thornburg's outside audit manager on or about February 27[th] whether there were any contractual breaches or noncompliance issues with Thornburg, Goldstone, Simmons, and Starrett each misrepresented and/or failed to disclose Thornburg's violation of its lending agreements." Id. ¶ 10, Ex. H, No. 16.  The only way the SEC could "anticipate" such specific testimony by KPMG witnesses is if these witnesses had previously discussed these issues with the SEC or the PCAOB .  No such testimony is contained in these witnesses' sworn SEC testimony transcripts.

**B.      The SEC's Interview Notes and Memoranda Are Not Exempt from Disclosure under Any Asserted Privilege Theory**

**1.      The Work Product Doctrine Does Not Protect from Discovery the SEC's Interview Notes and Memoranda**

Where, as here, the moving party "in no way requests any evaluative material that might go along with [the requested witness] statements," the information sought "[is] not absolutely immune." Duck v. Warren, 160 F.R.D. 80, 82 (E.D. Va. 1995).  Documents otherwise subject to work product protection are discoverable pursuant to Rule 26(b)(3)(A)(ii) of the Federal Rules of Civil Procedure when the party seeking discovery "has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means."  Such circumstances exist here.

**a.      Defendants Have a Substantial Need for the SEC Interview Notes and Memoranda**

The SEC has confirmed that central allegations in the Complaint about what KPMG "would have" done or concluded if they had been provided with allegedly withheld information rely on statements made by core members of the KPMG engagement team—Ms. Reinhart and Ms. Hall—during interviews and proffer sessions conducted in March and May of 2011, nearly one year before this case was filed.  Compl. ¶¶ 51-52, 83.  As noted, none of the sworn testimony given by Ms. Hall or Ms. Reinhart supports these and other SEC allegations (e.g., Compl. ¶ 58), and cannot constitute a "substantial equivalent" of the withheld interview notes and memoranda. The SEC confirmed that these allegations are based on the off-the-record interviews and/or proffers of KPMG witnesses.  Schultz Decl. ¶ 9, Ex. G.  Because the sworn testimony of these witnesses is inconsistent with their purported statements in off-the-record interviews, Defendants have shown a substantial need for the materials as the information they contain is likely central to Defendants' defense and may be used for impeachment as well as for refreshing the witnesses' recollection.  Duck, 160 F.R.D. at 82-83 (party who made a showing of a witness' inconsistent statements demonstrated substantial need for investigatory records of the witness' prior

statements, as this was "a good indication" that the withheld records "would reveal further inconsistencies"). Similarly, the court in <u>Patel v. Havana Bar</u>, No. Civ-A 10-1383, No. Civ-A 10-1383, 2011 WL 6029983, *8 (E.D. Pa. Dec. 5, 2011), held that "[g]iven the inconsistencies in [Plaintiff's] requests, Defendants could, at a minimum, demonstrate that they had reason to believe that there could be an inconsistency between the deposition testimony and the information contained in the witness statements." The same holds true here. Without the interview notes, Defendants will not be able to identify and impeach inconsistent deposition testimony. <u>Duck</u>, 160 F.R.D. at 83.

### b.   Defendants Cannot Obtain a Substantial Equivalent of the Withheld Materials

Defendants are unable to obtain a substantial equivalent of the investigatory interview notes and memoranda because this information was provided by Ms. Hall and Ms. Reinhart more than 18 months ago. It is not unreasonable to expect that these witnesses' recollections of the events that gave rise to this enforcement action have faded since they were interviewed by the SEC. Courts have recognized in evaluating privilege claims that "statements taken at a time more contemporaneous with the events at issue have unique value[.]" <u>SEC v. Shanahan</u>, No. 4:07CV270JCH, 2009 WL 1955747, at *3 (E.D. Mo. July 6, 2009). As became apparent during the recent depositions of Ms. Baucom and Ms. Jones, Defendants are at a significant disadvantage vis-à-vis the SEC in getting first-hand accounts from percipient KPMG witnesses. Ms. Baucom and Ms. Jones claimed they no longer remember what transpired in early 2008 or their roles in the critical events. Schultz Decl. ¶¶ 12, 13. And there is no reason to believe that other KPMG witnesses will be more forthcoming. Thus, Defendants do not have access to alternate sources of the same evidence.

