IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

|  |  |  |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | ) | |
|  | ) | |
| Plaintiff, | ) | |
|  | ) | |
| v. | ) | No. 1:12-cv-00257-JB-LFG |
|  | ) | |
| LARRY GOLDSTONE, CLARENCE G. SIMMONS, III, and JANE STARRETT, | ) ) | |
|  | ) | |
| Defendants. | ) | |
|  | ) | |

**NON-PARTY KPMG LLP'S MOTION TO QUASH, IN PART, OR MODIFY
SUBPOENA TO PRODUCE DOCUMENTS, AND FOR PROTECTIVE ORDER**

Non-party KPMG LLP ("KPMG") hereby moves the Court, pursuant to Federal Rules of

Civil Procedure 45(c)(3) and 26(c)(1), for an order quashing, in part, or modifying the Subpoena

to Produce Documents, dated September 18, 2012, served upon KPMG (the "Subpoena") by

Defendants Larry Goldstone and Clarence Simmons ("Defendants"),[1] to the extent it seeks

documents and information protected under the privilege created by Congress in Section

105(b)(5)(A) of the Sarbanes-Oxley Act, 15 U.S.C. § 7215(b)(5)(A) (the "Section 105

Privilege"), and for a protective order precluding any discovery in this action of documents and

information protected by the Section 105 Privilege.  As explained in detail below,

Section 105(b)(5)(A) provides accounting firms and their professionals who might become the

subject of an investigation by the Public Company Accounting Oversight Board (the "Board" or

---

[1]      A copy of the relevant excerpts of the Subpoena is attached as Exhibit 1 to the
Declaration of George A. Salter, dated November 30, 2012 ("Salter Declaration"), submitted in
support of this motion.

the "PCAOB") with a privilege that – absent the subject's consent – bars civil discovery of documents and information prepared in connection with the PCAOB's investigation, whether discovery is sought from the accounting firm that is the subject of the investigation or from the Securities and Exchange Commission ("SEC").[2]   Under the Section 105 Privilege, there is no legal basis for the SEC to disclose PCAOB information without such consent.

## I.   INTRODUCTION

In this motion, KPMG raises an issue of overriding importance to accounting firms nationwide and to the system of public oversight of the accounting profession established by Congress in the Sarbanes-Oxley Act of 2002 ("Act").[3]   The Sarbanes-Oxley Act established the PCAOB to oversee the performance of accounting firms and ensure the quality of their audits of public companies.   As detailed below, the PCAOB was empowered to conduct annual inspections of accounting firms and to conduct investigations of potential violations of auditing standards.   But a critical part of the regulatory scheme established by Congress, expressly set out

---

[2]   Defendants have filed a motion to compel the SEC to produce copies of privileged and confidential testimony taken by the PCAOB of KPMG witnesses.   *See* Defendants' Motion to Compel Production of PCAOB Deposition Transcripts and Plaintiff's Notes and Memoranda of Interviews with Non-Party Witnesses, dated November 28, 2012, Docket #90 ("Defendants' Motion" or "Defts' Motion").   For the reasons described herein, the PCAOB transcripts sought by Defendants' Motion are protected from disclosure by the Section 105 Privilege and KPMG requests that the Court issue the requested protective order to prevent disclosure of the transcripts. KPMG notes that if the Court grants the relief requested by KPMG in the present motion, it will dispose of the issues raised by Defendants' Motion related to PCAOB materials.

[3]   KPMG makes this motion without prejudice to its other objections to the Subpoena, as reflected in KPMG's Objections and Responses, dated October 2, 2012.   (A copy of the relevant excerpts of Non-Party KPMG's Objections and Responses is filed herewith as Exhibit 2 to the Salter Declaration.)   The parties have conferred on the issue raised in the instant motion, have failed to reach agreement, and the issue is ripe for the Court's consideration.   As to other issues that may be raised by the Subpoena, counsel continue to discuss the scope of the Subpoena and KPMG's potential production, if any, and it is not yet clear whether there will be any need for judicial intervention.

in Section 105(b)(5)(A) of the Act, guarantees the confidentiality of PCAOB inspections and investigations.   Section 105(b)(5)(A) provides that documents and information prepared in connection with Board investigations "shall be confidential and privileged as an evidentiary matter (and shall not be subject to civil discovery or other legal process) in any proceeding in any Federal or State court," unless the subject of the investigation consents to a public hearing. 15 U.S.C. §§ 7215(b)(5)(A), 7215(c)(2).   This statutory scheme reflects a deliberate policy choice by Congress to foster a cooperative relationship between the PCAOB and the accounting firms by guaranteeing that PCAOB inspections and investigations would remain confidential – and would not become fodder for discovery in private litigation – unless and until a final determination by the Board, upheld after review by the SEC, that there had been a violation of law or auditing standards.   There has been no such determination in this instance, and there is no basis for permitting the discovery sought by Defendants.

KPMG is not a party to this case.   The SEC's Complaint alleges that the Defendants – the Chief Executive Officer, Chief Financial Officer, and Chief Accounting Officer of Thornburg Mortgage, Inc. – fraudulently misrepresented Thornburg's financial condition, margin call activity, and liquidity in violation of the Securities Act of 1933, the Securities Exchange Act of 1934, and the rules promulgated thereunder.   KPMG was Thornburg's independent auditor at the relevant time.

During the SEC's investigation of this case, KPMG produced over 1.5 million pages of documentation concerning its audits of Thornburg and it is our understanding that the SEC has, in turn, produced all of that material to the Defendants.   However, the Subpoena served on KPMG by Defendants also demands that KPMG produce, *inter alia*, any documents that relate to

any PCAOB investigation with respect to its audits of Thornburg.  In addition, Defendants seek discovery from the SEC of certain PCAOB investigative information provided to the SEC by the PCAOB.  As detailed below, any such PCAOB investigation documents are squarely protected by the Section 105 Privilege, and are not subject to discovery by Defendants in this proceeding.

