AO 88B (Rev. 06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

## UNITED STATES DISTRICT COURT
for the
District of New Mexico

| Securities and Exchange Commission | ) | |
|---|---|---|
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.   1:12-cv-00257-JB-LFG |
| Larry Goldstone, Clarence Simmons, and Jane Starrett | ) | |
| | ) | (If the action is pending in another district, state where: |
| *Defendant* | ) |                                              ) |

### SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:   KPMG LLP

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and permit their inspection, copying, testing, or sampling of the material: See Attachment A.

| Place: Rodey, Dickason, Sloan, Akin & Robb, P.A., 201 3rd Street NW, Suite 2200, Albuquerque, NM 87102 | Date and Time: 10/02/2012 9:00 am |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The provisions of Fed. R. Civ. P. 45(c), relating to your protection as a person subject to a subpoena, and Rule 45 (d) and (e), relating to your duty to respond to this subpoena and the potential consequences of not doing so, are attached.

Date:   09/18/2012

                    *CLERK OF COURT*
                                                                OR          [signature]
    _____                      _____
      *Signature of Clerk or Deputy Clerk*                       *Attorney's signature*

The name, address, e-mail, and telephone number of the attorney representing *(name of party)*   Larry Goldstone and Clarence Simmons                                                      , who issues or requests this subpoena, are:
Jessica Kurzban, Wilmer Cutler Pickering Hale and Dorr LLP, 350 South Grand Avenue, Suite 2100, Los Angeles, CA 90071; 213.443.5360; jessica.kurzban@wilmerhale.com

**EXHIBIT 1**

### ATTACHMENT A TO SUBPOENA TO KPMG
### DOCUMENTS TO BE PRODUCED

Pursuant to Federal Rules of Civil Procedure 30(b) and 45, KPMG LLP is commanded to produce all documents, things and items requested herein, within its possession, custody or control for inspection and copying by counsel for Larry A. Goldstone and Clarence G. Simmons on or before October 2, 2012 at 9:00 a.m. Mountain Standard Time. Documents and things are to be produced at the offices of Rodey, Dickason, Sloan, Akin & Robb, P.A., 201 3rd Street NW, Suite 2200, Albuquerque, NM 87102. Documents and things are to be produced in accordance with the Definitions and Instructions below and in the manner prescribed by the Federal Rules of Civil Procedure.

### DEFINITIONS

The terms used herein shall have the meanings ascribed to them in the definitions set forth below.

1. "COMMUNICATION(S)" means every manner or means of disclosure, transfer, or exchange of ideas, messages, facts, inquiries or information, whether oral or by DOCUMENT, and whether face-to-face, by telephone, mail, electronic mail, personal delivery, or otherwise.

2. "CONCERNING" a given subject means, in whole or in part, constituting, containing, embodying, reflecting, identifying, stating, referring to, relating to, evidencing, or in any other way being relevant to that given subject matter.

3. "DEFENDANT(S)" means Jane Starrett, Larry Goldstone, or Clarence G. Simmons, III.

4. "DOCUMENT(S)" is used in the broadest sense permitted under the Federal Rules of Civil Procedure and includes, but is not limited to, all originals, non-identical copies

1

and copies with marginal notations or interlineations of any writing, sworn statement, deposition transcript, affidavit, recording, photograph, computer data, electronic mail or other item containing information of any kind or nature, however produced or reproduced, whatever its origin or location, and regardless of the form maintained. The term "DOCUMENT(S)" also includes all ELECTRONICALLY STORED INFORMATION. The term "DOCUMENT(S)" further means any DOCUMENT in the possession, custody, or control of the entities and individuals to whom this DOCUMENT request is directed (together with any employees, agents and attorneys). Without limitation to the term "control" as used in the preceding sentence, an entity or individual is deemed to be in control of a DOCUMENT if that entity or individual has the right to secure the DOCUMENT or a copy thereof from another entity or individual having actual possession thereof.

