**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

SECURITIES AND EXCHANGE COMMISSION,

              Plaintiff,

vs.                                                       CIVIL NO. 12-257 (JB-LFG )

LARRY A. GOLDSTONE,
CLARENCE G. SIMMONS, III, and
JANE E. STARRETT,

              Defendants.

**PLAINTIFF SECURITY AND EXCHANGE COMMISSION'S
OPPOSITION TO DEFENDANTS' MOTION TO COMPEL
PRODUCTION OF PCAOB DEPOSITION TRANSCRIPTS
AND PLAINTIFF'S NOTES AND MEMORANDA OF INTTERVIEWS
WITH NON-PARTY WITNESSES**

## TABLE OF CONTENTS

I.     INTRODUCTION ...........................................................................................1

II.    ARGUMENT ..................................................................................................4

    A.    The PCAOB Transcripts are Not Discoverable. ......................................4

        1.    Defendants Should Not be Allowed to Reargue a Discovery
             Motion the Court Has Already Ruled On. ...................................4

        2.    The PCAOB Transcripts Have Not Been Presented In a Public
             Proceeding..................................................................................6

        3.    There Has Been No Waiver of the Privilege Protecting
             The PCAOB Transcripts. ..........................................................10

        4.    Disclosure of the PCAOB Background Questionnaires
             Does Not Waive the Privilege as to the PCAOB
             Transcripts.................................................................................12

        5.    An Unrelated SEC Action Pending in the Central District
             of California Has No Bearing on this Matter.............................13

    B.    The SEC Attorney's Notes Are Highly Protected Attorney Work
        Product of Third-Party Interviews. .........................................................14

        1.    The SEC's Notes Are Subject to the Highest Protections
             Afforded to Attorney Work Product. ........................................14

        2.    Defendants Have Not Demonstrated a Substantial
             Need for the SEC Attorneys' Notes..........................................16

         3.    Defendants Can Obtain a Substantial Equivalent of the
             SEC Notes Through Depositions of Ms. Reinhart and
             Ms. Hall.....................................................................................18

        4.    The SEC Did Not Inject Their Notes into This Litigation
             And Thus Waive Work Product Protection. ..............................19

III.    CONCLUSION.............................................................................................21

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Bud Antle, Inc. v. Grow-Technology, Inc.*, 131 F.R.D. 179 (N.D. Cal. 1990) ............................ 12

*Duck v. Warren*, 160 F.R.D. 80 (E.D. Va. 1995) ............................................................ 15, 16, 17

*Federal Deposit Insurance Corp. v. Wise*, 139 F.R.D. 168 (D. Colo. 1991) ................................ 20

*In re Grand Jury Proceedings John Doe Co. v. United States,*
     350 F.3d 299 (2nd Cir. 2003) ....................................................................................... 19

*In re Grand Jury Proceedings*, 43 F.3d 966 (5th Cir. 1994) ...................................................... 3, 15

*In re Grand Jury Proceedings*, 616 F.3d 1172 (10th Cir. 2010) .................................................. 20

*Hickman v. Taylor*, 329 U.S. 495 (1947) ................................................................................. 15

*International Digital System Corp. v. Digital Equipment Corp.*, 120 F.R.D. 445 (D.
Mass. 1988) ............................................................................................................................ 12

*Patel v. Havana Bar, Number Civ-A 10-1383*, 2011 WL 60299838-9 (E.D. Pa. Dec. 5,
2011) ..................................................................................................................................... 16

*Rimbert v. Eli Lilly and Co.*, 647 F.3d 1247 (10th Cir. 2011) .................................................... 5, 6

*SEC v. Sentinel Management Group, Inc.*, 2010 WL 4977220 C 4684, 12 (N.D. Ill. Dec.
2, 2010) ................................................................................................................................ 21

*SEC v. Thrasher*, 92 Civ. 6987, 1995 WL 46681 (S.D.N.Y. Feb. 7, 1995) ................................ 19

*SEC v. Treadway*, 229 F.R.D. 454 (S.D.N.Y. 2005) ................................................................. 21

*Strategem Development Corp. v. Heron International N.V.*, 153 F.R.D. 535 (S.D.N.Y.
1994) ..................................................................................................................................... 12

*Suggs v. Whitaker*, 152 F.R.D. 501 (M.D.N.C. 1993) ................................................................ 17

*In re United Mine Workers of America Employee Benefit Plans Litigation*, 159 F.R.D.
307 (D.D.C. 1994) .................................................................................................................. 12

*United States v. Bernard*, 877 F.2d 1463 (10th Cir. 1989) ........................................................ 12

*Upjohn Co. V. United States*, 449 U.S. 383 (1981) ....................................................................3, 15

*Xerox Corp. v. IBM Corp.*, 64 F.R.D. 367 (S.D.N.Y. 1974) ........................................................19

## FEDERAL STATUTES

15 U.S.C. § 7215............................................................................................................................11

15 U.S.C. § 7215(b)(5)(A).............................................................................................2, 6, 11, 14

15 U.S.C. § 7215(b)(5)(B) ..............................................................................................................7

Fed. R. Evid. 502(b)......................................................................................................................11

# I.   INTRODUCTION

This Court has already ruled on Defendants' demand that Plaintiff produce privileged Public Company Accounting Oversight Board ("PCAOB") materials, namely transcripts of KPMG employees' testimony to the PCAOB.  On November 9, 2012, in response to Defendants' request for an emergency hearing, the Court ruled that "the only way [PCAOB transcripts are] presented is if they are in – if there's – if they were part of the complaint."  Ex. A, transcript of Nov. 9, 2012 Hearing Re Discovery Dispute at 21.[1]  Apparently unhappy with that ruling, Defendants now move, not for reconsideration, but again to compel production, on the same grounds they raised before, as well as some new grounds.  This is a patently improper attempt to re-litigate this Court's prior ruling.

