IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

|  |  |  |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 1:12-cv-00257-JB-LFG |
| LARRY GOLDSTONE, CLARENCE G. SIMMONS, III, and JANE STARRETT, | ) ) ) | |
| Defendants. | ) ) | |

## NON-PARTY KPMG LLP'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL

Non-party KPMG LLP ("KPMG") respectfully submits this memorandum of law in opposition to Defendants' Motion to Compel Production of PCAOB Deposition Transcripts (Docket #90, "Def. Motn."). Defendants' Motion seeks to compel production of testimony, transcripts, and sworn statements of KPMG witnesses made to the Public Company Accounting Oversight Board ("PCAOB" or "Board"), but these PCAOB materials are privileged and not subject to discovery in civil litigation under the express terms of the privilege created by Congress in Section 105(b)(5)(A) of the Sarbanes-Oxley Act (the "Act"), 15 U.S.C. § 7215(b)(5)(A) (the "Section 105 Privilege"). Defendants' Motion also seeks to compel production of the notes and memoranda prepared by Plaintiff Securities and Exchange Commission ("SEC") in connection with the SEC's interviews of KPMG witnesses, and KPMG takes no position on that aspect of Defendants' Motion.

## I.     INTRODUCTION

Defendants' Motion represents another attempt by Defendants to gain access to information concerning the PCAOB's investigation of KPMG and its professionals that is expressly protected under the Sarbanes-Oxley Act as "confidential and privileged" and exempt from "civil discovery or other legal process."   15 U.S.C. § 7215(b)(5)(A).[1]   In particular, Defendants seek to compel production of the transcripts of testimony provided by KPMG witnesses to the PCAOB during its investigation of KPMG's audit of Thornburg's 2007 financial statements.   These materials were provided by the PCAOB to the SEC pursuant to Section 105(b)(5)(B) of the Act, 15 U.S.C. § 7215(b)(5)(B), which authorizes the PCAOB to share information gathered in its investigations with the SEC.   But Section 105(b)(5)(B) provides that any such information is shared "[w]ithout the loss of its status as confidential and privileged," and expressly requires that the SEC "shall maintain such information as confidential and privileged."   15 U.S.C. § 7215(b)(5)(B).

Section 105(b)(5)(A) thus creates a broad privilege for PCAOB investigation-related materials, and guarantees that the privilege will be maintained in the hands of the SEC. Defendants claim that the SEC waived the privilege, by allegedly relying on PCAOB information in the complaint, by producing some documents covered by the privilege, and by

---

[1]     KPMG has separately filed a motion to quash the subpoena issued by Defendants to KPMG to the extent it seeks to obtain PCAOB materials directly from KPMG, and for a protective order protecting privileged PCAOB materials in the possession of the SEC pursuant to section 105(b)(5)(B).   (Docket #91, hereinafter "Motion to Quash" or "KPMG Motn.").   A detailed discussion of the relevant facts and the statutory scheme can be found in KPMG's Motion to Quash, KPMG Motn. at 4-11, and will not be repeated here.   This memorandum will address only the legal points raised by Defendants' Motion to Compel that are not fully addressed in KPMG's Motion to Quash.

taking a potentially inconsistent position in another case.  But the SEC *has no power to waive the privilege* – the statutory command to maintain the privilege is absolute, and there is no provision in the statute authorizing the SEC to waive it.  And in any event, even if the SEC had such power, none of the actions it has taken here amounts to a waiver.

Defendants also argue that the Section 105 Privilege is inapplicable here because the SEC, by allegedly relying on the PCAOB testimony in preparing its complaint in this case, has "presented" that testimony in connection with a "public proceeding."  *See* Def. Motn. at 19-21. But, as fully demonstrated in KPMG's motion, *see* KPMG Motn. at 21-25, this argument fails because: (1) Defendants misread subparagraph (A), which in fact makes all protected information privileged and confidential unless it is "presented" in a proceeding held "in accordance with subsection (c)," i.e., a PCAOB hearing in which all parties have consented to the information being made public, *see* 15 U.S.C. § 7215(c)(2); (2) the section of the Act which permits the SEC to receive material privileged under Section 105 from the PCAOB expressly requires that the recipient agency maintain the information as "confidential and privileged" and provides no mechanism by which the SEC can waive the Section 105 protection and release such information; and (3) in any event, Defendants' unsubstantiated assertion that SEC Staff members may have read confidential information in connection with the preparation of the complaint against corporate officers does not satisfy their burden of showing that the Section 105 information was "presented" in a proceeding held "in accordance with subsection (c)" of the Act. KPMG's Motion to Quash debunked many of these arguments, and, in the interest of brevity and avoiding unnecessary repetition, the Court is respectfully referred to that motion for those points. This memorandum will address the additional issues raised in Defendants' Motion.

