IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

SECURITIES AND EXCHANGE COMMISSION,

     Plaintiff,

vs.                              Case Number: 1:12-cv-00257-JB-LFG

LARRY GOLDSTONE, CLARENCE G. SIMMONS,
III, and JANE E. STARRETT,

     Defendants.

**DEFENDANTS' RESPONSE IN OPPOSITION TO NON-PARTY
KPMG LLP'S MOTION TO QUASH, IN PART, OR MODIFY
<u>SUBPOENA TO PRODUCE DOCUMENTS, AND FOR PROTECTIVE ORDER</u>**

## I.       INTRODUCTION

KPMG – a non-party to this action – moves the Court to impose a sweeping protective order that would preclude all discovery into matters relating to the PCAOB's investigation of KPMG's professional failures as the auditor of Thornburg Mortgage, Inc., including evidence bearing directly on the credibility of KPMG employees who are critical to the SEC's case against Defendants.  While it is undisputed that the PCAOB's investigation remains open, KPMG takes the extraordinary position that an absolute privilege bars any discovery relating to the effect of that investigation on the credibility of its employee witnesses.  For at least two reasons, this effort to keep secret an evidentiary record that would be available to the SEC but not Defendants, and to prevent Defendants from exploring the incentives of KPMG employees to testify falsely, should be rejected.

First, the provision of the Sarbanes-Oxley Act cited by KPMG provides only that "documents and information prepared or received by or specifically for" the PCAOB are privileged.   15 U.S.C. § 7215(b)(5)(A) (emphasis added) (the "PCAOB Privilege").   Such materials lose their privileged status if "presented in connection with a public proceeding." See id.  Thus, according to the plain words of these provisions, much of the material KPMG seeks to insulate from discovery is either not privileged in the first place, because it was not "prepared or received by or specifically for" the PCAOB, or is no longer covered by the privilege because it was reviewed and relied upon by the SEC in bringing this lawsuit.

Second, there is no evidence that Congress intended the PCAOB Privilege to be exempt from standard privilege waiver principles.  A straightforward application of those principles in this case demonstrates that any privilege that may have once attached to PCAOB investigation materials provided to the SEC was irrevocably waived when the SEC put those materials at issue in this lawsuit.

The importance of the discovery that KPMG's Motion seeks to suppress cannot be overstated.  The lynchpin of the SEC's fraud allegations is that Defendants misled KPMG in connection with "other-than-temporary impairment" ("OTTI") accounting for Thornburg's 2007 financial statements.  The KPMG auditors being investigated by the PCAOB are key witnesses. Discovery has revealed that KPMG had all the information it needed to make a fully informed OTTI judgment, including, among other things, a schedule showing in extensive detail the margin calls that Thornburg received and the manner in which it paid those calls in the days leading up to its 2007 Form 10-K filing.  Yet, KPMG auditors were so derelict that they failed to consider that information or were so ignorant about basic aspects of Thornburg's business (e.g., not knowing what a "margin call" was) that they could not understand the information Thornburg provided.  Evidence pertaining to KPMG's lack of professional competence – the principal subject of the PCAOB's investigation – is thus highly probative of the SEC's auditor deception theory.  Moreover, because KPMG witnesses face potential PCAOB sanctions, they have enormous incentive to blame Thornburg's management team rather than accept responsibility for their own professional failures – an incentive that the SEC appears to have been eager to exploit.  Defendants should be permitted to explore how the PCAOB investigation has influenced the testimony of KPMG employees.

To date, at least nine KPMG auditors have provided many days of sworn PCAOB testimony, and between March 14, 2008 and September 4, 2012, hundreds of communications between KPMG and the PCAOB or SEC were generated in connection with the PCAOB investigation.  Rather than cloak this extensive record in a shroud of secrecy, as KPMG requests, the Court should provide the parties and KPMG with guidance concerning the boundaries of the PCAOB Privilege, and reserve judgment on specific privilege claims until such time as

Defendants join the issue by moving to compel.[1]   To the extent KPMG continues to have concerns about the confidentiality of PCAOB-related information, Defendants respectfully submit that those concerns may be addressed by a reasonable confidentiality stipulation and protective order worked out between the parties and KPMG.

## II.   FACTUAL BACKGROUND

### A.   KPMG and the SEC Have Repeatedly Withheld Discoverable Information Based on the PCAOB Privilege.

Given the importance of KPMG to the SEC's allegations against Defendants – and Defendants' discovery of evidence that calls into question the basic competence of the KPMG audit team in failing to consider information provided by Thornburg pertaining to its OTTI conclusion[2] – Defendants have sought discovery of basic facts regarding the PCAOB's investigation of KPMG.

On September 19, 2012, Defendants served a subpoena on KPMG that included a request for "All DOCUMENTS or COMMUNICATIONS CONCERNING any INVESTIGATION of KPMG in connection with the 2007-2008 SERVICES, INCLUDING an INVESTIGATION by the SEC, the PCAOB, or any other GOVERNMENT ENTITY."  (Doc. 92, Ex. 1, Request No. 2.)  On October 5, 2012, Defendants also served a First Set of Requests for the Production of Documents on the SEC, seeking all documents related to the PCAOB's investigation into KPMG that the SEC received from either KPMG or the PCAOB itself.  (See Doc. 77.)

