IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

SECURITIES AND EXCHANGE COMMISSION,

    Plaintiff,

No. 1:12-cv-00257-JB-LFG

vs.

LARRY GOLDSTONE, CLARENCE G. SIMMONS,
III, and JANE STARRETT,

    Defendants.

**DEFENDANTS' REPLY TO PLAINTIFF SECURITIES AND EXCHANGE
COMMISSION'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL
PRODUCTION OF PCAOB DEPOSITION TRANSCRIPTS AND PLAINTIFF'S NOTES
AND MEMORANDA OF INTERVIEWS WITH NON-PARTY WITNESSES**

**PRELIMINARY STATEMENT**

The SEC and KPMG are together trying mightily to leave Defendants in the dark regarding the overwhelming majority of what is a *vast* pre-Complaint investigative record. It is undisputed that before filing the Complaint in March 2012, KPMG witnesses provided: (i) at least 21 days of testimony (from *11* witnesses) before the PCAOB, (ii) 3 days of unsworn testimony to the SEC, (iii) 3 instances of proffers to the SEC through counsel, and (iv) 3 days of sworn SEC testimony. The SEC and KPMG maintain Defendants are entitled to nothing beyond item (iv), which would leave *approximately 90 percent of the instances of KPMG's pre-Complaint testimony undisclosed*. See Supplemental Declaration of Andrew G. Schultz dated January 3, 2013 ("Supp. Schultz Decl."), ¶ 3, Ex. A (Chart Summarizing Testimony). This position is all the more concerning given the extensive coordination between the SEC and KPMG throughout the investigation and this litigation. Supp. Schultz Decl., ¶ 4. Ex. B (Timeline of SEC/KPMG Communications).[1]

The SEC's opposition fails to justify its refusal to disclose its notes and memoranda of unsworn KPMG witness interviews and proffers. The gravamen of the SEC's argument is that it has not injected the contents of its notes into this litigation. But the SEC has *conceded* that its key allegations—including that KPMG "would have" reached different accounting conclusions had they been presented with the information Defendants allegedly withheld (see, e.g., Compl. ¶¶ 51-52, 83)—are based on unsworn interviews with Ms. Hall and Ms. Reinhart. And the SEC *reaffirmed* its reliance on this testimony during Hall's recent deposition when it asked her: "*During any of that [unsworn] testimony, to the best of your recollection, did you tell [the SEC] anything inconsistent with what you told [Defendants' counsel] and myself today?*" Supp. Schultz Decl. ¶ 6, Ex. D (12/6/12 Hall Depo. Tr.) 380:10-381:3. Defendants are entitled to the

---

[1] Notably, the SEC to date refuses to disclose to Defendants any communications it has had with KPMG concerning this motion, incredibly claiming such communications are "in preparation for trial" and "protected work product." Supp. Schultz Decl. ¶ 5, Ex. C (Emails).

SEC's notes of this unsworn testimony, which they cannot obtain from any other source, in order to test both the SEC's allegations and the KPMG witnesses' credibility. With regard to the PCAOB privilege, the record demonstrates the SEC necessarily relied on PCAOB testimony in pursuing this enforcement action and preparing the Complaint. And to the extent the PCAOB privilege otherwise might apply to those transcripts, the SEC waived the privilege when it voluntarily produced other PCAOB-related materials to Defendants.

For these reasons, Defendants are entitled to see the full pre-Complaint record that informs the pending fraud claims against them, and their motion to compel should be granted.

I. **THE SEC'S NOTES AND MEMORANDA OF ITS INTERVIEWS WITH KPMG WITNESSES SHOULD BE DISCLOSED TO DEFENDANTS**

    A. **The Factual Memorializations Contained In The SEC's Notes And Memoranda Are Not "Highly Protected" Work Product**

The KPMG witness statements and proffers on which the SEC concedes it relies are *facts*, not attorney mental impressions entitled to heightened protection under the work product doctrine. And the SEC's notes and memoranda of those statements—including the notes of SEC accountant Donna Walker, who is not an attorney—are discoverable. See Duplan Corp. v. Deering Milliken, Inc., 397 F. Supp. 1146, 1200 (D.S.C. 1974) ("[A]s the work product of the attorney becomes less a matter of creative legal thought and more a mere recognition of observed fact, [it] becomes increasingly susceptible to discovery.").

