IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> LARRY GOLDSTONE, CLARENCE G. SIMMONS, ) <br> III, and JANE STARRETT, ) <br> ) <br> Defendants. ) <br> ) | No. 1:12-cv-00257-JB-LFG |

**NON-PARTY KPMG LLP'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO QUASH, IN PART, OR MODIFY SUBPOENA TO PRODUCE DOCUMENTS, AND FOR A PROTECTIVE ORDER**

## I. PRELIMINARY STATEMENT

Defendants are correct that KPMG moves this Court to impose a broad protective order precluding discovery into the PCAOB investigation of KPMG's audits of the financial statements of Thornburg Mortgage, Inc., *see* Defendants' Opposition to KPMG's Motion to Quash (Doc. 105, "Def. Opp.") at 1, 16 – because the fact is that Congress specifically enacted sections 105(b)(5)(A) and (B) of the Sarbanes-Oxley Act (the "Act") to protect that very information from discovery in "any proceeding in any Federal or State Court," including this one. Defendants ask this Court to ignore the clear language of the Act and its legislative purpose and empower them to invade a confidential regulatory process in their search for additional fodder for their attack on the professional competence of auditors who are third-party witnesses in this lawsuit.

To circumvent the requirements of the Act, Defendants urge the Court to ignore KPMG's briefing and advance unfounded claims of collusion between KPMG and the SEC to alter witness testimony; when, in fact, KPMG simply seeks to enforce statutory rights granted to it by Congress to keep PCAOB investigative information "confidential and privileged" and "not subject to civil discovery or other legal process." There is no factual basis to support defense counsel's dark speculation that the auditors gave inconsistent testimony in the PCAOB investigation or that their testimony in this action is influenced by the existence of that investigation.

Furthermore, Defendants' contention that the fact that the SEC staff may have considered information it received from the PCAOB when bringing this case somehow waived KPMG's

1

statutory right to confidentiality improperly ignores the Act's text which: (1) makes clear that such information can only be "presented" by the PCAOB "in a public proceeding . . . *in accordance with subsection (c) of this section*," which refers specifically to a PCAOB disciplinary proceeding that becomes public after a finding of the Board "for good cause shown, with the consent of all parties to such hearing"; and (2) expressly, and in unqualified terms, requires that the SEC, upon receiving protected material from the PCAOB under Section 105(b)(5)(B), "shall maintain such information as confidential and privileged," and nowhere affords the SEC the right to disclose that information.

Failing to find support in the Act's text, Defendants erroneously insist that common law concepts of waiver and "fairness" require the Court to contravene the Act.  In short: (1) common law principles of waiver cannot trump or modify the express terms of the statutory protection enacted by Congress; (2) Defendants' reliance on cases in which a party asserting a privilege waived it by its conduct is unavailing in this case, where the privilege belongs to KPMG, and not to the SEC; and (3) Defendants have not demonstrated that applying the Act by its terms works a fundamental unfairness on them that requires the Court to override the Act and violate KPMG's rights.  To the contrary, Defendants have exhibited their ability to criticize the audit work performed by the KPMG witnesses using documents KPMG has already produced; and, in the event it has fairness concerns, the Court has ample ability to remedy those concerns at the time of trial by issuance of appropriate pretrial orders, evidentiary rulings, and/or jury instructions which do not violate KPMG's statutory rights.

Congress's decision to protect the PCAOB regulatory processes from intrusion by civil litigants, like those here, was founded on the recognition that its failure to do so would materially and negatively impact the PCAOB's remedial mission. Knowing that the SEC could find itself in civil litigation after receiving protected information from the PCAOB, Congress nevertheless deliberately legislated that such information would not be subject to discovery in such litigation and that the SEC shall not disclose the information. Defendants are not a special class of litigant Congress meant to exempt from this legislative scheme, and they are not entitled to the information they seek.

These points and others are addressed in further detail below.[1]

## II.   ARGUMENT

### A.   The Text of Section 105 Defeats Defendants' Argument.

Defendants contend that the broad Section 105 Privilege no longer applies here because the SEC had access to and allegedly relied on PCAOB transcripts in preparing the Complaint, and thereby "presented" the PCAOB information "in connection with a public proceeding." Def. Opp. at 9-10. As demonstrated in KPMG's Motion (Doc. 91, "KPMG Mtn.", at 21-25), and in KPMG's Brief in Opposition to Defendants' Motion to Compel (Doc. 99, "KPMG Opp.", at 6-7), the statutory term "public proceeding" refers specifically and only to a PCAOB enforcement proceeding that has been made public with the consent of the parties under Section 105(c) of the Act, and does not refer to any civil litigation, brought by the SEC or any other party.

