IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

SECURITIES AND EXCHANGE COMMISSION,

     Plaintiff,

vs.                                                      Case Number: 1:12-cv-00257-JB-LFG

LARRY GOLDSTONE, CLARENCE G. SIMMONS,
III, and JANE E. STARRETT,

     Defendants.


**DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF
SECURITIES AND EXCHANGE COMMISSION'S MOTION FOR
PROTECTIVE ORDER TO QUASH DEFENDANTS' NOTICE OF 30(B)(6)
DEPOSITION AND SECOND AND THIRD
<u>REQUESTS FOR THE PRODUCTION OF DOCUMENTS</u>**

## I.      INTRODUCTION

Plaintiff Securities and Exchange Commission's Motion for a Protective Order seeks to forestall nearly all investigation into an issue that is central to the credibility of Cynthia Reinhart and Jennifer Hall, the KPMG auditors who are the SEC's chief witnesses against Defendants Larry Goldstone, Clay Simmons, and Jane Starrett.

- In 2009, Ms. Reinhart and Ms. Hall testified under oath to the SEC that they did not know whether the information Defendants allegedly failed to disclose to KPMG would have altered their judgment that Thornburg did not need to recognize an "other than temporary impairment" ("OTTI") on its Purchased ARM Assets in fiscal 2007.

- Notwithstanding that testimony, the SEC's March 2012 Complaint in this case alleged that "[h]ad the Defendants provided Thornburg's outside auditor with accurate and complete information . . . Thornburg's outside auditor would have disagreed with the company's OTTI conclusion…."  (Compl. ¶ 83.)

- Shortly after the Complaint was filed, Ms. Reinhart and Ms. Hall received written assurance from the SEC that they would not be prosecuted.  In the course of discovery, the SEC informed Defendants that unsworn interviews with Ms. Reinhart and Ms. Hall formed the basis for paragraph 83 of the Complaint.

- Then, in their December 2012 depositions, Ms. Reinhart and Ms. Hall altered their testimony again, claiming – that it was "likely" or "possible" they would have disagreed with Defendants' OTTI conclusion had the allegedly undisclosed information been known to them.

The shifting nature of Ms. Reinhart's and Ms. Hall's testimony and their clear hostility to Defendants' interests (particularly when compared to the neutral views they expressed in their 2009 testimony) occurred after Ms. Reinhart, Ms. Hall and their counsel had multiple unsworn communications with the SEC in 2011 and 2012 – communications that have been cloaked in secrecy thus far.

Plaintiff's motion asks the Court to ignore these facts and terminate essentially all discovery into the SEC's dealings with these key witnesses or into fundamental questions that

bear on their credibility.

The SEC has also acknowledged communicating with the Public Company Accounting Oversight Board ("PCAOB") about its investigation of KPMG's Thornburg audit. The prospect of being sanctioned by the PCAOB for violating professional standards in that audit gives Ms. Reinhart and Ms. Hall enormous incentive to exaggerate the significance of the allegedly undisclosed information and accuse Defendants of misleading them. Moreover, as the government agency with chief oversight responsibility for the PCAOB,[1] the SEC is uniquely situated to influence the outcome of the PCAOB investigation. The SEC's motion asks the Court to terminate all Defendants' discovery efforts concerning this issue, as well.

If granted, the SEC's motion would do nothing less than prevent Defendants from learning how Ms. Reinhart's and Ms. Hall's dramatic change of position came to pass. None of the arguments offered by the SEC satisfy the requirements of Rule 26(c) for imposing such a drastic restraint on Defendants' discovery rights.

<u>First</u>, the credibility of Defendants' chief accusers is plainly a relevant subject for discovery. Ms. Reinhart's and Ms. Hall's change in testimony on a critical issue after engaging in extensive unsworn communications with the SEC, and while facing the possibility of PCAOB sanctions, provide ample justification for permitting the discovery Defendants seek.

<u>Second</u>, the SEC is wrong that Defendants seek to depose opposing counsel. Under Rule 30(b)(6), the SEC is free to designate any appropriately prepared representative it chooses to testify on its behalf. The possibility that the SEC may choose to designate its trial counsel out of

---

[1] *See, e.g.,* 15 U.S.C. § 7217(a) ("The Commission shall have oversight and enforcement authority over the Board, as provided in this Act."); *Free Enterprise Fund v. PCAOB*, 130 S. Ct. 3138, 3145 (2010) ("Board members are therefore directed and supervised by the Commission.")

convenience or for strategic reasons is no basis to quash a Rule 30(b)(6) deposition, particularly on an issue as important as a government agency's influence on the testimony of key witnesses.

Third, contrary to the SEC's position, its communications with third parties such as KPMG and the PCAOB are, by definition, not privileged. Moreover, the work product doctrine and deliberative process privilege do not apply here given that the SEC's influence on the testimony of KPMG witnesses is itself at issue. They are also qualified protections that have either been waived or are overcome in this instance by Defendants' compelling need.

Fourth, whatever privilege may have once attached to PCAOB materials in the SEC's possession was waived long ago by their reliance on those materials in this litigation.

Courts have long recognized that civil enforcement actions such as this which seek "a very severe penalty," "can be considered 'quasi-criminal' in nature." *SEC v. Merkin*, 283 F.R.D. 689, 694 n.4 (S.D. Fla. 2012) (quoting *United States v. Sanchez*, 520 F. Supp. 1038, 1040 (S.D. Fla. 1981)). Defendants in criminal cases have the protection of the *Brady* Rule, which requires the government to disclose all material exculpatory evidence, including evidence that undermines the credibility of witnesses. *See Smith v. Cain*, 132 S. Ct. 627, 629-31 (2012) (reversing conviction based on prosecutor's failure to provide investigator's notes of key witness' prior, exculpatory statements). In civil enforcement actions, by contrast, defendants must ferret out such evidence through discovery under the Federal Rules of Civil Procedure. Given the draconian remedies sought here by the SEC – permanent injunctions, harsh civil monetary penalties, and permanent bars from ever again serving as public company officers or directors – Defendants respectfully request that the Court not hamstring Defendants by preventing them from fully exploring the grounds for the KPMG witnesses' change in testimony.

