**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

SECURITIES AND EXCHANGE COMMISSION,

      Plaintiff,

    vs.                                          CIVIL NO. 12-257 (JB-LFG )

LARRY A. GOLDSTONE,
CLARENCE G. SIMMONS, III, and
JANE E. STARRETT,

      Defendants.

**PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S
REPLY IN SUPPORT OF ITS MOTION FOR A PROTECTIVE ORDER TO QUASH
DEFENDANTS' NOTICE OF 30(b)(6) DEPOSITION AND SECOND AND THIRD
REQUESTS FOR THE PRODUCTION OF DOCUMENTS**

## I.     INTRODUCTION

Defendants offer various speculations about SEC collusion with or threats against KPMG witnesses Cynthia Reinhart and Jessica Hall in their Response in Opposition to Plaintiff Securities and Exchange Commission's Motion for a Protective Order to Quash Defendant's Notice of 30(b)(6) Deposition and Second and Third Request for the Production of Documents ("Defendants' Response").  What they do not offer is any sound basis for their speculations. Instead, they seek to invade the SEC's work product by noticing a 30(b)(6) deposition seeking to explore all of the SEC's counsel's communications with KPMG and the PCAOB in this matter, in the false hope of generating some evidence.  They acknowledge that questioning counsel about communications with third-parties involves work product and take the position that their own lawyers may not be so questioned.  Nonetheless, they insist that the SEC's lawyers must answer their questions about the SEC's investigation and litigation of this matter.  In particular, they raise a question about Ms. Reinhart's and Ms. Hall's testimony, but incredibly they never asked Ms. Reinhart or Ms. Hall the question at their depositions, perhaps because the answer is obvious and unhelpful.

Defendants fabricate a fishing expedition in an attempt to support of their speculation that the SEC and/or PCAOB must have threatened or bribed Ms. Reinhart and Ms. Hall.  Defendants claim they must be able to take deposition testimony from the SEC because Ms. Reinhart and Ms. Hall have purportedly had a "dramatic change of position" from their 2009 investigative testimony on whether information withheld from KPMG would likely have changed their opinion on the Defendants' other than temporary impairment ("OTTI") analysis.  Defendants' Response at 1-2.  They further claim that the SEC's motion would prevent them from learning

about this purported dramatic change.  *Id*. at 2.  But the SEC's motion would do no such thing.

Defendants were free to ask Ms. Reinhart and Ms. Hall why their positions supposedly changed

at their depositions.  Stunningly, in light of the extraordinary relief they seek, Defendants

declined to ask any such questions during those depositions, and instead seek to subject opposing

counsel to the harassing practice of being deposed  – directly or through surrogates – by their

adversaries.  *See* Defendants' Response at 10, noting by omission that Defendants never asked

Ms. Hall why her testimony on this issue supposedly changed and acknowledging that despite

questioning Ms. Reinhart for a full seven hours, they failed to ask about her SEC interviews.  If

this issue were so important to Defendants, they could have and should have asked the witnesses

why their testimony purportedly changed.

Defendants fail to mention a crucial piece of evidence in this matter – the Citibank

reservation of rights letter that was withheld from KPMG during both the 2007 audit and

restatement – that was not discovered by the SEC or shown to Ms. Reinhart or Ms. Hall until

after their 2009 testimony.  Declaration of Stephen C. McKenna ("McKenna Decl.") at ¶ 3, filed

herewith.  When questioned about this letter in her 2012 deposition, Ms. Reinhart testified that

the letter expressly told the company that Citibank "has a right to declare an event of default"

and "would have had an impact on the going concern analysis conducted by KPMG."   Exhibit B

to McKenna Decl. at 333:11-334:21.[1]  Moreover, knowing that the letter was withheld from

KPMG "raised doubts in [Ms. Reinhart's] mind about the – management's ethics and integrity

with respect to its dealings with [KPMG] as the external auditors." Exhibit A to McKenna Decl.

at 333:24-335:7.

