# Exhibit A

## Page 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

SECURITIES AND EXCHANGE COMMISSION,
        Plaintiff,
    vs.        NO: 12-257
LARRY A. GOLDSTONE,
CLARENCE G. SIMMONS, III,
and JANE E. STARRETT,
        Defendants.

VIDEOTAPED DEPOSITION OF JANE ELISE STARRETT
February 19, 2013
9:12 a.m.
119 East Marcy Street, Suite 110
Santa Fe, New Mexico

PURSUANT TO THE FEDERAL RULES OF CIVIL PROCEDURE, this deposition was:

TAKEN BY: MR. GREGORY A. KASPER
    Attorney for the Plaintiff

REPORTED BY: Jennifer Bean, FAPR, RDR-RMR CCR #94

Job No.: 57810

## Page 2

    APPEARANCES
For the SEC:
    MR. GREGORY A. KASPER
    MR. STEPHEN C. McKENNA
    United States Securities and Exchange Commission
    1801 California Street
    Denver, Colorado 80202

For the Defendants Goldstone and Simmons:

    MR. RANDALL R. LEE
    WILMERHALE
    350 South Grand Avenue
    Los Angeles, California 90071

For the Defendant Starrett:

    MR. JERRY L. MARKS
    MR. ROBERT J. LIUBICIC
    MILBANK TWEED HADLEY & McCLOY
    601 South Figueroa Street
    Los Angeles, California 90017

## Page 3

        INDEX
EXAMINATION OF JANE ELISE STARRETT
    By Mr. Kasper        5
WITNESS SIGNATURE/CORRECTION PAGE    279
Exhibit 199 Wells Submission - Starrett    18
Exhibit 200 E-mail Starrett to Nye, 3/7/08    37
Exhibit 201 E-mail Burks to ALCO, 2/26/08    74
Exhibit 202 Master Repurchase Agreement, 9/14/07    85
Exhibit 203 Memo re RBC, 9/19/07    86
Exhibit 204 E-mail Goldstone to Starrett, 2/21/08    122
Exhibit 205 E-mail Goldstone to Simmons, 2/21/08    126
Exhibit 206 Updated 10-K draft, 2/25/08    135
Exhibit 207 E-mail Starrett to Hall, 2/26/08    141
Exhibit 208 E-mail Burns to Feldman, 2/21/08    143
Exhibit 209 E-mail Starrett to Coltharp re going concern, 2/21/08    168
Exhibit 210 Memo Buniel to Goldstone, 3/3/08    177
Exhibit 211 E-mail Starrett to Hall, 3/4/08    179
Exhibit 212 E-mail Coltharp to Starrett, 2/29/08    183
Exhibit 213 E-mail Starrett to Buniel, 3/2/08    185
Exhibit 214 E-mail Feldman to Goldstone, TMST 2008-1 update, 2/29/08    190
Exhibit 215 E-mail Timmons to Burns, Updated Recent Developments, 2/21/08    196
Exhibit 216 E-mail Burns to Goldstone, TMST 2008-1 update, 2/21/08    199
Exhibit 217 E-mail Starrett to Goldstone, rep letter, 3/3/08    210
Exhibit 218 Continuation of e-mail, rep letter,    212
Exhibit 219 E-mail Starrett to Pell, 3/3/08    214
Exhibit 220 E-mail Starrett to Coltharp, summary, 2/28/08    218
Exhibit 221 E-mail O'Leary Lopez to Goldstone, 2/28/08    221
Exhibit 222 E-mail Starrett to Fellers, consent, 3/4/08    250
Exhibit 223 E-mail Starrett to Hall, margin call detail, 3/4/08    258

## Page 4

Exhibit 224 Starrett questionnaire    264
Exhibit 225 Starrett 2009 tax return    267
Exhibit 226 Starrett 2007 tax return    268
Exhibit 227 Starrett 2008 tax return    270

