IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

SECURITIES AND EXCHANGE COMMISSION,

      Plaintiff,

vs.                                                          Case Number: 1:12-cv-00257-JB-LFG

LARRY GOLDSTONE, CLARENCE G. SIMMONS,
III, and JANE E. STARRETT,

      Defendants.


**DEFENDANTS' MOTION TO COMPEL A SUFFICIENT PRIVILEGE LOG BY
PLAINTIFF SECURITIES AND EXCHANGE COMMISSION**

## I.      INTRODUCTION

Defendants move to compel the SEC to provide a privilege log that adequately describes the 3,750 documents that have been withheld by the SEC in this case.  The SEC's current privilege log is defective because it makes blanket, unsubstantiated privilege claims over enormous categories of documents.  The SEC appears to be withholding a particularly large volume of materials pursuant to sweeping assertions of the deliberative process privilege that are not shown to relate to an actual policy-making process within the SEC.  In taking this approach, the SEC's privilege log fails in its basic purpose – namely, "to assist opposing counsel in determining whether the underlying documents are privileged."  *Cabot v. Wal-Mart Stores, Inc.*, No. CIV 11-0260 JB/RHS, 2012 WL 592874, at *13 (D.N.M. Feb. 16, 2012).  Indeed, the privilege log the SEC has provided would not pass muster under the SEC's own internal guidelines for privilege logs it demands from targets of its investigations.  The SEC should not be permitted to shield relevant, non-privileged information from discovery through overbroad and unjustified claims of privilege.  To shed light on whether the SEC's sweeping privilege claims are appropriate, the Court should compel the SEC to provide a privilege log that sufficiently describes each document it is withholding from Defendants consistent with the requirements of Federal Rule 26(b)(5)(A).

## II.     FACTUAL AND PROCEDURAL BACKGROUND

On October 5, 2012, Defendants served a First Set of Requests for the Production of Documents on the SEC.  *See* [Doc. 199, Ex. A].  The request calls for documents regarding: (1) the accounting principles at issue in this case; (2) Peloton Partners LLP hedge fund ("Peloton"), which turned out to be the subject of the "European hedge fund" rumor referenced in the Complaint; (3) disruptions in the financial markets; and (4) communications with KPMG.  *Id.* Because the Complaint alleges that Defendants' accounting judgments were fraudulent (Compl.

¶¶ 51-52, 73-74, 82-84), that Messrs. Goldstone and Simmons misled Thornburg's auditor by failing to disclose their awareness of rumors about the collapse of Peloton (*id.* ¶¶ 38-39, 76-80, 103-04), and that Defendants knew or were reckless in not knowing that Thornburg did not have the intent or ability to hold its ARM Securities until maturity or until their value recovered in the market (*id.* ¶¶ 12, 84), the SEC has made each of these topics ripe for discovery.[1]  On November 7, 2012, the SEC made a small production of documents and provided a privilege log responding to Defendants' request.  Ex. B.  This privilege log primarily describes notes of witness interviews and communications related to the PCAOB's investigation of KPMG (hereinafter the "original privilege log").

On April 18, 2013, seven weeks after what was supposed to be the close of fact discovery, the SEC served an amended privilege log describing the documents withheld from productions that were made on March 22 and April 18, 2013 (hereinafter the "amended privilege log").  Ex. A.  In addition to repeating the same entries contained in the original privilege log, the amended privilege log added five pages setting forth broad categories of additional documents being withheld.  *Id.*  Notably, the new entries in the amended privilege log do not identify any specific authors, recipients, or dates.  *Id.*  Instead, as depicted below, the amended log repeatedly refers to sweeping categories of documents sent between "SEC staff" and "SEC counsel" on "various" dates:

| Internal e-mails concerning comments on SEC draft speeches, talking points, presentations, and congressional testimony | SEC staff | SEC counsel | various | Attorney client communication; deliberative process privilege |
|---|---|---|---|---|

*Id.*  In some entries, the SEC fails to provide any information at all about the topics discussed in the documents being withheld:

---

[1] The SEC's production of documents in response to Defendants' First Request for the Production of Documents is the subject of a separate motion to compel.  *See* [Doc. 199].

| Internal action memoranda | SEC staff/counsel | SEC staff/counsel | various | Attorney client communication; work product protection; deliberative process privilege |
|---|---|---|---|---|