This predicament is analogous to what the defendant confronted in <u>SEC v. Thrasher,</u> where the court held that the defendant demonstrated both sufficient need and undue hardship

because the SEC's notes related to interviewees who invoked the Fifth Amendment when defendant sought to depose them. See 92 CIV. 6987 (JFK), 1995 WL 46681, at *9 (S.D.N.Y. Feb. 7, 1995). As in Thrasher, Defendants here are precluded from obtaining first-hand accounts of the relevant facts because witness after witness is unable to recall events that gave rise to this enforcement action. Consequently, the work product rule is inapplicable because these witnesses are effectively "unavailable". See Xerox Corp. v. IBM Corp., 64 F.R.D. 367, 381-382 (S.D.N.Y. 1974) ("A party should not be allowed to conceal critical, non-privileged, discoverable information, which is uniquely within the knowledge of the party and which is not obtainable from any other source, simply by imparting the information to its attorney and then attempting to hide behind the work product doctrine after the party fails to remember the information.").

### 2.  SEC Interview Notes and Memoranda Are Not Exempt from Discovery under the Law Enforcement Privilege[5]

The law enforcement privilege is a qualified privilege which protects from public dissemination the contents of law enforcement investigatory files that would harm an agency's investigative or enforcement efforts. In re Sealed Case, 856 F.2d 268, 272 (D.C. Cir. 1988). The purpose of this privilege is to safeguard *ongoing* government investigations from interference through *premature* discovery of law enforcement information. Shanahan, 2009 WL 1955747, at *3; In re Sealed Case, 856 F.2d at 272. The government bears the threshold burden of formally

---

[5] In its RFP Responses, the SEC invoked "law enforcement and/or investigatory privileges" as supporting nondisclosure of the interview notes and memoranda. Schultz Decl. ¶ 11, Ex. I, No. 9. Courts do not distinguish between these privileges and use the terms "law enforcement" and "investigatory" privilege interchangeably. See, e.g., Martinez v. Halabi, No. 09-61624 CIV, 2011 WL 9175560, *1 (S.D. Fla. Nov. 10, 2011) ("Federal common law recognizes a qualified privilege that protects disclosure of information related to criminal investigations, known as the 'law enforcement' or 'investigative files' privilege."); Pegoraro v. Marrero, 281 F.R.D. 122, 130 (S.D.N.Y. 2011) (analyzing the "law enforcement investigative privilege").

claiming the law enforcement privilege,[6] which the SEC failed to do.  In determining whether to allow disclosure of materials generated during an investigation, courts consider a number of factors, including: (1) whether the party seeking discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question, and whether the investigation has been completed; (2) whether the information sought is available through other discovery or from other sources and the importance of the information sought to the plaintiff's case; (3) the extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information; and (4) whether the information sought is factual or evaluative.[7]  Everitt v. Brezzel, 750 F. Supp. 1063, 1066-67 (D. Colo. 1990) (citing Frankenhauser v. Rizzo, 59 F.R.D. 339, 344 (E.D. Pa. 1973)).  Given the qualified nature of this privilege and its function as a "derogation of the search for the truth," courts weigh these factors with "an eye towards disclosure."  Torres v. Kuzniasz, 936 F. Supp. 1201, 1210 (D.N.J. 1996).  With respect to the SEC's interview notes, all the relevant factors weigh heavily in favor of disclosure.

### a.     There is No Pending Criminal Investigation or Proceeding to Conceal from Public View

"[W]hether the party seeking discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question" is the most important factor in determining whether the law enforcement privilege applies.  Shanahan, 2009 WL 1955747, at *2.  This is because "the primary concern over disclosure of law enforcement reports is to prevent a party who is himself the subject of a criminal investigation

---

[6] See, e.g., In re Sealed Case, 856 F.2d at 271 (The law enforcement privilege must be asserted by the head of the department; assertion must be based on personal consideration by that official; assertion must include an explanation of why the material  properly falls within the scope of the privilege).
[7] Several factors not relevant to this case have been omitted.