This motion presents the Court with issues of first impression raised by Defendants' efforts to violate KPMG's Section 105 Privilege.  The materials that Defendants seek from KPMG and the SEC regarding the PCAOB's Thornburgh-related investigation are privileged and confidential under the express mandate of Congress, and the PCAOB's disclosure of these materials to the SEC does not in any way undermine the confidentiality to which they are entitled. On the contrary, Section 105(b)(5)(B) of the Act, 15 U.S.C. § 7215(b)(5)(B), while authorizing the PCAOB to make its investigatory materials available to the SEC, expressly provides that the SEC "shall maintain such information as confidential and privileged."[4]  Absent consent of the auditor who holds the privilege, the SEC has no authority under the statute to disregard the Section 105 Privilege and disclose confidential materials while a PCAOB investigation or disciplinary proceeding is pending.

## II.     RELEVANT BACKGROUND

### A.     The PCAOB and its Investigative and Disciplinary Process

In Title I of the Sarbanes-Oxley Act, Congress established the PCAOB and charged it with "oversee[ing] the audit of companies that are subject to the securities laws . . . in order to

---

[4]     Despite this clear statutory language, Defendants in their recently filed Motion have argued that under Section 105(b)(5)(A), the SEC waived the privilege when it "presented" the confidential information "in connection with a public proceeding" by allegedly relying on it in the Complaint.  But there is no support for Defendants' position in the statute or its legislative history, and it is inconsistent with the policies adopted by Congress in creating the PCAOB. *See* Section III.B.4 (at p. 21), *infra*.

protect the interests of investors and further the public interest in the preparation of informative, accurate, and independent audit reports." 15 U.S.C. § 7211(a). The Act empowers the PCAOB to register public accounting firms, establish auditing and ethics standards, conduct inspections and investigations of registered firms, institute disciplinary proceedings, and impose sanctions. 15 U.S.C. § 7211(c).

Section 105 of the Act governs "[i]nvestigations and disciplinary proceedings." 15 U.S.C. § 7215. Section 105 authorizes the PCAOB to conduct investigations of any "registered public accounting firm" or "any associated person of that firm" to determine compliance with auditing standards, PCAOB rules, or certain provisions of the securities laws. 15 U.S.C. § 7215(b)(1). In conducting its investigations, the PCAOB may require "the testimony of the firm or of any person associated with a registered public accounting firm" as well as the "production of audit work papers and any other document or information . . . that the Board considers relevant or material to the investigation." 15 U.S.C. § 7215(b)(2); PCAOB Rules 5102-04.

### B.   The Section 105 Privilege

In creating the PCAOB, Congress recognized that "the Board must possess investigative and disciplinary authority." S. Rep. 107-205, at *10 (2002). However, Congress was also concerned that "information gathered by Board investigators should be 'privileged from outsiders' during the investigative process." *Id.* Thus, Congress adopted a statutory regime under which PCAOB investigations and disciplinary proceedings are confidential and privileged until a finding of wrongdoing has been made by the Board after full adjudication of the issues and upheld on appeal to the SEC. *See* 15 U.S.C. §§ 7215(b)(5)(A), 7215(c)(2), 7215(d)(1)(C).

The key provision establishing the privilege is Section 105(b)(5)(A), which provides, in pertinent part, as follows:

> Except as provided in subparagraphs (B) and (C), <u>all documents and information prepared or received by or specifically for the Board</u>, and deliberations of the Board and its employees and agents, <u>in connection with an inspection under section 7214 . . . or with an investigation under this section, shall be confidential and privileged</u> as an evidentiary matter (and shall not be subject to civil discovery or other legal process) in <u>any proceeding in any Federal or State court or administrative agency</u> . . . unless and until presented in connection with a public proceeding or released in accordance with subsection (c) of this section.

15 U.S.C. § 7215(b)(5)(A) (emphasis added).[5]

In subparagraph (B), Congress authorized the PCAOB, in its discretion, to share information with the SEC and other law enforcement authorities.  15 U.S.C. § 7215(b)(5)(B). Importantly, Section 105(b)(5)(B) expressly provides that such disclosure of PCAOB information, if made, would be "[w]ithout the loss of its status as confidential and privileged in the hands of the Board," and expressly provides that the SEC and any other recipient law enforcement agency "shall maintain such information as confidential and privileged."  *Id*.  The Act does not provide any exception to the requirement in subparagraph (B) that the recipient agency keep the privileged material confidential and privileged.[6]  Similarly, in subparagraph (C),

---

[5]     The privilege created under Section 105 applies to documents and information created in connection with routine inspections of public accounting firms under Section 104, 15 U.S.C. § 7214, and those prepared in response to PCAOB investigations under Section 105.  As the Court is aware, the instant case involves materials created in connection with a PCAOB investigation under Section 105 rather than an inspection under Section 104.

[6]     Further demonstrating the strength of the privilege created by Congress, Section 105 also provides that PCAOB investigatory materials in the hands of any agency of the Federal Government "shall be exempt from disclosure . . . under the Freedom of Information Act."  15 U.S.C. § 7215(b)(5)(A).

Congress authorized the PCAOB to make disclosure to foreign regulatory authorities, as long as the continued confidentiality of the information was assured.  15 U.S.C. § 7215(b)(5)(C).