5.  "ELECTRONICALLY STORED INFORMATION" is defined broadly to give the full scope of that term as contemplated by Rule 34 of the Federal Rules of Civil Procedure, and refers to all computer or electronically stored or generated data and information, and shall include all attachments to and enclosures with any requested item, and all drafts thereof. ELECTRONICALLY STORED INFORMATION includes information stored in any format and on any storage media, including: hard disks; floppy disks; optical disks; flash memory devices; and magnetic tape, whether fixed, portable, or removable. ELECTRONICALLY STORED INFORMATION includes: word-processing DOCUMENTS; electronic spreadsheets; electronic presentation DOCUMENTS; e-mail messages; image files; sound files; and material or information stored in a database, or accessible from a database. ELECTRONICALLY STORED INFORMATION also includes all associated metadata that is maintained or saved, which

includes: DOCUMENT title or name; file name; date and time of creation; date and time of last edit; identity of author; identity of owner; identities of editors; identities of recipients; changes; history of changes; e-mail header information; history of who viewed an e-mail and when; and e-mail routing information. ELECTRONICALLY STORED INFORMATION further includes: correspondence, telegrams, memoranda, COMMUNICATIONS, minutes or records of meetings and conferences, lists of persons attending meetings or conferences, summaries, records of conversations, drafts, notes, notebooks, logs, invention records and disclosures, translations, drawings, graphs, charts, photographs, sound recordings, images, data compilations, computer records or printouts, specifications, reports, opinions, summaries, agreements, forecasts, plan drawings, mask works, engineering drawings, expressions or statements of policy, consultations, brochures, pamphlets, advertisements, publications, circulars, trade letters, press releases, and drafts of any of the foregoing. Unless the parties agree otherwise, all ELECTRONICALLY STORED INFORMATION shall be produced in the form in which it is kept in its usual course. If ELECTRONICALLY STORED INFORMATION is produced in the form in which it is kept in its usual course but it is not reasonably useable in that form, then all software, instructions, or tools necessary to make the information reasonably useable must also be provided or identified. To the extent that identical information is available as both a DOCUMENT and as ELECTRONICALLY STORED INFORMATION or in multiple forms of ELECTRONICALLY STORED INFORMATION, Plaintiff needs only produce the ELECTRONICALLY STORED INFORMATION in one reasonably useable form.

6. "2007-2008 SERVICES" means services provided by YOU in connection with THORNBURG's annual and quarterly financial statements or other documents or reports

prepared or filed by THORNBURG between January 1, 2007 and June 18, 2008, INCLUDING any audit, interim review, quarterly review, other review or examination of THORNBURG's 2007 or first quarter 2008 financial statements and restatement of THORNBURG's 2007 financial statements, any evaluation of THORNBURG's internal controls, and any services provided in connection with registration statements or other filings with the SEC.

7. "ENGAGEMENT" means YOUR relationship with THORNBURG in connection with accounting, audit, tax, and any other services YOU provided to THORNBURG.

8. "GOVERNMENT ENTITY" means the SEC or any other federal or state government agency or establishment, or any employee or agent thereof.

9. "INCLUDES" and "INCLUDING" means including, but not limited to.

10. "INTENT AND ABILITY" means a company's intent and ability to hold impaired assets until recovery.

11. "INVESTIGATION" means review, inspection, inquiry, or investigation.

12. "KPMG" means KPMG LLP, any of its subsidiaries (and any predecessors thereof), and any of its present or former directors, officers, employees, affiliates, representatives, advisors, agents, attorneys, associates or any other person acting on their behalf.

13. "OTTI" means the other-than-temporary-impairment analysis made pursuant to Statement of Financial Accounting Standards No. 115 to determine whether declines in fair value associated with impaired assets are other than temporary.

14. "GOING CONCERN" means evaluation made pursuant to AU Section 341 to assess whether there is substantial doubt about THORNBURG's ability to continue as a going concern for a reasonable period of time.

15. "OTHER APPLICABLE ACCOUNTING PRINCIPLES" means any GAAP pronouncements, rules or accounting guidelines that YOU applied or believed were applicable to THORNBURG's restatement of its 2007 financial statements.

16. "SUBSEQUENT EVENTS PERIOD" shall refer to accounting principles governing subsequent events periods, INCLUDING Type I Subsequent Events and/or Type II Subsequent Events, having the same meanings as set forth in AU Section 560.03 and 560.05.

17. "PCAOB" means the Public Company Accounting Oversight Board and any of its present or former employees, affiliates, representatives, advisors, agents, attorneys, associates or any other person acting on its behalf.

18. "SEC" means the United States Securities and Exchange Commission and any of its present or former employees, affiliates, representatives, advisors, agents, attorneys, associates or any other person acting on its behalf.