Despite being instructed by the Court to accept the SEC's representations (*see* Ex. A at 22, noting that the Court has "got to accept counsel's word all the time on these things"), Defendants refuse to do so.  Instead, after being told unequivocally by the SEC that (1) counsel primarily responsible for drafting the Complaint never reviewed PCAOB transcripts at any time; (2) no counsel involved in drafting or reviewing the Complaint used or relied on PCAOB transcripts; and (3) no one had reviewed PCAOB transcripts for a year or more before the Complaint was drafted, Defendants call the SEC's representations "utter fiction and patently incredible."  Defendants' Motion to Compel Production of PCAOB Deposition Transcripts and Plaintiff's Notes and Memoranda of Interviews with Non-Party Witnesses ("Motion to Compel") at 2.

---

[1] All Exhibits referred to herein are attachments to the Declaration of Stephen C. McKenna filed herewith, unless otherwise specified.

Now also, for the first time, Defendants argue that the inadvertent production of eight PCAOB witness background questionnaires somehow waives the privilege as to PCAOB transcripts.  This argument should not even be considered because it was not made when Defendants first moved to compel.  But even if it were, an inadvertent production should not waive the privilege as to those questionnaires, let alone the PCAOB transcripts.

Defendants' fundamental fairness argument also falls flat.  The statutory framework of 15 U.S.C. § 7215(b)(5)(A) provides that materials are no longer confidential and protected once are "presented in a public proceeding."  Thus, if not so presented, neither side can use the materials and there is no unfairness.  This Court further protected Defendants by construing the phrase "presented in a public proceeding" broadly to include any use of or reliance on the materials in preparing the Complaint.[2]  Thus the SEC's representation that it did not use or rely on the transcripts  to prepare its Complaint – and has not and will not otherwise use the transcripts in this litigation – which Defendants offer no evidence to dispute, provides full protection.

In a tacit admission that a second motion to compel production of the PCAOB transcripts is not proper, Defendants bootstrap it to a motion to compel Plaintiff's Notes and Memoranda of Interviews with Non-Party Witnesses.  This portion of Defendants' Motion to Compel is an extraordinary attempt to obtain SEC counsel's notes of interviews they conducted of witnesses they interviewed in connection with their investigation and litigation.  Those notes are work product of the highest form.  "[I]n order to obtain discovery of documents based upon oral

---

[2] The SEC staff contended at the hearing that materials were not "presented in a public proceeding" unless or until such materials were actually used in an SEC action, for example by being cited in a Complaint or used to cross-examine witnesses.  Defendants, on the other hand, argued that by bringing the action and possessing the materials the SEC was presenting them in a public proceeding.  The Court chose a middle ground.

communications with third parties, the Supreme Court in *Upjohn Co. v. United States*, 449 U.S.

383, 101 S.Ct. 677, 66 L. Ed.2d 584 (1981), clarified that the requisite showing is 'far stronger'

than for other work product documents." *In re Grand Jury Proceedings*, 43 F.3d 966, 970-71

(5th Cir. 1994).  And Defendants have failed to even make the far weaker showing of substantial

need for the information and the inability to obtain it elsewhere without undue hardship.

Defendants claim they have a substantial need for information contained in SEC attorney

notes of interviews taken of KPMG employees Cynthia Reinhart and Jennifer Hall because it is

inconsistent with prior sworn testimony.  *See* Motion to Compel at 12.[3]  But they have shown no

inconsistency.  Moreover, to the extent Ms. Reinhart's or Ms. Hall's prior sworn testimony is

inconsistent with testimony these witnesses offer in deposition or at trial, Defendants are free to

impeach them with the prior testimony.  They do not need the SEC's notes for that.

Defendants further claim that they cannot obtain the information elsewhere because they

do not believe Ms. Reinhart and Ms. Hall will be forthcoming in their depositions.  *Id*. at 13.  But

Defendants' assumption was unfounded and premature; neither Ms. Hall nor Ms. Reinhart had

been deposed before Defendants' filed their Motion to Compel.[4]  The assumption has now been

proven false because Ms. Hall provided over ten hours of substantive testimony on December 5-

6, 2012.  A copy of that transcript is attached as Exhibit B.  Ms. Reinhart is expected to provide

similar substantive testimony during her deposition scheduled for December 19-20.  Because

---

[3] While Defendants contend that "[t]he "centerpiece of the SEC's securities fraud case against Defendants is a series of allegations that Defendants misled Thornburg's outside auditor KPMG in connection with the filing of Thornburg's 2007 Form 10-K" (Motion at 1), it is not.  The centerpiece is the $428 million in losses on Thornburg's Purchased ARM Securities Defendants failed to realize and the reported fourth quarter profit that was really a loss.  These material misstatements required correction and restatement in an amended Form 10-K prepared by all three Defendants and signed by Goldstone and Simmons.
[4] Ms. Baucom's and Ms. Jones' testimony is irrelevant, those witnesses were not interviewed and there are no notes.

Defendants have now had the opportunity to question Ms. Hall at length about KPMG's audit and her SEC interviews, and will have the opportunity to question Ms. Reinhart later this week, they can show no basis to invade the SEC's work product.

For all these reasons, as set forth more fully below, Defendants' Motion to Compel should be denied.