Defendants' arguments ignore the fundamentals of the Act's statutory scheme. Defendants ask the Court to rewrite Section 105, turning an absolute statutory privilege that the SEC is mandated to protect into a qualified privilege that the SEC has the unilateral power to waive whenever it finds it convenient. KPMG respectfully submits that there is no basis for this interpretation. The text of Section 105, its legislative history, and Congress's intent in enacting the provision all compel the conclusion that the PCAOB transcripts sought by Defendants are exempt from discovery. Accordingly, as explained in greater detail below, Defendants' Motion should be denied to the extent it seeks documents, information, or transcripts related to the PCAOB investigation of KPMG that are protected under 15 U.S.C. § 7215(b)(5)(A).

## II.     ARGUMENT

### A.     The SEC Has No Power To Waive The Section 105 Privilege.

Defendants' Motion demands disclosure of material that is explicitly made privileged and confidential by Section 105(b)(5)(A) of the Sarbanes-Oxley Act. Section 105(b)(5)(A) provides, in relevant part:

> Except as provided in subparagraphs (B) and (C), <u>all documents and information prepared or received by or specifically for the Board</u>, and deliberations of the Board and its employees and agents, <u>in connection with an inspection under section 7214 . . . or with an investigation under this section, shall be confidential and privileged</u> as an evidentiary matter (and <u>shall not be subject to civil discovery or other legal process) in any proceeding in any Federal or State court or administrative agency</u> . . . unless and until presented in connection with a public proceeding or released in accordance with subsection (c) of this section.

15 U.S.C. § 7215(b)(5)(A) (emphasis added).

Defendants argue that, for a variety of reasons, the SEC has waived the Section 105 Privilege as to the materials it received from the PCAOB regarding the PCAOB's investigation

of KPMG.   Underlying each of Defendants' arguments is the unstated assumption – which Defendants do not even address – that the SEC has the *power* to waive the Section 105 Privilege. Defendants' failure to provide any support for this argument, however, is not surprising, because there is no support for it.   As KPMG explained in detail in its Motion to Quash, the SEC cannot, as a matter of law, waive the Section 105 Privilege.   *See* KPMG Motn. at 21-25.   The Act contains no provision which authorizes the SEC to waive the privilege, and does not grant the SEC power to make any aspect of PCAOB proceedings public until it is reviewing PCAOB disciplinary actions *after* a PCAOB investigation and hearing have been completed and sanctions found warranted.   On the contrary, the Act expressly *bars* the SEC from disclosing the information that it receives from the PCAOB with respect to pending PCAOB investigations, providing that the SEC "*shall maintain* such information as confidential and privileged."   15 U.S.C. § 7215(b)(5)(B) (emphasis added).

If the SEC had the power to waive the privilege, Section 105(b)(5)(B)'s express dictate that the SEC "shall maintain" the privilege would be nullified and Congress's intent to create a broad statutory privilege undermined.   *See* S. Rep. No. 107-205, at *10 (2002) ("[I]nformation gathered by Board investigators should be 'privileged from outsiders' during the investigative process.").   Such an interpretation, one that so directly contradicts another provision in the same statute, must be rejected.   *See, e.g., United States v. Atl. Research Corp.*, 551 U.S. 128, 136-37 (2007) ("Reading the statute in the manner suggested by the Government would destroy the symmetry of §§ 107(a)(4)(A) and (B) and render subparagraph (B) internally confusing . . . [and] a dead letter."); *United Savings Ass'n of Texas v. Timers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 370-74 (1988) (rejecting proposed interpretation of § 362(d)(1) where it would "contradict[ ]

the carefully drawn disposition of § 506(b)" and would be "structurally inconsistent with 11 U.S.C. § 552").