---

[1] Another important consideration is that KPMG's motion is procedurally improper.  Although KPMG and Defendants exchanged letters and had discussions concerning KPMG's document production in response to Defendants' subpoena, KPMG never advised Defendants of its intention to file this Motion nor engaged in a meet-and-confer with Defendants about how the issues raised might be resolved short of motion practice. This alone warrants denial of the Motion.  See D.N.M.LR-Civ. 7.1(a) ("Movant must determine whether a motion is opposed, and a motion that omits recitation of a good-faith request for concurrence may be summarily denied.") (emphasis added).

[2] See infra Part II.C.1.

On November 9, 2012, the Court held a telephonic conference with the parties to address the SEC's refusal to produce the transcripts of PCAOB testimony by KPMG witnesses. (See Doc. 97.) During the hearing, Defendants maintained that the PCAOB Privilege under 15 U.S.C. § 7215(b)(5)(A) did not apply to the transcripts because they had been "presented in connection with a public proceeding" by virtue of the SEC's use of them in drafting the Complaint. See Hearing Transcript (11/9/12), relevant portions attached as Ex. A, at 7. In response, both the SEC and KPMG contended that the transcripts had not been "presented in connection with a public proceeding" and were therefore privileged. Id. at 10.

The Court largely agreed with Defendants' position, ruling that if the SEC used or relied on PCAOB testimony in drafting the Complaint, the testimony had to be produced to Defendants. The Court instructed the SEC to determine whether any of its staff had relied upon the PCAOB testimony in drafting the Complaint, and if so, to produce it. Id. at 23-24. As the Court explained, "[i]f that information is coming out of the PCAOB, I don't care if they got it out of some other sources, too, but if they're taking it out of the PCAOB, they're going to have to produce the transcript." Id. at 22. During the hearing, counsel for KPMG argued that Defendants would be able to obtain the information they were seeking by deposing the KPMG witnesses who had testified before the PCAOB. Counsel for KPMG stated that "the witnesses are being made available so that the defendants and the SEC can ask whatever questions they want of the witnesses." Id. at 12-13. Counsel for KPMG gave no hint that he would assert the PCAOB Privilege during those depositions to such an extent that Defendants would be prevented from learning anything whatsoever about the PCAOB investigation.

On November 12, 2012, the SEC admitted that two of its staff members had in fact reviewed the PCAOB transcripts before taking part in preparation of the Complaint. (See Doc. 90, Ex. G, at 1.) The SEC conceded further that one of those staff members was Julian

Robinson, an attorney in the SEC's Enforcement Division, who reviewed the PCAOB transcripts, led the SEC's investigative testimony of KPMG witnesses, and reviewed and/or edited the Complaint.  (Id. at 1.)  Nevertheless, the SEC maintained that these individuals "did not use or rely on the transcripts in connection with their involvement in reviewing the complaint."  (Id.)

On November 28, 2012, Defendants filed a Motion to Compel, seeking production of the PCAOB deposition transcripts.  (See Doc. 90.)  That motion is currently pending.  Defendants' Motion to Compel also seeks the production of the SEC's notes and memoranda documenting off-the-record interviews with KPMG witnesses, which the SEC admits it referenced in editing the Complaint.  (Id.)

KPMG, for its part, has taken an even harder line than the SEC in stymieing Defendants' efforts to obtain information related to the PCAOB investigation.  This has been starkly evidenced in the depositions of KPMG witnesses.  Despite KPMG's counsel's assurance to the Court during the November 9th hearing that Defendants would be able to ask questions freely of KPMG employees, KPMG's counsel has instructed all KPMG witnesses not to answer any questions in depositions that relate in any way to the PCAOB investigation.

For example, in the deposition of KPMG Senior Manager Tara Baucom on December 6, 2012, counsel for KPMG stated on the record that Ms. Baucom was "not going to talk about her answers to the PCAOB," and later instructed the witness not to answer questions concerning the PCAOB investigation:

> Q.  And were any of the areas that we covered today in your deposition also covered in your deposition by the PCAOB?
>
> MR. SALTER:  I'll instruct her not to answer that.
>
> MR. LIUBICIC:  I just have to make a record.

Q.   Did you discuss Ms. Starrett, Mr. Goldstone, or Mr. Simmons in your testimony before the PCAOB?

MR. SALTER:   I'll instruct her not to answer that, based on the PCAOB privilege.

Baucom Dep., relevant portions attached as Ex. B, at 227:9-20.

The same instructions prevented KPMG Senior Manager Matthew Plummer from providing testimony concerning the PCAOB's investigation:

Q.   Were any of the topics that we've covered today in your deposition also covered in your interview by the PCAOB?

MR. SALTER:  I'm going to instruct him not to answer that question.

MR. LIUBICIC:  Just making my record.

Q.  You're going to follow your counsel's instruction?

A.  Yes.

Q.  Did you discuss Ms. Starrett, Mr. Goldstone, or Mr. Simmons in your PCAOB testimony?

MR. SALTER: And I'll lodge the same objection based on the privilege and instruct him not to answer.