The SEC contends, however, that because the notes and memoranda "are not merely unsolicited statements" and contain mental impressions, they are entitled to withhold these materials in their entirety. SEC Opp. at 14. This position is untenable. First, the SEC's declarants confirm their notes reflect the factual answers given by KPMG witnesses. See Decl. of Jeffrey S. Lyons ISO SEC's Opp. to Defendants' Mot. to Compel, ¶ 7 ("those notes reflect . . . answers to my questions as I perceived them at the time"). These documented answers are not "highly protected," as the SEC contends. Ford v. Philips Elecs. Instruments Co., 82 F.R.D. 359,

2

360 (E.D. Pa. 1979) ("the work product concept furnishes no shield against discovery . . . of the Facts [sic] that the adverse party's lawyer has learned[.]").  Second, the notes cannot be withheld in their entirety even if portions do reflect attorney mental impressions.  In re Adler, Coleman, Clearing Corp., No. 95-08203 JLG, 1999 WL 1747410, at *2 (S.D.N.Y. Dec. 8, 1999) (factual information is discoverable even if it is "embodied in privileged materials or serves as the basis for opinions of the investigator or attorney involved").  At best, the SEC is entitled to redact whatever limited portions of their notes reveal attorney mental impressions; Defendants request *in camera* review to the extent necessary to resolve this issue.  See In Re Grand Jury Proceedings, 723 F. 2d 1461, 1467 (10th Cir. 1993) (*in camera* review may be warranted where there is a "possibility that some [documents] may fall outside the scope of the exception to the privilege.").[2]

**B.     The SEC Has Waived Any Otherwise Applicable Work Product Protection By Relying On The Notes And Memoranda, And *Reaffirming* Its Reliance During The Deposition Of Jennifer Hall**

The record is simple and clear:  (i) several times over the past two years, the SEC has asked KPMG witnesses and counsel questions about Defendants without insisting that their answers be provided under oath before a court reporter, (ii) those individuals provided answers, and (iii) the SEC concedes those answers provided the basis for key allegations in the Complaint.  The SEC disputes none of this.  By affirmatively placing the contents of these unsworn statements at issue, the SEC waived any otherwise applicable work product protection.

---

[2] The SEC's reliance on Upjohn Co. v. United States, 449 U.S. 383 (1981), for the proposition that notes of witness interview answers are protected entirely from discovery is misplaced.  In Upjohn, the Court concluded that questionnaires employees sent to their employer's general counsel were protected by the *attorney-client privilege*, not the work product doctrine.  Id. at 397.  The Court analyzed work product only insofar as the discovery requests sought production of other notes and memoranda "*beyond* recording responses to [the general counsel's] questions."  Id. (emphasis added).  Here, Defendants seek interview notes as to which there is concededly no attorney-client privilege protection, and seek only the contemporaneously recorded factual answers documented in those notes.

3

Although the SEC claims that it did not inject its notes into this litigation, SEC Opp. at 19, the SEC in fact has conceded as much. MTC at 8-11. And if that were not already enough, the SEC voluntarily *re-injected* its notes into this litigation shortly after this motion was filed. During Hall's recent deposition, the SEC's lead trial counsel had Hall testify about her unsworn interviews in an attempt to bolster the credibility of the often evasive and patently incredible testimony she gave during the deposition:

> Q. Ms. Hall, I just want to ask you, you were asked yesterday about your [off-the-record] meetings with the SEC after your investigative testimony and prior to today. Do you recall that?
> A. Yes.
> \*    \*    \*
> Q. *During any of that [unsworn] testimony, to the best of your recollection, did you tell [the SEC] anything inconsistent with what you told [Defendants' counsel] and myself today?*
> A. No.

Supp. Schultz Decl. ¶ 6, Ex. D, 380:10-381:4 (emphasis added). The SEC thus made a conscious choice to "double-down" on its use of KPMG's unsworn statements by specifically referring to those statements (which the SEC's counsel characterized as "testimony") in this case to bolster the credibility of one of its star witnesses. The SEC cannot have it both ways. It is a clear waiver of work product protection, and fundamentally unfair to Defendants, for the SEC to use KPMG's prior unsworn testimony and statements when it suits the SEC's strategic purpose (as it apparently did with Hall) while also invoking that protection to prevent Defendants from obtaining the contemporaneous notes and memoranda reflecting that testimony.