---

[1] Defendants' argument that KPMG's motion is "procedurally improper," Def. Opp. at 3 n.1, is frivolous. By moving to compel the SEC to produce information in its possession over which Defendants knew KPMG asserted privilege, Defendants joined issue on KPMG's assertion of the privilege and cannot be heard to claim they were procedurally surprised or prejudiced. Nor can there be doubt that Defendant's motion challenging the privilege puts the issue before the Court and makes it ripe for determination.

Defendants' contention that the SEC has power to breach the privilege under Section 105(b)(5)(A) simply by filing a lawsuit flies in the face of the command of Congress in Section 105(b)(5)(B), which expressly requires the SEC to "maintain such information [provided by the PCAOB] as confidential and privileged." 15 U.S.C. § 7215(b)(5)(B).

Furthermore, Defendants' position that "public proceeding" refers to any SEC lawsuit brought after the PCAOB shares information with the SEC sweeps far too broadly. The statute permits the PCAOB to share information with other federal and state regulatory authorities, in addition to the SEC, and – under Defendants' interpretation – any of these agencies could breach the privilege simply by filing a lawsuit once they had received PCAOB information. This cannot possibly be what Congress intended when it mandated under Section 105(b)(5)(B) that all such agencies – including the SEC – "maintain such information as confidential and privileged," as that approach would eviscerate the protection for PCAOB investigation-related information. Thus, this lawsuit is not a "public proceeding" under Section 105(b)(5)(A).[2]

Defendants contend that this interpretation introduces a redundancy into Section 105(b)(5)(A)'s language, Def. Opp. at 11, but this contention misconstrues both the text of Section 105 and KPMG's position. The phrase "public proceeding . . . in accordance with subsection (c)" in Section 105(b)(5)(A) refers to PCAOB disciplinary proceedings, which – though usually confidential – can be made public "for good cause shown, with the consent of the

---

[2]  Defendants argue that the Court has already rejected this position during the November 9, 2012 telephone conference, and adopted Defendants' position that "public proceeding" refers (among other things) to a SEC civil suit like the present case. Def. Opp. at 10. But that decision was made without the benefit of briefing, at an emergency conference which KPMG learned of only at the last minute. The Court now has before it, for the first time, KPMG's briefing regarding its assertion of the Section 105 Privilege over the protected information in the SEC's possession and more broadly in support of KPMG's Motion.

parties." 15 U.S.C. § 7215(c)(2). On the other hand, the statute's reference to information "released in accordance with subsection (c)" refers to the public release of information about disciplinary sanctions imposed by the PCAOB, which must be made public under the Act once sanctions have been imposed. Thus, subsection (c)(3) requires the PCAOB to prepare a "supporting statement" explaining the basis for the disciplinary sanctions, 15 U.S.C. § 7215(c)(3), and subsection (c)(4) requires the Board to specify the sanctions imposed, 15 U.S.C. § 7215(c)(4), and both of these must be made public once sanctions have been imposed, *see* 15 U.S.C. §§ 7215(d)(1), (2).[3] Thus, subsection (A) refers to two ways that privileged information can become public, each "in accordance with subsection (c)." Consequently, the statutory language is not redundant.[4]

Finally, even if there were any ambiguity in the statute, KPMG's interpretation of "public proceeding" is the only one consistent with the statutory purposes. As explained in KPMG's Motion, if "public proceeding" means any proceeding, including SEC civil lawsuits, and the SEC can freely waive the privilege simply by receiving privileged information, then the privilege

---

[3]    This construction of the statute also gives the term "released" its ordinary meaning, which suggests publication, not use in a proceeding. *See, e.g.,* Merriam-Webster's Dictionary (defining "release" as "to give permission for publication"), *available at* http://www.merriam-webster.com/dictionary/release.