3

## II.    ARGUMENT

### A.    Legal Standard

"[U]nder the federal rules, parties may obtain discovery regarding any matter, not privileged, that is relevant to the party's claims or defenses."  *SEC v. Misner*, No. 07-cv-01640, 2007 WL 3232132, at *3 (D. Colo. Oct. 30, 2007) (citing Fed. R. Civ. P. 26(b)(1)).  A party must show "good cause" why it needs the protection of a Rule 26(c) protective order to avoid "annoyance, embarrassment, oppression, or undue burden or expense[.]"  Fed. R. Civ. P. 26(c)(1); *see also SEC v. Rajaratnam*, 622 F.3d 159, 180 (2d Cir. 2010) ("fundamental maxim of discovery" is that "mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation") (internal citation omitted).  Rule 26(c) provides that the "court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."  Fed. R. Civ. P. 26(c)(1).  These are the only grounds upon which the court may issue a protective order.  *See In re Urethane Antitrust Litig.*, No. 04-MD-1616-JWL 2010 U.S. Dist. LEXIS 113796, at *32 (D. Kan. Oct. 21, 2010).

"To establish good cause, the party must submit a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements."  *Id.* at *33*; see also Frideres v. Schiltz*, 150 F.R.D. 153, 156 (S.D. Iowa 1993) ("The party requesting a protective order must make a specific demonstration of facts in support of the request as opposed to conclusory or speculative statements about the need for a protective order and the harm which will be suffered without one.").  "An affidavit or other evidentiary proof is the best way for a party to demonstrate undue burden under Rule 26(c), but at a minimum, the party must provide a detailed explanation as to the nature and extent of the claimed burden or expense."  *In re*

*Urethane Antitrust Litig.,* 2010 U.S. Dist. LEXIS 113796, at *38.  Parties seeking a protective

order on the basis of annoyance or embarrassment must provide a similarly detailed explanation.

*See id.* at *44-45.

Even where the court determines that a protective order is warranted, the court should

"only grant as narrow a protective order as is necessary under the facts."  *Frideres,* 150 F.R.D. at

156.  "Protective orders prohibiting depositions are rarely granted."  *Id.* (citing cases); *see also*

*SEC v. Kramer*, 778 F. Supp. 2d 1320, 1327 (M.D. Fla. 2011) ("It is very unusual for a court to

prohibit the taking of a deposition altogether and absent extraordinary circumstances, such an

order would likely be in error."); *Merkin*, 283 F.R.D. at 694.

As discussed below, the SEC does not come close to making the required showing under

Rule 26(c).

### B.   Defendants Seek Relevant Information That Bears Directly on the KPMG Witnesses' Credibility.

The SEC's first argument is the conclusory assertion that "Defendants' attempts to delve

into opposing counsel's communications with the PCAOB and KPMG are not relevant to the

claims against them, any defenses to those claims or, indeed, any factual issue in the case."

(Mot. at 5.)  But the SEC's motion is devoid of any factual support for that assertion.  Indeed, the

SEC's motion conspicuously avoids any mention of the series of events that calls the KPMG

witnesses' credibility into question.  The following timeline makes the relevance of that issue

clear.

On March 13, 2012, the Commission filed its Complaint alleging, among other things,

that Defendants misled KPMG into agreeing with Defendants' OTTI judgment by supposedly

5

failing to disclose Thornburg's "precarious" financial condition, the extent of its margin calls, its payment plans for satisfying margin calls, and the various transactions Thornburg undertook to raise cash for margin calls before its 10-K filing on February 28, 2008.  *See* Compl. ¶¶ 4, 5, 49 - 90, 99, 105.  In paragraph 83 of the Complaint, the SEC alleged that "[h]ad the Defendants provided Thornburg's outside auditor with accurate and complete information . . . Thornburg's outside auditor would have disagreed with the company's OTTI conclusion…."  The Complaint contains no factual support for this allegation, and Defendants found no support for it in the SEC's voluminous investigative file, which the SEC purported to produce in its entirety between May 1 and 10, 2012.  Defendants accordingly issued interrogatories on October 10, 2012 requesting that the SEC provide the basis for paragraph 83 and identify the KPMG employees whom the SEC interviewed in connection with its investigation.  In response, the SEC identified Ms. Reinhart and Ms. Hall as the source of the allegation, and disclosed five unsworn interviews and proffer sessions with those witnesses in addition to their three days of transcribed investigative testimony.  (*See* Doc. 103); Ex. B (SEC's Amended Objections and Responses to Defendants' First Set of Interrogatories).

The problem Defendants soon identified with the SEC's interrogatory responses is that Ms. Reinhart's and Ms. Hall's SEC investigative testimony from 2009 was flatly inconsistent with paragraph 83 of the Complaint.  In that testimony, the SEC repeatedly asked Ms. Reinhart and Ms. Hall whether Thornburg's failure to meet margin calls within the time period specified in its repo agreements and other factors that supposedly were unknown to them would have affected their OTTI judgments.  *See* Hall SEC Tr., relevant portions attached as Ex. C, at 252:7-20; Reinhart SEC Tr., relevant portions attached as Ex. D, at 47:10-18; 137:11-14.  Ms. Reinhart

and Ms. Hall responded only that those factors would have been considered in KPMG's OTTI analysis. *See* Hall SEC Tr., Ex. C, 225:22 226:8 ("would be useful"); *id.* at 228:12-23 ("would be useful"); *id.* at 232:18-233:6 ("that would have been helpful information"); *id.* at 245:21-246:1 ("would be something we would want to know"). Reinhart SEC Tr., Ex. D, at 47:10-18 ("would have liked to have known"); 137:11-14 ("And it would have been something that you would have wanted to factor in and consider as part of reaching our conclusions about going concern and the temporary impairment issues."). Neither of them indicated that they would have disagreed with Defendants' OTTI judgment at the time based on those factors, as the Complaint alleges. (*See* Compl. ¶ 83.)[2]

When pressed about this disparity, counsel for the SEC acknowledged on November 13, 2012 that paragraph 83 of the Complaint was supported by the SEC's unsworn interviews with KPMG witnesses, but refused to produce the notes and memoranda documenting those interviews or the PCAOB testimony transcripts of KPMG witnesses on which the SEC relied in its investigation. (*See* Doc. 90, Defs. Mot. to Compel, Ex. G). On November 28, 2012, Defendants moved to compel the production of those materials.[3] Both the SEC and KPMG opposed that motion, along with all of Defendants' efforts to determine whether KPMG witnesses made statements in SEC interviews or the PCAOB investigation that are inconsistent

---

[2] In light of the answers given during Reinhart's investigative testimony in 2009, SEC attorney Lee Robinson stated that he could not determine whether the allegedly withheld information would have made a difference to KPMG. (*See* Doc. 109, Ex. H at 140:6-15 ("I'm trying to assess, whether this information that was not conveyed to KPMG was of any significance . . . I don't get a good sense of that from the answers.").