The Citibank letter was of crucial importance to Ms. Hall as well.  She testified that the letter was "an indicator that the company is not in a position where it has the ability to meet its obligations, which raises questions as to whether they have the ability to hold their assets, which would be a significant factor for the OTTI analysis."  Exhibit B to McKenna Decl. at 314:4-16. Ms. Hall further testified that it would be "inconsistent to say that Thornburg had the intent and ability to hold its purchased ARM assets in late 2008, given the breach declared in the Citi reservation of rights letter."  *Id*. at 315:3-10.  Thus, the premise for Defendants' claim that SEC depositions are "central to the credibility of Cynthia Reinhart and Jennifer Hall" (Defendants' Response, Dkt. 126, at 1), and their unfounded theories of threats and bribes, is wholly misplaced.  The newly discovery Citibank letter explains the testimony about which Defendants complain, and in any case, they failed to question Ms. Reinhart and Ms. Hall about that testimony.

Defendants put forth four arguments for why a 30(b)(6) deposition into SEC attorney communications is crucial; none is persuasive.

First, Ms. Reinhart's and Ms. Hall's purported "change in testimony on a critical issue" (Defendants' Response at 2) does not support an invasion into SEC work product and deliberative processes, especially where Ms. Reinhart and Ms. Hall are available to testify, have testified, and additional evidence of Defendants' withholding of crucial information supports their later testimony.  The investigative and deposition testimony of Ms. Reinhart and Ms. Hall is not inconsistent; their deposition testimony reflects the additional evidence of the withheld Citibank letter.

---

[1]     All exhibits cited to herein are exhibits to the McKenna Decl.

Second, Defendants *are* seeking to depose opposing counsel.  Regardless of whom the SEC designates to provide 30(b)(6) testimony, the topics noticed – communications with KPMG and the PCAOB – involve communications engaged in by the SEC attorneys that investigated and are litigating this matter and responsive information must necessarily come from them, even if it does so through a designated surrogate.

Third, contrary to Defendants' argument, the SEC's influence on the testimony of KPMG witnesses is not directly at issue, and Defendants' unfounded speculations of SEC misconduct (*e.g.* "the SEC is uniquely situated to influence the outcome of the PCAOB investigation" (Defendants' Response at 2)) are completely unfounded.   This case is about whether Defendants violated the federal securities laws by improperly misstating income.  Defendants' conjectures of undue influence and threats are a tangential side show at best.  Also contrary to Defendants' claim, the deliberate process privilege *does* apply to inter-agency discussions, and is applicable here.

Fourth, as argued at length in the telephonic hearing before this Court on November 9, 2012, and in the multitude of papers filed regarding Defendants' Motion to Compel, there has been no waiver with respect to PCAOB materials because they have *not* been presented in a public proceeding as this Court previously described such presentation.  And the inadvertent disclosure of eight PCAOB background questionnaires cannot affect a subject matter waiver as to all PCAOB materials and information.

## II.     ARGUMENT

**A.      Ms. Reinhart's and Ms. Hall's Testimony Has Not Been Inconsistent, But Merely Reflects New Evidence Presented to Them; There Is No Indication of Collusion.**

Defendants' papers are replete with unfounded speculation of improper influence by the SEC, or the PCAOB through the SEC, on KPMG witnesses, or that the SEC is being untruthful in its sworn testimony that it did not rely on PCAOB materials in preparing its complaint.  For example:

- "in order to investigate these issues and the appearance of *substantial improper collusion* between the Commission and KPMG witnesses further, Defendants will be scheduling a deposition with you pursuant to Rule 30(b)(6)."

Dkt. 121-2 (emphasis added).

- "*If* the SEC relied upon information developed during the PCAOB investigation, these SEC-KPMG communications are likely to show it.  They *may also reveal* whether the SEC has attempted to intervene on KPMG's behalf with the PCAOB or conversely whether the SEC has sought to use the *threat* of PCAOB sanctions to influence the testimony of KPMG witnesses."