Page 137

| | | |
|---|---|---|
| 03:18:43 | 1 | the 10-K. |
| 03:18:45 | 2 | Q. And why would Mr. Campbell have occasion to |
| 03:18:47 | 3 | need to see a draft of the 2007 Form 10-K? |
| 03:18:52 | 4 | A. They were busy preparing the offering |
| 03:18:54 | 5 | document for that capital raise. |
| 03:18:58 | 6 | Q. And some of the material contained in the |
| 03:19:01 | 7 | 2007 Form 10-K draft would also appear in those |
| 03:19:03 | 8 | offering documents; correct? |
| 03:19:05 | 9 | A. Yes. |
| 03:19:06 | 10 | Q. Okay. And who is the human being that |
| 03:19:10 | 11 | answers the e-mail at Halle.Benett@ubs.com? |
| 03:19:13 | 12 | A. Halle Benett is an underwriter at UBS. |
| 03:19:17 | 13 | Q. And is it fair to say that he had a need to |
| 03:19:20 | 14 | see the same information for the same reason as Mr. |
| 03:19:21 | 15 | Campbell? |
| 03:19:22 | 16 | A. Yes, the FBR and UBS were the |
| 03:19:24 | 17 | co-underwriters for that offering. |
| 03:19:27 | 18 | Q. And how about -- was |
| 03:19:31 | 19 | Jacob.Farquharson@CliffordChance.com, the person who |
| 03:19:39 | 20 | is associated with e-mail address Jacob.Farquharson |
| 03:19:43 | 21 | @CliffordChance.com? |
| 03:19:45 | 22 | A. He was underwriter's counsel. |
| 03:19:46 | 23 | Q. Okay. And so he needed to see the |
| 03:19:49 | 24 | information for the same reason we previously |
| 03:19:50 | 25 | discussed? |

Page 138

| | | |
|---|---|---|
| 03:19:51 | 1 | A. Correct. |
| 03:19:52 | 2 | Q. Okay. Now, if you look at the e-mail, the |
| 03:19:59 | 3 | last sentence prior to your closing is, "this |
| 03:20:03 | 4 | language has not yet been circulated to anyone else |
| 03:20:06 | 5 | within the company or to others outside the company." |
| 03:20:09 | 6 | Do you see that? |
| 03:20:10 | 7 | A. Yes. |
| 03:20:11 | 8 | Q. And does that refresh your recollection or |
| 03:20:16 | 9 | do you believe that this is the first time that the |
| 03:20:19 | 10 | recent developments section was communicated to |
| 03:20:23 | 11 | anyone outside of Thornburg? |
| 03:20:28 | 12 | A. Based on what I've said in the e-mail, yes. |
| 03:20:30 | 13 | Q. Okay. And the last sentence says, "If you |
| 03:20:37 | 14 | have comments on the recent developments language, |
| 03:20:39 | 15 | please provide them to Clay, Larry, or myself." Do |
| 03:20:41 | 16 | you see that? |
| 03:20:42 | 17 | A. Yes. |
| 03:20:43 | 18 | Q. Do you know why you would have -- why did |
| 03:20:47 | 19 | you ask for comments to be provided only to Mr. |
| 03:20:50 | 20 | Simmons, Mr. Goldstone, or you? |
| 03:20:54 | 21 | A. Well, none of those people, Mr. Campbell, |
| 03:20:56 | 22 | Mr. Bennet, or Mr. Farquharson had any relationship |
| 03:20:59 | 23 | with anyone else at Thornburg that would have been |
| 03:21:02 | 24 | involved in the drafting of the 10-K. |
| 03:21:07 | 25 | Q. Who else would they have possibly given |

Page 139

| | | |
|---|---|---|
| 03:21:08 | 1 | comments to, Ms. Starrett? |
| 03:21:10 | 2 | MR. MARKS: Objection; vague. |
| 03:21:15 | 3 | A. I don't know. I think -- I mean, all my |
| 03:21:17 | 4 | sentence is saying, If you have something you want to |
| 03:21:20 | 5 | communicate, let us know. |
| 03:21:22 | 6 | Q. Okay. |
| 03:21:42 | 7 | MR. KASPER: I'll just say for the record |
| 03:21:43 | 8 | that the investigative Exhibit Number 71 appears to |
| 03:21:48 | 9 | be an e-mail in response to this, which I understand |
| 03:21:54 | 10 | counsel for Ms. Starrett will instruct her not to |
| 03:21:58 | 11 | answer any questions related to, despite the fact |
| 03:22:01 | 12 | that I have some communication from the trustee |
| 03:22:07 | 13 | regarding the privilege issues. But -- so, |
| 03:22:11 | 14 | Mr. Marks, can you confirm that that's the case? |
| 03:22:14 | 15 | MR. MARKS: Yes. Based on what I know |
| 03:22:15 | 16 | about that document, it's a communication between |
| 03:22:19 | 17 | senior executives at Thornburg and the company's |
| 03:22:22 | 18 | outside counsel, at the time Sheri Fox, to which I |
| 03:22:24 | 19 | believe a privilege attaches. And I haven't seen |
| 03:22:30 | 20 | anything that constitutes an effective waiver by what |
| 03:22:34 | 21 | I'm assuming is the holder of the privilege, |
| 03:22:35 | 22 | Mr. Sher. And I've heard the e-mail that he -- you |
| 03:22:39 | 23 | know, you've read us the e-mail he sent to you. And |
| 03:22:40 | 24 | I don't view that as an effective waiver, and in |
| 03:22:43 | 25 | fact, reserving his rights to later claim the |