Although the SEC's amended privilege log comprises less than seven full pages, it invokes the deliberative process privilege 28 times. *Id.*

On May 28, 2013, Defendants informed the SEC that its amended privilege log was insufficient because Defendants were unable to assess the privilege claims being made. Ex. C. Defendants explained that the amended privilege log was especially troublesome given the SEC's broad assertions of the deliberative process privilege. *Id.* On June 3, 2013, the SEC responded in a letter defending its amended privilege log, arguing that the information provided was sufficient because "Defendants can determine whether the document was to or from counsel," and declining to provide any additional specificity on the log. Ex. D. The SEC also disclosed that it was claiming privilege over 3,750 documents – all of which are apparently covered by the scant seven page amended privilege log. *Id.* During a meet and confer on June 3, 2013, the SEC reiterated that it would not provide additional information to support the amended privilege log.[2]

## III. ARGUMENT

### A. Legal Standard

Under Rule 26(b)(5)(A), "when a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must: (i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed – and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the

---

[2] Pursuant to D.N.M.LR-Civ. 7.1(a), Defendants' counsel conferred in good faith with counsel for the SEC on June 3, 2013 and determined that the SEC opposes this motion.

claim." *Id.*  The Federal Rules "require a fairly detailed and specific showing to withhold discovery on privilege grounds." *In re Universal Serv. Fund Tel. Billing Practices, Litig.*, 232 F.R.D. 669, 671 (D. Kan. 2005).  Blanket assertions are insufficient to allow a party to assess whether a particular privilege is applicable.  *See Anaya v. CBS Broad. Inc.*, 251 F.R.D. 645, 651 (D.N.M. 2007) (citing *Resolution Trust Corp. v. Dabney*, 73 F.3d 262, 266 (10th Cir. 1995)); *see also Lunts v. Rochester City Sch. Dist.*, No. 07-CV-6272, 2011 WL 108913, at *1 (W.D.N.Y. Jan. 12, 2011) (compelling a party to correct entries in a privilege log that were far more specific than the entries at issue in this motion).

The party claiming the benefit of the attorney-client privilege shoulders the burden of establishing all of its elements.  *Jones v. Boeing Co.*, 163 F.R.D. 15, 17 (D. Kan. 1995) (quotation omitted).  This burden cannot be met by making conclusory assertions of privilege. *Kannaday v. Ball*, No. 12-2742-RDR, 2013 WL 1367055, at *3 (D. Kan. Apr. 3, 2013).  Rather, a privilege log "must be sufficient to enable the court to determine whether *each element* of the asserted privilege or protection is satisfied."  *In re Universal*, 232 F.R.D. at 673 (quotation omitted).  District courts within the Tenth Circuit have repeatedly held that the inclusion of the following information satisfies this standard:

- A description of the document explaining whether the document is a memorandum, letter, e-mail, etc.;
- The date upon which the document was prepared;
- The identity of the person(s) who prepared the document and for whom the document was prepared, as well as the identities of those to whom copies were directed;
- The purpose of preparing the document;
- The number of pages of the document; and

- The party's basis for withholding discovery to establish the elements of each
  asserted privilege.

*Id.*; *see also Kannaday*, 2013 WL 1367055, at *3. If a party fails to provide the requisite

specificity in its privilege log, the Court may direct the party to provide a more detailed log. *See*

*Cabot*, 2012 WL 592874, at *13 (finding party's cursory description of documents insufficient

and directing a party to provide a more detailed privilege log). The submission of an inadequate

privilege log may also be deemed a waiver of the privilege requiring the production of the

documents being withheld. *See Anaya*, 251 F.R.D. at 651 ("[t]he law is well-settled that, if a

party fails to make the required showing, by … providing an inadequate [privilege log], the court

may deem the privilege waived") (quotation omitted); *Aurora Loan Servs., Inc. v. Posner,*

*Posner & Assoc., P.C.*, 499 F. Supp. 2d 475, 478-79 (S.D.N.Y. 2007) (ordering the production of

withheld documents in light of deficiencies in the plaintiff's privilege log).