from obtaining premature discovery of law enforcement actions that may be taken against him." Id.   In Shanahan, the SEC asserted law enforcement privilege to protect from disclosure memoranda of interviews conducted with several witnesses in a criminal investigation related to option back-dating which conduct was also at issue in the civil case. Id. at *2.   Because the criminal investigation had concluded and the indictments had been dropped, the court held that the law enforcement privilege did not apply. Id. at *3.   The court reasoned that "[w]here there is no prospect of law enforcement proceedings being taken, or where the enforcement action has already been taken . . ., the rationale for nondisclosure does not apply, and the files should be made available." Id.   The government thus could not demonstrate that "disclosure could reasonably be expected to interfere with enforcement proceedings." Id.   Here, the SEC's civil investigation has concluded, and Defendants are unaware of any pending criminal investigation.

> ### b.     The Importance of the Notes and Memoranda and Lack of Alternative Sources Weigh Strongly in Favor of Disclosure

As discussed above, Defendants seek memoranda and notes of interviews and proffer sessions conducted with Ms. Hall and Ms. Reinhart long before these witnesses were made available for depositions in this case (both depositions are scheduled for December 2012).   In Shanahan, the court explained that "statements taken at a time more contemporaneous with the events at issue have *unique value*" and that "neither [other documents summarizing the interviews], nor the taking of depositions of the witnesses identified in the Commission's privilege log, provides an acceptable substitute for the information contained in the summaries of interviews taken several years ago." 2009 WL 1955747, at *3 (emphasis added).   The KPMG witnesses deposed by Defendants to date had no substantive recollection of the Thornburg engagement (Schultz Decl. ¶¶ 12, 13), and even if Ms. Hall's and Ms. Reinhart's memories are better than those of the KPMG witnesses already deposed, the information contained in interview

notes taken more than eighteen months ago certainly has "unique value" and is otherwise unavailable to Defendants.

### c.    Disclosure Will Not Thwart SEC's Investigative Efforts

Because there is no longer an ongoing investigation, disclosure of the interview notes and memoranda cannot possibly harm that effort.  Nor will production of the notes likely discourage KPMG witnesses from continuing to cooperate with the SEC.  The SEC has already produced some testimony from Ms. Hall and Ms. Reinhart, and thus it cannot show how providing Defendants additional statements from them will discourage cooperation and interfere with its enforcement proceedings.  Miller v. U.S. Dep't of Agric., 13 F.3d 260, 263 (8th Cir. 1993) (The government must make a "specific showing of why disclosure . . . could reasonably be expected to interfere with enforcement proceedings.").  In addition, because the SEC has already provided Defendants with the interviewees' identities (Schultz Decl. ¶ 4, Ex. B at 2), disclosure will not be detrimental to either the SEC's law enforcement efforts or to the witnesses.

### d.    The Notes and Memoranda Are Factual, Not Evaluative

Defendants seek only factual information provided by KPMG witnesses in interviews and proffer sessions, and not the SEC's analysis of the information or legal theories.  In Shanahan, the court concluded that summaries of investigative interviews prepared by the SEC were discoverable because they contained factual material.  2009 WL 1955747, at *3; see also Ford v. Philips Elecs. Instruments Co., 82 F.R.D. 359, 360 (E.D. Pa. 1979) ("The courts have consistently held that the work product concept furnishes no shield against discovery . . . of the Facts [sic] that the adverse party's lawyer has learned[.]").  Witness statements transcribed in the SEC's notes and memoranda do not become privileged merely because these records were prepared by attorneys.  In re Adler, Coleman, Clearing Corp., No. 95–08203 JLG, 1999 WL 1747410, at *2 (S.D.N.Y. Dec. 8, 1999) ("Neither the investigatory privilege nor the attorney work product doctrine ordinarily precludes discovery of factual . . . information, as opposed to

17

mental impressions or opinions, even if such information is embodied in privileged materials or serves as the basis for opinions of the investigator or attorney involved."); Astra Aktiebolag v. Andrx Pharms., Inc., 208 F.R.D. 92, 106-07 (S.D.N.Y. 2002) (a party may not withhold otherwise discoverable factual information by imparting it to an attorney and then claiming privilege).  The same conclusion is warranted here.