If a PCAOB investigation ends without charges being brought, all materials related to the investigation remain confidential, privileged, and exempt from discovery under Section 105(b)(5)(A).  If the PCAOB decides that the conduct under investigation warrants disciplinary action, it may institute a disciplinary proceeding.  15 U.S.C. § 7215(c); PCAOB Rule 5200. Unlike SEC hearings, however, PCAOB hearings "shall not be public" unless "ordered by the Board for good cause shown" and "with the consent of the parties to such hearing."  15 U.S.C. § 7215(c)(2); PCAOB Rule 5203.  If the hearing officer finds a violation of professional standards, the charged accounting firm or individual has the right to appeal to the full Board. PCAOB Rule 5460.  If the hearing officer's findings are sustained, the PCAOB may impose a range of disciplinary and remedial sanctions, including temporary or permanent suspension from accounting practice, civil monetary penalties, and required training.  *See* 15 U.S.C. § 7215(c)(4); PCAOB Rule 5300.  The charged firm or individual then has the right to seek review by the SEC, which automatically operates as a stay of any sanctions unless the Commission expressly orders otherwise.  15 U.S.C. § 7215(e)(1).  The PCAOB cannot make public any part of its disciplinary process or sanctions imposed until the respondent's appeal to the SEC is decided, unless the Commission orders the lifting of the stay of sanctions pending its consideration of the appeal. *See* 15 U.S.C. §§ 7215(d)(1)(C), 7215(e)(1).

The non-public nature of PCAOB investigations and disciplinary proceedings is a central feature of the enforcement regime created by the Act.[7]  As the PCAOB has explained, the Act "requires that the Board's investigations and disciplinary proceedings, including allegations of violations, remain nonpublic (absent the consent of all parties to make the proceeding public) unless and until the Board finds a violation after a hearing on the record and the respondent has had an opportunity to seek Commission review of that finding."  PCAOB Release No. 104-2004-001, at 9 (Aug. 26, 2004).  Similarly, the PCAOB's Director of Enforcement has explained that "the PCAOB is virtually unique among similar regulators in that our disciplinary proceedings are required by law to be kept confidential through charging, hearings, initial decision, and even appeal."  C. Modesti, PCAOB Enforcement Actions Update (Dec. 8, 2010), *available at* http://pcaobus.org/News/Speech/Pages/12082010_ModestiSpeech.aspx.

### C.     The Subpoena's Demands for Materials Related to the PCAOB Investigation

During the SEC's investigation of Thornburg, KPMG received a broad subpoena from the SEC for the production of documents relating to its audit of Thornburg for the 2007 fiscal year, Thornburg's quarterly reviews during that period, and any relevant restatements.  *See* Salter Declaration, Exhibit 3 (Letter, dated October 23, 2012, from George Salter to Jessica Kurzban,

---

[7]     In the Senate Report on the Act, Congress explained that the "legislation should have little additional impact upon the privacy of particular individuals" because "[i]nformation and documents held by the Public Company Accounting Oversight Board created by the bill are generally confidential and privileged until made public in connection with a particular public enforcement proceeding."  S. Rep. No. 107-205, at *58.  Thus, in recognizing the unfairness of publicly depriving auditors of their professional reputation before allegations of improper professional conduct are proven and upheld by the SEC, *see e.g.*, *DiLeo v. Ernst & Young*, 901 F.2d 624, 629 (7th Cir. 1990) ("An accountant's greatest asset is its reputation for honesty, followed closely by its reputation for careful work."), Congress mandated that PCAOB investigations and enforcement proceedings remain confidential and privileged until they are finally resolved against the respondent.

at 1 (quoting SEC subpoena)).  KPMG undertook an extensive document collection and review

process, and ultimately produced more than 1.5 million pages of KPMG documents, all of which

have subsequently been produced to Defendants by the SEC.[8]

On September 18, 2012, Defendants served an exceedingly broad Subpoena on KPMG.

*See* Salter Declaration, Exhibit 1.  Many of the Subpoena's document requests explicitly seek

documents and information regarding the PCAOB's investigation of KPMG.  For example:

- Request No. 1 not only asks generally for documents concerning KPMG's services for Thornburg in 2007 and 2008 but also asks expressly for "all communications with . . . the PCAOB."  Salter Declaration, Exhibit 1 at 8-9.

- Request No. 2 asks for "[a]ll documents or communications concerning any investigation of KPMG in connection with the 2007-2008 services, including an investigation by . . . the PCAOB," specifically including any correspondence with the PCAOB, any documents relating to interviews or testimony of current or former KPMG employees, transcripts, notes or memoranda of such interviews or testimony, and the documents shown to those witnesses during such interviews or testimony.  *Id.* at 9.  This Request also makes clear that it "includes documents that refer or relate to the PCAOB's findings made after its investigation."  *Id.*

- Request No. 3 asks for documents or communications concerning "any violation by KPMG of . . . PCAOB rules, or professional accounting and auditing practices or standards" in connection with its work for Thornburg.  *Id.* at 10.

- Request No. 7 asks for the identification of all KPMG witnesses interviewed in connection with any investigation of KPMG relating to its work for Thornburg, including the PCAOB investigation.  *Id.* at 11-12.

---

[8]      Independently, the PCAOB also commenced an investigation of KPMG's performance in its work for Thornburg.  Ordinarily, the very fact that the PCAOB has commenced an investigation is made confidential and privileged by the Section 105 Privilege, and is not subject to discovery.  Here, however, the fact that the PCAOB had initiated an investigation was revealed by the SEC through its privilege log and production of a limited number of documents (eight PCAOB witness questionnaires with individual background information).  KPMG submits that these documents were produced, whether inadvertently or otherwise, in violation of the SEC's obligation to maintain the confidentiality of PCAOB investigation material under Section 105(b)(5)(B) and their release cannot constitute a "waiver" of the privilege as Defendants contend in their Motion.  Section III.B.4 (at p. 21), *infra*.

Faced with a Subpoena directly targeting information that Congress sought to protect, KPMG timely objected to Defendants' Subpoena, asserting the Section 105 Privilege.  *See* Salter Declaration, Exhibit 2.  Defendants, however, have insisted on production of the requested documents.  *See* Salter Declaration, Exhibit 4 (Letter, dated October 9, 2012, from Randall Lee to George Salter), at 2-3.  Defendants contend that the Section 105 Privilege does not apply to PCAOB investigation-related information in the hands of KPMG, and that documents relating to the PCAOB's investigation and findings are not protected unless they were prepared "specifically for the Board," which term they construe in an impermissibly narrow way.  *Id.* at 2-3.  As discussed below, Defendants' positions on the scope and operation of the Section 105 Privilege are inconsistent with the privilege created by Congress, are not supported by the statutory language, and would completely eviscerate the confidentiality protections that Congress created for PCAOB investigations and disciplinary proceedings.  To protect the Section 105 Privilege as legislated by Congress, the Court must, perforce, quash the Subpoena issued to KPMG pursuant to Fed. R. Civ. P. 45(c)(3)(A) to the extent it seeks documents protected by the Section 105 Privilege, and enter a protective order under Fed. R. Civ. P. 26(c) precluding discovery of all materials and information protected by the Section 105 Privilege.