19. "THIRD PARTY LENDER" means any financial institution with which THORNBURG entered into lending agreements, INCLUDING, but not limited to, Citigroup, Credit Suisse First Boston, Greenwich Capital, JP Morgan, UBS, Bear Stearns, ING Financial Markets LLC, and Deutsche Bank Securities.

20. "THORNBURG" means Thornburg Mortgage, Inc., any of its subsidiaries (and any predecessors thereof), and any of its present or former directors, officers, employees, affiliates, representatives, advisors, agents, attorneys, associates or any other person acting on their behalf.

21. The words "YOU" or "YOUR" means KPMG and its representatives (INCLUDING counsel), INCLUDING any of its subsidiaries (and any predecessors thereof), and

any of its present or former directors, officers, employees, affiliates, representatives, advisors, agents, attorneys, associates or any other person acting on their behalf.

22. The terms "all" and "each" shall be construed as "all and each."

23. The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

## INSTRUCTIONS

A. The DOCUMENTS covered by these requests include all DOCUMENTS in YOUR possession, custody or control, INCLUDING DOCUMENTS in the possession, custody or control of YOUR counsel. These requests exclude documents previously produced by YOU to the SEC in connection with its INVESTIGATION of THORNBURG. Unless otherwise specified, each request herein seeks all DOCUMENTS generated or received by YOU during the ENGAGEMENT through and INCLUDING the date of production.

B. Each request for the production of DOCUMENTS shall be deemed to be continuing in nature. If at any time additional DOCUMENTS come into YOUR possession, custody or control or are brought to YOUR attention, prompt supplementation of YOUR response to these requests is required.

C. YOU shall produce all DOCUMENTS in the manner in which they are maintained in the usual course of YOUR business and/or YOU shall organize and label the DOCUMENTS to correspond with the categories in this request. A request for a DOCUMENT shall be deemed to include a request for any and all file folders within which the DOCUMENT

was contained, transmittal sheets, cover letters, exhibits, enclosures, or attachments to the DOCUMENT, in addition to the DOCUMENT itself.

D.  If and to the extent DOCUMENTS are maintained in a database or other electronic format, YOU shall produce along with the DOCUMENT(S) software that will enable access to the electronic DOCUMENT(S) or database as YOU would access such electronic DOCUMENT(S) or database in the ordinary course of YOUR business.

E.  DOCUMENTS shall be produced in such fashion as to identify the department, branch or office in which they were located and, where applicable, the natural person in whose possession it was found and the business address of each DOCUMENT's custodian(s).

F.  Any DOCUMENT withheld from production based on a claim of privilege or any similar claim shall be identified by (1) the type of DOCUMENT, (2) the general subject matter of the DOCUMENT, (3) the date of the DOCUMENT, and (4) such other information as is sufficient to identify the DOCUMENT INCLUDING the author of the DOCUMENT, the addressee of the DOCUMENT, and, where not apparent, the relationship of the author and the addressee to each other. The nature of each claim of privilege shall be set forth.

G.  DOCUMENTS attached to each other should not be separated.

H.  DOCUMENTS not otherwise responsive to this discovery request shall be produced if such DOCUMENTS mention, discuss, refer to, or explain the DOCUMENTS which are called for by this discovery request.

I.  In producing DOCUMENTS and other materials, YOU are requested to furnish all DOCUMENTS or things in YOUR possession, custody or control, regardless of whether such DOCUMENTS or materials are possessed directly by YOU or YOUR agents, employees,

representatives, managing agents, affiliates, accountants, investigators, or by YOUR attorneys or their agents, employees, representatives or investigators.

J. If YOU object to any part of any request, YOU shall state fully in writing the nature of the objection. Notwithstanding any objections, YOU shall nonetheless comply fully with the other parts of the request to which YOU are not objecting.

K. Each request for production shall be construed independently and not with reference to any other request for production for the purpose of limitation.

L. The use of the singular form of any word includes the plural and vice versa. The past tense shall include the present tense and vice versa.

M. If YOU do not understand any part of any request or the foregoing Definitions and Instructions, YOU should seek clarification from counsel for Mr. Goldstone and Mr. Simmons at WilmerHale.