## II. ARGUMENT

### A. The PCAOB Transcripts Are Not Discoverable.[5]

#### 1. Defendants Should Not Be Allowed to Reargue a Discovery Motion the Court Has Already Ruled On.

Defendants' Motion to Compel ignores this Court's November 9, 2012 ruling that the PCAOB transcripts are discoverable only to the extent they were used or relied upon by the SEC in preparing the Complaint and thus presented therein. At Defendants' request, the Court heard from the parties on this issue at a telephonic hearing held on Friday afternoon, November 9, 2012. Defendants had asked for the emergency hearing in order to have the issue heard before the deposition of a KPMG witness, Tara Baucom, the next business day. After hearing argument from both sides, and also from counsel representing non-party KPMG, the Court instructed the SEC to:

> talk to the other counsel and you ask them this question. You ask them is there any portion of [the SEC's] complaint that is – any portion of this complaint that comes out of PCAOB interviews. If the answer is no, you know, I've got to accept counsel's word all the time in these things. If they say no, you don't have to [produce] these transcripts. But if they say yes in Paragraph 78, we're quoting right out of the PCAOB, then you need to produce the transcript, okay?

---

[5] Non-party KPMG filed a Motion to Quash, in Part, or Modify Subpoena to Produce Documents, and for Protective Order, objecting to Defendants' parallel request that it produce PCAOB transcripts and other materials to Defendants. Dkt. 91.

Ex. A at 22.  The Court further gave an example of having transcripts on an attorney's desk

while drafting or reviewing the Complaint to make the ruling clear:

> So I think they're going to have to be real honest about how they drafted maybe certain portions of this and if they had that PPCAOB in front of them and were taking either word for word or paraphrasing or whatever out of those PCAOB transcripts, probably if they had them on the table while they were drafting the complaint, they're going to end up having to produce them.

*Id*. at 23.[6]

In accordance with the Court's ruling, over the following weekend undersigned counsel

spoke with all members of the staff directly involved in the Thornburg investigation.  On

Monday morning he reported to counsel for Defendants that the staff members had told him "that

they did not use or rely on Ms. Baucom's or any other KPMG employee's PCAOB testimony in

preparing the complaint."  *See* Ex. G to Defendants' Motion to Compel at 3.

Apparently disbelieving the representations made by SEC counsel, Defendants asked for

additional detail about who counsel spoke to, what was said, who drafted the Complaint, etc.  *Id*.

Counsel for the SEC then spoke with counsel for Defendants again, in person and by telephone

on the morning of November 13, 2012, and provided additional detail about their inquiries.  *See*

*id*. at 1.  Still unsatisfied, Defendants now move to compel the production of the PCAOB

transcripts for a second time, attempting to re-litigate this Court's prior ruling.

Under the "law of the case" doctrine, when a court decides upon a rule of law, that

decision should continue to govern the same issue throughout the case.  *Rimbert v. Eli Lilly and*

*Co.*, 647 F.3d 1247, 1251 (10th Cir. 2011).  The rule is designed to promote finality and prevent

re-litigation of previously decided issues.  *Id*.  The rule, however, does not limit a court's power

---

[6] The Court's ruling required disclosure of only those portions of PCAOB transcripts that were incorporated into the Complaint, portions not so used could be redacted.  *Id*. at 24-25.

to revisit an interlocutory decision. *Id.* But while the law of the case doctrine does not

necessarily preclude the court from reviewing its November 9 ruling, the policy behind the rule –

to promote finality and prevent re-litigation of previously decided issues – counsels strongly

against condoning Defendants' conduct in disregarding a prior Court ruling because they did not

get what they wanted.

Defendants are not asking the Court to reconsider its prior ruling, nor could they properly

do so because there is no new and different evidence or any intervening controlling authority.

*See id.* Rather, they are simply rearguing what has already been argued and decided, hoping for

a different result. This is a waste of judicial resources and should not be allowed. Even if

allowed, however, the result should not change because the PCAOB transcripts have not been

presented in a public proceeding and thus remain protected by 15 U.S.C. § 7215(b)(5)(A).

### 2. The PCAOB Transcripts Have Not Been Presented in a Public Proceeding.

15 U.S.C. § 7215(b)(5)(A) provides that:

> Except as provided in subparagraphs (B) and (C), all documents and information
> prepared or received by or specifically for the Board, and deliberations of the
> Board and its employees and agents, in connection with an inspection under
> section 7214 of this title or with an investigation under this section, shall be
> confidential and privileged as an evidentiary matter (and shall not be subject to
> civil discovery or other legal process) in any proceeding in any Federal or State
> court or administrative agency, and shall be exempt from disclosure, in the hands
> of an agency or establishment of the Federal Government, under the Freedom of
> Information Act (5 U.S.C. 552a), or otherwise, unless and until presented in
> connection with a public proceeding or released in accordance with subsection (c)
> of this section.

Defendants do not contest that the PCAOB transcripts are documents prepared or

received by or specifically for the Board and thus protected by 15 U.S.C. § 7215(b)(5)(A). *See*

Motion to Compel at 19-27. They instead argue that the SEC has presented the transcripts in a

public proceeding because they claim, without any support and contrary to the Court's prior ruling, that information from the PCAOB testimony "has clearly informed the Complaint's allegations." Motion to Compel at 21. In short, the Defendants dismiss the SEC staff's representations, ignore the Court's instructions from the November 9 hearing, and claim that "[b]y virtue of the investigative process, the PCAOB transcripts were 'presented' in connection with this action." *Id.* at 21-22.

This argument, however, cannot be reconciled with the provision in the Sarbanes-Oxley Act that allows the PCAOB to share materials with the SEC without forfeiting the privilege. 15 U.S.C. § 7215(b)(5)(B) provides that: "[w]ithout the loss of its status as confidential and privileged in the hands of the Board, all information referred to in subparagraph (A) may – (i) be made available to the Commission …." The statutory scheme thus requires something more than simply making PCAOB materials available to the Commission or filing a lawsuit in order for the privilege to be lost.

In its November 9 ruling, the Court recognized the importance of the privilege covering PCAOB materials set forth in the statute, but also credited Defendants' arguments that it would be unfair to allow the SEC to rely on PCAOB materials to bring claims against Defendants without providing those materials to Defendants. In doing so it fashioned a balanced approach requiring production of materials used or relied upon in drafting the Complaint, but protected materials not so used.

The SEC represented to Defendants that it did not use or rely upon the PCAOB materials in bringing the complaint. As it explained, and now supports with sworn Declarations, the two attorneys primarily responsible for drafting the Complaint, Stephen McKenna and Jeffrey Lyons,

never reviewed the PCAOB transcripts.  McKenna Decl. at ¶ 4; Ex. C, Lyons Decl. at ¶ 5.  Staff

attorney Julian Robinson reviewed the PCAOB transcripts of Ms. Reinhart, Ms. Hall, and certain

other KPMG employees in August of 2009 in preparing to take investigative testimony from

Ms. Reinhart and Ms. Hall and does not believe he ever reviewed them again.  Ex. D, Robinson

Decl. at ¶ 4.  He has sworn that he did not use or rely on the transcripts in reviewing the

Complaint some two and a half years later, in March of 2012, and no transcripts were on his desk

at that time.  *Id*. at ¶ 7.  Similarly, the staff accountant on the investigation, Donna Walker, has

sworn that she only looked at Ms. Reinhart's PCAOB transcripts in or around September 2010,

and also did not use or rely on those transcripts in her review of certain sections of the Complaint

a year and a half later.  Ex. E, Walker Decl. at ¶¶ 4-5.

Defendants dispute these representations.  They contend that the SEC used the PCAOB

transcripts in bringing its Complaint because the SEC attorney that took Ms. Reinhart's and

Ms. Hall's investigative testimony in 2009 said he would skip certain questioning covered by the

PCAOB.  Motion to Compel at 22.  That attorney, however, was referring to skipping some

general background questions.  Ex. C. at ¶ 5.  "The PCAOB transcripts were not a substitute for

detailed questioning into the areas of interest in the SEC's investigation, namely the margin calls,

going concern and other than temporary impairment analysis conducted by Thornburg, and

KPMG's audit work and opinions thereon.  *Id*.  The SEC "covered those areas in taking

investigative testimony in the SEC investigation."  *Id.*

Defendants cite but one example to support their claim that PCAOB transcripts were

relied upon in bringing the Complaint.  They note that "Ms. Hall affirmed [in her investigative

testimony] that she had 'discussed going concern work papers,' a key issue in this litigation, 'at

8

length' during her PCAOB testimony" and thus "the SEC investigative staff built their knowledge of the case on information contained in the PCAOB testimony."  Motion to Compel at 22.  This example does not support Defendants' premise.  Ms. Hall may have discussed going concern with the PCAOB, but she also did so at length with the SEC.  In Ms. Hall's investigative testimony, the term "going concern" was used 180 times.  *Id.* ¶ 6; Exs. F and G.  Thus the SEC had no need to rely on the PCAOB testimony to bring the allegations of the Complaint.

Likewise, the introduction of PCAOB background questionnaires in Ms. Reinhart's and Ms. Hall's September 2009 SEC investigative testimony does not show that their PCAOB testimony  was used to prepare the SEC's Complaint.  The PCAOB background questionnaires simply provide factual background information about the witnesses.  Defendants have not and cannot show that any information from those questionnaires was used in drafting the Complaint.

Defendants further contend, again without support, that the SEC had to rely on the PCAOB transcripts in drafting its Complaint because it did not take testimony from any KPMG employees other than Ms. Reinhart and Ms. Hall.  Motion to Compel at 23-24.  There can be no dispute that Ms. Reinhart and Ms. Hall were primarily responsible for KPMG's 2007 Thornburg audit, had principal responsibilities for the disputed areas of the audit, and had the most direct contact with Defendants.  Thus, the SEC's decision not to take testimony from Ms. Baucom or other KPMG employees during its investigation is of little significance.

For these reasons, Defendants' renewed attempt to compel production of the PCAOB transcripts should be denied.

3.      **There Has Been No Waiver of the Privilege Protecting the PCAOB Transcripts.**

Defendants next argue that the disclosure of PCAOB background questionnaires should waive the protection afforded the PCAOB transcripts.  Motion to Compel at 23-24.  Initially, this argument should not be heard now because it was not raised when this issue was before the Court on November 9.  Even if the argument is entertained, however, the disclosure of PCAOB background questionnaires in the millions of pages produced to Defendants by the SEC in this matter was inadvertent and should not void any privilege.  Ex. D at ¶ 9; McKenna Decl. at ¶ 7.  Moreover, as discussed below, the disclosure of PCAOB questionnaires cannot waive the privilege protecting the PCAOB transcripts from disclosure.

The SEC has produced over two million pages to Defendants in this litigation.  In that massive production, it produced eight PCAOB background questionnaires that were labeled "Privileged and Confidential Pursuant to Section 1005(b)(5)(A) of the Sarbanes-Oxley Act of 2002 (15 U.S.C. Section 7215(b)(5)(A)).  *See* Motion to Compel at 4, n. 1 and Exhibit A thereto.  The production of those privileged PCAOB background questionnaires was inadvertent.  Ex. C at ¶ 9; McKenna Decl. at ¶ 7.  Rather than notify the SEC that it had produced materials marked as privileged, the Defendants chose to introduce one such document in the deposition of Ms. Baucom.  While the SEC could and should have objected at that time, counsel did not notice the privileged nature of the document during Ms. Baucom's deposition and did not focus on this issue until reading the reference to the PCAOB questionnaires in Defendants' Motion to Compel.  McKenna Decl. at ¶ 8.  Promptly thereafter, counsel for the SEC notified Defendants that the

disclosure was inadvertent and requested the return of the documents.  Ex. H.  Defendants refused.  *Id.*[7]

While not directly on point with respect to materials protected from disclosure by 15 U.S.C. § 7215(b)(5)(A), Federal Rule of Evidence 502 provides that inadvertent disclosure of materials protected by the attorney-client privilege or the work product doctrine in a federal proceeding does not act as a waiver if (1) the disclosure was inadvertent; (2) the holder of the privilege took reasonable steps to prevent disclosure; and (3) the holder promptly took reasonable steps to rectify the error.  Fed. R. Evid. 502(b).  The confidentiality and privilege protections of 15 U.S.C. § 7215 are statutory and do not contemplate waiver, thus those protections are arguably even stronger than the attorney-client privilege and work product protection.   Even if evaluated under Rule 502, however, it is clear that there has been no waiver.  The eight PCAOB background questionnaires inadvertently produced by the SEC were a small sliver of a massive electronic production made to Defendants of over two million pages, and counsel for the SEC has declared that the production was inadvertent.  The SEC took reasonable steps to prevent disclosure of PCAOB materials by withholding the PCAOB transcripts and correspondence and listing those materials on a privilege log.  *See* Withheld Document List, Ex. B to Motion to Compel.  Finally, the SEC promptly asked for the return of the documents after it realized they had been inadvertently disclosed.  Ex. H.  Return of the documents and preservation of their privileged status is therefore appropriate.

---

[7] Because the background questionnaires of Ms. Reinhart and Ms. Hall had been produced to Defendants as exhibits to their investigative testimony, the SEC determined that it would not be consistent with the spirit of the Court's November 9 order to ask for their return and did not do so.

4.      **Disclosure of the PCAOB Background Questionnaires Does Not Waive the Privilege as to the PCAOB Transcripts.**

Even if the Court determines that disclosure of the PCAOB background questionnaires waives the privilege as to those materials, it should not take the further step of holding that the privileged is waived as to all other PCAOB materials, including the PCAOB transcripts.  Subject matter waivers are disfavored because the policies behind protecting privileged materials are strong.  *See International Digital Sys. Corp. v. Digital Equip. Corp.*, 120 F.R.D. 445, 446 n.1 (D. Mass. 1988) (attorney-client privilege waiver only applied to disclosed documents); *Strategem Dev. Corp. v. Heron Int'l N.V.*, 153 F.R.D. 535, 544-545 (S.D.N.Y. 1994) (same); *Bud Antle, Inc. v. Grow-Tech, Inc.*, 131 F.R.D. 179, 184 (N.D. Cal. 1990) (same); *In re United Mine Workers of America Employee Benefit Plans Litig.*, 159 F.R.D. 307, 310-312 (D.D.C. 1994) (waiver of work product protection does not extend to other documents addressing the same subject matter).  This Court implicitly recognized that a subject matter type waiver would not be appropriate when it ruled that only those portions of the PCAOB materials that the SEC used or relied upon in bringing its Complaint need be disclosed, and portions not so used could be redacted.  *See* Ex. A, at 24-25.

Defendants cite to *United States v. Bernard*, 877 F.2d 1463, 1464-65 (10th Cir. 1989), for the proposition that disclosing the PCAOB background questionnaires waives the privilege as to those witnesses' oral testimony.  Motion to Compel at 24.  But that case is inapposite.  In *Bernard*, the defendant disclosed legal advice to a third-party in order to convince the third-party that a loan was lawful and proper.  877 F.2d at 1465.  By disclosing the advice to the third-party, the defendant voluntarily waived the privilege to that advice and affirmatively used it.  *Id*.  It was therefore appropriate to allow the attorney to be examined regarding the advice allegedly given.

*Id.*  Here, the SEC is making no use of the background questionnaires in the litigation.  This is not a situation where the SEC has voluntarily interjected the background questionnaires, let alone the PCAOB transcripts, into this litigation.  Thus, there is no basis for a subject matter waiver with regard to the PCAOB investigation.

The parties have analyzed this issue through cases involving waivers of the attorney-client privilege and work product doctrine, since there are no decisions addressing a waiver of the privilege provided by Section 105.  However, PCAOB conduct supports the position that a limited disclosure of materials relating to a PCAOB investigation does not result in subject matter waiver.  For example, when the PCAOB publishes a settled disciplinary order it discloses certain aspects of the PCAOB investigation and enforcement action.  *See* Settled Disciplinary Orders found at http://pcaobus.org/Enforcement/Decisions/Pages/default.aspx. Likewise, it provides limited disclosure about PCAOB examinations in its Inspection Reports.  *See* http://pcaobus.org/Inspections/Reports/Pages/default.aspx. Yet by disclosing limited details of PCAOB investigations and examinations, including the individuals involved and deficiencies charged, it has never been found that other PCAOB materials should lose their confidential and privileged designation.

### 5.     An Unrelated SEC Action Pending in the Central District of California Has No Bearing on this Matter.

Defendants cite to a pending SEC enforcement action in the Central District of California to support their arguments to compel production of the PCAOB transcripts, contending that because PCAOB transcripts were produced in that action, they must also be produced here. Motion to Compel at 24-25.  Their contention that the SEC is acting inconsistently, however, does not follow.  Under Section 105, PCAOB materials are protected unless and until "presented

13

in a public proceeding."  15 U.S.C. § 7215(b)(5)(A).  In *SEC v. Jensen*, the PCAOB transcripts

were presented in a public proceeding and thus the protections no longer applied.  In this action,

as we represented to Defendants and have demonstrated herein, the PCAOB transcripts have not

been presented in a public proceeding.  Thus the transcripts remain protected by Section 105.

**B.     The SEC Attorneys' Notes Are Highly Protected Attorney Work Product of Third-Party Interviews.**

The relief Defendants are seeking here is extraordinary; they seek notes of witness

interviews authored by SEC investigative attorneys and notes authored by *trial counsel* of

meetings with witnesses that were conducted to assist counsel in preparing the case for trial.[8]

Attorney interview notes, taken in anticipation of and in furtherance of litigation, however, are

work product subject to the highest protection.  Such work is only discoverable in a "rare

situation."  No such situation exists because the witnesses are available to give deposition

testimony; Ms. Hall has already testified at length for Defendants and Ms. Reinhart is scheduled

to do so on December 19-20.

**1.     The SEC Attorneys' Notes Are Subject to the Highest Protections Afforded to Attorney Work Product.**

Defendants move "to compel production of (1) Plaintiff's notes and memoranda of

interviews with non-party witnesses …."  Motion to Compel at 1.  This request directly

contradicts their claim that "here, the moving party 'in no way requests any evaluative material

---

[8] Defendants argue that conducting interviews without transcribing them and asking follow-up questions of counsel is unusual and necessarily implies the SEC did not want to create a discoverable record. Motion to Compel at 3.  Their unfounded speculations of nefarious conduct by the SEC, however, are belied by their own experience.  Counsel for each of the three Defendants provided information to the SEC following their client's investigative testimony, and no transcriptions were made of any of those follow-up conversations.  Ex. C at ¶ 6; Ex. D at ¶ 10.  As declared by investigating attorney Mr. Robinson, "[b]rief follow-up interviews are not unusual, as it can be inefficient to arrange sworn testimony in such circumstances."  Ex. D at ¶ 10.

that might go along with [the requested witness] statements.'"  Motion to Dismiss at 12, quoting *Duck v. Warren*, 160 F.R.D. 80, 82 (E.D. Va. 1995).  Attorney notes and memoranda of witness interviews are subject to heightened protection, and discovery of them may be had only in a "'rare situation' because of the danger that the attorney's version of such conversations is inaccurate and untrustworthy."  *In re Grand Jury Proceedings*, 43 F.3d 966, 970 (5th Cir. 1994), quoting *Hickman v. Taylor*, 329 U.S. 495, 512 (1947).  "Perhaps more importantly, the stricter limits on disclosure of work product which results from oral communications with third parties is also necessary due to the likelihood that such documents will reveal the attorney's mental processes or litigation strategy."  *Id.*, citing *Upjohn Co. V. United States*, 449 U.S. 383, 400 (1981).  Julian Robinson and Donna Walker, the SEC staff attorney and accountant that took interview notes from Ms. Hall's follow-up interview, have both declared that the notes are not akin to a transcript of the witnesses' unsolicited factual statements, but rather reflect their mental processes and impressions in investigating Thornburg and preparing for this litigation.  Ex. D at ¶ 11; Ex. E at ¶ 7.[9]   As the Supreme Court stated in *Upjohn*, "Rule 26 and *Hickman* make clear, such work product [based on oral statements from third parties] cannot be disclosed simply on a showing of substantial need and inability to obtain the equivalent without undue hardship."  *Upjohn*, 449 U.S. at 401.

And here, Defendants cannot even show that they have either a substantial need for the SEC's notes or an inability to obtain equivalent testimony.

---

[9] Defendants' claim that "the SEC's notes contain essentially verbatim statements by percipient witnesses, as opposed to mental impressions of counsel ordinarily protected under the work product and related doctrines" (Motion to Compel at 2), is baseless.

15

2.     **Defendants Have Not Demonstrated a Substantial Need for the SEC Attorneys' Notes**

Defendants claim that they require the SEC's work product because the sworn testimony of Cynthia Reinhart and Jennifer Hall is inconsistent with certain allegations in the SEC's Complaint.  Motion to Dismiss at 12.  This provides no "substantial need."  If the prior testimony is, in fact, inconsistent with testimony Ms. Reinhart and/or Ms. Hall offer at their depositions or trial, Defendants will be free to use that testimony to impeach the witnesses.

Defendants cite a district court case from the Eastern District of Virginia for the proposition that substantial need can be shown where a party makes "a showing of a witness' inconsistent statements."  *Id*.  But even if the court were inclined to follow this non-precedential case, it should not because it is readily distinguishable.  First, the substantial need finding was not even necessary to the case because the court alternatively ruled that the documents were not work product because the persons that prepared them were not, at the time the notes were prepared, representatives of the party claiming work product.  *Duck v. M.L. Warren*, 160 F.R.D. 80, 82 n.1 (E.D. Va. 1995).  Second, the statements sought were not attorney notes of witness interviews, but rather witness statements about a police shooting provided in an internal affairs investigation."  *Id*. at 82.  Third, the district court in *Duck* found that plaintiff already had several of the statements at issue and had "shown more than speculation that the statements made by defendant and other witnesses during the internal affairs investigation will aid in impeaching defendant."  *Id*. at 83. [10]  Defendants have made no such showing here.  While they claim

---

[10] *Patel v. Havana Ba*r is even less on point in that it involved "eyewitness statements" written by the witnesses, not lawyers, that were not clearly covered by the work product protection and improperly withheld by plaintiff without any claim of privilege.  *Patel v. Havana Bar*, No. Civ-A 10-1383, 2011 WL 6029983*8-9 (E.D. Pa. Dec. 5, 2011).

inconsistency between the Complaint's allegations and Ms. Reinhart's and Ms. Hall's sworn

testimony, they do not cite to any of that sworn testimony to show any inconsistency.  *See*

Motion to Compel at 12.  They thus fail the very test their own authority sets forth:

> The relevance and importance of a document, for purposes of the substantial need
> exception to work product protection, can be established by showing the
> document is necessary for impeachment purposes …. To obtain benefit of this
> rule, however, a party must present more than speculative or conclusory
> statements that the reports will contain invaluable impeachment material.  And,
> the impeachment value must be substantial because every prior statement has
> some impeachment value and otherwise the exception would swallow the rule.

*Duck*, 160 F.R.D. at 83, quoting *Suggs v. Whitaker*, 152 F.R.D. 501, 507-08 (M.D.N.C.

1993) (citations omitted).  Moreover, under Defendants' own theory, whatever is

reflected in the notes is presumably *consistent* with the Complaint and will, therefore, not

provide any fodder for impeachment.

Further, Ms. Reinhart's and Ms. Hall's investigative testimony is not inconsistent with

the allegations of the Complaint Defendants presume are based on the interview notes they seek.

Ms. Hall's investigative testimony is fully consistent with the allegation that had Defendants

provided KPMG with accurate and complete information about Thornbug's margin call situation

prior to filing its 2007 Form 10-K, KPMG would have disagreed with the company's OTTI

conclusion and failure to recognize almost $428 million in losses on its Purchased ARM

Securities.  *See* Compl. ¶ 83; Motion to Compel at 12.  For example, she testified in 2009:

> Q:  And had KPMG been informed that the sale of IO strips was due to the need
>
> to satisfy the Citibank margin call, that would have had some impact on the
>
> analysis of temporary impairment?
>
> A. Yes, certainly something we'd want to consider, yes.

Exhibit G at 44:10-15.  Her recent deposition testimony is also consistent:

> Q:  And Ms. Hall, how would this – how would this Citi letter notify Thornburg
>
> that it was in breach and that Citi had the right to declare an event of default, how
>
> would that have impacted your other than temporary impairment analysis?
>
> Mr. Lee:  Objection to form.
>
> A: It's an indicator that the company is not in a position where it has the ability to
>
> meet its obligations, which raises the questions as to whether they have the ability
>
> to hold their assets, which would be a significant factor for the OTTI analysis.

Ex. B at 33:9-21.  Defendants have not demonstrated any inconsistency, let alone one sufficient

to invade the strong work product protection that applies to attorney notes of witness interviews.

### 3. Defendants Can Obtain a Substantial Equivalent of the SEC Notes Through Depositions of Ms. Reinhart and Ms. Hall.

The SEC attorney notes at issue are those relating to interviews of Ms. Reinhart and Ms.

Hall and certain telephone calls the SEC staff had with their counsel.  *See* Motion to Compel at

18.  Defendants' reference to the "recent depositions of Ms. Baucom and Ms. Jones" to support

their claim that they have no access to testimony from Ms. Reinhart and Ms. Hall is thus simply

irrelevant.  *See* Motion to Compel at 13.  Ms. Baucom's and Ms. Jones' purported lack of

recollection cannot be imputed to Ms. Reinhart and Ms. Hall.[11]  And Defendants speculation that

"there is no reason to believe that other KPMG witnesses will be more forthcoming" (*id.*), was

belied before they filed their motion when KPMG employee Matthew Plummer provided

---

[11] Defendants' claim that these witnesses had "no recollection of the relevant events" (Motion to Compel at 7) is also hyperbole.  They answered numerous substantive questions during a full day of testimony each.  *See* Exs. J and K to the Motion to Dismiss, the numerous questions not answered with "I don't recall" or I don't remember" therein, and the dozens of pages of substantive testimony not included in those exhibits.

detailed and substantive testimony for a full day.  *See* Ex. I.[12]  Defendants' no recollection

conjecture was further disproven when Jennifer Hall provided over 10 hours of testimony in

response to questions from counsel on December 5-6, 2012.  *See* Ex. B.

Defendant's "predicament" is not at all analogous to what the defendant confronted in

*SEC v. Thrasher*.  *See* Motion to Compel at 13-14.  The interviewees in Thrasher refused to

provide any testimony to defendants and invoked the Fifth Amendment privilege when defendant

sought to depose them.  *SEC v. Thrasher*, 92 Civ. 6987, 1995 WL 46681, at *9 (S.D.N.Y. Feb. 7,

1995).[13]  Conversely, Ms. Hall has provided fulsome substantive testimony and Ms. Reinhart is

expected to do the same this week.  Thus Defendants have failed to show an inability to obtain

testimony from Ms. Reinhart and Ms. Hall that would justify invading the SEC's work product.

### 4.   The SEC Did Not Inject Their Notes Into This Litigation and Thus Waive Work Product Protection.

Defendants argue that if the SEC relied on witness interviews to bring its claims it has

waived the work product protection covering notes of those interviews.  Motion to Compel at 8-

11.  That is not the law.  If it were, then there would be no work product protection for any

attorney interview notes unless they were of no use to the litigation, an absurd result.[14]  None of

the cases cited by Defendants support their argument.

*In re Grand Jury Proceedings John Doe Co. v. United States*, held, contrary to

Defendant's argument here, that there was no waiver.  350 F.3d 299, 305 (2nd Cir. 2003)

---

[12] Defendants' filed their motion at 8:12 PM MST on November 28th (see Ex. J), two and a half hours after completing Mr. Plummer's deposition.

[13] *Xerox Corp. v. IBM Corp.*, 64 F.R.D. 367, 381-382 (S.D.N.Y. 1974) also involved information "which is not obtainable from any other source."

[14] Such a rule would logically, at a minimum, apply to notes that support a party's Answer or Motion to Dismiss as well, a result Defendants would surly oppose.

("There is in short no unfairness to the government and therefore no basis for holding that Doe forfeited its privileges as the result of having placed its claims in issue.").  Defendants point to a footnote in *In re Grand Jury Proceedings*, 616 F.3d 1172, 1185 (10th Cir. 2010), for the proposition that "[a] litigant cannot use work product as both a sword and a shield by selectively using privileged information or documents to prove a point but then invoking the privilege to prevent an opponent from challenging the assertion."  Motion to Compel at 9.  While that dicta is true, what the Court in *In re Grand Jury Proceedings* held was that the information sought – whether a party's attorneys passed certain information on to the party – was not protected work product.  616 F.3d at 1185.  With respect to attorney notes of witness interviews such as those at issue here, the Tenth Circuit found that "attorney's recollections of interviewing witnesses and attending client interviews [are] very different from acting as a conduit to convey facts from a third party to a client," indicating that such notes are indeed work product.  *Id*. at 1186

 *Federal Deposit Insurance Corp. v. Wise*, 139 F.R.D. 168 (D. Colo. 1991), also did not involve attorney interview notes, but rather held that certain regulatory documents affirmatively placed at issue by the FDIC were discoverable.  The case is inapposite in that here Defendants have deposed or will depose the witnesses whose testimony they claim is not available to them.  On December 5-6, 2012, Jennifer Hall gave a deposition over two days, and answered substantive questions for over ten hours.  *See* Ex. B.  Cynthia Reinhart is scheduled to be deposed over two days on December 19-20.  Thus, Defendants cannot legitimately claim that "application of the privilege would deny [them] access to information vital to [their] defense." *See* Motion to Compel at 10, quoting *FDIC v. Wise*, 139 F.R.D. at 171.

*SEC v. Treadway*, 229 F.R.D. 454 (S.D.N.Y. 2005), on the other hand, is directly on point.  Attorney notes of interviews and proffer sessions are work product, and where "Defendants are free to question each of the witnesses at their depositions, and at trial, concerning the witnesses' statements to the SEC" there is no waiver.  *Id.*, 229 F.R.D. at 456*; see also SEC v. Sentinel Mgmt. Group, Inc.,* No. 07 C 4684, 2010 WL 4977220, *12 (N.D. Ill. Dec. 2, 2010) (finding that attorney notes are subject to heightened protection and not discoverable where witnesses are available to give testimony).

### III.    CONCLUSION

Because the PCAOB transcripts have not been presented in a public proceeding and because Defendants were previously heard on this issue, their motion to compel the SEC to produce the transcripts should be denied.  And because the SEC's notes are protected work product and Defendants have made no showing that they cannot obtain testimony from Ms. Reinhart and Ms. Hall via other means such as their depositions, Defendant's motion to compel production of those notes should be denied as well.

Dated:  December 17, 2012

s/ Stephen C. McKenna
STEPHEN C. MCKENNA
GREGORY KASPER
DUGAN BLISS
Attorneys for Plaintiff
Securities and Exchange Commission
1801 California Street, Suite 1500
Denver, CO  80202
Ph. (303) 844-1000
email: mckennas@sec.gov
kasperg@sec.gov
blissd@sec.gov

21

## CERTIFICATE OF SERVICE

I hereby certify that on December 17, 2012, 2012, the foregoing document was electronically filed with the Clerk of Court using the CM/ECF system that will send notification of such filing to all counsel of record.

Michael Hoses
Assistant United States Attorney
P.O. Box 607
Albuquerque, NM 87103
(505) 346-7274
Email: Michael.hoses@usdoj.gov
*Local Counsel for Plaintiff Securities and Exchange Commission*

Alanna G. Buchanan (alanna.buchanan@wilmerhale.com)
Joel Fleming (joel.fleming@wilmerhale.com)
Wilmer Cutler Pickering Hale and Dorr LLP
950 Page Mil Road
Palo Alto, CA 94304
Phone: (650) 858-6000
Fax: 650-858-6100

Randall R. Lee (Randall.lee@wilmerhale.com)
Jessica F. Kurzban (Jessica.kurzban@wilmerhale.com)
Peiyin Patty Li (Patty.li@wilmerhale.com)
Wilmer Cutler Pickering Hale and Dorr LLP
350 S. Grand Avenue, Suite 2100
Los Angeles, CA 90071
Phone: (213) 443-5360

John A. Valentine (john.valentine@wilmerhale.com)
Lauren R. Yates (lauren.yates@wilmerhale.com)
Michael Lamson (michael.lamson@wilmerhale.com)
Wilmer Cutler Pickering Hale and Dorr LLP
1875 Pennsylvania Ave., NW
Washington, DC 20006
Phone:  (202) 663-6131
Fax:  (202) 663-6363
*Attorneys for defendant Larry Goldstone and Clarence Simmons, III*

22

Andrew G. Schultz (aschultz@rodey.com)
Bruce D. Hall (bhall@rodey.com)
Melanie Stambaugh (mstambaugh@rodey.com)
Rodey, Dickason, Sloan, Akin & Robb, P.A.
201 3rd Street NW, Suite 2200
P.O. Box 1888
Albuquerque, NM 87102
*Attorneys for defendants Larry Goldstone, Jane E. Starrett and Clarence Simmons, III*

Jerry L. Marks (jmarks@milbank.com)
Alisa Schlesinger (aschlesinger@milbank.com)
Elena Kilberg (ekilberg@milbank.com)
Paul M. Torres (ptorres@milbank.com)
Milbank, Tweed, Hadley & McCloy LLP
601 S. Figueroa Street, 30th Floor
Los Angeles, CA 90017
Phone (213) 892-4000
Fax:  (213) 892-5063

Thomas Arena (tarena@milbank.com)
Robert J. Liubicic (rliubicic@milbank.com)
Milbank, Tweed, Hadley & McCloy LLP
1 Chase Manhattan Plaza
New York, NY 10005
Phone: (212) 530-5000
Fax:  (212) 530-5219
*Attorneys for defendant Jane Starrett*

s/ Marla J. Pinkston
Marla J. Pinkston