Defendants argue that the SEC waived the privilege by "present[ing]" information obtained from the PCAOB in drafting the complaint in this case.  Def. Motn. at 21.  In so doing, Defendants assume that this case is a "public proceeding" of the type referred to in the Act, but this assumption is unjustified and mistaken.  As explained in KPMG's Motion to Quash, Section 105(b)(5)(A)'s reference to a "public proceeding . . . in accordance with subsection (c)" refers only to a *PCAOB enforcement proceeding made public under Section 105(c)* or after resolution of respondent's failed appeal to the SEC, not to civil litigation commenced by the SEC or anyone else.  *See* KPMG Motn. at 7-8, 21-23.  Indeed, Congress's intention in this regard is clear from the legislative history, which acknowledged the importance of the professional reputation and privacy interests of auditors who become subject to PCAOB investigations.  *See* S. Rep. No. 107-205, at *58 (explaining that the "legislation should have little additional impact upon the privacy of particular individuals," because "[i]nformation and documents held by the Public Company Accounting Oversight Board created by the bill are generally confidential and privileged until made public in connection with a particular public enforcement proceeding").

Defendants simply ignore the fact that the statute's reference to "public proceeding" in Section 105(b)(5)(A) is inextricably tied in the statute's text to PCAOB disciplinary proceedings covered by Section 105(c).  Rather than address this fundamental problem with their argument, Defendants try to hide it by deliberately omitting from their quotation of the statute the key language that ties "public proceeding" to "subsection (c)" of the statute.  *See* Def. Motn. at 20.

Defendants' argument that the statute's reference to "public proceeding" applies to an SEC enforcement proceeding would completely rewrite the statute in a manner clearly not intended by Congress with it enacted the Section 105 privilege, by giving agencies unilateral power to waive the Section 105 Privilege whenever it suited that agency's convenience, and would make a mockery of the broad, absolute privilege that Congress intentionally created to protect the confidentiality of PCAOB investigative and disciplinary proceedings.

**B.      The Section 105 Privilege Applies Here, And Precludes Disclosure To Defendants.**

Defendants argue that Section 105 Privilege does not preclude the discovery they seek here because they are "audit clients," and disclosure to audit clients does not represent the kind of disclosure to "outsiders" that Congress was concerned about.    Def. Motn. at 20.   This argument is frivolous.  Nothing in the statute or its legislative history provides any support for this argument, or suggests that the expansive and unqualified privilege created by Congress does not apply to preclude discovery by audit clients.  On the contrary, both the Act itself and its legislative history contradict Defendants' argument.

As an initial matter, Section 105 does not distinguish between private plaintiffs and civil litigation instituted by the SEC, nor does the statute distinguish between audit clients attempting to access privileged information and others seeking access to such information.  Rather, the Act broadly states that such material is "confidential and privileged as an evidentiary matter (and shall not be subject to civil discovery or other legal process)."  15 U.S.C. § 7215(b)(5)(A).  By its terms, Section 105's absolute bar to civil discovery of PCAOB information applies to this

case.   There is no basis in the statute for reaching a contrary conclusion, and Defendants point to nothing in the statute that suggests otherwise.

In support for their claimed exception from the mandate of the Section 105 Privilege, Defendants rely on a single sentence in the Senate Banking Committee Report, which states that "Committee witnesses also emphasized that information gathered by Board investigators should be 'privileged from outsiders' during the investigative process."  Def. Motn. at 20 n.9 (quoting S. Rep. No. 107-205).   That isolated statement, however, provides no support for Defendants' contention.   Neither the Senate Report nor the testimony to which it refers defines who would be considered "outsiders," but the contrast drawn in the Report and testimony is between auditors and the regulatory authority, on the one hand, and "outsiders," *i.e.*, everyone else, on the other. *See* Rep. No. 107-205, at \*10-11; *Accounting Reform and Investor Protection: Hearing Before the* S. *Comm. on Banking, Housing, and Urban Affairs,* 107th Cong., S. Hrg. No. 107-948, at 22, 72 (2002) ("*Senate Hearing*") (Statement of David S. Ruder, former Chairman, Securities and Exchange Commission, 1987-1989).[2]   Thus, even if Congress intended to limit the scope of the privilege to "outsiders," there is no indication that Congress considered audit clients to be anything other than "outsiders" to the PCAOB investigative process.   On the contrary, the very next sentence of the Senate Report describes the breadth of the Section 105 Privilege, and makes clear that it applies to all civil discovery, even in SEC actions against audit clients.  *See* S. Rep.

---

[2]     Former Chairman Ruder stated:  "[A]n Audit Disciplinary Committee, also composed of professional staff members reporting to the Audit Supervisory Board, should have the power to inspect firm compliance with audit standards and procedures, investigate allegations of audit failures, impose disciplinary sanctions, and refer matters to the SEC for investigation and discipline.  The information it gathers should be privileged from outsiders."  *Senate Hearing* at 72.

No. 107-205, at *10 ("Under the bill, any information gathered in the course of an investigation is to be confidential and privileged for all purposes (including civil discovery)."); *see also Senate Hearing* at 579 (Statement of Joel Seligman, Dean, Washington University School of Law) ("I would recommend . . . [a] privilege from discovery of investigative files to facilitate auditing discipline during the pendency of *other Government . . . litigation.*") (emphasis added).[3]

Finally, even if the Section 105 Privilege contained an exception for audit clients (which, of course, it does not), Defendants would not benefit from it. KPMG's client was Thornburg, not the three officers charged by the SEC. Thus, Defendants' argument is specious.[4]

### C.   "Relying" on PCAOB Investigation Materials Does Not Constitute "Presenting" Them in Connection with a Public Proceeding.

Defendants' argue that the SEC "presented" materials from the PCAOB investigation in a "public proceeding" by allegedly relying on the transcripts of PCAOB testimony in drafting the complaint in this action, thereby waiving the privilege. Def. Motn. at 21-23. As discussed above,

---

[3]   *See also Senate Hearing* at 987 ("The Road to Reform: A White Paper From The Public Oversight Board On Legislation to Create a New Private Sector Regulatory Structure for the Accounting Profession") ("One reason for the delay in the current system stems from the fact that those charged with administering the system lack privilege to ascertain facts. Privilege would give the investigative entity the authority to protect information it uncovers from *outside demands* until any enforcement action is concluded. At present, firms will not disclose documents or other information that is likely to wind up *in the hands of litigants in legal proceedings*.") (emphases added).

[4]   Defendants also rely on comments submitted by PricewaterhouseCoopers ("PwC") to the PCAOB when it was considering adoption of Rule 5108, *see* Def. Motn. at 20 n.9 & Ex. M, but, in fact, those comments provide no support for their argument. PwC's comments sought to expand the scope of Rule 5108's discussion of the privilege, so that Rule 5108 would state that the privilege applied more broadly beyond materials "in the hands of the board," a proposition which has now been established by the two cases addressing the scope and application of the Section 105 Privilege. *Bennett v. Sprint Nextel Corp.*, No., 11-9014-MC-W-ODS, 2012 WL 4829312, at *3 (W.D. Mo. Oct. 10, 2012); *Silverman v. Motorola*, No. 07 C 4507, 2010 WL 4659535, at *4 n.2 (N.D. Ill. June 29, 2010).

in fact the SEC has no power to waive the privilege, and the statute's reference to "public proceeding" relates to PCAOB enforcement proceedings in which the respondent has consented to release of information, and not SEC civil actions.  *See* pp. 4-7, *supra*.

But even if the Court were to conclude that this case is a "public proceeding" within the meaning of Section 105, and that the SEC has the power to waive the privilege by "presenting" PCAOB testimony in this case, the SEC has not in fact "presented" any PCAOB information in this case, for two reasons.  First, the SEC has confirmed that it "did not use or rely on . . . PCAOB testimony in preparing the complaint" in this case.  Docket #92, Ex. 6 (E-mail, dated November 12, 2012, from Stephen McKenna of the SEC to defense counsel and counsel for KPMG); *see also* Docket #90-8, Ex. G (E-mail, dated November 15, 2012, from S. McKenna to defense counsel) ("[T]he two staff members that looked at PCAOB transcripts did not <u>use or rely on</u> the transcripts in connection with their involvement in <u>reviewing</u> the complaint.").  Accordingly, there is no factual basis for Defendants' argument that the protected information was relied on or presented in connection with this case.[5]

Second, even if the SEC staff did review the PCAOB transcripts and considered that information in drafting the complaint – which is all that Defendants really claim – those facts are not sufficient for this Court to conclude that the SEC "presented" the Section 105 privileged information in this proceeding within the meaning of Section 105(b)(5)(A).  While the Act does

---

[5]     Indeed, Defendants emphasize that the support for the key allegations of the SEC's complaint relating to KPMG is found in the "off-the-record interviews taken from and proffers submitted by key KPMG witnesses" ***to the SEC***, *see* Def. Motn. at 1; *see also id*. at 10-12 – not the testimony that any KPMG witness may have given to the PCAOB.  But whether the SEC should be required to produce its notes and memoranda regarding those witness interviews relates to a different aspect of Defendants' Motion to Compel, on which KPMG takes no position, and has nothing to do with Defendants' effort to invade the Section 105 Privilege.

not define the term "presented," it is axiomatic that the term is to be interpreted "in accordance with its ordinary or natural meaning," *FDIC v. Meyer*, 510 U.S. 471, 476 (1994) (citation omitted), which can be determined by consulting the definitions in standard dictionaries. *See, e.g., Asgrow Seed Co. v. Winterboer*, 513 U.S. 179, 187 (1995) (relying on dictionary definition to interpret "marketing" the Plant Variety Protection Act); *Meyer*, 510 U.S. at 476 (relying on dictionary definition of "cognizable").

The Oxford English Dictionary defines "presented" as "[t]o bring or lay before a court, magistrate, or person in authority, for consideration or trial; to make presentment of," or "[t]o make a formal statement of; to submit (a fact, request, complaint, etc.)." Oxford English Dictionary (3d ed. 2007), attached as Exhibit A to the Declaration of George A. Salter, dated December 17, 2012 ("Salter Declaration"). But Defendants here have not identified – and cannot identify – any information from the PCAOB transcripts that the SEC has submitted to or brought before the court in this case. Thus, giving the term "presented" its ordinary meaning, the SEC has not "presented" any Section 105 privileged information in this action. To conclude otherwise would be to distort the ordinary meaning of the statutory term, which the court may not do. *See, e.g., United States v. Hess*, 194 F.3d 1164, 1175 (10th Cir. 1999) ("In interpreting these statutes, we begin with their language, and if that language is clear, we give effect to its meaning.").

Moreover, Defendants' overbroad interpretation of "presented," if adopted, would lead to results that are fundamentally at odds with the statute's text and purpose, and Congress's intent in adopting Section 105. If "presented" is interpreted so broadly as to include mere reliance on PCAOB information as background, then PCAOB investigation files would become public and

11

subject to discovery *every time* the PCAOB shared confidential and privileged information with the SEC under Section 105(b)(5)(B) and the SEC brought an enforcement action.  Defendants in a SEC enforcement action could *always* make the same general arguments that the PCAOB information "must have informed" the SEC's actions that Defendants are making here.  The idea that this is sufficient to require disclosure of PCAOB investigation materials is inconsistent with Section 105(b)(5)(B)'s express command that the receiving agency keep the information "confidential and privileged," would undermine the purposes of that Section, and would eviscerate the broad statutory privilege that Congress created in Section 105(b)(5)(A).  Section 105(b)(5)(B) expressly allows the PCAOB to share privileged information *without* waiving the privilege, and requires the SEC to maintain that privilege, but Defendants' position would result in waiver of the privilege every time the SEC brought an enforcement action against any party in a case in which the SEC received information from the PCAOB.  These are absurd results, fundamentally at odds with the purposes of the statute, and must be rejected.  *See, e.g., Clinton v. City of New York,* 524 U.S. 417, 429 (1998) (rejecting proposed statutory interpretation that "would produce an absurd and unjust result which Congress could not have intended") (quotation and citation omitted).

> **D.    The SEC's Unauthorized and Inadvertent Production of KPMG Witness Questionnaires Does Not Waive the Section 105 Privilege.**

Defendants next argue that by producing "responses to PCAOB Witness Background Questionnaires by eight KPMG employees," the SEC has waived the Section 105 Privilege "as to other PCAOB-related documents in its investigative file, including the transcripts."  Def. Motn. at 23-24 & Ex. A (Excerpts of PCAOB Witness Background Questionnaire of Tara Baucom).

As established in KPMG's Motion to Quash, *see* KPMG Motn. at 21-25, the SEC lacks any legal right or power to waive the Section 105 Privilege.  But even if it did, Defendants' argument is completely without merit, and should be rejected.

First, the Court should be aware that the questionnaires at issue merely contain background information about each of the witnesses, such as the witness' name, date and place of birth, street addresses and phone numbers for the last five years, educational background, licensing information and publications.  *See* Docket #90-2, Ex. A (example of a cover and signature page).  These questionnaires are undoubtedly within the ambit of the Section 105 Privilege, because they reveal the names of witnesses called to testify before the PCAOB, and they should not have been produced by the SEC.[6]  But it is important to recognize that they contain no substantive information about the PCAOB's investigation, and apart from disclosing the names of PCAOB witnesses, contain no information that would otherwise be subject to the privilege.

In this light, Defendants' argument that the inadvertent production of these documents of minimal significance leads to a complete waiver of the Section 105 Privilege as to the contents of

---

[6]     The SEC has recently confirmed that the majority of these questionnaires were produced inadvertently as part of the SEC's massive production of approximately 2.4 million pages of documents.  Salter Declaration, Ex. B (E-mail exchange between S. McKenna and defense counsel).  Inadvertent production of documents "does not operate as a waiver."  *S2 Automation LLC v. Micron Tech., Inc.*, No. CIV 11-0884 JB/WDS, 2012 WL 3150387, at *2-3 (D.N.M. July 23, 2012) (Browning, J.); *see Jones v. Eagle-North Hills Shopping Ctr.*, 239 F.R.D. 684, 685 (E.D. Okla. 2007) ("[I]nadvertent disclosure does not constitute a waiver of privilege without extreme negligence.").   Notwithstanding the inadvertence of their production, Defendants have refused to return the privileged documents and have taken no steps to remove them from the public file or redact the personal information contained in the questionnaires they have publicly filed via the Court's electronic system.  *Id.*  Accordingly, KPMG requests that the Court order the inadvertently produced information returned to the SEC and expunged from the Court's files.

13

the PCAOB investigation must be rejected.  Neither the facts of this case nor the well-established

law on waiver support an argument of such breathtaking scope.  In *Bennett v. Sprint Nextel Corp.*,

the only decision to date to address the issue of waiver in the context of the Section 105 Privilege,

the court expressly held that "the limited communication [of some documents] is inadequate to

cause a wholesale subject matter waiver."  2012 WL 4829312 at *5.  Moreover, in cases

involving other privileges, the courts, faced with such limited disclosures, have refused to find a

broad subject matter waiver.  *See, e.g., Pittman* v. *Frazer,* 129 F.3d 983, 988 (8th Cir. 1997)

("The disclosure of some documents does not destroy work product protection for other

documents of the same character.") (quoting Wright & Miller, § 2024 at 209); *Coorstek, Inc. v.*

*Reiber*, Civil Action No. 08-cv-01133-KMT-CBS, 2010 WL 1332845, at *8 (D. Colo. Apr. 5,

2010) ("However, arguing that this letter alone is sufficient in scope to waive the attorney-client

privilege with respect to an otherwise privileged communication . . . is to leap a giant chasm of

logic.").  Indeed, this Court adopted the same approach in *EEOC v. Roswell Radio, Inc.*, No.

CIV-06-0253 JB/LAM, 2007 WL 2305521, at *5 (D.N.M. June 12, 2007) (Browning, J.),

holding that "broad subject-matter waiver" is inapplicable to the work-product doctrine.  Thus,

there is no basis for holding that the SEC's inadvertent production of the PCAOB Witness

Questionnaires results in a broad subject matter waiver that would apply to the transcripts of the

witnesses' testimony.[7]

---

[7]    Even if the Court were to find that there had been some degree of waiver – and, again,
KPMG reiterates its position that the SEC cannot, as a matter of law, waive the privilege – the
scope of that waiver should be limited, at most, to the specific background information contained
in the PCAOB Witness Questionnaires.  As the courts have held in the context of other privileges,
"[w]aivers of the privilege have been held to be 'narrowly construed.'"  *Coorstek*, 2010 WL
1332845, at *8  (quoting *Kovacs v. Hershey Co.*, Civil Action No. 04-cv-01881-WYD-BNB,

**E.      The Production of PCAOB Transcripts in an Unrelated Case Is Irrelevant to this Case.**

Defendants also argue that the SEC should be precluded from relying on the Section 105 Privilege to preclude production of the PCAOB transcripts because the SEC has allegedly taken an inconsistent position in another enforcement action, *SEC v. Jensen*, No. 2:11-cv-05316-R-AGR (C.D. Cal., filed June 24, 2011), and produced documents subject to the privilege.  *See* Def. Motn. at 24-25.  There is no legal or factual support for this claim.  Even if it were true that the SEC in that case produced documents covered by the Section 105 Privilege, that fact would have no bearing on whether documents and information covered by the privilege should be produced in this case.  The application of the privilege is a question of law, and the fact that the SEC may have erred in producing documents in another case is simply irrelevant to the question whether it is required to produce documents covered by the privilege here.

First, the facts and circumstances of the *Jensen* case are unclear, and provide no basis for Defendants' claim that *Jensen* establishes an SEC policy in favor of disclosing PCAOB materials.  Defendants rely on a single passing reference to production of PCAOB transcripts that they found in an SEC brief in *Jensen* addressing a completely different issue.  *See Jensen*, Docket #93 (noting that "the Commission produced transcripts, exhibits and correspondence" from the PCAOB investigation) (*quoted in* Def. Motn. at 24-25).  But it is not clear why those documents

---

2006 WL 2781591, at *6 (D. Colo. Sept. 26, 2006)); *see also Grandbouche v. Clancy*, 825 F.2d 1463, 1467 (10th Cir. 1987) ("[T]he scope of such 'waiver' must be narrowly rather than expansively construed . . . .") (quotation and citation omitted).  "The scope of the waiver turns on the scope of the disclosure, and the inquiry is whether the disclosure involves the same 'subject matter' as the desired testimony."  *Kovacs*, 2006 WL 2781591, at *6 (quotations, citations, and modifications omitted).

were produced, or under what circumstances, or whether the accounting firm involved consented to the production.

The SEC's actions in *Jensen*, to the extent they can be determined, provide no basis for Defendants' claim that SEC policy favors disclosure of PCAOB materials in SEC enforcement proceedings.  Moreover, apart from its assertion of the privilege in this case, the SEC has also asserted the privilege in at least one other case, in accordance with its obligations under Section 105(b)(5)(B).  In *SEC v. Aragon Capital Mgmt., LLC*, No.07-cv-00919 (S.D.N.Y. filed Feb. 8, 2008), the SEC moved for a protective order when the defendant sought PCAOB investigation material, arguing that "[u]nder the provisions of the Sarbanes Oxley Act, the documents obtained by the Commission staff from the PCAOB may not be disclosed.  Sections 7215(b)(5)(A) and (B) expressly prohibit the Commission from turning them over in discovery to anyone."  Plaintiff's Memorandum of Law in Support of Its Motion for a Protective Order, filed May 9, 2008 (Docket #114) at 11, 2008 WL 2779505.[8]

Finally, even if there were any basis for Defendants' claim that SEC policy has been to produce documents covered by the PCAOB privilege, that would provide no legal basis for the Court to order disclosure here because such a policy would contravene Section 105.  Defendants cite *United States v. One 1985 Mercedes*, 917 F.2d 415 (9th Cir. 1990), but that case is completely inapposite.  *One 1985 Mercedes* is a civil forfeiture case in which the defendant

---

[8]     The Court granted the SEC's motion without addressing the Section 105 Privilege issue. *See* Discovery Order (Docket #123), *Aragon Capital,* No. 07-cv-00919 (S.D.N.Y. July 1, 2008).

sought discovery about government enforcement policies in hopes of establishing a selective prosecution defense.  *Id.* at 419-24.  The case has no bearing on any privilege issue.[9]

**F.      The Absolute Statutory Privilege of Section 105 Trumps Common Law Exceptions to Qualified Privileges.**

Finally, drawing on case law interpreting common law privileges, Defendants argue that as a "matter of fundamental fairness," the SEC should be required to disregard the statute's express prohibition and produce confidential and privileged material subject to the Section 105 Privilege.  *See* Def. Motn. 25-27.  There is simply no basis for grafting a judicially-created "fairness" exception onto the express prohibition of disclosure in Section 105.  Section 105 does not contain any statutory exception for "fundamental fairness;" rather, it completely proscribes production of materials covered by the privilege.  15 U.S.C. § 7215(b)(5)(A) ("[I]nvestigation-related information] shall be confidential and privileged as an evidentiary matter (and shall not be subject to civil discovery or other legal process) in any proceeding in any Federal or State court or administrative agency.").  Thus, the Sarbanes-Oxley Act itself forecloses Defendants' argument.

---

[9]      Moreover, even if the body of law had any relevance here, *One 1985 Mercedes* makes clear that to "[t]o prevail on [a] claim that the agency impermissibly departed from its own policy . . . , [the party] must establish that the policy in question had the force and effect of law." 917 F.2d at 423 (citation omitted).  To have the force and effect of law, the policy must "(1) prescribe[ ] substantive rules—*not* interpretive rules, general statements of policy or rules of agency organization, procedure or practice—and, (2) conform[ ] to certain procedural requirements."  *Id.* (quotation and citation omitted).  Defendants here cannot identify any policy, let alone one with the force and effect of law, from which the SEC has departed.  They do not cite to any SEC rules, regulations, or policy statements that govern the agency's approach to the Section 105 Privilege.  Accordingly, they cannot show that the SEC is acting in a manner inconsistent with SEC policy by protecting the Section 105 Privilege in this case.

Moreover, the case on which Defendants rely in fashioning their "fairness" exception concerned the law enforcement investigatory privilege.  Def. Motn. at 25 (citing *In re Sealed Case*, 856 F.2d 268 (D.C. Cir. 1988)).  Not only is that privilege a creature of the common law, it is also a "limited" and "qualified" privileged that, even where applicable, can be overridden by other considerations.  *See, e.g., In re Sealed Case*, 856 F.2d at 272 ("[T]he law enforcement investigatory privilege is qualified."); *SEC v. Shanahan*, No. 4:07CV270 JCH, 2009 WL 1955747, at *1 (E.D. Mo. July 6, 2009) ("There is a limited, federal common law of privilege which protects criminal investigatory files.") (quotation and citation omitted).  By contrast, the Section 105 Privilege is statutory and absolute.  There is thus no basis for relying upon these other governmental privileges in interpreting Section 105.  The statute enacted by Congress here supersedes any common law claim for a "fairness" exception that Defendants may have.  *See, e.g., United States v. Gonzales*, 150 F.3d 1246, 1264 (10th Cir. 1998) ("We reject the Journal's common law argument . . . .  [T]he statute and regulations discussed below occupy this field and would supercede the common law right even if one existed.") (citation omitted).

In any event, even if the Court were to consider the equities, there would be no reason to compel disclosure here in violation of the Section 105 Privilege.  Defendants have no compelling need for the PCAOB testimony of KPMG's witnesses, because they have direct access to those witnesses' testimony via depositions in this case.  Indeed, Defendants have already taken the depositions of four KPMG witnesses; one more deposition is scheduled later this week; and Defendants have stated their intent to depose at least four more KPMG witnesses in the next few months.

The simple fact is that as an evidentiary matter the SEC cannot use the PCAOB related material in its possession in its case against the Defendants.  It must use direct testimony elicited in deposition or at trial from KPMG witnesses in order to prove its case, and Defendants will have the opportunity to cross-examine those witnesses.  Thus, the evidence that Defendants are seeking is available through other discovery, and there is no factual predicate here that would justify application of a "fairness" exception, even if one could be judicially created.[10]

### III.   CONCLUSION

For the reasons set forth above, KPMG respectfully requests that the Court deny Defendants' Motion to Compel to the extent it seeks documents, transcripts, or information protected as confidential, privileged, and exempt from civil discovery under 15 U.S.C. § 7215(b)(5)(A), including documents and transcripts received by the SEC from the PCAOB pursuant to 15 U.S.C. § 7215(b)(5)(B).

---

[10]   Moreover, fundamental fairness requires that KPMG's statutory and privacy rights be considered.  Given the importance of the Section 105 Privilege, the Court should not unfairly set aside KPMG's rights.  *See United States v. Bd. of Cnty. Comm'rs*, No. CIV 08-0501 JB/ACT, 2009 WL 2426194, at *5 (D.N.M. July 20, 2009) (Browning, J.) (observing that because "[s]trong policy reasons underlie the attorney-client privilege," it must be protected).

Dated:  December 17, 2012

Respectfully submitted,

KELEHER & MCLEOD, P.A.

By: ___/s/ W. Spencer Reid_____
    W. Spencer Reid

    Albuquerque Plaza
    201 Third Street NW
    12th Floor
    Albuquerque, New Mexico  87102
    Tel.: (505) 346-4646
    Fax:  (505) 346-1370

HOGAN LOVELLS US LLP

By: __/s/ George A. Salter_____
    George A. Salter
    Peter Dennin

    875 Third Avenue
    New York, New York10022
    (212) 918-3000

    *Attorneys for Non-Party KPMG LLP*

## <u>CERTIFICATE OF SERVICE</u>

I, Spencer Reid, hereby certify that on December 17, 2012, I filed the foregoing document electronically through the CM/ECF System, which caused all counsel of record to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:


___*/s/ W. Spencer Reid*_____
W. Spencer Reid