Plummer Dep., relevant portions attached as Ex. C, at 214:7-21.

KPMG's counsel has even instructed KPMG witnesses not to testify about their own *understanding* of whether they face potential disciplinary action by the PCAOB.  This position led to the following exchange during the December 5, 2012 deposition of Jennifer Hall, the principal KPMG audit manager for Thornburg:

MR. LEE:  … And on that topic, Ms. Hall, you recall I asked you a question about your understanding of or whether you had an understanding as to the possibility that you may face disciplinary action by the PCAOB and your counsel interposed an objection so I want to ask counsel to please state the basis for that objection and specifically for why you think her understanding of the possibility of future disciplinary proceedings would intrude upon the PCAOB privilege.

MR. SALTER:  I think I stated on the record that it was because of the privilege, which has been referred to as the PCAOB privilege or Section 105 privilege and is more fully elaborated in our KPMG motion to quash, and for a protective order that was filed yesterday in the district court in Albuquerque, which is based on Sarbanes-Oxley, Section 105, which is 15 U.S.C. § 7215(b)(5)(A). And it's based on that privilege as explained in our motion.

MR. LEE:  And it's your position that her understanding of possible future disciplinary action is covered by that privilege?

MR. SALTER:  It would be.

Hall Dep., relevant portions attached as Ex. D, at 204:8-205:10.

Thus, KPMG has invoked the PCAOB Privilege in response to every question concerning any aspect of the PCAOB's investigation, even where the question does not seek "documents and information prepared or received by or specifically for" the PCAOB. 15 U.S.C. § 7215(b)(5)(A).

On October 23, 2012, KPMG sent a letter to Defendants stating that KPMG would not produce any documents it considered subject to the PCAOB Privilege. (See Doc. 92, Ex. 3.) KPMG produced a privilege log on December 14, 2012 that listed over 250 separate communications with the PCAOB between March 14, 2008 and September 4, 2012 that KPMG has withheld on the basis of the PCAOB Privilege.  See KPMG Privilege Log, relevant portions attached as Ex. E. The log's subject matter descriptions for those communications are entirely unrevealing, merely designating whether the subject matter of the communication relates to "scheduling," "document production," "procedural," or "substantive" matters.  Id.

**B.     Discovery Requests Served on the SEC Will Be Affected By Resolution of KPMG's Motion.**

In light of the SEC's reliance on PCAOB materials and its close coordination with KPMG in this litigation, on December 19, 2012, Defendants served a Second Set of Requests for the Production of Documents on the SEC, seeking all communications between the SEC and the

PCAOB related to its investigation into KPMG.  In addition, Defendants served a Rule 30(b)(6) notice for the deposition of an SEC representative knowledgeable about these SEC-PCAOB communications.  A ruling on Defendants' pending Motion to Compel and on this Motion will provide valuable guidance to the parties and KPMG with respect to the permissible scope of discovery relating to the PCAOB investigation.

## III.    ARGUMENT

### A.    Legal Standard

Rule 26(c) of the Federal Rules of Civil Procedure provides that a person or party from whom discovery is sought may file a motion for a protective order.  The court may grant a motion for a protective order, including to a third party, only when it is necessary to "protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."  Fed. R. Civ. P. 26(c).  The party seeking a protective order or moving to quash a subpoena has the burden to demonstrate good cause and/or the privilege to be protected.  Velasquez v. Frontier Med. Inc., 229 F.R.D. 197, 200 (D.N.M. 2005) (Browning, J.).  To demonstrate good cause, the party seeking the protective order "must submit a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements."  Id. at 200 (quoting Gulf Oil Co. v. Bernard, 452 U.S. 89, 102 n.16 (1981)).

Rule 45(c)(3) of the Federal Rules of Civil Procedure provides that a court has the power to quash or modify a subpoena that "requires the disclosure of privileged or other protected matter, if no exception or waiver applies."  Fed. R. Civ. P. 45(c)(3)(A)(iii).  The moving party has the burden of demonstrating good cause and adequate reason to quash the subpoena. See Sentry Ins. v. Shivers, 164 F.R.D. 255, 256 (D. Kan. 1996). Generalized assertions that the production of the requested information would violate a privilege are insufficient.  See Vondrak v. City of Las Cruces, 760 F. Supp. 2d 1170, 1174 (D.N.M. 2009) (Browning, J.).  The movant

must instead provide specific support that the privilege applies and that it has not been waived.

Id.

 **B.**  **KPMG's Motion for a Blanket Protective Order Precluding Discovery of All Information Relating to the PCAOB Investigation Should Be Denied.**

  **1.**  **The text of the statute does not support the sweeping protective order sought by KPMG.**

The Sarbanes-Oxley Act of 2002 includes a confidentiality provision for a discrete category of documents and information generated in the course of an investigation by the PCAOB – "documents and information prepared or received by or specifically for the Board." 15 U.S.C. § 7215(b)(5)(A). The statute, moreover, provides that even privileged materials will lose their privileged status if they have been "presented in connection with a public proceeding." Id.[3]

Thus, under the plain language of the statute, the PCAOB Privilege does not apply to documents and information that were not "prepared or received by or specifically for" the PCAOB, or that have been presented in connection with a public proceeding. Id. As the Senate Report for the Sarbanes-Oxley Act makes clear, an enforcement action such as this lawsuit qualifies as a "public proceeding" for purposes of eliminating the privilege. See S. Rep. No. 107-205, at *58 (2002) ("[I]nformation and documents held by the [PCAOB] created by the bill are generally confidential and privileged until made public in connection with a particular public enforcement proceeding.") (emphasis added).

---

[3] The pertinent text of 15 U.S.C. § 7215(b)(5)(A) is as follows:

  "[A]ll documents and information prepared or received by or specifically for the Board … in connection with an inspection under [15 U.S.C. § 7214] … or with an investigation under [15 U.S.C. § 7215], shall be confidential and privileged as an evidentiary matter (and shall not be subject to civil discovery or other legal process) in any proceeding in any Federal or State court or administrative agency … unless and until presented in connection with a public proceeding or released in accordance with subsection (c)."

During the November 9th telephonic hearing, the Court agreed with this commonsense interpretation of the statute, ruling that transcripts of KPMG's testimony to the PCAOB were "presented in connection with a public proceeding" if the SEC incorporated information from those transcripts in preparing the Complaint.  The Court recognized that "[i]f that information is coming out of the PCAOB, I don't care if they got it out of some other sources, too, but if they're taking it out of the PCAOB, they're going to have to produce the transcript."  Ex. A at 22.

Here, in developing its case against Defendants, the SEC unquestionably relied on information from the PCAOB investigation.  Its lead investigator both reviewed the transcripts of the PCAOB depositions of KPMG employees, decided to omit certain questions of those witnesses because the topics had been covered by the PCAOB, and participated in preparing the SEC's Complaint.  (See Doc. 90, Ex. G.) This same lead investigator also signed the verification page for the SEC's responses to Defendants' interrogatories.  (See id., Ex. H.)  These facts alone should end the inquiry.  It would be patently unfair to permit a prosecuting government agency such as the SEC to maintain a trove of secret evidence that it relies upon in formulating charges but then withholds from the charged parties.  See Scott v. Mullin, 303 F.3d 1222, 1231-32 (10th Cir. 2002) (government's failure to disclose exculpatory evidence in a criminal case required a new trial).

KPMG argues that the statute reflects "a deliberate policy choice by Congress to foster a cooperative relationship between the PCAOB and the accounting firms by guaranteeing that PCAOB inspections would remain confidential … unless and until a final determination of the [PCAOB], upheld after review by the SEC, that there had been a violation of law or auditing standards."  (Doc. 91 at 3.)  This position merely reflects KPMG's own self-serving policy preferences.  On its face, the statute contains no language suggesting that its use of the term

"public proceeding" is restricted to public PCAOB proceedings upheld after a review by the SEC.  See 15 U.S.C. § 7215(b)(5)(A).

KPMG nevertheless attempts to back up its position by contending that "the statute's reference to a 'public proceeding' refers to – and *only* to – a proceeding by the PCAOB under 'subsection (c) of this section.'"  (Doc. 91 at 24 (emphasis in original)).  But that argument misreads the statute.  The statute provides that the PCAOB privilege applies "unless and until" the documents or information at issue are "presented in connection with a public proceeding or released in accordance with subsection (c) of this section." 15 U.S.C. § 7215(b)(5)(A) (emphasis added).  Subsection (c), in turn, describes PCAOB disciplinary proceedings. 15 U.S.C. § 7215(c).  The language of § 7215(b)(5)(A) can only be read as disjunctive, allowing for two ways in which the privilege can be waived:  either through presentation in a public proceeding or within the context of a PCAOB disciplinary proceeding.  If that were not the case, the language would be redundant, referring to PCAOB disciplinary proceedings in both instances.  See Parker v. Califano, 561 F.2d 320, 325 (D.C. Cir. 1977) (invoking "the familiar principle that statutory language should be construed so as to avoid redundancy.").

Had Congress intended to limit the term "public proceeding" to PCAOB disciplinary proceedings, it could have made that clear by expressly referencing the PCAOB investigative process, as it did earlier in the same paragraph.  See 15 U.S.C. § 7215(b)(5)(A) (referring  to "information and documents prepared or received specifically for the Board … in connection with an inspection under section 7214 of this title or with an investigation under this section …." ) (emphasis added).  The absence of such a reference is presumptively dispositive.  "Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." Russello v. United States, 464 U.S. 16, 23 (1983).

KPMG argues further that the non-public nature of PCAOB investigations and disciplinary hearings means that the material at issue must be subject to the PCAOB privilege. (See Doc. 91 at 7.)  KPMG points to 15 U.S.C. § 7215(d)(1)(C) to support this proposition, but that section of the statute merely describes the PCAOB process for reporting disciplinary sanctions to the SEC and the public.  Nothing in § 7215(d)(1)(C) – which actually provides for the disclosure of information generated in a PCAOB inquiry – suggests any limitation on the elimination of the privilege for documents and information presented in connection with a public proceeding under § 7215(b)(5)(A).

> **2.      The PCAOB Privilege has been waived to the extent documents and information were reviewed and relied upon by the SEC.**

Like any evidentiary privilege, the PCAOB Privilege is not absolute and may be waived. It is black letter law that a party may not advantage itself by injecting an issue into the forefront of litigation, and then restrict an opposing party's access to vital information on the same subject. Magistrate Judge Lynch recently applied this principle in Anchondo v. Anderson, Crenshaw, & Assoc., 256 F.R.D. 661, 671-72 (D.N.M. 2009), ruling that a party had waived a statutory privilege by raising bona fide error as an affirmative defense.  The court in Anchondo considered the classic waiver factors first articulated in Hearn v. Rhay, 68 F.R.D. 574, 581 (E.D. Wash. 1975):  "(1) assertion of the privilege was a result of some affirmative act, such as filing suit by the asserting party; (2) through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and (3) application of the privilege would have denied the opposing party access to information vital to his defense."   Anchondo, 256

F.R.D. at 669.  Information is considered "vital" if it is available from no other source.  Id. at 671.[4]

The SEC's Complaint in this case, prepared after reviewing and relying upon PCAOB testimony and other PCAOB-related materials, has put the entirety of that PCAOB information at issue.  Unless that information is made available, Defendants will have no means of determining whether it contains exculpatory evidence that the SEC selectively omitted from the Complaint or facts that the KPMG witnesses could not recall in their depositions in this litigation three years later.  Defendants likewise have no means of exploring whether and how the PCAOB investigation of KPMG's audit failures, and any promises the PCAOB may have made regarding future sanctions, have influenced the testimony of KPMG witnesses in accusing Defendants of deception.  See infra Part III.C.1.

A finding of waiver here, to the extent that the SEC reviewed and relied upon PCAOB-related information, would also be consistent with the principle that "statutes establishing evidentiary privileges must be construed narrowly because [they] impede the search for the truth."  Pierce County v. Guillen, 537 U.S. 129, 144-45 (2003).  KPMG conspicuously fails to address this well-established principle.  KPMG also makes no mention of any evidentiary privilege that courts consider absolute and unwaivable, and Defendants are aware of none.  Indeed, the court in Bennett v. Sprint Nextel Corp., a case on which KPMG heavily relies (See Doc. 91, at 12, 13, 17, 18, 19, 20), expressly considered waiver rules applicable to other

---

[4] Privilege waiver applies in government enforcement actions to the same extent as other actions.  In FDIC v. Wise, for example, the court reasoned that the FDIC's allegations that the defendants had misled regulators "injected into [the] controversy the actions, knowledge, and beliefs of the regulators, forcing these issues to the very forefront of the litigation." 139 F.R.D. 168, 172 (D. Colo. 1991).  "Since the FDIC affirmatively placed this information at issue, allowing it to assert privileges to protect against disclosure of these documents would be manifestly unfair to defendants."  Id.  The court in Wise ordered the production of documents generated or received by federal and state regulators concerning the matters in dispute because they were vital to defending the action.  Id.

privileges in the context of the PCAOB privilege.  See Civ. No. 11-9014, 2012 WL 4829312, at *5 (W.D. Mo. Oct. 10, 2012) ("There is no caselaw addressing waiver of the privilege outlined in 15 U.S.C. § 7215(b)(5)(A), so the Court turns to caselaw regarding other privileges.").

KPMG's position that the statutory nature of the PCAOB Privilege trumps universally applied waiver rules (see Doc. 91 at 24 n.14), is baseless.  Both of the cases cited by KPMG for that proposition involved federal statutes that superseded federal common law where Congress enacted the statutes in areas previously governed exclusively by common  law.  (See id.) (citing United States v. Gonzales, 150 F.3d 1246, 1264 (10th Cir. 1998); Resolution Trust Corp. v. Frates, 52 F.3d 295, 297 (10th Cir. 1995)).  Here, by contrast, the PCAOB Privilege did not even exist prior to the enactment of Sarbanes-Oxley.  The statutory creation of the PCAOB Privilege accordingly superseded nothing.  Congress has given no indication that it intended the PCAOB Privilege to be different from other evidentiary privileges with respect to waiver.

The statute likewise gives no hint that Congress chose to attach the privilege to any particular party, as KPMG argues.  (See Doc. 91 at 21-25.)  KPMG itself acknowledges that "[n]othing in Section 105(b)(5)(A) limits in any way the identity of the person who can assert the privilege.  On the contrary, the statute broadly provides that 'all documents and information' within its scope are privileged …."  (Id. at 13 (emphasis added)).  This contention is fundamentally at odds with KPMG's position that the SEC lacks the power to waive the privilege.

The SEC plainly has that power by virtue of its general oversight authority over the PCAOB.  See 15 U.S.C. § 7217(a).  Under Sarbanes-Oxley, the SEC: (i) approves all of the rules the PCAOB promulgates; (ii) reviews all final sanctions the PCAOB has imposed on any registered public accounting firm or on any associated person, and may supersede the PCAOB's decision regarding sanctions; and (iii) may censure the PCAOB or enforce a rescission of the

PCAOB's authority.  See 15 U.S.C. § 7217.  Given this broad authority over the PCAOB, KPMG cannot credibly maintain that the SEC lacks the power to waive the PCAOB Privilege.

KPMG argues that subsection (B) of 15 U.S.C. § 7215(b)(5) allows the PCAOB to share protected information with the SEC without compromising the privilege, and requires the SEC to maintain the information the PCAOB discloses as confidential and privileged.  (See Doc. 91 at 22.)  KPMG interprets this provision in conjunction with 15 U.S.C. § 7215(b)(5)(A), and concludes that to require the SEC to keep the PCAOB privileged documents and information confidential and privileged while also allowing the SEC to present this information in a public proceeding would render subsection (B) a nullity.  (See Doc. 91 at 23.)  Subsection (B) of § 7215(b)(5), however, merely states that government agencies and regulators "shall maintain such information [shared by the PCAOB] as confidential and privileged."  15 U.S.C. § 7215(b)(5)(B).  It does not preclude those agencies from using information obtained from the PCAOB in any manner the agencies wish, and imposes no limits whatsoever on the agencies' ability to effect a waiver of the PCAOB Privilege by using those materials in connection with a public proceeding, as expressly provided in § 7215(b)(5)(B).

### 3. The SEC and KPMG unquestionably waived any privilege associated with PCAOB Witness Background Questionnaires.

There can be no question that both the SEC and KPMG waived any privilege that once applied to the PCAOB Witness Background Questionnaires.  (See Doc. 91 at 23-24.)  These questionnaires were completed by eight KPMG employees who worked on the Thornburg audit. The SEC first injected the questionnaires into the proceedings by introducing them as exhibits in the investigative testimony of KPMG engagement partner Cynthia Reinhart and Ms. Hall in September 2009, see Hall SEC Interview, relevant portions attached as Ex. F, at 14:2-3; Reinhart SEC Interview, relevant portions attached as Ex. G, at 11:13-14, and later produced them to

Defendants as part of the SEC's investigative file.  Neither the SEC nor KPMG objected when Defendants used the questionnaires in the depositions of KPMG employees Tara Baucom and Matthew Plummer.  See Ex. B at 6:7; Ex. C at 12:19.  Under these circumstances, the requirements for waiver have been met.  See, e.g., SEC v. Cassano, 189 F.R.D. 83, 85-86 (S.D.N.Y. 1999) (SEC's disclosure of privileged information to adversary eliminated any claim of privilege over the document in question); Eigenheim Bank v. Halpern, 598 F. Supp. 988, 991-92 (S.D.N.Y. 1984) (voluntary production of a document on successive occasions waived any privilege that otherwise applied).  Notably, the SEC does not even contend that the questionnaires of Ms. Reinhart and Ms. Hall are still privileged.  See Email from S. McKenna to Defense Counsel (12/5/12), attached as Ex. H.  It thus appears that the SEC itself disagrees with KPMG's assertion that the SEC cannot waive the privilege.

### C.     KPMG's Motion Improperly Seeks to Preclude Discovery of Obviously Non-Privileged Information.

KPMG argues at length that the PCAOB Privilege applies broadly to all documents created in connection with the PCAOB's investigation and even communications acknowledging "the existence of the investigation" (see Doc. 91 at 17-20) – an expansive construction of the privilege that finds no support in the language of the statute.  But KPMG is notably vague about the specific information in this case that would be cloaked in secrecy if the Court were to grant KPMG's Motion.  Four specific examples of plainly discoverable information, discussed below, illustrate the overreaching nature of KPMG's sweeping privilege claims.

### 1.     Testimony regarding KPMG witnesses' understanding of potential PCAOB disciplinary action

In depositions, KPMG's counsel has taken the untenable position that its employees may not testify about whether the PCAOB investigation is still open or even about their own personal understanding of possible disciplinary action against them by the PCAOB.  See Ex. D at 173:11-

16; Ex. B at 227:9-20; Ex. C at 214:7-21.  As a consequence, Defendants have been unable to

learn whether key witnesses remain subject to potential PCAOB sanctions for professional

misconduct or incompetence – and thus have a strong incentive to accuse Defendants of

deception rather than accept responsibility for their own audit failures.  This position has no basis

in the law, and is akin to preventing defense counsel from cross-examining a cooperating witness

in a criminal case about his understanding of the benefits of cooperation with the government.

See United States v. Chandler, 326 F.3d 210, 222 (3d Cir. 2003) (district court's refusal to allow

cross-examination of informants regarding the specific benefits of their cooperation constituted

an abuse of discretion).

The KPMG witnesses' motives to coordinate their positions with the SEC by falsely

accusing Defendants of deception is not a speculative concern.  Discovery has revealed stunning

incompetence on the part of the KPMG audit team.  For example:

- Meg Jones, the KPMG auditor responsible for the testwork on the margin calls received by Thornburg in the two weeks preceding its Form 10-K filing, testified that she did not know what a margin call was and was not familiar with the financial crisis of 2007 and 2008 and how it affected Thornburg.[5]

- Jennifer Hall, the engagement manager for KPMG, could not provide a coherent explanation of what a reservation of rights letter was.[6]   She nevertheless maintained that the reservation of rights letter sent to Thornburg employee Nate Fellers on February 21, 2008 (see Compl. ¶ 34) was material and likely would have changed the outcome of KPMG's OTTI analysis.[7]

- Before the 10-K filing, Ms. Hall reviewed the first page of a margin call schedule that, according to the SEC, shows Thornburg's payment of margin calls over several days, rather than within the one day period generally provided in the

---

[5] See Jones Dep., relevant portions attached as Ex. I, at 158:1-2 ("Q. Do you know what a margin call is? A. No."); id. at 22:22-24 ("Q. Did you have familiarity with the financial crisis that was taking place in '07 and '08? A. No.").
[6] See Ex. D, at 189:16 ("I don't see how [a reservation of rights letter and an event of default] are different.").
[7] See Ex. D, at 156:14-18 ("If we had known all the same information [including the Citigroup letter], I think it would have been hard for us to agree with it.  So I think it's likely we would have disagreed with it.").

company's repo agreements.[8]  Ms. Hall admitted that she failed to consider that supposedly material fact in connection with KPMG's OTTI analysis.[9]  She further admitted that, with the benefit of hindsight, further follow-up work on the margin call schedule should have been performed.[10]  Her only excuse for this oversight was that the margin call schedule had not been provided to KPMG for that specific purpose.[11]

These examples make clear that KPMG witnesses have substantial reason to be concerned about PCAOB sanctions.  That vulnerability gives them enormous incentive to accuse Defendants of withholding material information rather than admit their own lack of competence.  Nothing in the statute may be reasonably construed to justify an accountant's refusal to testify about potential exposure to PCAOB sanctions.  Defendants therefore respectfully request that, in resolving KPMG's Motion (and Defendants' pending Motion to Compel), the Court instruct KPMG and its witnesses to provide the information sought by Defendants regarding the status of the PCAOB investigation and the prospect of PCAOB sanctions.

## 2.    KPMG's communications with the PCAOB and transcripts of PCAOB  testimony

KPMG also seeks to withhold over 250 separate communications with the PCAOB over the course of four years.  The extraordinary volume of communications makes it highly likely that those communications will contain information bearing on the credibility of the KPMG witnesses.  For example, those communications could reveal representations by KPMG about the importance of its witnesses to the SEC's case, promises or inducements by the PCAOB to KPMG witnesses relating to future sanctions, or threats by the PCAOB to impose sanctions – any of which would be material to the credibility of the SEC's key witnesses.  The suggestion by

---

[8] See id. at 38:14-16 ("Q. Now, you said you saw this document on February 27th, right? A. I believe so, yes.").
[9] See id. at 68:8-10 ("Q. Did anyone at KPMG take that information into account? A. Not that I know of.").
[10] See id. at 94:6-7 ("Clearly with 20/20 hindsight it could have been helpful.").
[11] See id. at 75:24-76:6 ("Q. And the essence of the OTTI analysis is whether the losses on – or whether impairments or purchased ARM assets needed to be realized. So is it your testimony that you did not consider this information for that specific purpose? A. That's correct. Q. Why not? A. Because this information was obtained to support the footnote disclosure.").

KPMG that there is an absolute bar against disclosure of such communications is contrary to well-established waiver principles.  See supra Part III.B.2.

### 3. Transcripts of PCAOB testimony of KPMG employees

KPMG contends further that Defendants should not be afforded access to the transcripts of the testimony of nine separate KPMG employees, irrespective of whether the SEC reviewed and relied upon those materials in connection with its investigation of Defendants.   Those materials likely contain important evidence concerning the accounting issues at the heart of this case, and would provide a more contemporaneous account of the KPMG witnesses' understanding of relevant events.   Further, these transcripts may reveal testimony that is inconsistent with the testimony offered today, after extensive off-the-record communications with the SEC.   To the extent that material has been reviewed and relied upon by the SEC in pursuing this lawsuit against Defendants, KPMG's blanket assertion of the PCAOB Privilege is contrary to the Court's November 9th ruling and without basis.  See supra Part II.A.

### 4. KPMG's communications with the SEC regarding the PCAOB investigation

Finally, there is no conceivable rationale for applying the PCAOB Privilege to KPMG's communications with the SEC regarding the PCAOB investigation.  Those communications do not constitute "documents and information prepared or received by or specifically for" the PCAOB, as the statute expressly requires.  15 U.S.C. § 7215(b)(5)(A).  Thus, by definition,  they fall outside the scope of the privilege.

If the SEC relied upon information developed during the PCAOB investigation, these SEC-KPMG communications are likely to show it.  They may also reveal whether the SEC has attempted to intervene on KPMG's behalf with the PCAOB or conversely whether the SEC has sought to use the threat of PCAOB sanctions to influence the testimony of KPMG witnesses –

issues that are plainly relevant to the motives of KPMG witnesses who have changed their testimony since the SEC investigation in ways unfavorable for Defendants.[12]   In analogous circumstances, the SEC recently produced its correspondence with the PCAOB in another proceeding, and the district court in that case ordered the SEC to produce a Rule 30(b)(6) deponent to testify about communications with the PCAOB.   See SEC v. Jensen, Case No. CV 11-05316 (C.D. Cal. Oct. 30, 2012) (Dkt. 94, 102), Minute Order attached as  Ex. J, and Special Master Order attached as Ex. K.   There is no reason that KPMG and the SEC should not do the same here.

## IV.   CONCLUSION

For all of these reasons, KPMG's Motion to Quash, In Part, or Modify Subpoena to Produce Documents, and for Protective Order should be denied in its entirety.   Defendants respectfully request that the Court: (a) hear oral argument to resolve both the instant motion filed by KPMG and Defendants' motion to compel; (b) reserve judgment on specific privilege claims until such time as Defendants bring disagreements concerning particular privilege claims to the Court's attention by moving to compel; and (c) direct the parties and KPMG to work together to prepare and submit for the Court's approval a confidentiality stipulation and proposed order that addresses KPMG's concerns about the confidentiality of PCAOB-related information.

---

[12] For instance, in her SEC investigative testimony in September 2009, Ms. Hall did not testify that she likely would have disagreed with Thornburg management's OTTI judgment if she had known the allegedly omitted information.   The most she said was that KPMG would have wanted to know and would have considered that information. See, e.g., Ex. F at 225:22-226:8 ("would be useful"); id. at 228:12-23 ("would be useful"); id. at 232:18-233:6 ("that would have been helpful information"); id. at 245:21-246:1 ("would be something we would want to know").   After extensive correspondence and off-the-record interviews with the SEC, however, Ms. Hall has abruptly changed her story, testifying for the first time this month that she likely would have disagreed with Thornburg management. See Ex. D at 156:9-18 ("it's likely we would have disagreed with it").

Respectfully submitted,

RODEY, DICKASON, SLOAN, AKIN & ROBB, P.A.

By_____*/s/ Melanie B. Stambaugh*_____.
　　　　　Bruce Hall
　　　　　Andrew G. Schultz
　　　　　Melanie B. Stambaugh
P. O. Box 1888
Albuquerque, NM 87103
Telephone:　(505) 765-5900
Facsimile:　(505) 768-7395
E-mail:　　bhall@rodey.com
　　　　　aschultz@rodey.com
　　　　　mstambaugh@rodey.com

*Attorneys for Defendants Larry Goldstone, Clarence G. Simmons, III, and Jane E. Starrett*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on December 21, 2012, the foregoing *Response in Opposition to Non-Party KPMG LLP's Motion to Quash, in Part, or Modify Subpoena to Produce Documents, and for Protective Order* was electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

Michael H. Hoses
Assistant United States Attorney
P.O. Box 607
Albuquerque, NM 87103
Michael.hoses@usdoj.gov

Stephen C. McKenna
Gregory Kasper
Dugan Bliss
Securities & Exchange Commission
1801 California Street, Suit 1500
Denver, CO 80202
mckennas@sec.gov
kasperg@sec.gov
blissd@sec.gov

WILMER CUTLER PICKERING
  HALE & DORR LLP
        Randall R. Lee
        Jessica Freiheit Kurzban
        Peiyin Patty Li
350 South Grand Avenue, Suite 2100
Los Angeles, CA 90071
Telephone:    (213) 443-5300
Facsimile:    (213) 443-5400
randall.lee@wilmerhale.com
jessica.kurzban@wilmerhale.com
patty.li@wilmerhale.com

WILMER CUTLER PICKERING
  HALE & DORR LLP
        John A. Valentine
1875 Pennsylvania Avenue, NW
Washington, DC 20006
Telephone:    (202) 663-6000
Facsimile:    (202) 663-6363
john.valentine@wilmerhale.com

WILMER CUTLER PICKERING
  HALE & DORR LLP
        Alanna G. Buchanan
        Joel Fleming
950 Page Mill Road
Palo Alto, California 94304
Telephone:    (650) 858-6000
Facsimile:    (650) 858-6100
alanna.buchanan@wilmerhale.com
joel.fleming@wilmerhale.com

MILBANK, TWEED, HADLEY &
  MCCLOY LLP
        Thomas A. Arena
1 Chase Manhattan Plaza
New York, NY 10005
Telephone:    (212) 530-5000
Facsimile:    (212) 530-5219
tarena@milbank.com

MILBANK, TWEED, HADLEY &
  MCCLOY LLP
        Jerry L. Marks
        Robert J. Liubicic
        Alisa Schlesinger
        Elena Kilberg
        Paul M. Torres
601 S. Figueroa Street, 30th Floor
Los Angeles, CA 90017
Telephone:    (213) 892-4000
Facsimile:    (213) 629-5063
jmarks@milbank.com
rliubicic@milbank.com
aschlesinger@milbank.com
ekilberg@milbank.com
ptorres@milbank.com

RODEY, DICKASON, SLOAN, AKIN & ROBB, P.A.

By____/s/ Melanie B. Stambaugh_____.
        Melanie B. Stambaugh