The SEC's efforts to distinguish the case law on waiver cited by Defendants are unpersuasive. First, the SEC claims that Federal Deposit Ins. Corp. v. Wise, 139 F.R.D. 168 (D. Colo. 1991)—where the court required the FDIC to disclose internal materials that it chose to "inject[]" into the litigation as the basis for "repeated allegations" against the defendants—is inapposite because "here Defendants have deposed or will depose the witnesses whose testimony they claim is not available to them." SEC Opp. at 20. But in fact, the KPMG depositions have

4

not afforded Defendants the opportunity to obtain the relevant testimony. Most of the core engagement team, including Hall and Reinhart, already have been deposed, and yet *no one* has testified in support of the SEC's key "would have" allegations. In addition, Hall claimed to be unable to remember the most basic details of her interviews and meetings with the SEC, including the incredible claim that she could not even remember if the SEC actually discussed Thornburg's critical margin call schedules with her. Supp. Schultz Decl. ¶ 7, Ex. E (12/5/12 Hall Depo. Tr.) 241:16-242:14, 243:4-6; 245:10-246:3. Moreover, both Hall and Reinhart went out of their way to give evasive and obstructive testimony at their depositions. See Id. ¶ 7, Ex. E 75:21-76:20, 79:12-80:5, 161:19-162:24, 163:15-164:15, 183:16-184:19; ¶ 8 Ex. F (12/19/12 Reinhart Depo. Tr.) 26:18-30:22, 136:16-137:14, 146:7-147:8, 178:13-181:23; ¶ 9 Ex. G (12/20/12 Reinhart Depo. Tr.) 399:22-401:13. Defendants' ability to depose Hall and Reinhart, therefore, is no substitute for the SEC's contemporaneous notes of answers those witnesses gave both closer in time to the events at issue and under circumstances in which the witnesses had incentives to be cooperative.[3]

The SEC observes that in In re Grand Jury Proceedings John Doe Co. v. United States, 350 F.3d 299, 303 (2d Cir. 2003), cited by Defendants, the court did not find waiver. The SEC misses the point. In John Doe, the court stated that work product protection covering counsel's interview notes *would* likely be forfeited if applying the protection would "unfairly deprive the [moving party] of the means to refute [the adversary's] testimony." Id. at 304. Under the facts of John Doe, the court found any unfairness to be "completely lacking." Id. at 303. That is not the case here. Non-disclosure would be fundamentally unfair to Defendants given (i) the SEC's reliance on those materials in preparing its Complaint, (ii) the discrepancy between what is

---

[3] The SEC points to SEC v. Treadway, 229 F.R.D. 454 (S.D.N.Y. 2005) in support of the notion that attorney notes are not discoverable where witnesses are available to give testimony. But in that case, the court determined the SEC's interview notes contained protected thought processes only after an *in camera* review of the materials. Id. at 455.

5

allegedly in those materials and the sworn testimony of Hall and Reinhart, and (iii) Hall and Reinhart's complete inability or unwillingness to give straightforward deposition testimony.[4] Federal Deposit Ins. Corp. v. Wise, 139 F.R.D. 168, 172 (D. Colo. 1991).

>       C.      **Defendants Have A Substantial Need For The Notes And Memoranda To Test The Veracity Of The SEC's Allegations And The Credibility Of KPMG Witnesses**

Given the foregoing, Defendants have demonstrated a compelling need for the SEC's notes and memoranda, and the SEC's arguments to the contrary are without merit. First, the SEC suggests that the centerpiece of its case is not whether Defendants misled their outside auditors in connection with Thornburg's 2007 Form 10-K, but rather is the $428 million in losses Defendants allegedly failed to realize. SEC Opp. at 3 n.3. This argument is bizarre. Because a mere accounting error cannot support a securities fraud claim, more than 30 paragraphs of the SEC's Complaint directly relate to accusations that Defendants misled KPMG. Compl. ¶¶ 4, 5, 12, 51-53, 57-59, 65, 71-73, 76-81, 83, 84, 92, 99-101, 104, 105, 124, 126-128. And Hall and Reinhart are undeniably the SEC's key witnesses in this case.

Second, the SEC argues Defendants do not need the SEC's notes because Hall and Reinhart's sworn SEC testimony from 2009 is somehow *not* inconsistent with the allegations in the Complaint. SEC Opp. at 18. But the 2009 Hall testimony the SEC cites does not bear this out. Hall testified only that certain information "would be a significant factor for the OTTI analysis"—not that it in fact "would have" changed anything. Id. Similarly, SEC attorney Lee Robinson (the SEC's lead investigator and a declarant in opposition to this motion), who took Reinhart's sworn 2009 testimony, could not determine if any of the allegedly withheld

---

[4] The SEC argues that In re Grand Jury Proceedings, 616 F.3d 1172 (10th Cir. 2010) supports the proposition that the interview notes and memoranda are protected work product. SEC Opp. at 20. But in that case, the Tenth Circuit *rejected* the argument the SEC makes here that "if [an] attorney was forced to disclose his recollection of any conversations, then [that] attorney's recollections will necessarily involve work product because they will reflect [the] attorney's own mental impressions and . . . what the attorney considers most important." Id. at 1185-86.

information actually would have made any difference whatsoever to KPMG. Supp. Schultz Decl. ¶ 10, Ex. H (9/3/2009 Reinhart Tr.) 140:6-15 ("I'm trying to assess, whether this information that was not conveyed to KPMG was of any significance . . . I don't get a good sense of that from the answers."). And both Hall's and Reinhart's recent deposition testimony in this case is peppered with similar non-committal statements about the significance of the allegedly withheld information. See, e.g., Supp. Schultz Decl. ¶ 7, Ex. E, 196:4-23; ¶ 9, Ex. G, 330:14-331:20, 340:10-341:18, 334:17-336:9.

Third, the SEC argues that if the unsworn testimony memorialized in its notes is consistent with the "would have" allegations of the Complaint, the notes will "not provide any fodder for impeachment." SEC Opp. at 17. But if the unsworn testimony of KPMG's witnesses is consistent with the SEC's "would have" allegations, that testimony is obviously inconsistent with their sworn testimony and *would* subject them to impeachment.[5] If the unsworn testimony is not consistent with the "would have" allegations, then the SEC's critical allegations have no evidentiary support. Defendants thus have a substantial need for this information—both to test the credibility of the KPMG witnesses and to test the veracity of the SEC's key allegations. Indeed, Defendants' need is now all the more evident given the SEC's renewed reliance on the unsworn testimony during Hall's recent deposition. See supra, at 3-4.

### D. Defendants Cannot Obtain The Substantial Equivalent Of The Notes And Memoranda Through Any Other Sources

None of KPMG's witnesses has provided testimony supporting the SEC's "would have" allegations. See supra, at 4-5. Because Defendants are unable to obtain this purported support for the SEC's allegations through sources other than the interview notes and memoranda, the

---

[5] The SEC relies on Duck v. Warren, 160 F.R.D. 80 (E.D. Va. 1995), to argue that disclosure is not warranted because Defendants have not shown "more than speculation" that the unsworn statements will aid in impeaching these witnesses. SEC Opp. at 16-17. But the SEC has stated that KPMG's unsworn statements support the "would have" allegations; they are thus inconsistent with other sworn testimony given by these witnesses and indisputably provide material for impeachment.

7

court should order that they be produced.  See Xerox Corp. v. IBM Corp., 64 F.R.D. 367, 381 (S.D.N.Y. 1974) ("critical factor" in determining whether to produce information enmeshed with work product is "the availability of the non-privileged facts from other sources").

The SEC's claim that Defendants no longer need these materials because KPMG witnesses have now provided "detailed and substantive" deposition testimony regarding the audit is false.  SEC Opp. at 18-19.  For the reasons set forth above, the SEC's characterization of Hall's testimony as "fulsome" is both self-serving and patently untrue.  See supra, at 5.  The same goes for Reinhart, whose deposition testimony was equally evasive and argumentative.  Id.  The SEC also contends that Plummer gave fulsome testimony, but he too could not offer substantive testimony regarding the SEC's key allegations.  Supp. Schultz Decl. ¶ 11, Ex. I (11/28/12 Plummer Depo. Tr.) 79:20-81:5.  The conduct of these witnesses has effectively denied Defendants the ability to pursue critical lines of questioning in much the same way that the witnesses' invocation of the Fifth Amendment privilege did in SEC v. Thrasher.  1995 WL 46681, at *6 (S.D.N.Y. Feb. 7, 1995) (ordering production of SEC interview notes because requesting party was precluded from obtaining first-hand accounts of relevant events).  The same result is warranted here.[6]  Similarly, the SEC's reliance on Hickman v. Taylor, where the Court refused to compel production of interview notes because the relevant information *had already been provided to* the requesting party, is misplaced.  See 329 U.S. 495, 509 (1947) ("[T]he essence of what petitioner seeks either has been revealed to him already through the interrogatories or is readily available to him direct from the witnesses for the asking."); see also In re Grand Jury Proceedings, 43 F.3d 966, 970 (5th Cir. 1994) ("Even if a third party communication is obtained or prepared with an eye toward litigation, it may be discoverable if

---

[6] Moreover, even "fulsome" deposition testimony given years later is not the substantial equivalent of contemporaneous interview notes.  SEC v. Shanahan, No. 4:07CV270JCH, 2009 WL 1955747, at *3 (E.D. Mo. July 6, 2009) ("statements taken at a time more contemporaneous with the events at issue have *unique value*") (emphasis added).

the one who would invade that privacy can establish adequate reasons to justify production."). Here, the information contained in the SEC's interview notes remains unavailable to Defendants.

## II. THE TRANSCRIPTS OF THE KPMG WITNESS TESTIMONY BEFORE THE PCAOB SHOULD BE DISCLOSED TO DEFENDANTS

Despite the extensive coordination between the SEC and KPMG throughout this case, see Supp. Schultz Decl. ¶ 4, Ex. B, the SEC now seeks to distance itself from KPMG's untenable PCAOB privilege position, stating in an email to Defendants' counsel that "KPMG makes arguments in its opposition that the SEC does not necessarily agree with." Supp. Schultz Decl. ¶ 12, Ex. J (12/26-12/27/12 email exchange between Defendants' counsel and SEC). This reply memorandum addresses only the PCAOB-related arguments made by the SEC; Defendants address KPMG's arguments in a separate reply memorandum.

### A. The SEC Has "Presented" The Factual Information Contained In The PCAOB Transcripts "In A Public Proceeding"

The SEC does not dispute that this litigation is a "public proceeding" under 15 U.S.C. § 7215(b)(5)(A), but contends it has not "presented" PCAOB information in this litigation because it purportedly did not "use or rely" on the PCAOB transcripts in preparing its complaint. See Declaration of Andrew G. Schultz dated November 28, 2012, attached to Defs.' Mot. to Compel Prod. of PCAOB Dep. Trs. and Pltf.'s Notes and Mem. of Interviews with Non-Party Witnesses (Doc. 90) ("Schultz Decl."), ¶ 9, Ex. G. But the record directly contradicts the SEC's contention.

First, the SEC claims its lead investigator Robinson and staff accountant Walker did not use the information contained in the PCAOB transcripts they indisputably reviewed. SEC Opp. at 7-8. This begs the question of why they reviewed the PCAOB transcripts at all. In addition, the SEC concedes that Robinson and Walker, both of whom were intimately involved in the underlying investigation, reviewed the Complaint before it was filed. Neither claims in their declarations to have somehow compartmentalized what they learned from reviewing the PCAOB testimony from what they learned from other sources prior to reviewing the draft Complaint.

Further, all four of the SEC's declarants conspicuously fail to address whether Robinson and Walker provided comments or edits to the draft Complaint, which presumably was the purpose of their review.  Moreover, Robinson signed the sworn verification supporting the SEC's responses to Defendants' interrogatories.  Schultz Decl. ¶ 10, Ex. H.  These facts demonstrate their extensive involvement, and should end the inquiry.

Second, the SEC attempts to downplay the fact that Hall confirmed during her sworn 2009 testimony that she "discussed going concern work papers" with the PCAOB "at length." SEC Opp. at 8-9.  Robinson reviewed Hall's PCAOB testimony regarding this central issue prior to taking Hall's 2009 sworn testimony and also reviewed PCAOB testimony of five other KPMG witnesses.  Robinson Decl. ¶ 4.  Whatever testimony Robinson elicited from Hall, the very nature of that testimony, as well as the ensuing investigation and the resulting Complaint, was clearly the product of *all* of his knowledge, including the knowledge he gained from the PCAOB testimony.  The SEC's metaphysical suggestion that Robinson somehow segregated the PCAOB testimony in his own mind cannot be the basis for the SEC to refuse to disclose that testimony.

Third, the SEC contends there is "little significance" to the fact that it did not take testimony from anyone at KPMG besides Hall and Reinhart, because Hall and Reinhart were "primarily responsible" for the 2007 audit.  SEC Opp. at 9.  But none of the SEC's declarants explains why the SEC so limited the KPMG witnesses.  Although Hall and Reinhart were the senior members of the engagement team, at least four other KPMG witnesses performed the bulk of the audit work.  Indeed, the PCAOB took testimony from 11 KPMG witnesses.  Baucom, for example, was a veteran on the audit team and Reinhart testified that Baucom was among those "principally" involved in the going concern analysis.  Supp. Schultz Decl. ¶ 11, Ex. I, 67:8-14; ¶ 10, Ex. H, 53:3-10.  The SEC's puzzling decision to take testimony from only *two* KPMG witnesses in determining to pursue a complex enforcement action suggests that it relied heavily on other testimonial evidence including the PCAOB testimony of numerous KPMG witnesses in

10

addition to Hall and Reinhart.  Defendants should be entitled to see that other testimony.

    **B.**  **The SEC Has Waived Any PCAOB Privilege That Otherwise Might Have Applied To The Transcripts Of The KPMG Witness Testimony**

    The SEC argues that its production of eight PCAOB questionnaires was "inadvertent" and therefore does not waive any privilege.  SEC Opp. at 10.  Not so.  The SEC deliberately introduced Hall's and Reinhart's PCAOB questionnaires as exhibits to their SEC testimony in 2009, Schultz Decl. ¶ 5, Ex. C 14:2-15:17; Id. at ¶ 6, Ex. D 11:13-13:7, and even now concedes they are part of the case and not subject to return.  SEC Opp. at 11 n.7.  Nor did the multiple SEC attorneys present at the Baucom and Plummer depositions object when the PCAOB questionnaires were introduced as exhibits.[7]  In addition to the questionnaires, the SEC *also* produced KPMG workpapers marked with PCAOB privilege designations.  These workpapers include one of the most important documents in the case—the Thornburg margin call schedules given to KPMG before the 10-K filing, which contain virtually all of the margin call information the SEC alleges Defendants withheld from KPMG.  Supp. Schultz Decl. ¶ 13, Ex. K.

    The SEC cannot contend that these documents were produced inadvertently, nor should it be allowed to cherry pick some documents it wishes to disclose while keeping others under wraps.  See In re Grand Jury Proceedings, 616 F. 3d 1172, 1185 n.24 (a litigant cannot selectively use privileged material to prove a point and then invoke the privilege to prevent an adversary from challenging the assertion).  By selectively producing certain key PCAOB materials, the SEC waived the PCAOB privilege as to the related testimony of these witnesses.  Cases the SEC cites in attempting to argue against such waiver bear this out.  See In re UMW

---

[7] Even if the SEC's production of the PCAOB materials were inadvertent, the materials should not be clawed back because the SEC did not act promptly to rectify the "error."  See Fed. R. Evid. 502(b)(3); Defs.' Opp. to Motion to Quash (Doc. 105), Ex. K (SEC v. Jensen, No. 2:11-cv-05316-R-AGR (C.D. Cal. Oct 9, 2012) (Doc. 94) (SEC waived PCAOB privilege given SEC's "selective production of documents, failure to raise the privilege issues [in a timely manner], [and] failure to assert any privilege on the withheld documents until Defendant sought the specific information.")).

Empl. Benefit Plans Litig., 159 F.R.D. 307, 312 (D.D.C. 1994) ("It is well settled that any disclosure of documents inconsistent with the confidential nature of the attorney-client relationship waives the attorney-client privilege not only as to the documents actually disclosed, but also as to *all other communications related to the same subject matter*."); Stratagem Dev. Corp. v. Heron Int'l N.V., 153 F.R.D. 535, 544 (S.D.N.Y. 1994) (privilege waived as to subject matter of disclosed material where party makes "confidential communications a material issue in a judicial proceeding"). Like the defendant in United States v. Bernard, who "sacrificed his attorney-client confidentiality and privilege by voluntarily disclosing the confidential communication," the SEC has waived privilege by voluntarily disclosing component parts of the PCAOB investigation (e.g., questionnaires, margin call schedules) and repeatedly injecting the content of the investigation into this case. 877 F.2d 1463, 1465 (10th Cir. 1989).

    **C.    The SEC Fails To Explain Its Voluntary Production Of PCAOB Transcripts In Jensen**

The SEC's refusal to explain its plainly inconsistent positions on privilege is troubling. SEC v. Jensen evidences both the SEC's practice of relying on PCAOB investigative transcripts and its recognition (at least in the Central District of California) of the appropriateness of producing those materials in litigation where the SEC has put them at issue, as it has done here. Because the SEC voluntarily produced PCAOB transcripts in another pending case, which, like here, involves transactions audited by an accounting firm subject to an ongoing PCAOB investigation, its obligation to undertake consistent and predictable enforcement practices dictates that it do the same here. Indeed, given the critical importance of the Defendants' right to discovery of PCAOB material, the Jensen court ordered a 30(b)(6) deposition as to communications between the SEC and PCAOB (which Defendants also have noticed here).

**III.    CONCLUSION**

For these reasons, this Court should compel the SEC to produce notes and memoranda of interviews and proffer sessions of KPMG witnesses, as well as PCAOB testimony transcripts.

RODEY, DICKASON, SLOAN, AKIN & ROBB, P.A.


By: /s/ *Andrew G. Schultz*
      Bruce Hall
      Andrew G. Schultz
      Melanie B. Stambaugh
P. O. Box 1888
Albuquerque, NM 87103
Telephone:    (505) 765-5900
Facsimile:    (505) 768-7395
E-mail:    bhall@rodey.com
                aschultz@rodey.com
                mstambaugh@rodey.com

*Attorneys for Defendants Larry Goldstone, Clarence G. Simmons, III, and Jane E. Starrett*

13

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on January 3, 2013, the foregoing *Reply to Plaintiff Securities and Exchange Commission's Opposition to Defendants' Motion to Compel Motion to Compel Production of PCAOB Deposition Transcripts and Plaintiff's Notes and Memoranda of Interviews With Non-Party Witnesses* was electronically filed with the Clerk of Court using the CM/ECF system that that will send notification of such filing to all counsel of record.

| | |
|---|---|
| Michael H. Hoses<br>Assistant United States Attorney<br>P.O. Box 607<br>Albuquerque, NM 87103<br>Michael.hoses@usdoj.gov | Stephen C. McKenna<br>Gregory Kasper<br>Dugan Bliss<br>Securities & Exchange Commission<br>1801 California Street, Suit 1500<br>Denver, CO 80202<br>mckennas@sec.gov<br>kasperg@sec.gov<br>blissd@sec.gov |
| WILMER CUTLER PICKERING<br>  HALE & DORR LLP<br>    Randall R. Lee<br>    Jessica Freiheit Kurzban<br>    Peiyin Patty Li<br>350 South Grand Ave., Suite 2100<br>Los Angeles, CA 90071<br>Telephone:   (213) 443-5300<br>Facsimile:     (213) 443-5400<br>randall.lee@wilmerhale.com<br>jessica.kurzban@wilmerhale.com<br>patty.li@wilmerhale.com | WILMER CUTLER PICKERING<br>  HALE & DORR LLP<br>    Alanna G. Buchanan<br>    Joel Fleming<br>950 Page Mill Road<br>Palo Alto, California 94304<br>Telephone:   (650) 858-6000<br>Facsimile:     (650) 858-6100<br>alanna.buchanan@wilmerhale.com<br>joel.fleming@wilmerhale.com |
| WILMER CUTLER PICKERING<br>  HALE & DORR LLP<br>    John A. Valentine<br>1875 Pennsylvania Avenue, NW<br>Washington, DC 20006<br>Telephone:   (202) 663-6000<br>Facsimile:     (202) 663-6363<br>john.valentine@wilmerhale.com | MILBANK, TWEED, HADLEY &<br>  MCCLOY LLP<br>    Thomas A. Arena<br>1 Chase Manhattan Plaza<br>New York, NY 10005<br>Telephone:   (212) 530-5000<br>Facsimile:     (212) 530-5219<br>tarena@milbank.com |

       MILBANK, TWEED, HADLEY &
         MCCLOY LLP
             Jerry L. Marks
             Robert J. Liubicic
             Alisa Schlesinger
             Elena Kilberg
             Paul M. Torres
601 S. Figueroa Street, 30th Floor
Los Angeles, CA  90017
Telephone:     (213) 892-4000
Facsimile:     (213) 629-5063
jmarks@milbank.com
rliubicic@milbank.com
aschlesinger@milbank.com
ekilberg@milbank.com
ptorres@milbank.com


RODEY, DICKASON, SLOAN, AKIN & ROBB, P.A.

By    */s/ Andrew G. Schultz*
      Andrew G. Schultz