[4]    The legislative history relied on by Defendants further supports this conclusion. Def. Opp. at 9 (citing S. Rep. No. 107-205, at *58 (2002)). The Senate Report explains that the "legislation should have little additional impact upon the privacy of particular individuals" – *i.e.*, audit firms and professionals – because "[i]nformation and documents *held by the Public Company Accounting Oversight Board* created by the bill are generally confidential and privileged *until made public in connection with a particular public enforcement proceeding.*" S. Rep. No. 107-205, at *58 (emphasis added). By referencing the use of PCAOB-held information in an enforcement proceeding, the Senate Report equates "public proceeding" with PCAOB enforcement proceedings that become public in accordance with subsection (c), and is thus consistent with the reading of subsection (A) urged by KPMG. Had Congress intended "presented in a public proceeding" to include use by recipient agencies in any public litigation they may commence, the Senate Report's statement couldn't be more wrong because exposure of confidential PCAOB information as part of discovery in collateral government litigation clearly implicates the privacy concerns of audit firms and auditors.

created in subparagraph (A) provides little protection and subparagraph (B) – which mandates that the SEC maintain the confidentiality of PCAOB information – is rendered meaningless. KPMG Mtn. at 21-23; *see also* KPMG Opp. at 5-6, 11-12.  That result would contradict bedrock principles of statutory interpretation.  *See, e.g., United States v. Al Kassar*, 660 F.3d 108, 124-25 (2d Cir. 2011).   Defendants blithely suggest that Section 105(b)(5)(B)'s command that government agencies "shall maintain such information as confidential and privileged" does not "prelude those agencies from using [that] information . . . in any manner the agencies wish, and imposes no limits on the agencies' ability to effect a waiver." Def. Opp. at 15.  In so doing, Defendants manage to render nearly every word of that provision meaningless, undermining the protection of confidential PCAOB internal processes Congress created in Section 105(b)(5)(A) and (B).  That cannot be the correct result.

> **B.    The Section 105 Privilege Affords Accounting Firms a Broad Protection That Only The Auditors Subject to PCAOB Investigations Can Waive.**

Contending the SEC can and has waived KPMG's privilege, Defendants ignore the words of the statute and the nature of the protection from discovery Congress enacted to insulate PCAOB-processes from disclosure outside the statutory scheme it adopted.  Thus, Congress did not just declare the covered information "privileged," but rather endowed that information with an exemption from discovery, expressly precluded the concept of waiver from applying to transmission of the information to recipient agencies, exempted it from application of FOIA, and clearly and unambiguously decreed that recipient agencies shall not release the information.  15 U.S.C. § 7215(b)(5)(A)-(B).  The multi-faceted nature of the resulting robust privilege is essential to effectuate Congress's intent to foster the remedial mission of the PCAOB by

6

unequivocally and resolutely protecting the cooperative and confidential regulatory relationship between audit firms and the PCAOB established by the Act. *See* KPMG Mtn. at 13-15 (legislative history).[5]

As demonstrated in KPMG's prior briefing, Congress made clear that there were limited ways in which such information could become public – in a public PCAOB hearing, which would occur only if the PCAOB found "for good cause" that it should be public ***and*** all parties consented, 15 U.S.C. § 7215(c)(2); or following imposition of a sanction by the Board not appealed to the SEC (*i.e.*, not stayed on appeal), 15 U.S.C. § 7215(c), (d)(1)(C); or affirmance of a Board sanction by the Commission, 15 U.S.C. § 7215(c), (d)(1)(C), (e). Absent any of those situations, Congress intended protected information to remain confidential and exempt from discovery by any litigant or release by any government agency.[6]

---

[5]   Defendants' contention that such a concept of statutory privilege is "extraordinary," not surprisingly, ignores that similar broad statutory protections are commonly afforded state-mandated peer review processes regulating accountants, doctors, and other professionals. *See, e.g.,* 225 Ill. Comp. Stat. 450/30.3(a) (Public Accounting Act regarding Confidentiality of Peer Review Records states "[t]he proceedings, records, and work papers of a review committee shall be privileged and shall not be subject to discovery, subpoena, or other means of legal process or introduction into evidence in any civil action, arbitration, or administrative proceeding . . . ."); Mo. Rev. Stat. § 326.295 (similar); Ohio Rev. Code Ann. § 4701.29 (similar re the investigative proceedings of the State Accountancy Board); Iowa Code Ann. § 272C.6(4)(a) (similar re peer review of professionals, including accountants and doctors); Me. Rev. Stat. tit. 10, § 8003-B (similar re board investigations of professionals, including accountants, architects, physicians, and engineers). Given the importance of these privileges, and the policies underlying them, courts routinely deny discovery requests that seek to invade the privilege. *See United States v. CAP Quality Care, Inc.*, No. 05-163-P-H, 2006 WL 1636617, at *3-4 (D. Me. June 13, 2006) (granting investigative agency's motion to quash subpoena that sought testimony that "would involve the release of 'investigative information'" protected by the state's confidentiality of investigative records statute); *Cawthorn v. Catholic Health Initiatives Iowa Corp.*, 806 N.W.2d 282, 289 (Iowa 2011) (holding that there was no waiver provision in the Iowa medical peer review statute).

[6]   Nor are Defendants correct when they argue there is no such thing as an absolute privilege, Def. Opp. at 13. For example, 31 U.S.C. § 5318(g) and its implementing regulations, 12 C.F.R. § 21.11(k), forbid the disclosure of Suspicious Activity Reports that banks are required to file when they become aware of suspicious financial transactions. Courts have held that the statute and rule "create[ ] an unqualified discovery and evidentiary privilege that . . . cannot be waived." *Whitney Nat'l Bank v. Karam*, 306 F. Supp. 2d 678, 682

Defendants ignore the rule that only the holder of a privilege or its authorized agents may waive the privilege.[7]  Here, by contrast, KPMG, *not the SEC*, is the holder of the Section 105 Privilege – and it has zealously protected its privilege.  Thus, there is no basis for any finding of waiver.

Defendants' reliance on the SEC's "general oversight authority over the PCAOB," Def. Opp. at 14-15, is equally baseless.  While 15 U.S.C. § 7217 does give the SEC certain oversight responsibilities over the PCAOB, neither that section nor any other part of the Act gives the SEC the power to control the Board's investigations – and certainly not any power to waive the Section 105 Privilege.  *See Free Enter. Fund v. PCAOB*, 130 S.Ct. 3138, 3159 (2010) ("[T]he Board is empowered to take significant enforcement actions, and does so largely independently of the Commission . . . the Act nowhere gives the Commission effective power to start, stop, or alter individual Board investigations . . . .").  Nor is Section 7217 a basis to ignore Section

---

(S.D. Tex. 2004) (granting motions for protective orders filed by plaintiff-bank and the United States); *Gregory v. Bank One, Ind., N.A.*, 200 F. Supp. 2d 1000 (S.D. Ind. 2002) (same).  As such, "[a] court is not authorized to order the disclosure of a SAR under the Act." *Whitney Nat'l Bank*, 306 F. Supp. 2d at 682.

The express terms of Section 105(b)(5)(B) belie Defendants' claim that common law waiver principles are applicable here.  In particular, Congress expressly provided that the transmission of protected information from the PCAOB – a private entity – to the SEC – a government agency – pursuant to subsection (B) does not operate as a waiver by the PCAOB, rather the information remains "confidential and privileged." 15 U.S.C. § 7215(b)(5)(B). The fact Congress chose to make the privilege non-waivable when protected information is shared with recipient agencies evidenced its intent that common law principles of privilege waiver not apply to the protections created by the Act, and there is no basis to graft such concepts onto a carefully designed legislative scheme. *See e.g.*, *United States v. Gonzales*, 150 F.3d 1246, 1264 (10th Cir. 1998) ("[T]he statute and regulations discussed below occupy this field and would supersede the common law right even if one existed.") (citation omitted).

[7]  *E.g., United States v. Cuthbertson*, 630 F.2d 139, 147 (3d Cir. 1980) ("The privilege . . . may be waived only by its holder.").  Defendants reliance on *Anchondo v. Anderson, Crenshaw & Assoc.*, 256 F.R.D. 661, 671-72 (D.N.M. 2009), and *FDIC v. Wise*, 139 F.R.D. 168 (D. Colo. 1991)) is misplaced.  In both cases, the party found to have waived the privilege was the holder of the privilege. *See Anchondo*, 256 F.R.D. at 669-73; *Wise*, 139 F.R.D. at 170, 172.

8

105(b)(5)(B)'s explicit command that the SEC "<u>shall</u> maintain such information as <u>confidential</u> and <u>privileged</u>." 15 U.S.C. § 7215(b)(5)(B) (emphasis added).[8]

### C. KPMG Is Asserting the Privilege Only With Respect to Documents and Information Protected under Section 105.

Defendants' purport to identify four categories of documents that KPMG is withholding which Defendants claim are not covered by the terms of the Section 105 Privilege. Def. Opp. at 16-20. Yet the plain language of Section 105(b)(5)(A) – "all documents and information <u>prepared</u> or <u>received by</u> or <u>specifically for</u> the Board" – covers three of these categories: (1) testimony regarding the status of the PCAOB investigation and potential disciplinary proceedings; (2) KPMG's communications with the PCAOB; and (3) transcripts of PCAOB testimony. KPMG has not asserted the privilege with respect to any documents falling into the fourth category: KPMG's communications with the SEC.

Defendants' contention that they are entitled to answers from the KPMG auditors to questions about their understanding of the PCAOB investigation overlooks the fact that any information such witnesses may have about the PCAOB's intent would necessarily have come from the PCAOB and is thus privileged as information "prepared by" the PCAOB. Similarly, any communications between KPMG auditors and the PCAOB investigators, including witness testimony, is necessarily information "received by" the PCAOB and/or "prepared . . . specifically for" the Board. As such, all such information is privileged. *See Bennett v. Sprint Nextel Corp.*, No. 11-9014-MC-W-ODS, 2012 WL 4829312, at *3-4 (W.D. Mo. Oct. 20, 2012) *see also*

---

[8] Defendants' suggestion that entry of a confidentiality stipulation and protective order can resolve KPMG's concerns, Def. Opp. at 3, should be rejected out of hand. The precise purpose of the Section 105 Privilege is to deny litigants, like the Defendants, access to PCAOB investigation-related information, and release of the information to them is the harm the Act was enacted to prevent. *See* KPMG Mtn. at 13-15.

KPMG Mtn. at 17-20.  Further, any internal KPMG communications relating to the PCAOB investigation are equally covered by the Section 105 Privilege (as well as, in most instances, attorney client privilege and the work product doctrine).  *Bennett*, 2012 WL 42829312, at *3-4; KPMG Mtn. at 17-20.

> **D.  Defendants' Fairness Concerns Cannot be Addressed by Depriving Non-Party KPMG of Its Statutory Rights Under Section 105.**

Finally, the thrust of Defendants' arguments is that it is somehow unfair for the SEC to have received and reviewed PCAOB transcripts pursuant to Section 105(b)(5)(B) several years ago, while Defendants are barred by the Section 105 Privilege from seeing them.  *See*, *e.g.*, Def. Opp. at 4-5, 10, 13.  Even if there were any merit to these arguments, they provide no lawful basis for the Court to order disclosure in contravention of the Act.[9]  Withholding information from a litigant is the natural consequence of the application of any evidentiary privilege.  That is simply how privileges work.  *See, e.g., Admiral Ins. Co. v. U.S. Dist. Court for Dist. of Ariz.*, 881 F.2d 1486, 1494 (9th Cir. 1989) ("The attorney-client privilege, like all other evidentiary privileges, may obstruct a party's access to the truth."); *Anchondo*, 256 F.R.D. 661 at 670 (noting the "unavoidable unfairness generated by every assertion of privilege").  While it may seem "inequitable that information contained in privileged materials is available to only one side in a dispute, a determination that communications or materials are privileged is simply a choice to protect the communication and relationship against claims of competing interests.  Any inequity

---

[9] Defendants continued citation to the SEC's purported conduct in the *Jensen* case is unavailing, as the *Jensen* case has no precedential value.  The Court and special master did not consider the issues raised by KPMG's Motion, and the outcome cannot be reconciled with the Section 105 Privilege.  There is no evidence that the accounting firm even asserted its Section 105 privilege in that case. The ruling in *Jensen* has no bearing on whether documents and information covered by the privilege should be produced in this case.  *See* KPMG Opp. at 15-17.

in terms of access to information is the price the system pays to maintain the integrity of the privilege." *Admiral Insurance Co.*, 881 F.2d at 1495. In enacting the Section 105 Privilege, Congress made a policy determination to permit the SEC access to PCAOB investigation-related materials, but deny that access to parties, like Defendants, in discovery. 15 U.S.C. § 7215(b)(5)(A); KPMG Mtn. at 5-8, 14-16, 22; KPMG Opp. at 11-12. Defendants may dislike that policy determination, but it is the Court's duty to enforce it.[10]

Nor is there any basis for Defendants' claim that they are prejudiced by the application of the privilege here. Defendants offer only speculation as to what they *might* find in the PCAOB testimony with no factual support. Such speculation provides no basis for breaching the Section 105 Privilege. *Cf. United States v. Jewell*, 614 F.3d 911, 926-27 (8th Cir. 2010) (no disclosure obligation where defendant "did not present anything other than speculation that the documents he wanted" contained allegedly exculpatory material).

Defendants improperly suggest that KPMG witnesses are somehow tailoring their testimony to aid the SEC – in order to please the PCAOB and thereby avoid sanctions.[11] *See,*

---

[10] *See Admiral Insurance Co.*, 881 F.2d at 1494 n.7 ("[R]ules of privilege are not without a rationale. Their warrant is the protection of interests and relationships which, rightly or wrongly, are regarded as of sufficient social importance to justify some sacrifice of availability of evidence relevant to the administration of justice.") (quoting McCormick on Evidence 171 (3d ed. 1984)). Defendants are wrong in asserting that it is unfair for "the SEC to maintain a trove of secret evidence that it relied on in formulating its charges but then withholds from the charged parties." Def. Opp. at 10. The fact is that, by operation of the Section 105 Privilege, the SEC is also precluded from using any information in the PCAOB materials as evidence in this case, and must prove its case based on admissible evidence, not material protected by the Section 105 Privilege. KPMG Opp. at 19.

[11] Defendants argue that KPMG's Jennifer Hall recently changed her testimony since being deposed in September 2009 during the SEC investigation. Def. Opp. at 20, fn 12. KPMG witnesses have not provided inconsistent testimony. To the contrary, in the cited recent testimony, KPMG witnesses have reacted to additional evidence put to them by the SEC, which evidence has given the witnesses a better view of Thornburg management's total efforts to purposely conceal material information from the audit team than they had when first questioned during their testimony.

*e.g.,* Def. Opp. at 17-20.  But, Defendants' speculation is based on fundamental misconceptions concerning the role of the PCAOB, the focus of its investigations and its relationship with the SEC.  The PCAOB is concerned in its investigations with the propriety of the conduct of an accounting firm and its professionals; it is not concerned with the conduct of the issuer being audited or its management.  The PCAOB has made clear it will not forego disciplinary proceedings just because an auditor testifies in an SEC civil suit that management misrepresented material information.[12]

Notwithstanding their protestations about fairness, Defendants have sufficient information to effectively cross-examine KPMG witnesses about the audits and financial statements in question, and mount their intended attack on the competence of the KPMG auditors to deflect the jury's attention from their own conduct.[13]  Indeed, despite Defendants' protestations, their brief makes clear the absence of the PCAOB materials will not impede Defendants' mud-slinging efforts at trial.  *Id.* at 18 n.12.

## III.  CONCLUSION

For the reasons set forth above, in addition to those set forth in KPMG's Motion and its Opposition Brief, KPMG respectfully requests that the Court grant KPMG's Motion.

---

[12]   *See, e.g.,* Jeannette M. Franzel (Board Member), Current Trends and Issues in Public Company Auditing (Oct. 26, 2012) ("[T]he division scrutinizes situations where fraud resulted in material misstatements by an issuer to determine whether the auditor fulfilled its obligations under PCAOB standards in conducting the audit."), *available at* http://pcaobus.org/News/Speech/Pages/10262012_Franzel.aspx

[13]   This includes prior SEC deposition testimony, their deposition testimony in this case, and the more than 1.5 million pages of documents (including audit work papers) that KPMG produced to the SEC (and that have been produced to Defendants) and eventual testimony at trial.

Dated:  January 7, 2013

    Respectfully submitted,

    KELEHER & MCLEOD, P.A.

    By:  __/s/ W. Spencer Reid_____
        W. Spencer Reid

        Albuquerque Plaza
        201 Third Street NW
        12th Floor
        Albuquerque, New Mexico  87102
        Tel.: (505) 346-4646
        Fax:  (505) 346-1370

    HOGAN LOVELLS US LLP

    By:  __/s/ George A. Salter_____
        George A. Salter
        Peter Dennin

        875 Third Avenue
        New York, New York 10022
        (212) 918-3000

    *Attorneys for Non-Party KPMG LLP*

**CERTIFICATE OF SERVICE**

  I, Spencer Reid, hereby certify that on January 7, 2013, I filed the foregoing document electronically through the CM/ECF System, which caused all counsel of record to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

                     */s/ W. Spencer Reid*
                     W. Spencer Reid