[3] That motion is fully briefed and pending. *See* Doc. 90 (Defendants' Motion to Compel Production of PCAOB Deposition Transcripts and Plaintiff's Notes and Memoranda of Interviews with Nonparty Witnesses), Doc. 98 (Plaintiff's Opposition to Defendants' Motion to Compel), Doc. 99 (Non-Party KPMG LLP's Opposition to Defendants' Motion to Compel), Doc. 109 (Defendants' Reply to Plaintiff's Opposition to Defendants' Motion to Compel), Doc. 110 (Defendants' Reply to KPMG's Opposition to Defendants' Motion to Compel).

with their statements in this case.[4]

The SEC conducted no less than five unsworn interviews or proffer sessions with Ms. Reinhart, Ms. Hall, or their attorneys in 2011 and 2012.  (*See* Mot., Ex. B) (Response to Interrogatory No. 32).  On May 15, 2012, having supplied the basis for paragraph 83 of the Complaint in these unsworn communications, Ms. Reinhart and Ms. Hall received "Investigation Closure Letters" from the SEC.  The letters assured Ms. Reinhart and Ms. Hall that the staff of the SEC's Enforcement Division would not recommend to the Commission that enforcement action be taken against them.  *See* Ex. A (Investigation Closure Letters).

Defendants issued their First Set of Requests for the Production of Documents on October 5, 2012, seeking, among other things, all communications with KPMG in connection with the SEC's investigation.[5]  On November 7, 2012, the SEC responded with a seemingly complete production of documents.  The production was accompanied by a privilege log identifying an unspecified number of supposedly privileged communications between the SEC and the PCAOB.  (*See* Doc 90, Ex. B).  The privilege log provided no dates for these communications, suggesting that dialogue between the SEC and PCAOB about KPMG is ongoing.  For reasons that are not clear, the SEC did not include its Investigation Closure Letters to Ms. Reinhart and Ms. Hall in the November 7, 2012 document production.

Defendants deposed Ms. Hall and Ms. Reinhart in December 2012.  In Ms. Hall's

---

[4] *See* Doc. 91 (KPMG's Motion to Quash Subpoena and for Protective Order), Doc. 98 (Plaintiff's Response in Opposition to Defendants' Motion to Compel); Hall Dep., relevant portions attached as Ex. E, at 246:25 - 247:6 (Q. "Did any of the topics that we have covered today come up in your testimony before the PCAOB?"  Salter: "I'm going to assert the objection we talked about earlier and instruct her not to answer."); Reinhart Dep., relevant portions attached as Ex. F, at 401:4 - 9 (Marks: "We've been told in advance that the witness will be instructed not to answer questions about PCAOB, potential liability of the PCAOB, proffers with the SEC.")

[5] Defendants specifically requested "All COMMUNICATIONS with KPMG in connection with the INQUIRY."  (*See* Mot., Ex. D)

deposition, she stated on the record for the first time that Defendants' alleged omissions likely

would have led KPMG to disagree with the company's OTTI conclusion.  *See* Hall Dep. Tr. Ex.

E, at 155:9 - 156:18 ("If we had known all the same information, I think it would have been hard

for us to agree with it [the company's OTTI conclusion].  So I think it's likely we would have

disagreed with it.").  Ms. Reinhart likewise attested for the first time on the record that it was

"possible" KPMG would have reached a different OTTI conclusion had the allegedly

undisclosed information been known to KPMG.  *See* Reinhart Dep. Tr. Ex. F, at 331:1-11;

356:25-360:8.  In addition, both Ms. Reinhart and Ms. Hall accused Defendants of making

misrepresentations to them based on the non-disclosure of that information.  *See* Reinhart Dep

Tr., at 331:1-11, 356:25-360:20; Hall Dep. Tr. at 319:17-320:7.  Ms. Reinhart and Ms. Hall gave

this testimony notwithstanding mounting evidence uncovered by Defendants in discovery that

KPMG had all the information it needed to make an informed OTTI judgment before the filing

of Thornburg's Form 10-K, and that the failure to appreciate the significance of that information,

if indeed there was one, was due to KPMG's own lack of competence (e.g., not understanding

what a margin call is, not reviewing a detailed margin call schedule that showed payment of the

margin calls over several days rather than in one day).  (*See* Doc. 105, Defs. Opp'n to KPMG's

Motion to Quash, at 16-18) (providing examples of KPMG negligence in auditing Thornburg's

margin call disclosures).

In addition, Ms. Hall testified in her deposition that the SEC had not made any

representations to her that she would not face sanctions.  *See* Hall Dep. Tr., Ex. E, at 173:18-21

(Q. "Have any promises or representations been made to you by the SEC that you won't face

sanctions or disciplinary action?  A. "No.").  That testimony was false.  The next day, the SEC

9

provided Defendants with copies of Ms. Hall's and Ms. Reinhart's Investigation Closure Letters, dated May 15, 2012.  The letters demonstrated that the SEC had in fact assured Ms. Hall and Ms. Reinhart that they need not fear the possibility of facing SEC sanctions.

In her deposition, Ms. Hall claimed to recall almost nothing about her unsworn interviews with the SEC and was instructed by her attorney not to answer questions about any aspect of the PCAOB investigation.  (*See* Hall Dep. Tr,. Ex. E, at 240:16-243:6; 244:8-246:3; 246:25-247:6). Ms. Reinhart unilaterally terminated her deposition before the questioning was complete, not allowing Ms. Starrett's counsel even an additional 15 minutes to ask her about the PCAOB investigation and SEC interviews.  (*See* Reinhart Dep. Tr. Ex. F, at 399:6-7; 401:4-8) ("Lastly, we have been unable to ask the witness any questions about the PCAOB.").

To address the persistent gaps in the SEC's document production, on December 19, 2012, Defendants' counsel issued a Second Set of Requests for the Production of Documents seeking all communications between the SEC and the PCAOB.[6]  (*See* Mot. Ex. C).  Defendants also served a Rule 30(b)(6) deposition notice on the SEC, attaching a list of topics concerning the SEC's communications with the PCAOB and KPMG about the events at issue and the SEC and PCAOB investigations.  (*See id.*, Ex. B).  On January 4, 2013, Defendants issued a Third Set of Requests for the Production of Documents, seeking all communications between the SEC and KPMG on the same topics, excluding the SEC's pre-Complaint investigation (which had been

---

[6] Defendants specifically requested "All COMMUNICATIONS between YOU and the PCAOB concerning the 2007-2008 SERVICES, the PCAOB INQUIRY, the SEC INQUIRY, the facts alleged in the COMPLAINT, or the SEC ENFORCEMENT ACTION."  (*See* Mot., Ex. C).

covered in the first set of requests).[7]  (*See id.*, Ex. D).  On January 15, 2013, the SEC filed the instant Motion for a Protective Order.

****

The chain of events described above demonstrates that the SEC has used unsworn interviews and proffers with the KPMG witnesses and their attorneys in an effort to obtain support for paragraph 83 of the Complaint, that Ms. Reinhart and Ms. Hall have changed their positions on the OTTI judgment at the heart of the case to help support the SEC's claims, and that the SEC and KPMG have consistently coordinated efforts to prevent Defendants from learning whether KPMG witnesses have made exculpatory statements in SEC interviews and PCAOB testimony or would otherwise be subject to impeachment.  On this record, Defendants have ample cause to believe that material evidence supporting their defenses is being withheld from them.

The Investigation Closure Letters provide an obvious incentive for Ms. Reinhart and Ms. Hall to "play ball" with the SEC.  The pendency of the PCAOB investigation gives Ms. Reinhart and Ms. Hall even greater incentive to support the SEC's claims by shifting blame to Defendants in the hope of avoiding PCAOB disciplinary action for their audit failures.  The SEC, which has general oversight authority over the PCAOB, is in a unique position to influence the PCAOB's findings in that respect.  *See* 15 U.S.C. § 7217(a) (giving the SEC "oversight and enforcement authority" over the PCAOB); *Free Enterprise Fund v. PCAOB,* 130 S.Ct. at 3145.  Courts generally consider evidence undermining the credibility of important witnesses in this manner to

---

[7] Defendants specifically requested "All COMMUNICATIONS between YOU and KPMG CONCERNING the 2007-2008 SERVICES, the PCAOB INQUIRY, the facts alleged in the COMPLAINT, or the SEC ENFORCEMENT ACTION."  (*See* Mot., Ex. D).

be probative and discoverable.  *See, e.g., Smith v. Sec'y of New Mexico Dept. of Corrections*, 50 F.3d 801, 825 (10th Cir. 1995) ("[T]he truthfulness and reliability of a given witness may well be determinative of guilt or innocence, and it is upon such subtle factors as the possible interest of the witness in testifying falsely that a defendant's life or liberty may depend.") (citing *Napue v. Illinois*, 360 U.S. 264, 269 (1959)); *Duck v. Warren*, 160 F.R.D. 80, 83 (E.D. Va. 1995) ("The impeachment value at trial of inconsistencies in defendant's statements is unquestionably great.").

Contrary to the SEC's arguments, a quid pro quo understanding between the SEC and the KPMG witnesses is not necessary to establish the relevance of the discovery Defendants seek. Rather, the SEC can seek to take advantage of the KPMG witnesses' obvious desire to shift blame for Thornburg's restatement away from themselves and thereby influence their testimony. That might be accomplished in any number of ways, none of which would amount to a quid pro quo.[8]  The SEC's offer to respond to an interrogatory about whether "any promise, inducement, incentive, or forbearance had been provided to KPMG witnesses by the Commission or the PCAOB" (Mot. at 4) is therefore not particularly meaningful.  Given the importance of this issue to the credibility of the KPMG witnesses, Defendants' inquiry into the SEC's dealings with the KPMG witnesses and the PCAOB is plainly relevant and should be permitted to proceed.

### C.    Deposing SEC Witnesses Under These Circumstances is Appropriate.

---

[8] For example, did the SEC suggest or imply to the KPMG witnesses or their counsel that it intended to pursue enforcement action against Defendants?  Or that the SEC believed Defendants intentionally deceived the KPMG witnesses?  Or that the allegedly undisclosed information was, in the SEC's view, obviously significant enough to change KPMG's OTTI conclusion?  Or that the SEC intended to coordinate its findings (favoring KPMG) with the PCAOB?  And if these communications occurred through KPMG's counsel, they would be shielded from discovery by the attorney-client privilege – which in turn underscores the importance of a 30(b)(6) deposition about the SECs communications with KPMG's counsel.

The SEC's insistence that a Rule 30(b)(6) deposition would be unheard of in these circumstances does not square with the law.  Rule 30(b)(6) expressly authorizes Defendants to take the deposition of a governmental agency.  *See* Fed. R. Civ. 30(b)(6) ("In its notice or subpoena, a party may name as the deponent … a governmental agency…."); *see also United States v. Health Alliance of Greater Cincinnati*, No. 1:03-cv-167, 2009 WL 5227661, at *2 (S.D. Ohio Nov. 20, 2009) (denying government's motion for a protective order).  Once a Rule 30(b)(6) deposition is noticed, the organization being deposed is required to "designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf; and it may set out the matters on which each person designated will testify."  Fed. R. Civ. P. 30(b)(6).

Recent decisions on similar efforts by the SEC to avoid discovery have made it clear that the SEC is subject to discovery, such as a Rule 30(b)(6) deposition, to the same extent as any other organization.  "Like any ordinary litigant, the Government must abide by the Federal Rules of Civil Procedure."  *SEC v. Collins & Aikman*, 256 F.R.D. 403, 414 (S.D.N.Y. 2009) (SEC civil enforcement action).[9]  "It is not entitled to special consideration concerning the scope of discovery, especially when it voluntarily initiates an action."  *Collins & Aikman,* 256 F.R.D. at 414 (emphasis added).

In an attempt to shift the burden of justifying this deposition to Defendants, the SEC mischaracterizes the issue before the Court as an improper attempt by Defendants to depose

---

[9] *See also SEC v. Jensen*, Case No. CV 11-05316 (C.D. Cal. Oct. 12, 2012) (Doc. 94, 102) (holding that defendant was entitled to depose SEC pursuant to Rule 30(b)(6)); *Merkin*, 2012 WL 2504003, at *1-2 (denying SEC's motion to stay Rule 30(b)(6) deposition where information sought was relevant and discovery deadline was rapidly approaching); *Kramer*, 778 F. Supp. 2d at 1328 (holding that SEC is subject to Rule 30(b)(6) deposition where defendant "sought to discover only the facts underlying the claim against him and not the mental impressions of Commission counsel"); *Francis v. New York*, 262 F.R.D. 280, 282 (S.D.N.Y. 2009).

opposing counsel.  *See* Mot. at 7.  This argument is a red herring.  Defendants have not sought, and the SEC is not required to designate as its 30(b)(6) representative, a witness from the SEC's trial team.  If the SEC chooses, it can designate one attorney, multiple attorneys, or no attorneys at all to be its designated representative or representatives for this deposition.  It is the SEC's "prerogative to designate which person(s) will testify."  *FTC v. Cyberspy Software, LLC*, No. 6:08-cv-1872, 2009 WL 8708856 at *3 (M.D. Fla May 26, 2009); *see also, Kramer*, 778 F. Supp. 2d at 1328 ("[T]he Commission could designate any person (i.e., someone other than counsel) to depose in response to [Defendant's] request.").  The SEC's reliance on the three-part test in *Shelton v. Am. Motors Corp.*, 805 F. 2d 1323, 1330 (8th Cir. 1986), which applies to attempts to depose "opposing counsel," is accordingly misplaced.  (*See* Mot. at 10-14).[10]

The possibility that the SEC might designate one or more of its attorneys who helped conduct the investigation – out of convenience or for strategic reasons – is no basis to quash the deposition.  Courts routinely deny motions to quash where the party being deposed objects that "the depositions would require an attorney to testify or would necessarily cause an attorney to prepare the designee(s)," because "the argument that a lawyer would be involved in the preparation process is simply a truism which, if sufficient to preclude 30(b)(6) depositions,

---

[10] Even if the *Shelton* test applied here, its requirements are easily met.  **(1) No Other Means Exist to Obtain the Information:**  Ms. Hall recalled almost nothing of her SEC unsworn interviews.  Defendants' counsel was blocked from questioning Ms. Reinhart on that issue.  Both witnesses were instructed not to answer any questions relating to the PCAOB investigation.  *See supra* at Part IIB.  In addition, the KPMG witnesses obviously would know nothing about the SEC's separate dealings with their lawyers or the PCAOB.  **(2)  The Information Sought is Relevant and Non-Privileged:**  The information sought bears on the credibility of Ms. Reinhart and Ms. Hall, a plainly relevant issue.  As explained further below (*infra* Part II.D. & II.E.), none of that information should be considered privileged.  **(3) The Information Sought is Crucial:**  Given that Ms. Reinhart and Ms. Hall are the SEC's chief witnesses against Defendants, the crucial nature of the impeachment evidence that Defendants seek to develop cannot be reasonably disputed.  That Defendants already have some evidence undermining the KPMG witnesses' credibility (*See* Mot. at 13) does not make the evidence being withheld from them any less crucial.

14

would eliminate that discovery tool." *Merkin*, 283 F.R.D. at 696.[11]

The SEC is a government agency that is largely run by lawyers, and its law enforcement arm is staffed by investigators who are predominantly lawyers (unlike, for example, the Department of Justice, whose investigators include many more non-lawyers).  To exempt the SEC from appearing for a Rule 30(b)(6) deposition on the basis that a lawyer might be designated to testify would eviscerate the rule's provision that a party may depose a governmental agency, particularly an agency staffed like the SEC.  On an issue as important as the SEC's influence on the testimony of key witnesses, that would be patently unfair to Defendants.

### D.   The SEC's Work Product and Deliberative Process Privilege Claims Are Without Merit.

#### 1.   Work product protection has either been waived or is overcome by Defendants' compelling need.

The SEC contends that Defendants' Rule 30(b)(6) deposition of the SEC implicates the attorney work product doctrine insofar as it would involve the disclosure of SEC attorneys' and investigators' recollections or notes of interviews with KPMG witnesses and oral

---

[11] *See also Radian Asset Assurance, Inc. v. College of the Christian Bros. of N.M.*, 273 F.R.D. 689, 692 (D.N.M. 2011) ("While counsel will have to carefully prepare the 30(b)(6) representative, counsel must always do so."); *Exxon Research and Engineering Co. v. United States*, 44 Fed. Cl. 597, 602-03 (Fed. Cl. 1999) (distinguishing, in the corporate context, the difference between in-house and outside counsel, noting that in-house counsel "is in the same position as any other corporate representative that has received legal advice from an attorney" and the fact of the in-house attorney's law degree "does not seem to place him (or other in-house patent attorneys) into a category of people who absolutely cannot be deposed").

communications with KPMG and the PCAOB.[12]  The SEC argues that such a deposition would result in disclosure of "the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation."  Mot. at 9.

The possibility that the SEC might need to rely upon its lawyers' memories or notes of communications with KPMG witnesses or the PCAOB in order to prepare a representative to testify (*see* Mot. at 8) is no basis to exempt the SEC from the Rule 30(b)(6) procedure.  It is well established that facts, even when committed to memory or documented by a lawyer, are not protected by the work product doctrine.  Epstein, THE ATTORNEY CLIENT PRIVILEGE AND THE WORK PRODUCT DOCTRINE, at 802-03 (5th ed. 2007).

In all events, the salient issue here is not the mental impressions of SEC lawyers in developing their legal theories against Defendants, but rather whether the actions of SEC lawyers had the effect of unduly influencing the testimony of KPMG witnesses.  "Generally speaking, when an attorney's activities are instrumental in proving an issue in dispute, discovery of even opinion work product is accorded."  *Id.* at 577; *see also, Charlotte Motor Speedway, Inc. v. Int'l Ins. Co.*, 125 F.R.D. 127, 130-31 (there is a basis for an exception to Rule 26(b)(3)'s work product protection where "the activities . . . of Plaintiff's counsel in the . . . underlying action" are directly in issue).

For this reason, the SEC's contention that its lawyers' interactions with the KPMG witnesses and the PCAOB should be shielded because "Defendants contend that their own

---

[12] The SEC contends that its notes or memoranda of its interviews with KPMG witnesses are protected work product.  Defendants have addressed the applicability of the work production protection to the SEC's notes and memoranda of those interviews in separate briefing filed with the Court and respectfully refers the Court to those briefs for a discussion of why disclosure of those notes and memoranda is warranted.  (*See* Doc. 90, Mot. to Compel, at 8-19).  This brief focuses on the SEC's argument that the work product doctrine should preclude Defendants from deposing the SEC's 30(b)(6) representative regarding the KPMG witness interviews.

counsel may not be questioned about their communications with third parties" (Mot. at 9) is beside the point.  The KPMG witnesses' change in testimony after extensive unsworn communications with the SEC and being assured by the SEC that they would not be prosecuted has put the activities of SEC lawyers directly at issue.  That is not the case with respect to Defendants' interactions with third parties.

To the extent the work product doctrine can be said to apply at all, its protection has also been waived by the SEC's own actions.  *See In re Qwest Commc'ns Int'l, Inc.*, 450 F.3d 1179, 1187 (10th Cir. 2006).  With respect to communications between the SEC and KPMG witnesses (whether in the form of unsworn interviews or otherwise), the SEC has waived any applicable work product protection by affirmatively placing the contents of those communications at issue. (*See* Doc. 90, Mot. to Compel at 8-11) (citing cases).  The SEC did so by including allegations in its Complaint and advancing arguments before the Court based on those very communications. *Id.*

Moreover, compelling circumstances exist that overcome whatever work product claims the SEC may have.[13]  It is now clear that Defendants cannot obtain sufficient information about the SEC interviews and proffers from the KPMG witnesses, either because of their faulty memories or their refusal to cooperate, or because they occurred through KPMG's counsel.  *See supra* at Part IIB.  The SEC's memorializations of all of its communications with the KPMG witnesses and their counsel are the only reasonably available source for that information.  *See,*

---

[13] Although neither the Supreme Court nor the Tenth Circuit has promulgated a test to determine when a claim of opinion work product is overcome, other courts have recognized that opinion work product "may be discovered under compelling circumstances."  *Frontier Refining, Inc. v. Gorman-Rupp Co., Inc.*, 136 F.3d 695, 704 n.12 (10th Cir. 1998); *see also Upjohn Co. v. United States*, 449 U.S. 383 (1981) (observing that "[opinion] work product cannot be disclosed simply on a showing of substantial need and inability to obtain the equivalent without undue hardship" and that "a far stronger showing of necessity and unavailability by other means . . . would be necessary to compel disclosure.").

*e.g., Xerox Corp. v. IBM Corp.*, 64 F.R.D. 367, 381-82 (S.D.N.Y. 1974) ("A party should not be allowed to conceal critical, non-privileged, discoverable information, which is uniquely within the knowledge of the party and which is not obtainable from any other source, simply by imparting the information to its attorney and then attempting to hide behind the work product doctrine after the party fails to remember the information."); *cf.* 8 Wright, Miller, Kane, & Marcus, Federal Practice & Procedure § 2025 (3d ed.) ("No one doubts that production should be ordered if the witness has a faulty memory and no longer remembers details of the event."). Moreover, in depositions, the KPMG witnesses' counsel repeatedly instructed the KPMG witnesses not to answer questions concerning the PCAOB investigation, even with respect to their own understanding of whether they face potential disciplinary action by the PCAOB. (*See* Doc. 105 at 17-18). Defendants have been completely unable to obtain that information from KPMG witnesses.

With respect to communications between the SEC and the KPMG witnesses' lawyers, and communications between the SEC and the PCAOB, deposing an SEC representative and requiring production of written communications are likewise the only discovery methods reasonably available to Defendants. The KPMG witnesses themselves may not have been privy to those communications, or their knowledge of them would have been derived from a privileged conversation with their own counsel. And the SEC's suggestion that Defendants' depose the KPMG witnesses' and PCAOB's lawyers (*see* Mot. at 11) would impose the cost and inconvenience of this discovery on third parties rather than on the plaintiff that initiated this action – an unfair result. While the SEC has produced certain email communications with the KPMG witnesses' counsel, it has not produced all such communications and has produced none

18

with the PCAOB.  In addition, a deposition of the SEC's 30(b)(6) representative is the only

means of exploring the interviews and proffers that occurred orally.  These types of written and

oral communications are likely to contain invaluable impeachment material, which courts have

recognized as sufficient to demonstrate compelling need.  *See, e.g.*, *FEC v. Christian Coalition*,

178 F.R.D. 61, 85 (E.D. Va. 1998) ("Courts have held that a party can establish substantial need

for a document by showing that the document is necessary to impeachment [of] a witness."); *see*

*also, Duck v. Warren,* 160 F.R.D. 80, 83 (E.D. Va. 1995) ("[Plaintiff] is attempting to discover

invaluable impeachment information for which he has shown the 'substantial need' required to

overcome the work product immunity.")

     The SEC has not even attempted to demonstrate that work-product protection applies to

documents that are responsive to Defendants' Second and Third Sets of Requests for Production

of Documents, but that were not covered by Defendants' First Set of Requests for the Production

of Documents.  In disregard of the requirement to provide a privilege log, the SEC simply

asserted a blanket work product claim without providing a log.[14]  *See Murphy v. Gorman,* 271

F.R.D. 296, 310 (D.N.M. 2010) ("The party asserting the work-product protection has the burden

of demonstrating that it applies and that it has not been waived."); *Clayton v. Vanguard Car*

*Rental U.S.A., Inc.*, No. 09-0188, 2009 WL 5851088, at *3 (D.N.M. Dec. 16, 2009) (observing

that Fed. R. Civ. P. 26(b)(5) requires that "a party who withholds information on the grounds that

---

[14] Although the SEC produced a privilege log identifying documents responsive to Defendants' First Set of Requests for the Production of Documents, the SEC has not updated that log to account for additional documents that are responsive to Defendants' Second and Third Sets of Requests for the Production of Documents. Defendants' second request for production seeks communications between the SEC and the PCAOB concerning KPMG's 2007-2008 services to Thornburg and the PCAOB's inquiry into those services, the SEC's investigation into Thornburg, the facts alleged in the Complaint, or the above-captioned lawsuit.  Defendants' third request for production seeks all communications between the SEC and KPMG concerning KPMG's 2007-2008 services to Thornburg and the PCAOB's inquiry into those services, the facts alleged in the Complaint, or the above-captioned lawsuit.

it is privileged or subject to protection as trial-preparation material must identify, in some detail, which information is privileged and describe it in a way that allows the opposing party to ascertain the applicability of the privilege").  As a result, the SEC has either failed to demonstrate the applicability of the work product doctrine or waived work product protection with respect to those materials.  *See Clayton*, 2009 WL 5851088, at *4 ("A blanket assertion of the work-product doctrine is insufficient to meet the burden of demonstrating that the doctrine applies and has not been waived."); *Anaya v. CBS Broadcasting*, *Inc.*, 251 F.R.D. 645, 651 (D.N.M. 2007) ("[F]ailure to produce a privilege log or production of an inadequate privilege log may be deemed waiver of the privilege.").

## 2.  The deliberative process privilege does not apply.

The Court should also reject the SEC's unsupported invocation of the deliberate process privilege.  The SEC argues that examining SEC investigators about their conversations with the PCAOB regarding the investigations of Thornburg and KPMG would infringe upon the deliberative process privilege.  *See* Mot. at 15.  This argument fails, however, because communications with third parties such as the PCAOB are, by definition, not covered by the deliberative process privilege.  *See, e.g.*, *SEC v. Kovzan,* No. 11-2017, 2012 WL 4819011, at *6 (D. Kan. Oct. 10, 2012) (ruling that requests for "documents relating to communications with third parties . . . would not fall within" the deliberative process privilege).

The SEC's deliberative process privilege claim also fails because the SEC has not followed the required procedure for invoking the privilege.  To invoke the privilege, "(1) the department head with control over the matter must make a formal claim of privilege, after personal consideration of the matter; (2) the responsible official must demonstrate, typically by

affidavit, precise and certain reasons for preserving confidentiality of the documents in question; and (3) the official must specifically identify and describe the documents." *SEC v. Sentinel Mgmt. Grp., Inc.,* No. 07-c-4684, 2010 WL 4977220, at *5 (N.D. Ill. Dec. 2, 2010).  The SEC has met none of these requirements.

The SEC must also show that the protected information is both "predecisional" and "deliberative." *SEC v. Nacchio*, 704 F. Supp. 2d 1099, 1110 (D. Colo. 2010) (quoting *Trentadue v. Integrity Committee,* 501 F.3d 1215, 1227 (10th Cir. 2007)).  The SEC can make no such showing.  "A predecisional document is a memorandum prepared in order to assist an agency decisionmaker in arriving at his decision." *Nacchio,* 704 F. Supp. 2d at 1110 (internal citation omitted).  "[T]o carry its burden, the agency must describe not only the contents of the document but also enough about its context, *viz.* the agency's decisionmaking process, to establish that it is a pre-decisional part thereof." *Safecard Servs., Inc. v. SEC*, 926 F.2d 1197, 1204 (D.D.C. 1991).  The SEC claims, without making any showing regarding the contents of the communications at issue, that its discussions with the PCAOB "about investigation strategy and charging decisions" are privileged.  (*See* Mot. at 15-16).  Not only is this blanket assertion insufficient on its face, but its basic premise contravenes the rule.  Once an agency makes a final decision about whether to initiate enforcement action, the information that led to the final decision loses its pre-decisional status and is no longer privileged.  *See Safecard,* 926 F.2d at 1203-04 (noting that "any portion of the minutes recounting a Commissioner's explanation of why he or she voted in a particular way could not be considered pre-decisional," nor would "any element of a Commissioner's or a staff member's prior oral or written discussion of the matter" that formed the basis of a final decision).  The SEC's discussions with the PCAOB about factual

21

conclusions and charging decisions that led to the SEC's decision to file the Complaint in this action, and not to pursue enforcement action against KPMG, have lost any possible predecisional status.

The SEC asserts that the "deliberative process privilege can only be overcome by a showing of sufficient need[,]" and that Defendants can show no such need.  (*See* Mot. at 15-16). For the reasons explained above (*see supra* Part II.B), however, Defendants have in fact shown compelling need for the supposedly privileged information, which is likely to undermine the credibility of the SEC's chief witnesses against them.  In addition, the SEC long ago waived whatever deliberative process privilege may have once applied.[15]  *Wise,* 139 F.R.D. at 171-72. Waiver occurs where:

> (1) assertion of the privilege is the result of some affirmative act, such as filing suit, by the asserting party; (2) through the affirmative action, the asserting party has placed the protected information at issue by making it relevant to the case; and, (3) the application of the privilege would deny the opposing party access to information vital to its defense.

*Id*.  Here, the test is satisfied.  First*,* the SEC filed this action and asserts a privilege claim in response to Defendants' attempt to obtain discovery.  Second*,* the SEC alleges that Defendants' deceived KPMG during the 2007 audit, *see, e.g.,* Compl. ¶ 57, a claim that makes communications with the PCAOB in connection with the investigations of Thornburg and KPMG directly relevant.  Third*,* communications between the SEC and PCAOB about the Thornburg and KPMG investigations are vital to Defendants' ability to impeach KPMG witnesses, as described above.  *See supra* at Part II.B.

---

[15] Courts have followed three different approaches when ruling on the waiver of privileges:  (1) a three-prong test; (2) a balancing approach, which allows the deliberative process privilege to be overcome by a sufficient showing of need; and (3) an automatic waiver approach.  *See FDIC v. Wise,* 139 F.R.D. 168, 170 (D. Colo. Apr. 5, 1991).

Even if the deliberative process privilege were deemed applicable here, the SEC's attempt to preemptively designate all information sought in the deposition as privileged is premature.  Instead, the SEC "may protect against the disclosure of work product or privileged information in 30(b)(6) depositions by interposing appropriate objections and giving instructions on a question-by-question basis."  *Merkin*, 283 F.R.D. at 698; *see also LifeCare Mgmt. Servs.*, 2009 WL 772834, at *2 (agency cannot seek protection from the 30(b)(6) deposition by unilaterally declaring all information known to the agency would invade the deliberative process privilege and should instead "object to actual questions which it believes invade any applicable privilege during the deposition").

### E.      The PCAOB Privilege is Not Applicable.

The SEC argues that its communications with the PCAOB are privileged pursuant to the statutory PCAOB Privilege.  The provision cited by the SEC provides that "all documents and information prepared or received by or specifically for" the PCAOB are privileged.  15 U.S.C. § 7215(b)(5)(A) (the "PCAOB Privilege").  Such information loses its privileged status, however, if "presented in connection with a public proceeding."  *Id.*  As explained in Defendants' extensive prior briefing on this issue, the materials provided to the SEC by the PCAOB do not qualify for the PCAOB Privilege because they were "presented in connection with a public proceeding" when the SEC relied upon it in drafting the Complaint.  *See* Doc. 90 at 19-21; Doc. 105 at 9-12; Doc. 109 at 9-11.[16]  Moreover, any invocation of the PCAOB privilege was waived when the SEC voluntarily produced eight questionnaires from the PCAOB investigation,

---

[16] During a November 9, 2012 hearing, the court largely agreed, finding that any PCAOB material the SEC used or relied upon in drafting the complaint had to be produced. (*See* Doc, Ex. A at 22-24.)

introduced two of the questionnaires as exhibits during the investigative testimony of Reinhart and Hall, and failed to object when Defendants introduced two of the questionnaires as exhibits in the depositions of Tara Baucom and Matthew Plummer.  *See* Doc. 90 at 23-24; Doc. 105 at 12-16; Doc. 109 at 11-12.  As a result, the PCAOB Privilege cannot be asserted to preclude discovery of communications between the SEC and PCAOB concerning KPMG.

## III.    CONCLUSION

For all the foregoing reasons, Defendants respectfully request that the Court deny Plaintiff Securities and Exchange Commission's Motion for a Protective Order to Quash Defendants' Notice of 30(b)(6) Deposition and Second and Third Requests for the Production of Documents.

Respectfully submitted,

RODEY, DICKASON, SLOAN, AKIN & ROBB, P.A.

By:    /s/ *Melanie B. Stambaugh*
          Bruce Hall
          Andrew G. Schultz
          Melanie B. Stambaugh
P. O. Box 1888
Albuquerque, NM 87103
Telephone:        (505) 765-5900
Facsimile:        (505) 768-7395
E-mail:           bhall@rodey.com
                  aschultz@rodey.com
                  mstambaugh@rodey.com

*Attorneys for Defendants Larry Goldstone, Clarence G. Simmons, III, and Jane E. Starrett*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on January 23, 2013, the foregoing *Response in Opposition to Plaintiff Securities and Exchange Commission's Motion for Protective Order to Quash Defendants' Notice of 30(b)(6) Deposition and Second and Third Requests for the Production of Documents* was electronically filed with the Clerk of Court using the CM/ECF system that that will send notification of such filing to all counsel of record.

| | |
|---|---|
| Michael H. Hoses<br>Assistant United States Attorney<br>P.O. Box 607<br>Albuquerque, NM 87103<br>Michael.hoses@usdoj.gov | Stephen C. McKenna<br>Gregory Kasper<br>Dugan Bliss<br>Securities & Exchange Commission<br>1801 California Street, Suit 1500<br>Denver, CO  80202<br>mckennas@sec.gov<br>kasperg@sec.gov<br>blissd@sec.gov |
| WILMER CUTLER PICKERING<br>   HALE & DORR LLP<br>      Randall R. Lee<br>      Jessica Freiheit Kurzban<br>      Peiyin Patty Li<br>350 South Grand Ave., Suite 2100<br>Los Angeles, CA  90071<br>Telephone:    (213) 443-5300<br>Facsimile:    (213) 443-5400<br>randall.lee@wilmerhale.com<br>jessica.kurzban@wilmerhale.com<br>patty.li@wilmerhale.com | WILMER CUTLER PICKERING<br>   HALE & DORR LLP<br>      Chris Johnstone<br>      Alanna G. Buchanan<br>950 Page Mill Road<br>Palo Alto, California 94304<br>Telephone:    (650) 858-6000<br>Facsimile:    (650) 858-6100<br>alanna.buchanan@wilmerhale.com<br>joel.fleming@wilmerhale.com |
| WILMER CUTLER PICKERING<br>   HALE & DORR LLP<br>      John A. Valentine<br>      April N. Williams<br>1875 Pennsylvania Avenue, NW<br>Washington, DC  20006<br>Telephone:    (202) 663-6000<br>Facsimile:    (202) 663-6363<br>john.valentine@wilmerhale.com | MILBANK, TWEED, HADLEY &<br>   MCCLOY LLP<br>      Thomas A. Arena<br>1 Chase Manhattan Plaza<br>New York, NY  10005<br>Telephone:    (212) 530-5000<br>Facsimile:    (212) 530-5219<br>tarena@milbank.com |

MILBANK, TWEED, HADLEY &
   MCCLOY LLP
  Jerry L. Marks
  Robert J. Liubicic
  Alisa Schlesinger
  Elena Kilberg
  Paul M. Torres
601 S. Figueroa Street, 30th Floor
Los Angeles, CA  90017
Telephone: (213) 892-4000
Facsimile: (213) 629-5063
jmarks@milbank.com
rliubicic@milbank.com
aschlesinger@milbank.com
ekilberg@milbank.com
ptorres@milbank.com


RODEY, DICKASON, SLOAN, AKIN & ROBB, P.A.

By  */s/ Melanie B. Stambaugh*
  Melanie B. Stambaugh