Dkt 105 at 19 (emphasis added).

- "the materials provided to the SEC by the PCAOB do not qualify for the PCAOB Privilege because they were 'presented in a public proceeding' when the SEC relied upon it [sic] in drafting the Complaint."

Dkt. 126 at 23.

- Communications *could reveal* "promises or inducements by the PCAOB to KPMG witnesses relating to future sanctions, or *threats* by the PCAOB to impose sanctions."

Dkt 105 at 18 (emphasis added).

- "Moreover, as the government agency with chief oversight responsibility for the PCAOB, the SEC is uniquely situated to influence the outcome of the PCAOB investigation."

Dkt. 126 at 2.  Yet Defendants provide no evidence to support these allegations.

Defendants' purported support for their speculation of threats and improper influence by the SEC against KPMG witnesses are mere conjecture.  Defendants claim that Ms. Reinhart's and Ms. Hall's testimony has changed dramatically; thus they must have been threatened or improperly influenced.  To the contrary, Ms. Reinhart and Ms. Hall originally testified in 2009 - while unaware of the Citibank reservation of rights letter - that certain information they were not told in connection with their Thornburg audit would have been "useful," "something we would like to know," and "something that you would have wanted to factor in and consider as part of reaching our conclusions about going concern and temporary impairment issues."  Defendants' Response, at 7.  This is not inconsistent with their later testimony that the withheld information likely would have changed their opinion; especially in view of their awareness of the Citibank letter at the time of the later testimony.  Far from evidencing threats or collusion, Ms. Reinhart's and Ms. Hall's deposition testimony simply reflects their learning of the additional information that the Defendants had improperly withheld from them.

Notably, testimony was taken last week from two other KPMG witnesses, Clyde Womack and John Taylor.  Both testified that the Citibank letter would have been important to their OTTI analysis and conclusion.  Ex. C at 257:20-259:7; McKenna Decl. at ¶¶ 6, 7.  Yet, neither had ever spoken with the SEC regarding Thornburg prior to their depositions.  McKenna Decl. at ¶¶ 6, 7.  This further belies Defendants' claim that testimony KMPG's OTTI conclusions would likely have changed had all information, including the Citibank letter, been known to KPMG witnesses must be the result of SEC threats or collusion with witnesses.  The SEC would have been hard pressed to threaten or collude with Mr. Taylor and Mr. Womack without communicating with them prior to their depositions.

7

Defendants' unfounded speculations do not support a crucial need to invade SEC work

product and question the SEC about its attorneys' communications.  A protective order is

therefore appropriate.

**B.      Defendants' Request to Explore All the SEC Attorneys' Communications with KPMG and the PCAOB is an Attempt to Depose Opposing Counsel.**

Defendants' 30(b)(6) notice seeks to explore all the SEC's communications with KPMG

and with the PCAOB.  Because SEC trial and investigative counsel took part in those

communications, and would have to educate any designee on their communications to comply

with the requested deposition, Defendants' claim that the SEC can designate a non-lawyer to

testify is "a red herring."  *See* Defendants' Response at 14.  It is the source of the information

that matters, not the designee.  *See SEC v. SBM Investment Certificates, Inc.*, Civil Action No.

DKC 2006-0866, 2007 WL 609888, at *23-24 (D. Md. Feb. 23, 2007) (finding 30(b)(6) notice

designating "all communications" with various third-parties "clearly calls for the revealing of

information gathered by the SEC attorneys in anticipation of bringing the instant enforcement

proceedings"); *see also* Plaintiff's Motion for Protective Order, Dkt. 121 ("Plaintiff's Motion")

at 7-9.

Attempting to avoid this issue and skirt the requirements of the Tenth Circuit for

deposing opposing counsel, Defendants relegate the *Shelton* test to a footnote.  Defendants'

Response at 14, n.10.  As demonstrated in Plaintiff's Motion, however, none of those elements is

met here.  *See* Dkt. 121 at 10-14.  Particularly of note are Defendants' claims that "[n]o other

means exist to obtain the information" and "[t]he information sought is crucial."  Regarding the

first, Defendants *never* asked Ms. Hall or Ms. Reinhart why their testimony supposedly changed.

And their claim that they were "blocked from questioning Ms. Reinhart on that issue" is

baseless.  Defendants questioned Ms. Reinhart for 7 full hours.  McKenna Decl. at ¶ 4.  If they

wanted to ask about her communications with the SEC, they clearly could have.  They are also

free to ask both witnesses about these communications at trial.  As to Defendants' second claim,

as demonstrated above, entertaining Defendants' unfounded speculations is far from crucial in

this matter.

**C.**       **Defendants Claim that Work Product Protects Their Counsel from Being Questioned about Communications with Third Parties, But Not SEC Counsel; Without Showing Why Their Counsel's Communications with Third-Party Witnesses Are Any Different.**

**1.**       **Defendants' Attempt to Question the SEC about its Attorneys' Communications with the PCAOB and KPMG Seeks to Invade SEC Work Product.**

Defendants claim that their own attorneys may not be questioned about their

communications with third parties.  *See* Defendants' Response at 16-17.  They thus concede that

attorney recollections and notes of such communications necessarily involve disclosure of

attorney mental impressions, conclusions, opinions, or legal theories.  *See id.* at 16.[2]  They

contend, however, that this "is beside the point" because the KPMG witnesses have changed

their testimony "after extensive unsworn communications with the SEC and being assured by the

SEC that they would not be prosecuted ...."  *Id*. at 17.[3]

---

[2]       Defendants' heading to this section of their Response, "Work product protection has either been waived or is overcome by Defendants' compelling need" also appears to concede that attorney notes and recollections are work product.

[3]       Defendants claim that Ms. Reinhart and Ms. Hall were "assured by the SEC that they would not be prosecuted."  That is not the case.  Closure letters are issued in accordance with an Advisory Committee recommendation in the "usual … practice" and "must in no way be construed as indicating that the party has been exonerated or that no action may ultimately result from the stafff's investigation of that particular matter."  Dkt. 126-1 at page 4.  Further, Defendants' contention that the KPMG witnesses' testimony changed only after receiving these letters is at odds with their claim that it was the SEC's arm-twisting in off-the-record interviews

The SEC knows of several witnesses that Defendants' counsel have interviewed, including former Thornburg employees and one current employee of Mr. Goldstone's and Mr. Simmons' new company.  McKenna Decl. at ¶ 8.  Presumably Defendants have some influence over these witnesses.  The SEC could, but will not, speculate that Defendants may have threatened these witnesses.  If it did so speculate, however, would that entitle the SEC to question Defendants' lawyers about those interviews?  Of course not.  The SEC can ask the witnesses about the interviews in deposition or at trial.  Defendants should be required to do the same here.

Defendants further argue that "the SEC has waived any applicable work product protection by affirmatively placing the contents of those communications at issue ... by including allegations in its Complaint and advancing arguments before the Court based on those very communications."  Defendants' Response at 17.  But if that were the law, any time an attorney's behind-the-scenes work on a litigated matter was used, the protection would be waived.  Defendants are clearly not willing to let their attorneys be questioned about their work in preparing their motions to dismiss, or their answer when that time comes.  The SEC's attorneys should not be forced to do so either.

*Charlotte Motor Speedway, Inc. v. Int'l Ins. Co.*, 125 F.R.D. 127 (M.D.N.C. 1989), upon which Defendants rely for their argument that the SEC attorneys' activities are directly at issue in the underlying action, shows, in fact, the opposite.  In *Charlotte Motor Speedway*, the central issue in the litigation was whether the Speedway and its counsel had structured a settlement with minority shareholders bought out in a sale of the Speedway to make the Speedway's board of

---

that changed their testimony with regard to paragraph 83 of the Complaint.  The Complaint was

directors jointly and severally liable to the minority shareholders, and thus the buyout covered by

the board's director and officers' insurance policy.  125 F.R.D. at 129.  In other words, was the

Speedway's settlement with the minority shareholders in good faith?  The central issue in the

litigation thus put the activities of the plaintiff's counsel "directly in issue."  *Id.* at 131 (citing

cases where advice of counsel was asserted as a defense).

Here the central issue in the litigation is whether Defendants knowingly or recklessly

provided materially misleading information to the investing public.  KPMG witnesses will testify

as to what they were and were not told by Defendants in connection with their audit of

Thornburg's financial statements.  The SEC's communications with KPMG and the PCAOB

could, speculatively, under Defendants' baseless conjectures, provide evidence of collusion that

would provide fodder to impeach the KPMG witnesses.  But this is true in any case for any

witness – including any witness with whom Defendants' counsel has spoken.  The SEC has not

placed its attorney work product at issue by asserting an advice of counsel defense as Defendants

did in *Xerox Corp. v. IBM Corp.*, 64 F.R.D. 367, 381-382 (S.D.N.Y. 1974).  *See* Defendants'

Response at 17-18.[4]  There is no basis for waiver of the work product privilege based on the

SEC's conduct here.

Defendants' argument that "compelling circumstances" require depositions of opposing

counsel is, for the reasons discussed above, not compelling.  Especially where the KPMG

---

filed before the letters were issued.
[4]     Defendants also cite *In re Qwest Commc'ns Int'l, Inc.*, 450 F.3d 1179, 1187 (10th Cir. 2006) to support their work product waiver argument.  Defendants' Reply at 17.  That case, however, addressed selective waiver of the *attorney-client* privilege by Qwest where it had produced certain documents to the SEC and DOJ and was withholding production to class plaintiffs.  It has no applicability here.

witnesses at issue were available and willing to testify, but Defendants chose not to ask any

questions related to these purportedly "compelling circumstances."

Because Defendants' Second and Third Set of Requests for the Production of Documents

also seek evidence of all communications between the SEC's lawyers and the PCAOB and

KPMG, respectively, the SEC asserted work-product protection to those communications as

well.  Plaintiff's Motion at 16.  The SEC listed communications with the PCAOB on its

Withheld Documents List and its response to Defendants' Third Set of Request for the

Production of Documents, served on January 4, 2013, is not due yet.   Defendants' argument that

the SEC has not updated its Withheld Documents List (Defendants' Response at 19) is thus

without merit.

> **2.      The Deliberative Process Privilege Applies to the SEC's Deliberative Communications with the PCAOB.**

Defendants' contention that "communications with third parties such as the PCAOB are,

by definition, not covered by the deliberative process privilege" (Defendants' Response at 20) is

flat wrong.[5]  The deliberative process privilege applies to inter-agency communications.  *See*

*Tigue v. U.S. Dep't of Justice*, 312 F.3d 70, 76 (2d Cir. 2002) ("In order for a document to be

protected by deliberative process privilege, it must be: (1) an inter-agency or intra-agency

document . . . .").  "Inter-agency documents are those that go from one governmental agency to

another."  *Id.* at 77.  An agency is an "'authority of the Government of the United States,' and

---

[5]      While Defendants accurately quote *SEC v. Kovzan*, No. 11-2017, 2012 WL 4819011 (D. Kan. Oct. 10, 2012),which finds, unremarkably, that some communications with third-parties may not be privileged, they inaccurately claim that all communications with third parties are "by definition, not covered by the deliberative process privilege."

'includes any executive department, military department, Government Corporation, Government

controlled corporation, or other establishment in the executive branch of the Government . . . or

any independent regulatory agency.'" *Citizens Progressive Alliance v. U.S. Bureau of Indian

Affairs*, 241 F. Supp. 2d 1342, 1354 (D.N.M. 2002) (quoting *Dep't of Interior v. Klamath Water

Users Protective Ass'n*, 532 U.S. 1, 9 (2001) (in the context of exemptions under the Freedom of

Information Act)).   Where one agency communicates with another agency, the communication

remains eligible for protection under the deliberative process privilege.  *See Tigue*, 312 F.3d at

79 (holding that communications between an assistant U.S. Attorney and a non-agency

consultant for the Internal Revenue Service were inter-agency and "eligible for protection"); *see

also Citizens Progressive Alliance*, 241 F. Supp. 2d. at 1355 (finding that a letter from an

employee of the Bureau of Indian Affairs to the Department of Justice constituted an inter-

agency communication).  While the deliberative process privilege may not apply to a

communication provided to a third party, that issue arises when the third party is not a

government agency.  *See Tigue*, 312 F.3d at 77 ("The question at issue regarding the intra- or

inter-agency requirement is whether the document either originated from or was provided to an

entity that is not a federal government agency, in which case the document is not protected by

the exemption.").  Even if a third party does not fit the definition of an agency, if the party acts

as a consultant to a governmental agency, communication with that party may be deemed intra-

agency and still qualify for the deliberative process privilege. *See id.* at 77-78; *Citizens

Progressive Alliance*, 241 F. Supp. 2d at 1355.

        Congress established, and the Commission has oversight authority over, the PCAOB.

The PCAOB is a nonprofit corporation controlled by the U.S. Government and the SEC's

communications with it are inter-agency and eligible for coverage by the deliberative process

privilege.[6]

**D.      The PCAOB Privilege Applies and Has Not Been Waived.**

This this Court has already ruled that the PCAOB privilege is applicable and has not been

waived unless PCAOB materials have been "presented in a public proceeding" – which the Court

defined as meaning the materials were "part of [the] complaint." *See* Dkt. 98-2 at 21.  The SEC

has submitted four Declarations that PCAOB materials were not so used in preparing the

Complaint and were not part of the Complaint.  *See* Dkts. 98-1, 4, 5, and 6.  Despite this,

Defendants persist in claiming that the privilege is not applicable and/or has been waived.

Defendants Response at 23-24.  For the reasons set forth at length in the SEC's Opposition to

Defendants' Motion to Compel (*see* Dkt. 98 at 4-13), which the SEC will not repeat but rather

incorporates by reference here, that is not the case.

---

[6]      Defendants are also mistaken in contending that the SEC has not followed the proper
procedure for asserting the deliberative process privilege.  Where a blanket claim is made for
communications covered by the deliberative process privilege, such as in the Defendants'
30(b)(6) notice and document requests, for "all communications" with the PCAOB, it is not
practical to have the SEC department head make a formal claim of privilege, after personal
consideration of the matter, by affidavit, specifically identifying and describing all covered
documents and communications.  *See* Defendants' Response at 20-21.  Rather, the SEC has
asserted that its communications with the SEC involved "litigation strategy and charging
decisions [that] are paradigmatic of the types of communications that should be immune from
civil discovery."  Plaintiff's Motion at 15-16.  Should the Court deny the SEC's Motion for
Protective Order and order testimony or the production of documents related to the SEC's
communications with the PCAOB, the SEC will invoke the deliberative process privilege to
specific questions and documents as appropriate.   To require the SEC to assert the privilege to
each and every specific communication and document regarding the PCAOB at this stage would
hamstring the SEC's ability to assert the privilege by the sheer burden involved.

### III.    CONCLUSION

Defendants' 30(b)(6) notice seeking to question the SEC about its attorneys'

communications with the PCAOB and KPMG, as well as Defendants' Second and Third Sets of

Requests for the Production of  Documents also seeking to discover those communications, seek

to invade the SEC's attorney work product and deliberative processes.  Defendants have made no

showing of why questioning the SEC about its counsel's conversations with third-parties is

crucial to the claims or defenses at issue – instead offering unfounded speculations of improper

conduct by the SEC that "might" lead to impeachment evidence against KPMG witnesses.  For

these reasons, as explained more fully herein, the SEC's Motion should be granted and a

protective order issued against the Defendants' 30(b)(6) notice and Second and Third Sets of

Requests for the Production of  Documents.


DATED:  January 28, 2013


                                                    Respectfully submitted,



                                                    s/ Stephen C. McKenna
                                                    Stephen C. McKenna
                                                    Gregory Kasper
                                                    Dugan Bliss
                                                    Securities and Exchange Commission
                                                    1801 California Street, Suite 1500
                                                    Denver, Colorado 80202
                                                    Telephone: 303.844.1000
                                                    Attorneys for Plaintiff Securities and
                                                    Exchange Commission

## CERTIFICATE OF SERVICE

I hereby certify that on January 28, 2013, the foregoing document was electronically filed with the Clerk of Court using the CM/ECF system that will send notification of such filing to all counsel of record.

Michael Hoses
Assistant United States Attorney
P.O. Box 607
Albuquerque, NM 87103
(505) 346-7274
E-mail: Michael.hoses@usdoj.gov
*Local Counsel for Plaintiff Securities and Exchange Commission*

Alanna G. Buchanan (alanna.buchanan@wilmerhale.com)
Joel Fleming (joel.fleming@wilmerhale.com)
Chris Johnstone (chris.johnstone@wilmerhale.com)
Wilmer Cutler Pickering Hale and Dorr LLP
950 Page Mill Road
Palo Alto, CA 94304
Phone: (650) 858-6000
Fax: 650-858-6100

Randall R. Lee (Randall.lee@wilmerhale.com)
Jessica F. Kurzban (Jessica.kurzban@wilmerhale.com)
Peiyin Patty Li (Patty.li@wilmerhale.com)
Wilmer Cutler Pickering Hale and Dorr LLP
350 S. Grand Avenue, Suite 2100
Los Angeles, CA 90071
Phone: (213) 443-5360

John A. Valentine (john.valentine@wilmerhale.com)
Lauren R. Yates (lauren.yates@wilmerhale.com)
Michael A. Lamson (Michael.lamson@wilmerhale.com)
April N. Williams (April.Williams@wilmerhale.com)
Wilmer Cutler Pickering Hale and Dorr LLP
1875 Pennsylvania Ave., NW
Washington, DC 20006
Phone:  (202) 663-6000
Fax:  (202) 663-6363

*Attorneys for Defendant Larry Goldstone and Clarence Simmons, III*

16

Andrew G. Schultz (aschultz@rodey.com)
Bruce D. Hall (bhall@rodey.com)
Melanie B. Stambaugh
Rodey, Dickason, Sloan, Akin & Robb, P.A.
201 3rd Street NW, Suite 2200
P.O. Box 1888
Albuquerque, NM 87102
*Attorneys for Defendants Larry Goldstone, Jane E. Starrett and Clarence Simmons, III*


Jerry L. Marks (jmarks@milbank.com)
Alisa Schlesinger (aschlesinger@milbank.com)
Elena Kilberg (ekilberg@milbank.com)
Robert J. Liubicic (rliubicic@milbank.com)
Paul M. Torres
Milbank, Tweed, Hadley & McCloy LLP
601 S. Figueroa Street, 30th Floor
Los Angeles, CA 90017
Phone (213) 892-4000
Fax:  (213) 892-5063

Thomas Arena (tarena@milbank.com)
Milbank, Tweed, Hadley & McCloy LLP
1 Chase Manhattan Plaza
New York, NY 10005
Phone: (212) 530-5000
Fax:  (212) 530-5219

*Attorneys for Defendant Jane Starrett*


                                                       s/ Nicole Nesvig
                                                       Nicole Nesvig