Page 140

| | | |
|---|---|---|
| 03:22:46 | 1 | privilege as to that document. And then I do |
| 03:22:48 | 2 | understand that the bankruptcy trustee may have taken |
| 03:22:51 | 3 | positions claiming the privilege as to communication |
| 03:22:55 | 4 | with Thornburg counsel in the past. |
| 03:22:57 | 5 | And so I would view this, if it were even |
| 03:23:00 | 6 | effective waiver as to this document, it could be |
| 03:23:03 | 7 | inappropriate to waive the privilege to selective |
| 03:23:07 | 8 | documents and still claim the privilege. And I'd |
| 03:23:10 | 9 | want Mr. Sher to understand that this would be a |
| 03:23:13 | 10 | potential subject matter waiver of all |
| 03:23:15 | 11 | communications. |
| 03:23:16 | 12 | So based on that, I feel an obligation not |
| 03:23:19 | 13 | to allow Ms. Starrett to testify as to privileged |
| 03:23:24 | 14 | communications. |
| 03:23:25 | 15 | MR. KASPER: Okay. And just so the record |
| 03:23:26 | 16 | is complete, I'll just state for the record, I have |
| 03:23:28 | 17 | in my hand an e-mail from Mr. Sher to myself, copying |
| 03:23:32 | 18 | Mr. McKenna, dated January 14, 2013, in which he |
| 03:23:36 | 19 | writes, "I'm not asserting privilege in the document |
| 03:23:39 | 20 | at this time. I do, however, reserve the right to |
| 03:23:42 | 21 | assert privilege if other facts come to my attention |
| 03:23:44 | 22 | would change my view." |
| 03:23:44 | 23 | That's the e-mail Mr. Marks was referring |
| 03:23:47 | 24 | to. And I guess we'll pursue whatever remedies we |
| 03:23:52 | 25 | have to pursue related to this and related to your |

### Page 141

| Time | # | Text |
|---|---|---|
| 03:23:54 | 1 | instruction. |
| 03:23:55 | 2 | MR. MARKS: Okay. Thank you. |
| 03:24:01 | 3 | Q. Now, as of -- just if we can go back for |
| 03:24:04 | 4 | one second to Exhibit 206. At this time, do you have |
| 03:24:10 | 5 | an understanding whether or not a draft of the recent |
| 03:24:13 | 6 | developments section had been communicated to KPMG? |
| 03:24:20 | 7 | A. No, I believe that was communicated at a -- |
| 03:24:25 | 8 | the next day. |
|  | 9 | (Exhibit 207 marked.) |
| 03:25:10 | 10 | Q. Ms. Starrett, do you now have in front of |
| 03:25:11 | 11 | you what has been marked as Exhibit 207? |
| 03:25:13 | 12 | A. Yes. |
| 03:25:14 | 13 | Q. Do you recognize this document? |
| 03:25:15 | 14 | A. Yes, I do. |
| 03:25:16 | 15 | Q. What is it? |
| 03:25:16 | 16 | A. It's the e-mail I sent to Jennifer Hall |
| 03:25:20 | 17 | with the draft recent developments language. |
| 03:25:23 | 18 | Q. Okay. And is it your recollection that |
| 03:25:25 | 19 | this is the first time that information was provided |
| 03:25:27 | 20 | to KPMG? |
| 03:25:28 | 21 | A. I believe so. |
| 03:25:29 | 22 | Q. Okay. Did you have any communications with |
| 03:25:38 | 23 | Ms. Hall prior to the time of this e-mail alerting |
| 03:25:41 | 24 | her that this information was coming? |
| 03:25:45 | 25 | A. Yes, I believe I did. |

### Page 142

| Time | # | Text |
|---|---|---|
| 03:25:47 | 1 | Q. Can you tell me what you recall about that |
| 03:25:49 | 2 | communication? |
| 03:25:49 | 3 | A. I don't recall any specifics other than |
| 03:25:51 | 4 | that we would be providing language. |
| 03:25:55 | 5 | Q. Do you recall what Ms. Hall's reaction was? |
| 03:26:00 | 6 | A. Nothing other than acceptance, that she |
| 03:26:04 | 7 | understood we would be providing language and that it |
| 03:26:06 | 8 | was an open area at that point. |
| 03:26:14 | 9 | Q. As you saw previously, this section was |
| 03:26:18 | 10 | initially drafted no later than February 21; is that |
| 03:26:25 | 11 | right? |
| 03:26:26 | 12 | A. That's correct. |
| 03:26:29 | 13 | Q. Do you have an understanding of why the |
| 03:26:32 | 14 | information -- why a draft was not provided to KPMG |
| 03:26:34 | 15 | until February 26, some several days later? |
| 03:26:41 | 16 | A. Well, the language, as drafted, said that |
| 03:26:44 | 17 | we had met all the margin calls. And at the time |
| 03:26:50 | 18 | that we provided it on the 26th, we knew that to be |
| 03:26:54 | 19 | true. The intervening days we were still working our |
| 03:26:59 | 20 | plan to get the margin calls paid. And at that point |
| 03:27:07 | 21 | the language was still unresolved. So we waited |
| 03:27:11 | 22 | until, you know, we were clear about the situation |
| 03:27:14 | 23 | and then provided clear language. |
| 03:27:19 | 24 | Q. At any point between February 21, when the |
| 03:27:22 | 25 | recent development language was first being drafted, |

### Page 143

| Time | # | Text |
|---|---|---|
| 03:27:25 | 1 | and February 26, when it was first provided to KPMG, |
| 03:27:29 | 2 | did you have any conversations with Mr. Goldstone and |
| 03:27:31 | 3 | Mr. Simmons about the timing of when that would be |
| 03:27:33 | 4 | provided to KPMG? |
| 03:27:40 | 5 | A. I don't recall any specific conversations |
| 03:27:43 | 6 | or details of any conversations. |
| 03:27:49 | 7 | Q. Do you know who made the decision to not |
| 03:27:52 | 8 | provide that information to KPMG until February 26? |
| 03:27:56 | 9 | MR. MARKS: Object to the form of the |
| 03:27:57 | 10 | question; assumes facts not in evidence. |
| 03:28:04 | 11 | A. I don't think there was a decision to not |
| 03:28:06 | 12 | provide it until a particular date. |
| 03:28:40 | 13 | MR. MARKS: How are you doing? |
| 03:28:41 | 14 | THE WITNESS: Fine. You guys kind of wore |
| 03:28:44 | 15 | me out with your argument. |
| 03:28:59 | 16 | Q. 208. |
|  | 17 | (Exhibit 208 marked.) |
| 03:29:06 | 18 | A. Okay. |
| 03:29:46 | 19 | Q. Ms. Starrett, you have in front of you |
| 03:29:48 | 20 | Exhibit 208; is that correct? |
| 03:29:50 | 21 | A. Yes. |
| 03:29:50 | 22 | Q. Do you recognize this document? |
| 03:29:52 | 23 | A. I don't recall it, but I can see that it's |
| 03:29:55 | 24 | an e-mail from Deborah Burns about the timing of the |
| 03:29:58 | 25 | 2008-1 securitization. |

### Page 144

| Time | # | Text |
|---|---|---|
| 03:30:01 | 1 | Q. Okay. Who is Ms. Burns? |
| 03:30:03 | 2 | A. Deborah Burns -- I forget what her title |
| 03:30:05 | 3 | was, but she was a senior -- oh, her title is right |
| 03:30:10 | 4 | here -- senior vice president of structured finance. |
| 03:30:14 | 5 | Q. And what was her -- you know, what did that |
| 03:30:15 | 6 | mean? What was her job at Thornburg? What did she |
| 03:30:17 | 7 | do? |
| 03:30:18 | 8 | A. Her job was to take the individual |
| 03:30:28 | 9 | mortgages securitized by -- I mean, originated by |
| 03:30:32 | 10 | Thornburg Mortgage Home Loans, any purchased |
| 03:30:37 | 11 | individual mortgages from other mortgage originators, |
| 03:30:41 | 12 | and bundle them into a mortgage securitization and |
| 03:30:45 | 13 | take that to market. |
| 03:30:49 | 14 | Q. And what does 2008 -- TMST 2008-1 refer to? |
| 03:30:54 | 15 | A. Thornburg Mortgage Securities Trust 2008-1. |
| 03:30:59 | 16 | So the 2008 stands for the year of the |
| 03:31:02 | 17 | securitization, and the 1 is, it's the first issuance |
| 03:31:05 | 18 | of mortgage securities by Thornburg Mortgage in 2008. |
| 03:31:09 | 19 | Q. Okay. And at the time of this e-mail, |
| 03:31:11 | 20 | February 21, what, if any, was your understanding |
| 03:31:19 | 21 | about when that securitization was to take place? |
| 03:31:25 | 22 | A. Well, that securitization -- the timing of |
| 03:31:27 | 23 | that securitization is completely up to the company. |
| 03:31:31 | 24 | There is no -- it's not like there is a filing |
| 03:31:33 | 25 | deadline or something like there would be for a 10-K. |