**B.     The SEC Should Not Be Permitted to Make Blanket Privilege Invocations**

The amended privilege log is inadequate because it makes such sweeping claims of

privilege over broad and generic categories of documents that it frustrates the very purpose of a

privilege log – to allow Defendants to make a meaningful assessment of each document over

which a privilege is asserted. District courts have repeatedly found this approach to be

insufficient and ordered the production of a supplementary privilege log. *See, e.g.*, *Cabot*, 2012

WL 592874, at *13 (granting motion to compel the production of a supplementary privilege log

providing a more detailed description of the nature of the documents being withheld and the

basis for the privilege claims being made); *Nurse Notes, Inc. v. Allstate Ins. Co.*, No. 10-CV-

14481, 2011 WL 2173934, at *4 (E.D. Mich. June 2, 2011) (same); *U.S. v. Badger*, 10-cv-935-

RJS-PMW, 2013 WL 3937023, at *3 (D. Utah July 30, 2013) (same); *Lunts*, 2011 WL 108913,

at *1 (same).

The entries on the SEC's amended privilege log do not come close to adequately describing the nature of the documents being withheld or the basis for the asserted privilege claim.  For instance, on page five of the amended privilege log, the SEC states only that it has withheld "Internal weekly reports and risk assessment reports" sent between "SEC staff/counsel" and "SEC staff/counsel" on "various" unspecified dates.  Ex. A.  This entry provides no basis to evaluate the applicability of the claim of privilege because it does not specify the parties to the communication, the date of the communication, or the subject of the communication.  Similarly, on page four of the amended privilege log, the SEC refers to "Draft working group agendas, papers, and other materials" sent from "SEC staff/counsel" to "SEC staff/counsel" on "various" unspecified dates.  Ex. A.  The other entries on the log are equally deficient.  Because the SEC's entries do not provide sufficient information for Defendants to determine whether each element of the asserted objections is satisfied (or even to understand the subject matter of the document), they are inadequate and should be corrected.  *See Lunts*, 2011 WL 108913, at *1.

The SEC staff's own internal guidelines for seeking privilege logs from targets in SEC enforcement investigations confirm that the SEC's amended privilege log here is deficient.  The SEC Enforcement Manual requires SEC staff to request a "detailed privilege log to be produced" from a party being investigated and warns that a "failure to provide sufficient information to support a claim of privilege can result in a waiver of the privilege."  Ex. E.  The manual identifies the specific information that should be requested from a target the SEC is investigating:

> If any requested document is withheld, please submit a list of all such documents that provides: (a) the identity and position of the creator(s); (b) the creation date; (c) the present or last known custodian; (d) a brief description, including the subject matter; (e) the identity and position of all persons or entities known to have been furnished the document or a copy of the document, or informed of its

substance; (f) the reason the document is not being produced and (g) the specific request in the subpoena to which the document relates.

*Id*. The manual also indicates that in situations where, as here, a party provides a privilege log that is "incomplete" or "not otherwise … sufficient … to determine whether the privilege has been properly asserted," the staff should follow-up to "obtain additional information" to assess the privilege. *Id*. The amended privilege log the SEC has provided comes nowhere close to meeting the standards the SEC Enforcement Division routinely imposes on others.

The SEC has not even attempted to demonstrate that compiling a proper privilege log would impose an undue burden. Nor could it. Given the complexity and high stakes of this lawsuit – in which the SEC seeks nothing less than career-ending sanctions against Defendants, including a bar from ever serving as an officer or director of a public company – Defendants should be permitted to explore fully in discovery the subjects that the SEC has itself put at issue. *See Burket v. Hyman Lippitt, P.C.*, Nos. 05-72110, 05-72171, 05-72221, 2007 WL 2421514, at *1-2 (E.D. Mich. Aug. 23, 2007) (finding that the complexity and stakes of the lawsuit overrode any concerns about the burden of compiling a privilege log). For their part, Defendants have had to sit for multiple days of investigative testimony and depositions, respond to written discovery, and produce documents in response to the SEC's requests. Under the circumstances, the SEC's attempt to avoid meaningful scrutiny of its sweeping privilege claims for documents that are indisputably relevant and responsive to Defendants' document requests violates basic notions of fairness. Because the SEC's privilege log is grossly deficient on its face, the Court should order the SEC to correct the deficiencies in the amended privilege log.

### C.     The Amended Privilege Log Is Especially Inadequate With Respect to Deliberative Process Privilege Claims

The SEC's amended privilege log is especially inadequate with respect to its sweeping, facially overbroad invocations of the deliberative process privilege. To fall within the

deliberative process privilege, "information must be pre-decisional in nature and must form part of the agency's deliberative process." *Bell v. Bd. of Educ.*, No. CIV-06-1137 JB/ACT, 2008 WL 4107445, at *2 (D.N.M. Apr. 22, 2008).  This Court has previously recognized that "factual information is not protected from disclosure" and that the deliberative process privilege "does not apply to individual decisions that a governmental agency makes, because the privilege primarily protects deliberation about what the broad policies should be, not individual decisions implementing existing policy." *Id.* at *3.  During the most recent hearing in this case, the Court stated that while it believes that the deliberative process privilege "exists," the parties should expect the Court to construe it narrowly.  *See* Ex. F.

In its amended privilege log, the SEC aggressively invokes the deliberative process privilege over broad categories of documents without demonstrating any connection to specific agency policy deliberations.  For instance, the amended privilege log notes that the SEC is withholding the following broad categories of documents on deliberative process grounds: "[d]raft working group agendas, meetings, draft papers, and other materials" sent between the SEC and "other U.S. governmental agencies" on "various" unspecified dates.  Ex. A.  This description is so vague that Defendants have no idea whether the withheld documents played any role in the policy-making process of the SEC.  *See Trentadue v. Integrity Comm.*, 501 F.3d 1215, 1227 (10th Cir. 2007).  Given the indiscriminate way in which the SEC has invoked the deliberative process privilege in the amended privilege log, it is a near certainty that many (if not most) of these documents pertain to routine, non-policymaking matters that are appropriate subjects of discovery.  Furthermore, these entries do not permit Defendants to assess whether a purported privilege was later waived through disclosure to a third party.  Because the SEC's

entries do not contain sufficient detail, Defendants have no way to evaluate whether the SEC's invocation of the deliberative process privilege is proper.

The undefined scope of the SEC's invocation of the deliberative process privilege is perhaps the most concerning aspect of the SEC's opaque approach. The amended privilege log makes no fewer than 28 invocations of the deliberative process privilege over broad categories of documents. Ex. A. By taking this approach, neither the Court nor Defendants know how many documents the SEC is withholding on this basis. Although the SEC has informed Defendants that it is withholding 3,750 documents, the SEC has not disclosed how many of these documents are being withheld pursuant to a claim of deliberative process privilege. This invocation of the deliberative process privilege is nothing less than a "black box" preventing any meaningful scrutiny of the documents the SEC is withholding. Given that the SEC's production of documents – which used the search term "OTTI" – included few documents showing how the SEC reacted to widespread industry concerns about the application of OTTI in the midst of the financial crisis, the production of a corrected privilege log will almost certainly demonstrate that the SEC's deliberative process privilege claims are overbroad.

> **D.**     **The Categories of Documents Described in the Amended Privilege Log Do Not Allow Defendants to Assess the SEC's Privilege Claims**

The amended privilege log lumps the SEC's privilege assertions into broad categories of documents that are on their face inadequate because they do not allow Defendants to evaluate the SEC's privilege claims. An inspection of these categories makes clear that they do not provide adequate detail to assess whether a particular privilege claim is validly asserted:

- ***Speeches, Talking Points, Presentations, and Congressional Testimony***: The amended privilege log generically refers to documents reflecting draft speeches, talking points, presentations, and Congressional testimony, but fails to identify any of the authors, recipients, dates, or subjects of the documents being withheld. Ex. A at 3. In defending these entries, the SEC claims that

these entries are sufficient because "we have indicated that the communications were between SEC staff and SEC counsel." Ex. D.  It is well-established, however, that communications with counsel are not categorically privileged.  *See In re Chevron Corp*., Civil Nos. 10-MC-21 JH/LFG, 10-MC-22 J/LFG, 2010 WL 8786278, at *1 (D.N.M. Sept. 13, 2010) (citation omitted).  The SEC has also attempted to withhold documents in this category by cloaking them in the deliberative process privilege.  *Id*.  On their face, these entries provide almost no information with which to assess the validity of the SEC's privilege claims.

- ***Working Group Agendas, Meetings, Draft Papers, and Other Materials***:  The amended privilege log generically refers to documents reflecting the SEC's "work group agendas, meetings, draft papers, and other materials."  Ex. A at 3-5.  Once again, these entries fail to identify any of the authors, recipients, dates, or subjects of the documents being withheld.  Furthermore, the SEC appears to be asserting a privilege over documents that were shared with other foreign governments.  Ex. A at 4-5.  There is no possible claim of privilege with respect to such documents.  *See Shell Oil v. IRS*, 772 F. Supp. 202, 211 (D. Del. 1991) ("Where an authorized disclosure is voluntarily made to a non-federal party, the government waives any claim that the information is exempt from disclosure under the deliberative process privilege.").

- ***Communications and Memoranda Reflecting Legal Advice***:  The amended privilege log refers to "internal e-mails reflecting legal advice" that were sent to and from SEC Commissioners.  Ex. A at 5.  The SEC has offered no defense of these entries other than the following: "e-mails to/from lawyers seeking or reflecting legal advice are self-evidently privileged."  Ex. D.  In a similar fashion, the amended privilege log broadly refers to a "Memorandum" and "Drafts of Memoranda" to the Commission without disclosing any information about the subject of the communications being withheld.  Ex. A at 1.

- ***Weekly Reports and Risk Assessment Reports***:  The amended privilege log refers to communications reflecting "weekly reports and risk assessment reports" but fails to provide any information about these reports that would allow counsel to evaluate whether they are privileged.  Ex. A at 5.  The SEC has stated that "an internal risk assessment report is an internal report wherein the SEC attorneys and staff assess risks that should be focused on in examining reporting companies."  Ex. D.  But this Court has expressly held that the deliberative process privilege "does not apply to individual decisions that a governmental agency makes, because the privilege primarily protects deliberation about what the broad policies should be, not individual decisions implementing existing policies."  *Bell*, 2008 WL 4107445, at *3.  This category of documents, on its face, cannot be protected by the deliberative process privilege.

- ***Draft No Action Letters***:  The amended privilege log contains a generic category referring to e-mails "circulating" and commenting on draft no action letters.  Ex. A at 5.  The amended log is devoid of any information about the nature of the legal advice being provided (if any) or the parties to these communications.  *Id.*

- ***Requests From Companies to Deviate From Rules***:  The SEC takes the same approach to e-mails "circulating and seeking comments on requests from companies to deviate from SEC rules and/or regulations."  Ex. A at 6.  Once again, the only defense the SEC provides is a conclusory statement that "those internal communications reflect and/or seek legal advice and are plainly privileged."  Ex. D.  There could hardly be a more relevant set of emails.  The small number of indisputably non-privileged documents that the SEC has produced on these subjects reveal that companies were struggling with OTTI judgments in the midst of the financial crisis.  *See* [Doc. 199, Ex. I] (evincing panic in the business community regarding OTTI and requesting emergency guidance).  The SEC's reaction to the difficulties market participants faced in making judgments about such complex accounting issues during the financial crisis is relevant and is likely to yield powerful evidence that those accounting issues were not "clear," as the SEC has alleged in its Complaint.  *See* Compl. ¶ 12.

- ***Staffing and Resources***:  The amended log refers to e-mails concerning "SEC staffing and resources" but fails to provide any information besides the fact that these e-mails were sent or received by an attorney.  Ex. A at 6.  When pressed, the SEC defended this entry by saying Defendants' document requests are overbroad.  Ex. D.  However, the SEC has expressly agreed to the search terms that are being used, and the volume of a production has no bearing on whether a certain document is privileged.  In any event, there is no apparent basis for any privilege claim with respect to documents concerning "SEC staffing and resources."

- ***Proposed Rule Amendments to Existing Rules***:  The final category of material being withheld involves correspondence "circulating" and commenting on proposed rules and amendments to existing rules.  Ex. A at 6-7.  While these entries fail to identify the rules, amendments, recipients, or dates of the documents being withheld, *id*., it is almost a certainty that some of this correspondence relates to the accounting and disclosure issues in this case.  But without any specificity, counsel is unable to assess the SEC's privilege claim, especially because it appears that all of these documents are being withheld based on the deliberative process privilege.

Although some of the documents included in these broad categories may ultimately prove to be

privileged, the vague entries in the amended log make it impossible for Defendants to evaluate

the SEC's privilege assertions.  Given the limited scope of the SEC's document production to date, there is a significant possibility that when the SEC's privilege invocations over specific documents are properly made, they will not hold up to scrutiny.  If the SEC's amended privilege log confirms Defendants' suspicions, Defendants will immediately move to compel the production of this important evidence.  Therefore, as a first step, the Court should compel the SEC to produce a sufficient privilege log that adequately describes each of the documents the SEC is currently withholding from Defendants.

## IV.    CONCLUSION

For all the foregoing reasons, Defendants' motion to compel the production of a supplementary privilege log should be granted.


Dated:  August 6, 2013                    Respectfully submitted,



                                   */s/ Christopher W. Johnstone*                .
                                   WILMER CUTLER PICKERING HALE AND
                                       DORR LLP
                                   Christopher W. Johnstone
                                   950 Page Mill Road
                                   Palo Alto, CA 94304
                                   Telephone: (650) 858-6147
                                   Facsimile:  (650) 858-6100
                                   chris.johnstone@wilmerhale.com

                                   *Attorneys for Defendants Larry Goldstone and*
                                   *Clarence G. Simmons, III*

/s/ Jerry L. Marks                      .
MILBANK, TWEED, HADLEY & MCCLOY
  LLP
Jerry L. Marks
601 S. Figueroa Street, 30th Floor
Los Angeles, CA  90017
Telephone: (213) 892-4000
Facsimile: (213) 629-5063
jmarks@milbank.com

*Attorneys for Defendant Jane E. Starrett*



/s/ Andrew G. Schultz                      .
RODEY, DICKASON, SLOAN, AKIN &
  ROBB, P.A.
Andrew G. Schultz
P. O. Box 1888
Albuquerque, NM 87103
Telephone: (505) 765-5900
Facsimile: (505) 768-7395
aschultz@rodey.com

*Attorneys for Defendants Larry Goldstone, Clarence G. Simmons, III, and Jane E. Starrett*

13

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on August 6, 2013, the foregoing was electronically

filed with the Clerk of Court using the CM/ECF system that that will send notification of such

filing to all counsel of record.

Michael H. Hoses
Assistant United States Attorney
P.O. Box 607
Albuquerque, NM  87103
michael.hoses@usdoj.gov

Stephen C. McKenna
Gregory Kasper
Dugan Bliss
Securities & Exchange Commission
1801 California Street, Suite 1500
Denver, CO  80202
mckennas@sec.gov
kasperg@sec.gov
blissd@sec.gov

MILBANK, TWEED, HADLEY &
   MCCOY LLP
      Thomas A. Arena
1 Chase Manhattan Plaza
New York, NY  10005
Telephone:  (212) 530-5000
Facsimile:  (212) 530-5219
tarena@milbank.com

WILMER CUTLER PICKERING
   HALE AND DORR LLP
      John A. Valentine
      April N. Williams
1875 Pennsylvania Avenue, NW
Washington, DC 20006
Telephone: (202) 663-6000
Facsimile: (202) 663-6363
john.valentine@wilmerhale.com
april.williams@wilmerhale.com

MILBANK, TWEED, HADLEY &
   MCCLOY LLP
Jerry L. Marks
Robert J. Liubicic
Alisa Schlesinger
Elena Kilberg
601 S. Figueroa Street, 30th Floor
Los Angeles, CA  90017
Telephone:  (213) 892-4000
Facsimile:  (213) 629-5063
jmarks@milbank.com
rliubicic@milbank.com
aschlesinger@milbank.com
ekilberg@milbank.com

WILMER CUTLER PICKERING
   HALE AND DORR LLP
      Randall R. Lee
      Jessica F. Kurzban
350 South Grand Ave., Suite 2100
Los Angeles, CA 90071
Telephone: (213) 443-5300
Facsimile: (213) 443-5400
randall.lee@wilmerhale.com
jessica.kurzban@wilmerhale.com

WILMER CUTLER PICKERING
   HALE AND DORR LLP
      Chris Johnstone
      Alanna G. Buchanan
950 Page Mill Road
Palo Alto, CA 94304
Telephone: (650) 858-6000
Facsimile: (650) 858-6100
chris.johnstone@wilmerhale.com
alanna.buchanan@wilmerhale.com

RODEY, DICKASON, SLOAN, AKIN &
  ROBB, P.A.
Andrew G. Schultz
Bruce D. Hall
Melanie B. Stambaugh
201 3rd Street NW, Suite 2200
P.O. Box 1888
Albuquerque, NM 87102
aschultz@rodey.com
bhall@rodey.com
mstambaugh@rodey.com


WILMER CUTLER PICKERING HALE
  AND DORR LLP

By ___*/s/ Christopher W. Johnstone*___.
        Christopher W. Johnstone