### 3.   The SEC Interview Notes and Memoranda Are Not Exempt from Discovery Under the Deliberative Process Privilege

The deliberative process privilege protects documents "reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." Dep't of Interior v. Klamath Water Users Protective Ass'n, 532 U.S. 1, 8 (2001).  To qualify for protection under this privilege, a document should reflect the government's "deliberative or policy-making processes," rather than "purely factual, investigative matters." Trentadue v. Integrity Comm., 501 F.3d 1215, 1227 (10th Cir. 2007) (portions of a Department of Justice cover letter stating historical facts about the government's investigation into an inmate's death and listing individuals involved were discoverable).  Thus, the government cannot cloak factual material in the privilege nor can it withhold subjective discussions that were later adopted or incorporated into its final decision. SEC v. Collins & Aikman Corp., 256 F.R.D. 403, 416 (S.D.N.Y. 2009).

Here, the withheld interview notes and memoranda are of critical importance to Defendants given the SEC's use of this material in the Complaint.  In addition, these documents contain *factual* material—i.e., KPMG auditors' answers to questions about the Thornburg audit and restatement—and, as such, do not fall within the scope of the deliberative process privilege. Silverstein v. Fed. Bureau of Prisons, No. 07-cv-02471-PAB-KMT, 2009 WL 4949959, at *7 (D. Colo. Dec. 14, 2009) ("[T]he deliberative process privilege does not protect 'memoranda consisting only of compiled factual material or purely factual material contained in deliberative

memoranda and severable from its context.'"); In re Sealed Case, 121 F.3d 729, 737 (D.C. Cir. 1997) (same).[8]  In sum, there is nothing "deliberative" about records of statements by KPMG witnesses, which the SEC has used as the evidentiary support of its fraud allegations against Defendants.

### III.   THE SEC SHOULD BE COMPELLED TO PRODUCE TESTIMONY TRANSCRIPTS AND SWORN STATEMENTS OF KPMG EMPLOYEES TAKEN BY THE PCAOB IN 2009

The SEC has asserted the PCAOB privilege to withhold from Defendants transcripts of KPMG employees' testimony taken by the PCAOB in 2009.  Because the SEC has relied on these same transcripts in investigating and preparing its case, and because the SEC has not asserted the privilege in another pending case, there is no basis for applying the privilege here, and it would be manifestly unfair to Defendants to do so.

#### A.   The PCAOB Privilege Is Inapplicable to Materials "Presented in Connection with a Public Proceeding" and Has Also Been Waived by the SEC

The Sarbanes-Oxley Act of 2002 established the PCAOB to oversee registered public accounting companies such as KPMG by (1) conducting a "continuing program of inspections to assess the degree of compliance of each registered public accounting firm" (15 U.S.C. § 7214), and (2) investigating and sanctioning accounting firms for violations of applicable laws and professional standards (15 U.S.C. § 7215).  Congress enacted a confidentiality provision for certain documents and information generated in the course of PCAOB investigations, but created an exception for materials presented in connection with a public proceeding:

> "[A]ll documents and information prepared or received by or specifically for the Board, and deliberations of the Board and its employees and agents, in connection with an inspection under section 104 [15 USCS § 7214] or with an investigation under this section, shall be confidential and privileged as an evidentiary matter

---

[8]  To the extent that the interview notes and memoranda contain the mental impressions, conclusions, legal theories, or opinions of counsel, the SEC can redact this information pursuant to Rule 26(b)(3)(B) of the Federal Rules of Civil Procedure.

> (and shall not be subject to civil discovery or other legal process) in any proceeding in any Federal or State court or administrative agency, and shall be exempt from disclosure, in the hands of an agency or establishment of the Federal Government, under the Freedom of Information Act (5 U.S.C. 552a), or otherwise, *unless and until presented in connection with a public proceeding* [.]"

15 U.S.C. § 7215(b)(5)(A) (emphasis added); see also PCAOB Rule 5108(b).

Although no court has specifically construed the scope of the PCAOB privilege in the context of an enforcement action or the "presented in connection with a public proceeding" exemption, this Court may be guided by the legislative history underlying the PCAOB privilege. This history reveals that the primary purpose of the privilege was to prevent "outsiders" (e.g., private plaintiffs) from using PCAOB materials against registered public accounting firms and/or their audit clients in private securities suits and thus discouraging cooperation by audit firms with PCAOB investigations.[9] Here, plaintiff is the SEC—a government agency bringing a public enforcement action against KPMG's former clients with the significant benefit of near-contemporaneous PCAOB testimony from almost every member of the Thornburg engagement team. Meanwhile, Defendants are asked to make do with whatever these witnesses can still remember three years later, which, as it turns out, is next to nothing. The PCAOB privilege was never intended to be used in such a strategic and unfair manner.

During the telephonic hearing on November 9, 2012, this Court found that the PCAOB testimony transcripts were "presented in connection with a public proceeding" if the SEC used or otherwise relied on information from those transcripts in preparing the Complaint. Because such

---

[9] The Senate Banking Committee explained the purpose of the PCAOB privilege as follows: "Committee witnesses also emphasized that information gathered by Board investigators should be 'privileged from outsiders' during the [PCAOB] investigative process[.]" See S. Rep. No. 107-205 (2002). As the issuer whose audit formed the basis for the PCAOB investigation of KPMG, Thornburg (and the Defendants) can hardly be considered "outsiders" from whom Congress intended to shield PCAOB materials. This commonsense understanding was reflected in the comments to PCAOB's proposed Rule 5108 submitted by at least one major accounting firm. Schultz Decl. ¶ 16, Ex. M (PriceWaterhouse Comment Letter dated Aug. 18, 2003).

information has clearly informed the Complaint's allegations, the PCAOB privilege does not apply and the SEC must produce these materials to Defendants.

> **1.     The SEC Relied on PCAOB Testimony in Connection with the Present Enforcement Action, Thereby Waiving the Privilege**

Because the Commission expressly relied on the PCAOB testimony in its investigation and because the enforcement action is "a public proceeding," the SEC has waived the PCAOB privilege.  The SEC represented to this Court during the telephonic hearing on this issue that it would inquire in good faith as to whether the Staff relied on the PCAOB testimony transcripts in bringing this action.  In its effort to prevent disclosure of the PCAOB transcripts, however, the SEC now reports in finely-minced language that the staff members who were "primarily" responsible for drafting the complaint did not review the PCAOB transcripts and that two staff members who did review those transcripts did not use or rely upon them  in reviewing the Complaint—even though it concedes that its lead investigator both reviewed the PCAOB transcripts and reviewed and edited the Complaint before it was filed.  Id. ¶ 9, Ex. G (Email Exchange between J. Kurzban and S. McKenna, et al. (Nov. 14-15, 2012)).  In making this argument, the SEC ignores the practical realities of the investigative processes, draws an artificial distinction between drafting and reviewing a complaint, and rests on the fiction that an SEC investigator can compartmentalize in his own mind the information he learned from the PCAOB testimony when prosecuting his case.  Notably, this investigator signed the verification to the SEC's responses to the Defendants' interrogatories—clear evidence of his central role in bringing this case.  Id. ¶ 10, Ex. H, at 30.  However the SEC chooses to interpret "reliance," it is undisputed that the testimony contained in the PCAOB transcripts informed the SEC investigation, which ultimately led to the SEC's decision to bring this enforcement action.  By virtue of the investigative process, the PCAOB transcripts were "presented" in connection with

this action.  Under these circumstances, the SEC cannot credibly claim the Complaint does not reflect information obtained from the PCAOB transcripts.

For instance, during the SEC's investigation, the investigative staff expressly declined to question Ms. Reinhart or Ms. Hall on subjects covered in their PCAOB testimony.  Id. ¶¶ 5, 6, Exs. C and D.  Both Ms. Reinhart and Ms. Hall were questioned during the SEC investigation by Mr. Robinson, an SEC attorney who reviewed the PCAOB transcripts and who—according to the SEC—reviewed the Complaint.  See supra, at 7.  During Ms. Reinhart's SEC testimony, the SEC specifically relied on the witnesses' prior PCAOB testimony and exhibits in deciding not to ask her certain questions.  Schultz Decl. ¶ 6, Ex. D at 9:20-11:12 ("I'm going to skip certain questioning that has been conducted by the PCAOB").  The SEC then introduced as an exhibit the questionnaire that Ms. Reinhart filled out for her PCAOB testimony and asked her to confirm that she had completed it and it was accurate.  Id. ¶ 6, Ex. D at 11:13-13:7.  Significantly, Ms. Reinhart noted that she provided testimony to the PCAOB "on several different occasions . . . this past year" and then listed eight different dates on which she testified.  Id. ¶ 6, Ex. D at 6:23-7:3; 9:20-24.

The SEC investigative staff went through the same exercise during Ms. Hall's testimony, informing her that the SEC interview would not cover the same ground as her PCAOB testimony (id. ¶ 5, Ex. C at 12:2-14:1) and introducing as an exhibit her PCAOB questionnaire.  Id. ¶ 5, Ex. C at 14:2-15:17.  In addition, during her SEC testimony, Ms. Hall affirmed that she had "discussed going concern work papers," a key issue in this litigation, "at length" during her PCAOB testimony.  Id. ¶ 5, Ex. C at 88:2-4.  The testimony of Ms. Reinhart and Ms. Hall during the SEC investigation highlights the manner in which the SEC investigative staff built their knowledge of the case on information contained in the PCAOB testimony.  The SEC's position—that its investigators who read the PCAOB testimony did not use or rely on that testimony in preparing the Complaint—rests on a fiction.

That the PCAOB testimony was an integral and inextricable part of the SEC's investigation is further illustrated by the SEC's decision not to take investigative testimony of any of the KPMG employees who played central roles in the events at issue (including core members of the engagement team and KPMG's national office) other than Ms. Reinhart and Ms. Hall. Indeed, it is highly unusual for the SEC to bring an accounting and disclosure case such as this based on the testimony of only two auditors. This decision underscores the SEC's reliance on the PCAOB testimony.[10]   The SEC's disclosure that nine additional KPMG employees testified before the PCAOB makes abundantly clear that it did not gather more complete and thorough evidence from KPMG because the PCAOB had already done so.

### 2.   The SEC Waived the PCAOB Privilege by Producing to Defendants Other Documents Related to the PCAOB Investigation

The SEC cannot contend that the PCAOB privilege applies when it has produced as part of its investigative file a set of documents prepared by KPMG specifically for the PCAOB, which are subject to the privilege, as indicated by the designation "Privileged and Confidential Pursuant to Section 105(b)(5)(A) of the Sarbanes-Oxley Act of 2002." For example, the SEC's production contained responses to PCAOB Witness Background Questionnaires by eight KPMG employees who performed work on the Thornburg audit—the same witnesses who provided sworn PCAOB testimony now sought by the Defendants (including Ms. Baucom). See Schultz Decl. ¶ 3, Ex. A (PCAOB Witness Questionnaire). By producing the PCAOB witness questionnaires in its investigative file, the SEC has effectively conceded that it relied on PCAOB materials in its investigation. More importantly, the SEC has waived the privilege as to other

---

[10] For instance, during her testimony to the SEC Ms. Reinhart specifically identified Ms. Baucom, a manager on the Thornburg engagement, as one of the people "primarily" assigned to handle liquidity and going concern issues. Schultz Decl. ¶ 6, Ex. D at 53:3-10. Without access to Ms. Baucom's prior PCAOB testimony, the SEC would have undoubtedly followed up with a deposition of Ms. Baucom given that Thornburg's alleged nondisclosure of liquidity and going concern-related problems were central to the SEC's claims against the Defendants.

PCAOB-related documents in its investigative file, including the transcripts.  United States v. Bernard, 877 F.2d 1463, 1464-65 (10th Cir. 1989) (holding that where defendant disclosed to a third party legal advice relating to a transaction, privilege was waived generally as to all communications between the defendant and his attorney pertaining to the transaction).  There is no principled reason for producing KPMG witnesses' written responses to PCAOB questions while claiming privilege as to their oral testimony.

**B.    The SEC Has Produced PCAOB Transcripts in Other Enforcement Proceedings and Should not Be Permitted to Rely Upon Privileges It Has Inconsistently Asserted**

The SEC cannot assert any compelling reason why it opposes production of the PCAOB transcripts and sworn statements in this case.  This is particularly striking given that the SEC recently voluntarily produced PCAOB transcripts under similar circumstances in a case pending in the Central District of California.  See Schultz Decl. ¶ 17, Ex. N (Objections of Plaintiff Securities and Exchange Commission to Special Master Order Granting Defendant Tekulve's Motion to Compel Responses to Second Set of Interrogatories, SEC v. Jensen et al., No. 2:11-cv-05316-R-AGR  (C.D. Cal. Oct. 9, 2012) [ECF 93] (stating that "the Commission produced transcripts, exhibits and correspondence" from the PCAOB investigation)).

The inconsistency in the SEC's implementation of its policies is particularly stark here, in light of the fact that the two proceedings are unfolding contemporaneously.  This timing forecloses the possibility that the inconsistency is the result of any change in the SEC's policies subsequent to its disclosure of the PCAOB transcripts in Jensen.  There is no justification for the SEC's different treatment of Defendants in this case, and the SEC has declined to provide any. Schultz Decl. ¶ 9, Ex. G (Email Exchange between J. Kurzban and S. McKenna, et al. (Nov. 14-15, 2012)).  As a federal law enforcement agency, the SEC should not take inconsistent positions in enforcement proceedings.  See United States v. One 1985 Mercedes, 917 F.2d 415, 421 (9th Cir. 1990) (noting that "a civil administrative challenge to the propriety of government agency

conduct questions the fairness and consistency of discretion in the implementation of general government policy. Agency policy must be implemented and rules enforced consistently and predictably.") (citing Morton v. Ruiz, 415 U.S. 199, 232 (1974)). Yet here the SEC has refused to explain what distinguishes Jensen from the present case: in response to Defendants' queries on this point, the SEC has remained evasive. Schultz Decl. ¶ 9, Ex. G ("As for SEC v. Jensen, regardless of the circumstances there . . . it has no impact on whether we could or would present the PCAOB transcripts in a public proceeding here."). Without contesting that it has not asserted the PCAOB privilege in Jensen, and having given no compelling reason for why it is doing so here, the SEC should be precluded from asserting a privilege which it has not invoked uniformly.

**C.     The SEC Should Be Compelled to Produce PCAOB Transcripts in the Interest of Fundamental Fairness**

As a matter of fundamental fairness, the SEC should not be allowed to bring a case against Defendants in which it obtained and reviewed sworn testimony against Defendants from eleven key witnesses, without disclosing that testimony to Defendants. In this regard, the standards applied by federal courts for overcoming analogous governmental privileges are instructive. In assessing applicability of such privileges, courts balance the government's interest in nondisclosure against the need of a particular litigant for access to the privileged information, considering a number of factors, including: (1) whether the evidence is highly relevant and vital to the requesting party's case; and (2) whether the evidence is unavailable through other discovery. See e.g., In re Sealed Case, 856 F.2d at 272. The PCAOB privilege should be waived because both circumstances are present in this case.

With regard to the first element—the importance of the PCAOB transcripts to Defendants' case—because the SEC has asserted, as a theory of liability, that Defendants deliberately concealed information from KPMG, determining what the KPMG employees have said under oath about their access to information, the thoroughness of their audit, and their

interactions with Defendants is highly relevant and potentially vital to Defendants' defense of this case. Silverman v. Motorola, Inc., No. 07 C 4507, 2010 WL 4659535 (N.D. Ill. June 29, 2010), at *4 (N.D. Ill. June 29, 2010) ("Given that the PCAOB conducted an investigation of KPMG to determine whether its audits complied with professional standards and that the PCAOB made specific findings regarding deficiencies associated with KPMG's auditing procedures of the [challenged] transactions, [the requested PCAOB] documents are directly relevant to this litigation."). The PCAOB testimony is important not only because it may contain evidence supporting Defendants' case, it also is relevant for purposes of testing—and possibly impeaching—the credibility of key fact witnesses whose testimony will be used against Defendants. Finally, the Complaint includes allegations that are unsupported elsewhere in the investigative record produced by the SEC. Schultz Decl. ¶ 9, Ex. G.

   With regard to the second element—unavailability of substantially equivalent evidence from other sources—it has become abundantly clear that Defendants will not be able to obtain the information contained within the PCAOB transcripts and sworn statements from any other source. Contrary to the assurances made to this Court by KPMG's counsel at the telephonic hearing concerning the discoverability of PCAOB transcripts, Defendants have been unable to get substantive testimony from KPMG witnesses due to their complete memory loss. The PCAOB testimony taken in 2009 is far more contemporaneous with the events in question (which all occurred in 2008) and will undoubtedly be more detailed and more accurate than the testimony taken during the depositions of the same witnesses in 2012. Similarly, testimony taken by the witnesses' regulatory overseer and prior to a protracted legal battle will likely be more candid and explanatory than any testimony taken in the present adversarial proceedings. Thus, the PCAOB transcripts have "unique value" and depositions of these witnesses now can not provide an "acceptable substitute for information [obtained] several years ago." Shanahan, 2009 WL 1955747, at *3. If Ms. Baucom's and Ms. Jones' stunningly poor recollection is any

indication of the type and quality of testimony that will be given in the upcoming depositions of other KPMG employees, Defendants will be severely and unfairly prejudiced in presenting their defense unless they can review the PCAOB transcripts from three years ago.

Allowing the SEC to assert privileges to protect against disclosure of the PCAOB transcripts and sworn statements would be "manifestly unfair" to Defendants.  Wise, 139 F.R.D. at 172.  The SEC is attempting, with KPMG's full cooperation, to deny Defendants access to KPMG witness statements that form the basis of the critical allegations in the Complaint.  As a result of the SEC's obfuscation and the collective amnesia afflicting key KPMG witnesses, the Defendants are left in the dark.  This Court should not countenance discovery tactics that serve no purpose other than to ensure that the SEC maintains the upper hand in prosecuting its case.

## IV.   CONCLUSION

Defendants respectfully ask this Court to compel the SEC to produce notes and memoranda of interviews and proffer sessions of KPMG witnesses, as well as PCAOB testimony transcripts.

RODEY, DICKASON, SLOAN, AKIN & ROBB, P.A.

By:_____/s/ *Andrew G. Schultz*_____
       Bruce Hall
       Andrew G. Schultz
P. O. Box 1888
Albuquerque, NM 87103
Telephone:      (505) 765-5900
Facsimile:       (505) 768-7395
E-mail:          bhall@rodey.com
                aschultz@rodey.com

*Attorneys for Defendants Larry Goldstone, Clarence G.*
*Simmons, III, and Jane E. Starrett*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on November 28, 2012, Defendants' *Motion to Compel Production of PCAOB Deposition Transcripts and Plaintiff's Notes and Memoranda of Interviews With Non-Party Witnesses* was electronically filed with the Clerk of Court using the CM/ECF system that that will send notification of such filing to all counsel of record.

Michael H. Hoses
Assistant United States Attorney
P.O. Box 607
Albuquerque, NM 87103
Michael.hoses@usdoj.gov

Stephen C. McKenna
Gregory Kasper
Dugan Bliss
Securities & Exchange Commission
1801 California Street, Suit 1500
Denver, CO 80202
mckennas@sec.gov
kasperg@sec.gov
blissd@sec.gov

WILMER CUTLER PICKERING
  HALE & DORR LLP
    Randall R. Lee
    Jessica Freiheit Kurzban
    Peiyin Patty Li
350 South Grand Ave., Suite 2100
Los Angeles, CA 90071
Telephone:    (213) 443-5300
Facsimile:    (213) 443-5400
randall.lee@wilmerhale.com
jessica.kurzban@wilmerhale.com
patty.li@wilmerhale.com
WILMER CUTLER PICKERING
  HALE & DORR LLP
    John A. Valentine
1875 Pennsylvania Avenue, NW
Washington, DC 20006
Telephone:    (202) 663-6000
Facsimile:    (202) 663-6363
john.valentine@wilmerhale.com

WILMER CUTLER PICKERING
  HALE & DORR LLP
    Alanna G. Buchanan
    Joel Fleming
950 Page Mill Road
Palo Alto, California 94304
Telephone:    (650) 858-6000
Facsimile:    (650) 858-6100
alanna.buchanan@wilmerhale.com
joel.fleming@wilmerhale.com

RODEY, DICKASON, SLOAN, AKIN & ROBB, P.A.
By ___*/s/ Andrew G. Schultz*_____
    Andrew G. Schultz