### D.    Defendants' Demands for PCAOB Materials From The SEC

In addition to seeking discovery of PCAOB materials from KPMG, Defendants have demanded the SEC produce privileged PCAOB investigative materials provided to the SEC by the PCAOB.  *See* Salter Declaration, Exhibit 5 (Defendants' First Set of Requests for the Production of Documents to Plaintiff Securities and Exchange Commission), at 13.  Despite the fact that the SEC "did not use or rely" on any KPMG testimony before the PCAOB in preparing

its Complaint, *see* Salter Declaration, Exhibit 6 (E-mail, dated November 12, 2012, from Stephen McKenna of the SEC to defense counsel and counsel for KPMG), and the fact that the SEC has no power to waiver the Section 105 Privilege held by KPMG, on November 28, 2012, Defendants filed a motion to compel the SEC to produce confidential PCAOB transcripts of KPMG witness testimony in violation of the Section 105 Privilege.

## III.   ARGUMENT

### A.   The Legal Standard.

"On timely motion, the issuing court must quash or modify a subpoena that . . . requires disclosure of privileged or other protected material, if no exception or waiver applies." Fed. R. Civ. P. 45(c)(3)(A)(ii).  In addition, under Rule 26(c), "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense" by, *inter alia*, "forbidding the disclosure or discovery" or "forbidding inquiry into certain matters."  Fed. R. Civ. P. 26(c)(1)(A), (D).  Privileged matters are outside the proper scope of discovery.  Fed. R. Civ. P. 26(b)(1).  "The party seeking a protective order or moving to quash a subpoena has the burden to demonstrate good cause and/or the privilege to be protected." *Morales v. E.D. Etnyre & Co.*, 228 F.R.D. 694, 696 (D.N.M. 2005) (Browning, J.).

### B.   The Investigation-Related Documents Sought by Defendants Are Privileged, Confidential, and "Not Subject to Civil Discovery or Other Legal Process."

Congress in enacting the Sarbanes-Oxley Act created a broad privilege precluding civil discovery of documents that would undermine the confidentiality of the PCAOB investigation and disciplinary process.  As noted above, Section 105(b)(5)(A) of the Act provides that "[a]ll documents and information prepared or received by or specifically for the Board, and deliberations of the Board and its employees and agents, in connection . . . with an investigation

11

under this section, shall be confidential and privileged . . . (and shall not be subject to civil discovery . . . ) in any proceeding in any Federal or State court."

Because the Section 105 Privilege is relatively new, there is little case law to date addressing the scope and application of the privilege.  There is no relevant circuit authority, and we are aware of only two district court decisions addressing the privilege: the recent decision in *Bennett v. Sprint Nextel Corp.*, No. 11-9014-MC-W-ODS, 2012 WL 4829312 (W.D. Mo. Oct. 10, 2012), and an earlier decision in *Silverman v. Motorola*, No. 07 C 4507, 2010 WL 4659535 (N.D. Ill. June 29, 2010).  Both decisions involved applications of the privilege arising in PCAOB inspections under Section 104 rather than a PCAOB investigation under Section 105, but the Section 105 Privilege, by its terms, applies equally to both inspections and investigations.  15 U.S.C. § 7215(b)(5)(A) ("<u>in connection with an inspection under section 7214 . . . or with an</u> <u>investigation under this section</u>").  Indeed, in its opinion, the *Bennett* court used the terms "investigation" and "inspection" interchangeably when discussing the Section 105 Privilege.  *See* *Bennett*, 2012 WL 4829312, at *1-5.  Thus, from these decisions and from careful analysis of the statutory language and Congressional intent, the proper scope and application of the Section 105 Privilege is becoming clear.

### 1.    KPMG Is Entitled To Assert The Section 105 Privilege.

It is clear that KPMG is entitled to assert the Section 105 Privilege.  In their letter to KPMG counsel disputing KPMG's assertion of the privilege, Defendants argued that the documents and information protected by Section 105(b)(5)(A) "are not privileged if they come into the hands of KPMG," Salter Declaration, Exhibit 4 at 2, and thus that the privilege apparently does not protect KPMG documents at all.  That argument has been expressly rejected

by both the *Bennett* and *Silverman* courts.  As both courts have explained, that argument "is not supported by the plain language of the statute."  *Bennett*, 2012 WL 4829312, at *3; *Silverman*, 2010 WL 4659535, at *4 n.2.

There is no basis for Defendants' contention that the Section 105 Privilege only protects documents in the hands of the PCAOB.  First, as the court pointed out in *Bennett*, the express terms of the statute make privileged not only documents that have been "received by" the Board, but also documents that were "prepared . . . for the Board," whether or not they were ever sent to it.  *Bennett*, 2012 WL 4829312, at *3.  As the court explained, "if only materials in the possession of the Board (*i.e.*, 'received by') were protected, then the phrase 'prepared . . . for' would be rendered superfluous," *id.*, in violation of the court's duty to interpret the statute to give meaning to every word.  *See generally Duncan v. Walker*, 533 U.S. 167, 174 (2001) (it is court's duty "to give effect, if possible, to every clause and word of a statute").

Second, the language of Section 105(b)(5)(A) is very broad, and inconsistent with any argument that Congress intended to protect only materials in the hands of the Board.  Nothing in Section 105(b)(5)(A) limits in any way the identity of the person who can assert the privilege.  On the contrary, the statute broadly provides that "all documents and information" within its scope are privileged and "shall not be subject to civil discovery or other legal process."  Nowhere in Section 105(b)(5)(A) is the protection granted to "all" covered documents and information limited to documents "in the hands of" the Board.[9]

---

[9]      Section 105(b)(5)(A) uses the expression "in the hands of" in only one limited context, when stating that protected information "in the hands of an agency or establishment of the Federal government" will be "exempt from disclosure . . . under the Freedom of Information Act." 15 U.S.C. § 7215(b)(5)(A).  The statute's reference to documents "in the hands of" a federal agency ensures Section 105 material is not to be made public through the FOIA process, which is

Third, the statute's explicit reference to "civil discovery" is another indication that Congress intended that the privilege could be asserted by the subjects of PCAOB investigations, and not merely by the PCAOB itself. It was the *accounting firms*, which would be subject to PCAOB investigations and which Congress knew are routinely subjected to civil discovery, who – as this case illustrates – are the most likely recipients of civil discovery specifically targeting information relating to PCAOB investigations. Indeed, references in the legislative history demonstrate that, in addition its intent to protect audit firms from civil litigants in order to foster its cooperative regulatory scheme, Congress considered the impact on auditors of premature revelation of PCAOB investigations on those auditors' most precious asset, their professional reputation. *See* footnote 7, *supra.*

This interpretation is strongly supported by the Act's legislative history. In crafting the Act, Congress heard testimony that the oversight efforts of self-regulatory organizations which preceded the PCAOB had been "hampered by distrust and by concerns that the materials developed were not protected." *See Accounting Reform and Investor Protection: Hearing Before the* S. *Comm. on Banking, Housing, and Urban Affairs,* 107th Cong., S. Hrg. No. 107-948, at 724 (2002) ("*Senate Hearing*") (Statement of Shaun F. O'Malley, Chairman, 2000 Public Oversight Board Panel on Audit Effectiveness). Congress was also advised that the effectiveness of prior enforcement efforts was greatly limited because "firms will not disclose documents or

---

only applicable to recipient agencies. It has no bearing on the privileged nature of the material in the hands of an audit firm.

other information that is likely to wind up in the hands of litigants in legal proceedings."[10]  Thus,

witnesses recommended that Congress adopt a "privilege from discovery of investigative files to

facilitate auditing discipline during the pendency of other Government or private litigation."  *See*

*Senate Hearing* at 579 (Statement of Joel Seligman, Dean, Washington University School of

Law).  Indeed, a member of the Public Oversight Board ("POB"), which was an entity that

oversaw the accounting profession prior to creation of the PCAOB, testified that a privilege was

necessary to keep investigation-related information "out of the hands of the litigating lawyers."[11]

The privilege against production of PCAOB materials in civil discovery was plainly intended by

Congress to respond to these concerns.  *See* S. Rep. No 107-205, at *48 ("The Board's

investigative activities and any information gathered in the course of an investigation are to be

confidential and privileged for all purposes (including civil discovery), unless and until particular

information is presented in connection with a public proceeding.").

In asserting that the privilege applies only to documents and information "in the hands of"

the PCAOB, Defendants cited Section 105(b)(5)(B) of the Act and PCAOB Rule 5108, *see* Salter

Declaration, Exhibit 4 at 2, but neither provides any support for their contention.  First, Section

105(b)(5)(B), as noted above, is the provision which authorizes the PCAOB to share information

with other government regulators, but expressly requires them to preserve the confidentiality of

the documents and information.  Section 105(b)(5)(B) provides that the PCAOB can share such

---

[10]     *Senate Hearing* at 987 ("The Road to Reform: A White Paper From The Public Oversight Board On Legislation to Create a New Private Sector Regulatory Structure for the Accounting Profession").

[11]     *Senate Hearing* at 377 (Statement of John H. Biggs, Chairman, President, and CEO, TIAA-CREF).

information "[w]ithout the loss of its status as confidential and privileged in the hands of the Board." This provision is intended to <u>preserve</u> the privilege, not to narrow it. Thus, Section 105(b)(5)(B) confirms that the release by the Board to regulatory and law enforcement agencies does not act as a waiver of the Section 105 Privileged information which remains "in its hands." Moreover, it is far from surprising that the subject audit firm is not listed in Section 105(b)(5)(B) as an entity with whom the PCAOB can share information without violating the privilege, given that the other language of subparagraph (A) – "prepared by," "received by" and "prepared . . . specifically for" the PCAOB – makes clear that information exchanged between inspected/investigated firms and the PCAOB is privileged, and subparagraph (B) was enacted to ensure that privilege travels with any information subsequently shared by the PCAOB with governmental entities. There was no reason to list the accounting firms in this provision, and it would have been anomalous to do so, since they are not government law enforcement agencies. In any event, the clear language of this provision requires recipient agencies to keep the information received from the PCAOB confidential. Nothing in the language of Section 105(b)(5)(B) reflects any legislative intent to narrow the privilege or permit a receiving agency to waive the privilege. To the contrary, the provision makes certain the privilege travels with the documents and information obtained from the PCAOB.

Defendants' citation of PCAOB Rule 5108 is even further off the mark. Rule 5108, which is entitled "Confidentiality of Investigatory Records," provides that investigation files "shall be confidential in the hands of the Board," but nothing in the Rule supports Defendants' claim that this indicates that documents in the hands of KPMG are not also covered by the privilege. Indeed, in adopting this Rule, and in response to comments that the privilege created

by Section 105(b)(5)(A) is much broader, the PCAOB made clear that the "phrasing of the rule . . . is <u>not</u> intended to narrow the effect or the reach of the Act." PCAOB Release No. 2003-015, at A2-40 (Sept. 29, 2003) (emphasis added). The Board explained that the "reason for limiting the wording of Rule 5108 has nothing to do with limiting the reach of Section 105(b)(5)(A)," *id.*, and simply was intended to limit the rules to the subject at hand – the conduct of PCAOB proceedings – rather than attempt to explain how the law should be applied in other contexts.

      **2.**     **The Section 105 Privilege Applies Broadly To All Documents Created In Response To The PCAOB's Investigation.**

Defendants also take the position that the scope of the Section 105 Privilege is narrow, in particular as it applies to those documents that "were created 'specifically for the Board.'" *See* Salter Declaration, Exhibit 4, at 3 (quoting Section 105(b)(5)(A)). Defendants attempt to give that term a constricted interpretation intended to exclude from the Section 105 Privilege most internal KPMG documents prepared in response to a PCAOB investigation. But Defendants' position on the scope of the privilege is inconsistent with the statute's language and purpose, has been expressly rejected by the court in *Bennett*, and should be rejected here.

There can be no doubt that documents and information prepared in response to a PCAOB investigation held by an accounting firm (or by the SEC if provided to it by the PCAOB) are privileged and exempt from discovery under the statutory scheme created by Congress in Section 105, because all such documents fall under the one of the categories enumerated in the statute. First, those documents that comprise or reflect written or oral requests for information or documents or other communications made by the PCAOB to the audit firm, are privileged as "prepared by" the Board. Second, those documents comprising materials created by the audit

firm in response to investigative requests or demands or assembled by the firm and produced to the Board in the course of the investigation are privileged as documents and information "received by" the Board.  This category includes oral information or testimony given by firm personnel to PCAOB investigators during the investigation, or transcripts of the same.  Third, other documents or information that are prepared by firm personnel and that relate to a PCAOB investigation but are not communicated to the investigators are "prepared . . . in connection with" and "specifically for" the investigation and are within the scope of the Section 105 Privilege. *See Bennett*, 2012 WL 4829312, at *4.  In the context of an investigation, where the audit firm is typically represented by counsel, the overwhelming majority of such documents in this third category would be additionally protected from disclosure by the attorney-client privilege, the work product doctrine, or both.

The statutory language also precludes a narrow interpretation of "prepared . . . specifically for the Board."  By including that language, in addition to the phrase "received by . . . the Board," Section 105(b)(5)(A) makes clear that the category of documents and information which are prepared by the audit firm as a result of the Board's investigation but not actually provided to the investigators, falls within the ambit of the privilege.  The court in *Bennett* held that all internal accounting firm documents and communications that relate to a PCAOB inspection and were created in response to it are protected under Section 105.  2012 WL 4829312, at *3-4.  The court held that all such documents were protected under the Section 105 Privilege as documents "prepared . . . specifically for the Board," because absent the confidential PCAOB activity, "these documents and communications would not exist." *Id.*  Thus, the court held, "internal KPMG communications that discuss confidential questions or comments made by

the Board or reflect KPMG's development of responses to Board inquiries are also protected." *Id*. at *4.  Moreover, the court held, "[b]ecause the final version of PCAOB comments and KPMG responses to those comments are all privileged, then . . . any internal KPMG communications that reveal those comments, or the work to develop the responses to the comments, are also privileged."  *Id*.  As noted, these findings are equally applicable to materials prepared by audit firms in responding to PCAOB investigations.

Moreover, Congress's clear intent in adopting the Section 105 Privilege was to assure the confidentiality of the very existence of PCAOB investigations unless and until either the Board finds a violation and that finding is upheld on appeal to the SEC or the subject of the investigation consents to make it public.  *See* Section II.B (at pp. 5-8), *supra*.  As the court in *Bennett* explained, the privilege "protects those who are under investigation [by the PCAOB] from being required to divulge their responses to that investigation."  2012 WL 4829312, at *2. This means that the privilege, properly construed, must include protection for internal KPMG documents that, if disclosed, would reveal (1) the inquiries that the PCAOB made; (2) the responses that KPMG prepared and submitted; and (3) the internal communications which reveal the existence of the investigation, any PCAOB investigative inquiries or any information assembled, and responses made by KPMG to those inquiries (including those not otherwise protected from disclosure by the attorney-client privilege or the attorney work product doctrine).

Indeed, any other result would make a mockery of the privilege Congress attached to PCAOB investigative proceedings, because civil litigants, like those here, could end-run the statute and gain access to the confidential PCAOB investigation and disciplinary process – even where the investigation or disciplinary proceeding may be ongoing or may have been concluded

without hearing or sanction – by simply subpoenaing the subjects of the PCAOB investigation. The statutory scheme adopted by Congress made clear that, absent imposition of a final sanction affirmed by the SEC, other litigants and the public had no right to know whether an audit firm or any individual auditor is or was the subject of a PCAOB investigation.

Defendants in their letter cited the *Silverman* case, *see* Salter Declaration, Exhibit 4 at 3, but *Silverman* is not to the contrary. *Silverman* merely observed (in the inspection context) that the privilege is limited to documents "prepared . . . specifically for the Board," 2010 WL 4659535, at *4 (quoting statute), and concluded that the privilege therefore applies "to only a portion of any information or documents that may derive from, refer to, or relate to a PCAOB inspection." *Id*. But *Silverman* made no effort to define where the line should be drawn. The Court in *Bennett* agreed that the privilege protects documents "prepared . . . specifically for the Board," but it went on to consider the meaning of that phrase, holding that it covers documents that "would not exist" but for the inspection or investigation. 2012 WL 4829312, at *3-4.[12] In this way, *Bennett* builds on *Silverman* and clarifies the meaning of Section 105(b)(5)(A), while better implementing the legislative intent underlying the privilege.

---

[12]   Accordingly, the *Bennett* court's interpretation of the privilege is consistent with well-established case law regarding the scope of other evidentiary privileges, which consistently extend protection to all materials that could reveal privileged content, and is the only interpretation consistent with Congress's intent in creating a broad privilege in Section 105(b)(5)(A). *See, e.g., In re Grand Jury Subpoenas*, 906 F.2d 1485, 1491 (10th Cir. 1990) (recognizing that although information about client identity is generally not covered by the attorney-client privilege, it is protected by the privilege when disclosure "would be tantamount to disclosing an otherwise protected confidential communication"); *Matter of Grand Jury Proceeding, Cherney*, 898 F.2d 565, 567-68 (7th Cir. 1990) (otherwise unprivileged information is protected by attorney-client privilege if "disclosure would be tantamount to revealing the premise of a confidential communication"); *In re Sealed Case*, 121 F.3d 729, 737 (D.C. Cir. 1997) (same as to deliberative process privilege); Schreiber v. Soc'y for Sav. Bancorp, Inc., 11 F.3d 217, 220-21 (D.C. Cir. 1993) (same as to bank examination privilege); *Hetter v. Eighth Judicial Dist. Court*, 874 P.2d 762, 764 (Nev. 1994) (same as to physician-patient privilege).

### 3.    KPMG Has Not Waived The Section 105 Privilege.

As an initial matter, the text of Section 105 does not include any provision for waiver of the protection afforded to privileged documents and information, except in one regard.  As described above (*see* Section II.B (at pp. 5-8), *supra*), the Act requires that PCAOB investigations and any adjudicatory proceedings that might result from such an investigation are to remain confidential until final action by the Board imposing a sanction, affirmed by the SEC. The Act contemplates only one way in which privileged information regarding a pending PCAOB investigation or proceeding may be made public: pursuant to Section 105(c)(2), if the parties to a PCAOB disciplinary hearing consent to making it public.  15 U.S.C. § 7215(c)(2).  In this proceeding, KPMG has timely asserted its objection to the Subpoena based on the Section 105 Privilege; and to be clear, KPMG has not given, and does not here give, its consent to public disclosure of such privileged materials in this or any other legal proceeding.

### 4.    The SEC Has No Power To Waive The Section 105 Privilege.

Defendants' argument – repeated in their pending Motion to compel the SEC to produce KPMG material protected by the Section 105 Privilege – is based on the misconception that the SEC has the right or legal ability to waive a statutory privilege held by KPMG.  Simply put, the SEC has no such right.

At the outset, it must be noted that the PCAOB has acknowledged that Congress did not empower it to publicly disclose Section 105 Privileged material generated during its investigative or adjudicatory proceedings without the consent of the parties to those proceedings, unless there is a final sanction and the appellate process is complete.  *See* 15 U.S.C. § 7215(b)(5)(A), 7215(c)(2); PCAOB Release No. 104-2004-001, at 9.  Despite this bar on public disclosure,

Section 105(b)(5)(B) provides that the PCAOB may share protected information with the SEC "[w]ithout the loss of its status as confidential and privileged in the hands of the Board" (*i.e.*, making clear such disclosure does not release the shared information from its confidential status nor waive any privilege attached to the information).   However, subparagraph (B) expressly requires that the SEC "shall maintain such information as confidential and privileged" – thus the SEC is statutorily barred from disclosing PCAOB investigation material.[13]   15 U.S.C. § 7215(b)(5)(B); *see* PCAOB Release No. 2003-015, at A2-42 (observing that "the Act itself forbids [agencies] to disclose" materials made confidential by Section 105(b)(5)(A)).

Prohibiting public disclosure by either the PCAOB or the SEC, but permitting information sharing without waiver, fits within investigative and enforcement regime established by the Act and PCAOB Rules, which, as set out above, is confidential at every stage of the process, from the investigation stage through filing of charges, trial before a PCAOB hearing officer, and review by the PCAOB itself.   It is only <u>after</u> the PCAOB has sustained charges against the respondent firm or professional and the resulting sanctions are subject to appeal before the SEC that the SEC has the power to make a determination that <u>its</u> proceedings should be public.   *See In re Gately & Assocs., LLC*, No. 3-13535, 2009 WL 6805010 (S.E.C. Release Oct. 23, 2009).   Given the fact that the PCAOB lacks authority to waive the Section 105

---

[13]   Defendants argue (Defts' Motion at 24-25) that a different SEC trial team in California – apparently in violation of the Section 105 Privilege – allegedly produced PCAOB materials to civil litigants.  The fact that the SEC apparently violated another auditor's Section 105 rights in a different matter is no basis to abrogate KPMG's statutory rights here.  Moreover the SEC's conduct in one unrelated enforcement action is not controlling in this action, as Defendants cannot establish that the SEC's assertion of the privilege here is a deviation from established SEC policy.  *See e.g.*, *United States v. One 1985 Mercedes*, 917 F.2d 415 (9th Cir. 1990) ("To prevail on his claim that the agency impermissibly departed from its own policy . . . [the party] must establish that the policy in question had the force and effect of law").

Privilege during this process, it would undermine the statutory scheme to suggest that Congress intended the recipient agencies, such as the SEC, to have power to waive the Section 105 Privilege when the PCAOB provides the information to the recipient agencies pursuant to the Congressional mandate that the agencies "*shall* maintain such information as confidential and privileged." 15 U.S.C. § 7215(b)(5)(B) (emphasis added).

The interaction between subparagraphs (A) and (B) also supports the conclusion that the SEC cannot waive the Section 105 privilege.  Defendants' suggested statutory construction is contrary to the legislative intent of Congress and also conflicts with accepted rules of statutory construction requiring that all provisions of the Act be interpreted so as to give them effect and accomplish Congress's legislative purpose.  *See, e.g., SEC v. C.M. Joiner Leasing Corp.*, 320 U.S. 344, 350-51 (1943) ("[C]ourts will construe the details of an act in conformity with its dominating general purpose, will read text in the light of context and will interpret the text so far as the meaning of the words fairly permits so as to carry out in particular cases the generally expressed legislative policy.").  Here Defendant's proposed interpretation – that the Act both requires the SEC and other agencies to keep the Section 105 Privileged documents and information "confidential and privileged" under Section 105(b)(5)(B), while also allowing them to present such information in a "public proceeding" under Section 105(b)(5)(A) – would render subparagraph (B), and the explicit command of Congress for confidentiality, a nullity, and therefore must be rejected.  *See, e.g., Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 112 (1991) ("[W]e construe statutes, where possible, so as to avoid rendering superfluous any parts thereof.") (citation omitted).

Given that the terms of the Act make clear that the SEC has no power or authority to make public disclosure of investigative proceedings that remain pending before the PCAOB, and is in fact required to keep Section 105 Privileged information received confidential until disclosure is permitted by law, it necessarily follows that the SEC has no authority to breach or waive the Section 105 Privilege while a matter remains pending before the PCAOB.[14]  Thus, Defendants' reliance on subparagraph (A)'s reference to "unless presented in connection with a public proceeding," Defts' Motion at 19-24, is misguided and cannot be a basis to find the SEC's actions here waived KPMG's statutory right to confidentiality.   Contrary to Defendants' argument, the statute's reference to a "public proceeding" refers to – and *only* to – a proceeding by the PCAOB under "subsection (c) of this section."  15 U.S.C. § 7215(b)(5)(A).  Section 105(c)

---

[14]      Defendants make various legally unsupported and strained arguments in support of their Motion to compel the SEC to produce PCAOB deposition transcripts of KPMG testimony, all of which fail to overcome the clear statutory protection Congress has afforded PCAOB investigative material.  While Defendants argue common law concepts of alleged waiver and fundamental fairness (*see* Defts' Motion at 23-24, 25-27), in this circumstance the express statutory protection provided by the Section 105 Privilege supersedes the force of Defendants' common law arguments.  *See e.g.*, *United States v. Gonzales*, 150 F.3d 1246, 1264 (10th Cir. 1998) ("We reject the Journal's common law argument . . . .  [T]he statute and regulations discussed below occupy this field and would supersede the common law right even if one existed.") (citation omitted); *Resolution Trust Corp. v. Frates*, 52 F.3d 295, 297 (10th Cir. 1995) ("[I]t is for Congress, not federal courts, to articulate the appropriate standards to be applied as a matter of federal law.  To supersede authority previously established by federal judicial ruling, Congress need not affirmatively proscribe that authority, but may do so simply by speaking directly to the issue.") (quotations and citations omitted).  Moreover, Defendants' arguments are disingenuous.  For example, Defendants claim they need the PCAOB transcripts because the first two KPMG witnesses that they chose to depose, Tara Baucom and Meg Jones, did not recall audit issues relevant to this lawsuit; but that lack of recollection is not surprising given that both witnesses testified that they did not work on the audit areas relevant to this lawsuit, going concern and other than temporary impairment (OTTI).  Defendants have scheduled the depositions of the two KPMG auditors primarily involved in the issues in this lawsuit, KPMG partner Cynthia Reinhart and senior manager Jennifer Hall, for December 19-20 and December 5-6, respectively.

addresses PCAOB disciplinary proceedings and subsection 105(c)(2) addresses when those proceedings may be made public.  That subsection provides that, "[h]earings under this section shall not be public, unless otherwise ordered by the Board for good cause shown, with the consent of the parties to such hearings."  15 U.S.C. § 7215(c).  Thus, the proper construction of the language on which Defendants rely is one under which the Section 105 Privileged materials are no longer confidential and privileged after they have been "presented" in connection with a PCAOB disciplinary hearing which has been made public following a determination by the Board, "for good cause shown," that the hearing should be public, and after the Board has obtained "the consent of the parties to such hearing."[15]

Finally, to the extent Defendants urge this Court to order the SEC to produce any Section 105 Privileged materials on the grounds that the SEC already may have inadvertently or intentionally produced documents containing KPMG's privileged information, the appropriate remedy is not for this Court to embrace a statutory violation as effecting a waiver of KPMG's privilege as to those materials let alone a subject matter waiver of other Section 105 Privileged material in the SEC's possession.  The appropriate remedy is for the Court to enforce KPMG's right to confidentiality by ordering the return of any improperly produced material, and directing that any such information may not be utilized in the conduct of discovery or trial in this action.

---

[15]     Moreover, even if the SEC had the legal ability to waive the privilege attached to documents in its possession – which it manifestly does not – the express language of the Act requires that the privileged information be "presented" in the public proceeding.  Defendants' assertion that the SEC may have relied upon knowledge of those materials does not rise to the level of "presenting" the actual privileged material in this proceeding.

## **CONCLUSION**

For the reasons set forth above, KPMG respectfully requests that the Court quash, in part, or modify Defendants' Subpoena to KPMG as necessary to protect, and enter a protective order precluding discovery of, any documents and information covered as confidential, privileged, and exempt from civil discovery under 15 U.S.C. § 7215(b)(5)(A), including documents and transcripts received by the SEC from the PCAOB pursuant to 15 U.S.C. § 7215(b)(5)(B), and ordering such other protections as may be necessary to recognize KPMG's statutory rights.

Dated:  December 4, 2012

Respectfully submitted,

KELEHER & MCLEOD, P.A.

By:    _/s/W. Spencer Reid_____
    W. Spencer Reid
    Albuquerque Plaza
    201 Third Street NW
    12th Floor
    Albuquerque, New Mexico  87102
    Tel.: (505) 346-4646
    Fax:  (505) 346-1370

HOGAN LOVELLS US LLP

By:   George A. Salter_____
    George A. Salter
    Peter Dennin
    875 Third Avenue
    New York, New York 10022
    (212) 918-3000

*Attorneys for Non-Party KPMG LLP*

26

## <u>CERTIFICATE OF SERVICE</u>

I, W. Spencer Reid, hereby certify that on December 4, 2012, I filed the foregoing

document electronically through the CM/ECF System, which caused all counsel of record to be

served by electronic means, as more fully reflected on the Notice of Electronic Filing:


                                        ___/s/W. Spencer Reid_____
                                         W.  Spencer Reid