## REQUESTS FOR PRODUCTION

### Request No. 1

All DOCUMENTS or COMMUNICATIONS CONCERNING the 2007-2008 SERVICES INCLUDING all draft and final workpapers (in hard copy and electronic form), reports, correspondence (internal and external), consultations with YOUR National Office, notes, memoranda, desk files, and working files. For the elimination of doubt, this Request INCLUDES (1) DOCUMENTS or COMMUNICATIONS CONCERNING any possible accounting errors, irregularities, internal control weaknesses or deficiencies in the books and records at THORNBURG, YOUR internal reviews, evaluations or assessments of the 2007-2008 SERVICES, YOUR decision to withdraw YOUR audit opinion with respect to THORNBURG's

2007 financial statements, and/or any DOCUMENTS or information that THORNBURG did not provide YOU in connection with the 2007-2008 SERVICES, and (2) all COMMUNICATIONS with THIRD PARTY LENDERS, the PCAOB, or any GOVERNMENT ENTITY.

Response:

Request No. 2

All DOCUMENTS or COMMUNICATIONS CONCERNING any INVESTIGATION of KPMG in connection with the 2007-2008 SERVICES, INCLUDING an INVESTIGATION by the SEC, the PCAOB, or any other GOVERNMENT ENTITY. For the elimination of doubt, this Request INCLUDES production letters, other correspondence CONCERNING productions, correspondence CONCERNING interviews or meetings with any current or former KPMG employees, transcripts, notes, memoranda or recordings CONCERNING interviews or meetings (whether on-the-record or off-the-record), and documents read or shown to interviewees during such interviews or meetings. This Request also INCLUDES DOCUMENTS that refer or relate to the PCAOB's findings made after its INVESTIGATION.

Response:

9

Request No. 3

All DOCUMENTS or COMMUNICATIONS CONCERNING any possible deficiencies in the quality control systems at KPMG or any violation by KPMG of securities laws, PCAOB rules, or professional accounting and auditing practices or standards in connection with the 2007-2008 SERVICES.

Response:


Request No. 4

All DOCUMENTS or COMMUNICATIONS CONCERNING any INVESTIGATION of THORNBURG by the SEC or any other GOVERNMENT ENTITY. For the elimination of doubt, this Request INCLUDES production letters, other correspondence CONCERNING productions, correspondence CONCERNING interviews of or meetings with any current or former KPMG employees, transcripts or recordings from interviews or meetings (whether on-the-record or off-the-record), and documents read or shown to interviewees during such interviews or meetings.

Response:

Request No. 5

All DOCUMENTS or COMMUNICATIONS CONCERNING any DEFENDANT.

Response:

Request No. 6

All COMMUNICATIONS between YOU and any member of the THORNBURG Board of Directors.

Response:

Request No. 7

DOCUMENTS sufficient to identify: (a) all current or former KPMG employees or associated persons interviewed, whether on-the-record or off-the-record, in connection with the SEC's INVESTIGATION of THORNBURG; (b) all current and former KPMG employees or associated persons from whom KPMG collected and produced DOCUMENTS to the SEC in connection with the SEC's INVESTIGATION of THORNBURG; (c) all current or former KPMG employees or associated persons interviewed, whether on-the-record or off-the-record, in connection with any INVESTIGATION of KPMG in connection with the 2007-2008 SERVICES; and (d) all KPMG employees who worked on the 2007-2008 SERVICES. With

11

respect to (a) and (c), such DOCUMENTS shall INCLUDE, for each interview, the date of the interview, the names of the persons who were present during the interview, the location of the interview, and the duration of the interview.

Response:

Request No. 8

All YOUR internal literature and manuals (INCLUDING training manuals) CONCERNING OTTI, SUBSEQUENT EVENTS PERIOD, and GOING CONCERN.

Response:

Request No. 9

All YOUR calendars reflecting time entries and schedules for Jennifer Hall, Tara Baucom, Meg Jones, Cynthia Reinhart, and Matthew Plummer during the 2007-2008 SERVICES.

Response:

Request No. 10

All DOCUMENTS and COMMUNICATIONS CONCERNING KPMG's internal reviews, evaluations or assessments of any KPMG employee that worked on the 2007-2008 SERVICES, INCLUDING performance evaluations and compensation decisions.

Response:

Request No. 11

All DOCUMENTS and COMMUNICATIONS CONCERNING the credit markets, the markets for mortgage-backed securities, or the markets for reverse repurchase ("repo") lending from the period August 1, 2007 through March 15, 2008 that were sent or received by any KPMG employee who worked on the 2007-2008 SERVICES.

Response: